### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

BRUCE ROXBY,

                                CASE NO.   00-6197-CIV-ZLOCH

            Plaintiff,

            v.                                 Magistrate Judge Seltzer

SUN LIFE OF CANADA, SUN LIFE OF
CANADA REINSURANCE COMPANY, SUN
LIFE ASSURANCE COMPANY OF CANADA,
and SUN LIFE OF CANADA (U.S.)
DISTRIBUTORS, INC.,

            Defendants.



### MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants, Sun Life Assurance Company of Canada (hereinafter "Sun Life" or "Defendant") (incorrectly denominated in the caption as Sun Life of Canada, Sun Life Of Canada Reinsurance Company and Sun Life of Canada (U.S) Distributors, Inc.), hereby file their Memorandum in Support of Defendants' Motion for Summary Judgment.

### I. INTRODUCTION

    Plaintiff seeks judicial review of Sun Life's decision to deny long term disability benefits under an employee welfare benefit plan ("Plan") sponsored by Plaintiff's employer, Jim Moran Pontiac, Inc., one of the participating entities of the J.M. Family Enterprises, Inc. ("J.M." or "Employer"). Long term disability benefits under the Plan were funded by a group policy of disability insurance issued by Sun Life. Sun Life paid Plaintiff disability benefits for the 60 months that he was disabled from his regular occupation. Sun Life denied Plaintiff's claim for benefits beyond the 60-month regular occupation period because (1) Plaintiff was capable of performing at least sedentary (and possibly medium) level work and therefore was not totally disabled from "any occupation" as required by the

terms of the Plan; and (2) Plaintiff frustrated Defendant's efforts to evaluate Plaintiff's physical condition by refusing to attend a scheduled independent Functional Capacity Evaluation ("FCE").

This matter is governed exclusively by federal law under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, et seq., as amended ("ERISA"). Under ERISA, Sun Life's decision to deny Plaintiff's claim for benefits must be upheld unless it is arbitrary and capricious. Sun Life is entitled to summary judgment because there is substantial and compelling record evidence to support Sun Life's determination that Plaintiff was capable of performing at least sedentary (and possibly medium) level work and therefore was not totally disabled from "any occupation." Moreover, Plaintiff refused to appear for a scheduled independent FCE, thereby justifying Defendant's termination of his benefits. Under these circumstances and in light of the review standard applicable under ERISA, Sun Life's decision to deny Plaintiff's claim for benefits was not arbitrary and capricious and Sun Life is entitled to summary judgment.

This Court's review is limited to the evidence that was before Sun Life at the time of its final decision. [See discussion below].[1] On the basis of that record and for purposes of Defendants' Motion, the undisputed facts are as follows.

---

[1] A copy of the group policy and plan booklet applicable to Plaintiff's claim for benefits are authenticated by and attached as Exhibit "A" to the affidavit of LeeAnn Prior, and Bates-marked as pages 469-513. A copy of Sun Life's claim file is authenticated by and attached as Exhibit "B" to the Prior Affidavit, and Bates-marked as pages 1-16, 21-184, 188-468. These documents are referenced by their Bates number as "R. ___".

2

## II. STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE FOR TRIAL

Plaintiff was employed by Jim Moran Pontiac, Inc., (one of the participating entities of the J.M. Family Enterprises, Inc.) as an automobile mechanic. [R. 344-6, 503.] Plaintiff's Employer sponsored an employee disability benefit plan ("Plan"). [R. 469-70, 503.] Disability benefits under the Plan were funded, at least in part, by a group disability insurance policy issued to the Employer by Sun Life. [Complaint; R. 469-70, 503.] Plaintiff was a participant in the Plan. [Complaint.]

To be eligible for disability benefits under the Plan, the employee must be "Totally Disabled." [R. 492-3, 511.] During the initial 60-month period, "Totally Disabled" is established, inter alia, if the employee's incapacity prevents him from performing all of the material duties of his regular occupation. [R. 474, 505 (emphasis added).]

After the expiration of the 60-months, benefits are payable only if an employee's incapacity "prevents him from engaging in any occupation for which he is or may become reasonably qualified by education, training or experience." [R. 505 (emphasis added).]

Under the Plan, a claimant must provide proof of disability as follows:

- "We may require proof in connection with the terms or benefits of this policy." [R. 488.] "If proof is required, we must be provided with such evidence as is satisfactory to us . . . ." [R. 488, R. 510.]

- "We must receive written notice of claim. . . ." [R. 486.]; "We must receive written proof of claim . . . . [R. 487.]

- "The proof, which must be satisfactory to us, is to be given to us at our Office." [R. 487.]

- "If we receive due Notice and Proof of Claim that. . .an insured became totally disabled while insured . . . and his Total Disability continued beyond the Elimination Period . . . we will pay . . . a Total Disability Benefit." [R. 492, 511.]

3

- As to Proof–proof of claim must be given to Sun Life no later than 90 days after the end of the Elimination Period. [R. 494-5]

- "Once we have received written proof of claim for benefits payable . . . such payments will be made at the end of each benefit paying period . . . ." [R. 486, 509]

The Plan provides that Sun Life has the right to have claimants examined. [R. 488, 510.]

In December 1993, Plaintiff submitted a claim for long term disability benefits, citing a "neck and back injury" allegedly stemming from a work-related accident that occurred in May 1993. [R. 457.] Dr. Lang, a neurologist, diagnosed Plaintiff with a low grade cervical radiculopathy at C6-7, with some numbness and tingling. [R. 424-5.] On June 2, 1993, Dr. Lang reported that Plaintiff's MRI was normal, that Plaintiff was "improved," and that Plaintiff could return to work at light duty for two to three hours per day. [R. 422-3.]

On January 17, 1994, Sun Life received medical records for June through December, 1993 from Dr. Novick concerning Plaintiff's back problem. [R 442-47, 459-60.]

In notes dated December 8, 1993, Dr. Novick reported that Plaintiff had reached his maximum medical improvement ("MMI") and gave Plaintiff a rating for disability of 17.5% based on the Minnesota Disability rating scale. [R. 442.]

In an Attending Physician's Statement dated December 8, 1993, Dr. Novick rated Plaintiff's disability as Class 4, meaning "moderate limitation of functional capacity; capable of clerical/administrative (sedentary activity)." [R. 460.] In response to the question "Is patient now totally disabled?", Dr. Novick answered "no." [R. 460.] He reported that Plaintiff could return to work on "light duty." He checked the box indicating that Plaintiff was totally disabled from his job, but not totally disabled from "any other job." [R. 460.] In response to the question "What duties of

4

patient's job is he/she capable of performing?", Dr. Novick answered "may do light duty only, no heavy lifting, needs to frequently reposition." [R. 460.]

On February 10, 1994, Plaintiff's Employer advised Sun Life that Plaintiff could not return to work doing light duty because there was no light duty position available for which Plaintiff was qualified. [R. 420.] By letter dated February 11, 1994, Sun Life approved Plaintiff's claim for long term disability benefits conditioned on Plaintiff furnishing satisfactory evidence of his continuing total disability. [R. 418.]

Throughout the 60-month period of regular occupation benefits, all doctors who evaluated Plaintiff uniformly rated his disability as Class 4, meaning a "moderate limitation of functional capacity; capable of clerical/administrative (sedentary activity)." [R. 252, 310, 329, 373, 385, 460.] No doctor opined that Plaintiff was totally disabled from any occupation. [R. 252, 310, 329, 373-74, 385, 460.]

During the 60-month regular occupation period, Plaintiff was advised by doctors and others that he should pursue vocational rehabilitation and/or retraining, which he refused. [R. 274, 385, 414, 460, 467.]

In 1994, Plaintiff failed to cooperate with vocational rehabilitation counseling that Sun Life attempted to schedule. [R. 404, 414.] During this time, Plaintiff stated "I do not wish to retrain" [R. 467] and "I am only interested in auto repair." [R. 466 ]

On October 5, 1994, Sun Life received notice that the Social Security Administration ("SSA") had denied Plaintiff's claim for benefits. The SSA stated:

> We have determined that your condition is not severe enough to be considered
> disabling. . . . We have reviewed the above medical record and it shows that your
> condition does affect your ability to work. However, your condition can be expected
> to improve with medical treatment and by following your doctor's advice and permit
> you to perform normal work-related activities without any serious limitations. [R. 389,
> 387.]

5

On March 30, 1995, Sun Life received notice that SSA affirmed its previous denial of social

security benefits:

> We have reviewed the medical record, and it shows that you have received treatment
> for your condition and that you may not be capable of performing heavy work. We
> realize that you also feel you may not be capable of working at this time. However the
> medical record shows that you are able to communicate, act in your own interests,
> adjust to ordinary emotional stresses, get along with others and do your usual daily
> activities without assistance. The medical record shows that you are capable of
> performing other work which does not require heavy lifting and might only require very
> short, on-the-job training. [R. 379.]

On October 28, 1997, approximately one year prior to the expiration of the 60-month regular

occupation period, Sun Life received an Attending Physician's Statement, dated October 9, 1997 from

Dr. Perkins, which classified Plaintiff's disability as Class 4, meaning moderate limitation of functional

capacity; capable of clerical/administrative (sedentary) activity. [R. 252.] In this statement, Dr. Perkins

did not report that Plaintiff was disabled from any occupation. [R. 252.] In his office notes

documenting this visit, Dr. Perkins reported that Plaintiff had "a 5 to 10% permanent disability rating."

[R. 176.]

By letter dated June 24, 1998, Sun Life advised Plaintiff that the 60-month regular occupation

period would expire on November 22, 1998 and that "at that time it will be necessary for you to

provide evidence of total disability from any occupation." [R. 206.]

On September 3, 1998, Sun Life received an Attending Physician's Statement from Dr. Perkins

dated August 7, 1998, which classified Plaintiff's disability as Class 4, meaning moderate limitation of

functional capacity; capable of clerical administrative work (sedentary) activity. [R. 193.] In this

statement, Dr. Perkins reported that Plaintiff was ambulatory [R. 193] and that he could stand/walk for

up to four hours per day, drive up to three hours per day, and sit up to three hours per day. [R.194.]

He further reported that Plaintiff could use his hands for repetitive simple grasping. [R.194.] In

6

response to specific questions on the form concerning whether Plaintiff's prognosis would improve, or whether Plaintiff could work with limitations, he answered "maybe."   [R. 194.]   Dr. Perkins also recommended that Plaintiff undergo vocational rehabilitation counseling or retraining.   [R.194.]   In office notes dated August 7, 1998, Dr. Perkins reported Plaintiff's permanent disability as 10%.   [R. 175.]

On October 26, 1998, Sun Life submitted Plaintiff's claim file for a Medical Review ("MR"). [R. 171.] Pursuant to the MR, Sun Life also scheduled Plaintiff for an independent Functional Capacities Evaluation ("FCE") and a Transferable Skills Analysis ("TSA").   [R. 164, 171.]

On November 19, 1998, Constance Horzorn, P.T., and Janeen Daniels, M.S., issued their Work Capacities Assessment Report, pursuant to the FCE conducted on November 19, 1998 [R. 155-62.] These independent evaluators reported that "[Plaintiff] currently demonstrates the ability to perform work within the Medium category or less, full-time, limited walking, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping to an occasional basis."   [R. 156.]   The independent evaluators concluded that Plaintiff could perform work at the medium level of capacity for eight hours per day.   [R. 153.]   The evaluators also recommended that Plaintiff be cleared by his cardiologist before returning to work.   [R. 156.]

Among other findings, the independent evaluators reported as follows regarding Plaintiff's specific abilities:

- [Plaintiff] is presently lifting in the Medium category of work.... [R. 155.]

- [Plaintiff] demonstrated tolerance of sitting on a constant basis, standing, repetitive bending, repetitive reaching, repetitive squatting, sustained squatting, kneeling, pivot twisting, pushing/pulling, assemble, fine motor, and simple grasping on a frequent basis; and walking stair climbing, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping on an occasional basis" [R. 155-6.]

7

- "Blood pressure and heart rate responses throughout evaluation were within normal limits. " [R. 158.]

- "Bilateral lower extremity strength is 5/5 throughout." [R. 158.]

- "Patient ambulates independently without devices." [R. 158.]

The independent evaluators further reported that Plaintiff demonstrated "possible dysfunctional coping with regard to his current physical condition." [R. 159.]

On or about November 25, 1998, William J. Harney, CRC, LRC, performed a TSA. [R. 136.] Mr. Harney surveyed several broad categories of work for which Plaintiff's skills would be transferable and for which Plaintiff had the physical capacity to work pursuant to the FCE. [R.138-39.] In making his assessment, Mr. Harney noted that Plaintiff was an ASE certified mechanic and that he had been employed as an air traffic controller while in the military. [R. 136.]

The TSA showed the following:

> Although [Plaintiff] presents with some physical limitations <u>he still possesses a number of excellent skills and knowledge that would still be highly marketable. His higher level of technical knowledge in the automotive field would be an asset today</u> even though he cannot do much of the very heavy physical labor required in his previous occupation. <u>He retains much of the ability to work at exact tolerances and performance levels and computing with precise instruments and specifications and working to standards. . . . The analysis shows a number of occupations he does qualify for based on his residual skills.</u> In the auto industry he could easily transition to Service-Repair Estimator, Service Manager, Dispatcher, or Auto Tester. Auto Damage Appraiser may be another option for [Plaintiff].

> The required ability to deal with people as a mechanic would not be affected by his limitations an [sic] would be an asset in customer service roles as mentioned above. His past military experience in the Air Traffic Control position is also useful. His familiarity with the air transportation industry, albeit at the military level, would still be of some value for the less physical occupations within that field.

> <u>Overall, this individual does have residual skills that are transferable to a number of occupations and, therefore, does not appear to be disabled from all occupations.</u>

[R. 136-37 (emphasis added).]

8

On or about December 9, 1998, Sun Life informed Plaintiff of its decision to deny his claim for benefits beyond the 60-month regular occupation period. [R. 142.]

By letter January 27, 1999, Plaintiff's attorney objected to the denial of Plaintiff's benefits and submitted additional medical records of Dr. Perkins dated January 7, 1999. [R. 77, 108, 113.] In these records, Dr. Perkins reported that "I disagree with that [the FCE that Plaintiff could perform medium work for eight hours per day]. I feel the patient has a very limited capacity with very limited endurance to enable him to carry out a full job of 8 hours a day. . . At best he would only qualify . . . for short term, less than four hours a day in minimum capacity." [R. 77, 117.]

On April 19, 1999, Sun Life received medical records of Dr. Schwerin, Plaintiff's cardiologist. [R. 100.] Dr. Schwerin reported that he had administered a stress test to Plaintiff in May 1998, which showed Plaintiff experienced some "mild" exercise-induced ischemia. [R. 100.] Dr. Schwerin also reported that he agreed with the Cardiovascular Assessment of the FCE, that Plaintiff was "asymptomatic," and that any cardiovascular disease of Plaintiff "probably contributed minimally to his disability." [R. 100 (emphasis added).]

On June 10, 1999, Sun Life referred Plaintiff's claim for a second Medical Review. [R. 98.] After reviewing Plaintiff's claim file, Dr. Valerie Kaufmann, a cardiologist, reported, in pertinent part, as follows:

> FCE suggests some R & L [restrictions and limitations], but considerable residual functionality. (2) Appears to have some CAD [coronary artery disease], although not very limiting. Should not perform heavy physical or sustained physical exertion, but appears capable of sedentary or light duty work per Dr. Schwerin's letter. [R. 99.]

In response to Dr. Kaufman's evaluation, Sun Life's Rehabilitation Consultant stated that "[I]f we step down his restrictions to light vs. medium the TSA still shows a number of occupations that he is able & qualified to perform." [R. 81.]

9

By letter dated July 1, 1999, Sun Life advised Plaintiff's attorney of its decision to deny

Plaintiff's claim for benefits beyond the 60-month regular occupation period [R. 63]:

> A Functional Capacity Evaluation (FCE) was performed on November 19, 1998 and
> Transferable Skills Analysis (TSA) was done which shows that [Plaintiff] can work
> specifically at jobs which include, but are not limited to Service-Repair Estimator,
> Service Manager, Dispatcher or Auto Tester. Auto Damage Appraiser maybe [sic]
> another option for [Plaintiff]. Since [Plaintiff] is not totally disabled from performing
> any gainful occupation, we will be unable to provide benefits beyond November 21,
> 1998.
>
> *    *    *
>
> We also wrote to [Plaintiff's] cardiologist, Dr. Schwerin, as it was suggested we receive
> medical clearance from his cardiologist before his return to work. . . . [Dr. Schwerin]
> stated "I am able to agree with the 'cardiovascular assessment' contained within the
> Functional Capacity Evaluation. A stress test was performed 5/11/98 for 5 minutes of
> the Bruce Protocol without chest pain or ST shift. (MAX HR 144 and max BP
> 170/80.) Nuclear images suggested a small area of inferior ischemia at this level of
> exercise. [Plaintiff] has remained asymptomatic and wishes to continue his strict dietary
> and nutritional therapy before considering an invasive procedure. In summary, while
> there is evidence of a mild degree of exercise-induced ischemia at last year's evaluation,
> CAD probably contributed minimally to his disability.
>
> We had [Plaintiff's] file reviewed by our in-house consultant, Dr. Valerie Kaufman. Dr.
> Kaufman's review acknowledged some restrictions and limitations, but noted that the
> FCE verified considerable residual functionality. Dr. Kaufman also notes that [Plaintiff]
> appears to have some CAD although not very limiting. [Plaintiff] should not perform
> heavy physical or sustained physical exertion, but appears capable of sedentary or light
> duty work per Dr. Schwerin's letter.
>
> The FCE suggests [Plaintiff] is capable of performing medium duty work. Our
> Rehabilitation Consultant noted on June 16, 1999 that "If we step down his restrictions
> to light vs. Medium, the TSA still shows a number of occupations that he is able &
> qualified to perform."
>
> In conclusion, based on the information stated above, we must deny further benefits as
> [Plaintiff] is no longer eligible to receive them. [R. 63-5 (emphasis added). ]

By letter dated August 27, 1999, Plaintiff's attorney appealed Sun Life's decision denying

Plaintiff's claim for benefits beyond the 60-month regular occupation period. [R. 66.]

On September 1, 1999, Sun Life received additional medical records of Dr. Perkins dated June 3, 1999. [R. 78] In these records, Dr. Perkins reported that Plaintiff had "very limited capacity, very limited endurance and not able to carry out his full job. He is only able to work approximately four hours per day at minimum capacity." [R. 78.] Dr. Perkins also reported that Plaintiff could "ambulate with a functional gait" and recommended continuation of a home exercise program. [R. 78.] The notes did not state that Plaintiff was totally disabled from performing any occupation. [R. 78.]

By letter dated October 21, 1999, Sun Life advised Plaintiff that it required additional time for a "full and fair review" of Plaintiff's appeal and stated that it intended to conduct another Functional Capacities Evaluation of Plaintiff. [R. 43.]

By letter dated October 28, 1999, Med-Set, an independent medical examination scheduling company, notified Plaintiff's attorney that an FCE was scheduled for Plaintiff on November 18, 1999, at the offices of Suncoast Rehabilitation ("Suncoast"), an independent examiner. [R. 36.] The notice advised Plaintiff that if he could not make the appointment, he was to notify Med-Set and that if Plaintiff did not cancel within Suncoast's time limit of 48 hours, he could be liable for a no-show fee of $550. [R. 36.]

Plaintiff failed to appear at Suncoast for the second independent FCE without explanation or advance notice. [R. 32.] After learning of Plaintiff's non-appearance, Sun Life called Plaintiff's attorney seeking information about the matter and left a message. [R. 32.] Neither Plaintiff nor his attorney responded to Sun Life's message. [R. 22, 32.] Sun Life paid the $550 no-show fee. [R. 22-24.]

By letter dated November 19, 1999, Sun Life notified Plaintiff's attorney of its decision affirming its denial of Plaintiff's claim for benefits beyond the 60-month regular occupation period:

11

In order to be eligible for benefits, an insured must be considered Totally Disabled as defined by the Policy. During the first 60 months of disability, the Policy defines Total Disability as "the inability of the Insured to perform all of the material duties of his regular occupation." Once 60 months of benefits have been paid, the definition of disability changes. At that time "the Insured must be Totally Disabled from performing the material duties of any gainful occupation for which he may be reasonably fitted by his training, education, or experience." In this case, the change of definition occurred on November 22, 1998.

Under the Policy, Sun Life of Canada also has the right to examine the insured. "We have the right to examine any person for whom a claim for benefits has been made and to do so as often as we may reasonably require." (page 20 of the policy.)

\* \* \*

On October 28, 1999, a letter was sent to your office, from Med-Set, an Independent Medical Examination scheduling company, indicating that an appointment had been set up for [Plaintiff] to attend a Functional Capacities Evaluation on November 18, 1999, from 9:00 a.m. to 1:00 p.m..

\* \* \*

Neither Med-Set or Sun Life of Canada received any calls from you stating that [Plaintiff] was not going to attend this examination.

On November 18, 1999, Sun Life of Canada received a phone call from both Med-Set and Suncoast Rehabilitation indicating that [Plaintiff] did not attend the evaluation.

On November 18, 1999, Sun Life of Canada left a message at your office pertaining to this matter. We have not heard from you as to why [Plaintiff] did not attend this examination.

Our decision to uphold the denial is based on the information already submitted. The medical information along with the CE and TSE on November 19, 1998, indicate that although [Plaintiff] has some restrictions/limitations, he appears capable of performing medium work. Our rehabilitation consultant noted on June 16, 1999 that "if we stepped down [Plaintiff]'s restrictions to light vs. Medium, the TSA still shows a number of jobs that he is able and qualified to perform."

We scheduled the FCE for November 18, [sic] 1999 to further investigate his skills and to help us make a decision on appeal. Since [Plaintiff] did not attend this examination, there is no other information to support his claim for disability from any occupation. [R.

29, 30.]

12

## III. ARGUMENT

This case is governed by ERISA. [Oral stipulation of Plaintiff's counsel made July 11, 2000, confirmed by letter of July 12, 2000.] As a result, Plaintiff's state law claims are preempted and his exclusive remedy, if any, lies under ERISA. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) (state common law breach of contract, fraud, and bad faith claims preempted by ERISA); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (suit for breach of contract, reinstatement of benefits, and mental anguish preempted by ERISA).

A.    THIS COURT'S REVIEW OF SUN LIFE'S DECISION TO DENY PLAINTIFF'S CLAIM
      FOR DISABILITY BENEFITS IS LIMITED TO A DETERMINATION OF WHETHER
      SUN LIFE'S DECISION WAS ARBITRARY AND CAPRICIOUS OR AN ABUSE OF
      DISCRETION.

In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court held that a plan administrator's decision to deny benefits under an employee welfare benefit plan is to be accorded deference where the plan documents provide the decisionmaking fiduciary with discretionary authority. The issue framed by the Supreme Court in Firestone involved "the appropriate standard of review in [§502(a)(1)(B)] actions challenging denials of benefits based on plan interpretations". Firestone, 489 U.S. at 108. The Court ruled that the "threshold issue" in determining the appropriate standard of review is whether the plan language grants the fiduciary discretion to determine eligibility for benefits or to interpret the terms of the plan. Firestone, 489 U.S. at 115. Where a party has discretionary authority to determine eligibility for benefits under an employee benefit plan or to interpret the terms of the plan, a decision to deny benefits under the plan will not be overturned unless it is an abuse of that discretion. See, e.g., Firestone, 489 U.S. at 115; Paramore v. Delta Airlines, Inc., 129 F.3d 1446, 1451-52 (11th Cir. 1997); Hunt v. Hawthorne Assoc., Inc., 119 F.3d 888, 912 (11th Cir. 1997); Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F. 2d 1137, 1138-39 (11th Cir. 1989).

13

The benefit plan in the present case gives Sun Life express authority to determine entitlement to plan benefits. The Plan provides that Sun Life has overall authority over the policy as well as the authority to make all decisions regarding eligibility for coverage and benefits as well as the responsibility to pay benefits on those claims which are approved. The breadth of Sun Life's authority and discretion under the plan is demonstrated by the fact that the Plan states repeatedly that Plaintiff must provide proof to Sun Life of notice and extent of his disability claims and that the proof must be satisfactory to Sun Life. [R. 486, 487, 488, 492, 494, 495, 509, 510 ("[W]e may require proof in connection with the terms or benefits of this policy), 488, (we must be provided with such evidence as is satisfactory to us . . . .), 488, 510 ("[W]e must receive written notice of claim . . . .), 486, ([W]e must receive written proof of claim . . . ), 487 ("[O]nce we have received written proof of claim . . . ."), 486, 509, ("proof . . . must be satisfactory to us"), 487, 488, 510.][See also Paragraph 4, supra.]

This language is sufficient to provide for deferential arbitrary and capricious standard of review under ERISA. Sorrells v. Sun Life Assurance Co. of Canada, 85 F. Supp.2d 1221, 1227 (S.D. Ala. 2000) (arbitrary and capricious review standard applied where plan insurer had discretion to make benefit determination by requiring "satisfactory" proof of claims). See also Helm v. Sun Life Assurance Co. of Canada, No. C00-629R, at. 4-5 (W.D. Wa. filed Sept. 7, 2000)(copy attached hereto).

These decisions are consistent with the law in other jurisdictions. See, e.g., Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 (10th Cir. 1996) (arbitrary and capricious standard of review is applicable where plan expressly gives discretion for exclusion of coverage for services "which in the judgment of [the decisionmaker] are experimental"); Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 379 (7th Cir. 1994) (policy which stated that plan insurer would pay disability benefits "upon receipt of proof . . . satisfactory to us" required the reviewing court to grant deference to insurer's

14

decision to deny the Plaintiff's claim for benefits); Perez v. Aetna Life Ins., 150 F.3d 550, 555-58 (6th

Cir. 1998) (arbitrary and capricious standard of review is applicable where plan provides that the plan

insurer "has the right to require as part of the proof of claim satisfactory evidence that [the claimant]

has furnished all required proofs").

B.   IN REVIEWING SUN LIFE'S DECISION TO DENY PLAINTIFF'S CLAIM FOR
     BENEFITS, THIS COURT IS LIMITED TO A REVIEW OF THE EVIDENCE THAT WAS
     BEFORE SUN LIFE AT THE TIME OF ITS FINAL DECISION.

ERISA imposes a uniform standard of fiduciary conduct upon fiduciaries of plans which are

regulated by ERISA. ERISA provides that:

[A] fiduciary shall discharge his duties with respect to a plan . . . with the care, skill,
prudence, and diligence under the circumstances then prevailing that a prudent man
acting in a like capacity and familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims . . . .

29 U.S.C. §1104(a)(1)(B) (emphasis added).

Because the statute itself expressly imposes the fiduciary standard with respect to

"circumstances then prevailing" at the time a fiduciary decision is made, the Eleventh Circuit has held

that review of a fiduciary's decision is limited in evidentiary scope to the evidence before the fiduciary

at the time the decision was made. Paramore, 129 F.3d at 1451; Jett, 890 F.2d at 1139

C.   AS A MATTER OF LAW, SUN LIFE'S DECISION TO DENY PLAINTIFF'S CLAIM FOR
     DISABILITY BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS, AND SUN LIFE
     IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

Under the deferential arbitrary and capricious standard of review, a fiduciary's decision must

be upheld if it has a reasonable basis. Paramore, 129 F.3d at 1451 ("where the plan affords the

administrator discretion, the administrator's fact-based determinations will not be disturbed if

reasonable based on the information known to the administrator at the time the decision was

rendered."); Jett, 890 F.2d at 1139 ("the function of the court is to determine whether there was a

15

reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made"). These principles are applicable even if a third party or this Court may have reached a different decision. Griffis v. Delta Family-Care Disability Plan, 723 F.2d 822 , 825 (11th Cir. 1984)(fiduciary's decision "need not be the best possible decision, only one with a rational justification."). Moreover, even if there is conflicting evidence, where there is evidence supporting the fiduciary's decision, it is not arbitrary and capricious. Paramore, 129 F.3d at 1452.

While the Eleventh Circuit considers an insurer's possible conflict of interest in determining the standard of review, Sun Life is entitled to full deference in this instance because Sun Life's decision is based on independent evaluations of Plaintiff's condition. [R. 43, 155-62.] Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 234 (4th Cir. 1997) (where the advice of an independent consultant supports the administrator's decision, it should "greatly mitigate" any alleged conflict of the fiduciary); Donato, 19 F.3d at 380; Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998). Furthermore, Sun Life gave Plaintiff the benefit of the doubt by scheduling a second independent FCE, despite the fact that the prior FCE and TSA confirmed he was not disabled from "any" occupation. [R. 155-62, 136-39.] Nonetheless, Plaintiff obstructed the independent evaluation by altogether failing to appear for the examination. [R. 32.] Given these facts, the applicable standard of review is whether Sun Life's decision was arbitrary or capricious. Under this deferential standard, Sun Life is entitled to summary judgment, because the denial was reasonable given the evidence before Sun Life at the time of its decision and must be affirmed.

Sun Life's decision to deny Plaintiff's claim for benefits beyond the 60-month regular occupation period, was reasonable because there is substantial record evidence that Plaintiff was able to perform other work and was therefore not disabled from "any occupation." Sun Life's decision is supported by an independent Functional Capacity Assessment [R. 153-62], a Transferable Skills

16

Analysis [R. 136-9], the Social Security Administration's denial of Plaintiff's claim for disability [R. 389, 379.] the opinion of Sun Life's medical consultant [R. 99], and the evaluations of Plaintiff's <u>own</u> treating doctors.   [R. 100, 252, 310, 329, 385, 460.]

When the "regular occupation" period for Plaintiff's receipt of benefits expired in November, 1998, Sun Life had paid Plaintiff benefits for five years. During this entire time, Plaintiff never received a rating of disability lower than Class 4 and none of his own doctors had reported that he was totally disabled from any occupation. [R. 100, 252, 310, 329, 373, 385, 460.] During the same period, Plaintiff refused all opportunities for vocational rehabilitation or retraining. [R. 385, 404, 414, 466, 467.]    Based on this record, Sun Life appropriately and reasonably scheduled an independent evaluation of Plaintiff's physical capacity and skills to assess Plaintiff's work capabilities for other occupations. [R. 164, 171.]

The independent FCE and the TSA performed upon the expiration of the initial 60-month benefit period unequivocally showed that Plaintiff was <u>not</u> disabled from any occupation.[R. 136-38, 153, 156.] The independent FCE examiners stated that "[Plaintiff] is presently lifting in the Medium category of work" [R. 155.] and that he could sit for significant periods of time, that he could repeatedly and/or in a sustained fashion bend, reach, squat, kneel, twist, push and pull, that he could assemble objects, that he retained significant fine motor and grasping skills, and that he could climb a ladder, walk, and climb stairs, among other abilities [R. 156.] These examiners stated that Plaintiff could perform work at the medium level of capacity for eight hours per day. [R. 153.] Based on Plaintiff's multiple capacities and expert knowledge of auto mechanics and air traffic control, the TSA evaluator reported that Plaintiff "still possesses a number of excellent skills and knowledge that would still be highly marketable. His higher level of technical knowledge in the automotive field would be an

17

asset today" [R. 137] and that there were "a number of occupations he does quality for based on his residual skills." [R. 137.]

Sun Life's medical consultant, Dr. Kaufman, agreed with this evaluation and concluded that Plaintiff was not disabled from any occupation stating that Plaintiff had "considerable residual functionality" and was capable of sedentary or light duty work. [R. 99.] Plaintiff's own cardiologist, Dr. Schwerin, also reported that he "agreed with the FCE" and stated that he believed Plaintiff's alleged heart condition only contributed "minimally" to his alleged disability. [R. 100.]

Sun Life's decision to deny Plaintiff further benefits was fully consistent with the SSA's determination that Plaintiff was not entitled to benefits because he was not disabled from all work. The SSA informed Plaintiff that "the medical record shows that you are able to communicate, act in your own interests, adjust to ordinary emotional stresses, get along with others and do your usual daily activities without assistance. The medical record shows that you are capable of performing other work which does not require heavy lifting and might only require very short, on-the-job training." [R. 379.]

Finally, Plaintiff's own treating doctors have never classified him as totally disabled from any occupation. Both during the 60-month regular occupation period and thereafter, Plaintiff's own physicians judged that he was not disabled from any other occupation by repeatedly rating his disability as Class 4, a rating that encompasses light duty or sedentary work. [R. 252, 310, 329, 373, 385, 460.] While Plaintiff submitted the August 7, 1998 Attending Physician's Statement of Dr. Perkins to support his claim, this statement supports Sun Life's decision, because Dr Perkins again rated Plaintiff's disability as "Class 4." [R. 193.] Moreover, in response to questions on the form concerning whether Plaintiff's prognosis would improve and whether he could return to work within limitations, Dr. Perkins, equivocated, by repeatedly answering "maybe." [ R. 193.]

18

The only other medical information Plaintiff has provided Sun Life to support his claim are additional office notes from Dr. Perkins dated January 7, 1999 and June 3, 1999. [R. 77, 78.]. These records, however, were made only after Plaintiff was denied "any occupation" benefits and directly contradict Dr. Perkin's earlier records and statements. Nonetheless, in his January 7, 1999 and June 3, 1999 notes, Dr. Perkins did not affirmatively state that Plaintiff was totally disabled from any occupation. [R 77, 78.]

The foregoing record evidence shows that Plaintiff is not prevented from performing sedentary or medium level work. He simply refuses to do so and has failed to cooperate with any offers of vocational rehabilitation or training. Plaintiff's non-cooperation culminated in his failure to appear for a second independent FCE. Sun Life scheduled this second independent evaluation to give Plaintiff another opportunity to qualify for continued benefits, despite the fact that the earlier FCE and TSA confirmed he was not disabled from "any occupation." Plaintiff's refusal to attend the second FCE prevented Sun Life from obtaining additional independent information about his work abilities and violated an express provision of the Plan. [R. 488, 510.] Plaintiff's breach of the terms of the Plan, alone, justifies Sun Life's denial of Plaintiff's claim and the decision was therefore reasonable.[2]

Because there is evidence supporting Sun Life's decision, Plaintiff cannot satisfy his ultimate burden of proving that Sun Life's determination was unreasonable. Accordingly, Sun Life's decision to deny benefits was not arbitrary and capricious as a matter of law and Sun Life is entitled to summary judgment.

---

[2]

Even under *de novo* review, Sun Life's decision must be upheld because an insured's refusal to submit to medical examinations constitutes a material breach which bars the insured's recovery under the policy. Ferrari v. Government Employees Ins. Co., 613 So.2d 101 (Fla. Dist. Ct. App.)(summary judgment for insurer affirmed where insured failed to attend independent medical examination requested by insurer) , review denied, 620 So.2d 760 (Fla. 1993).

## IV. CONCLUSION

For the reasons set forth herein, Defendants are entitled to summary judgment.

Respectfully submitted,

Mark D. Greenberg
Fla. Bar. No. 283959
Greenberg & Lagomasino, P.A.
799 Brickell Plaza, Suite 700
Miami, FL 33131
Phone: (305) 379-6600
Fax: (305) 379-6612


Mark E. Schmidtke
Indiana Bar No. 1733-45
Hoeppner Wagner & Evans LLP
103 E. Lincolnway
P.O. Box 2357
Valparaiso, IN 46384-2357
Phone: (219) 465-7368
Fax: (219) 464-1401

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on October 20, 2000 a true and complete copy of the foregoing "Memorandum in Support of Defendants' Motion for Summary Judgment" was served on the below-named counsel of record by placing the same in a postage-paid envelopes addressed as follows:

John P. Murray
The Wagar Law Firm
3250 Mary St., Suite 207
Coconut Grove, FL 33133

**GREENBERG & LAGOMASINO, P.A.**

By:_____ # 75008
Mark D. Greenberg
Florida Bar No.: 283959



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREA HELM,

           Plaintiff,

       v.

SUN LIFE ASSURANCE COMPANY
OF CANADA,

           Defendant.

NO. CC0-629H

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

    THIS MATTER comes before the court on defendant Sun Life
Assurance Company's motion for summary judgment.  Having reviewed
the papers filed in support of and opposition to this motion, the
court finds and rules as follows:

## I. BACKGROUND

    Plaintiff Andrea Helm worked as a document specialist for
Dexter and Cheney ("Dexter") from August 1995 to February 1997.

ORDER
Page - 1 -

In January 1996 Helm was involved in a car accident.  She sought
medical treatment and was diagnosed with a cervical strain.  With-
in several weeks of the accident, she resumed her regular work
schedule at Dexter until April of that year, when she sought and
was granted a reduction in her work week from forty hours to
thirty based on injuries sustained in the accident.  In the subse-
quent months, Helm's work attendance that was less than regular,
and in February 1997 Dexter terminated her for that reason.

In July 1996, Helm applied for partial long-term disability
benefits under her employer-sponsored disability plan, provided by
defendant Sun Life Assurance Company.  She submitted that the
accident and its attendant injuries necessitated a reduced work
load, resulting in a salary reduction.  In March 1997, after
losing her job with Dexter, Helm filed a second application for
benefits, this time for total long-term disability.  Helm claimed
that her entitlement to these benefits arose from injuries trace-
able to the January 1996 accident and the resultant diagnoses of
fibromyalgia and chronic fatigue syndrome, rendering her com-
pletely unable to work.

Sun Life denied both her applications, claiming that to be
eligible for such benefits she has to offer proof establishing
partial or total disability in accordance with definitions pro-
vided in the plan.  Helm, Sun Life determined, had not done so,
and therefore was not eligible for benefits.  Several appeals, and

ORDER
Page - 2 -

subsequent denials of them, ensued. In this action brought under ERISA, Helm seeks judicial review of Sun Life's determinations.

## II.  DISCUSSION

Sun Life has filed a motion for summary judgment, claiming that since the plan gives discretion to determine eligibility to the administrator, this court must use an abuse of discretion standard of review of that decision. Sun Life further argues that as a matter of law the administrator did not abuse its discretion, and that it is therefore entitled to summary judgment dismissing Helm's claims.

## A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)  The moving party is entitled to judgment as a matter of law when the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex, 477 U.S. at 323.

/ / /

/ / /

ORDER
Page - 3 -

### B. Standard of Review of Administrator's Denial of Benefits

#### 1. Abuse of Discretion Standard of Review

A court should review a denial of benefits challenged under ERISA de novo, "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In such a case, the court will use an "abuse of discretion" standard instead. Atwood v. Newmont Gold Co., 45 F.3d 1317, 1321 (9th Cir. 1995) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). The parties do not dispute this point. They disagree, however, whether Helm's Sun Life policy gives the administrator discretion to evaluate benefit eligibility.

The policy in question provides that proof in a claim for benefits "must be satisfactory to us. . . . We may require proof in connection with the terms or benefits of this Policy. If proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances." Prior. Decl., Ex. A at 324-25. Defendant argues that, based on this language, the policy gives discretionary authority to the plan administrator.

The defendant is correct that the language requiring that proof be "satisfactory to us" is a grant of discretion to the plan administrator. Plaintiff argues the granting of discretion must be "specific[] and unambiguous[]," but this is not the language

ORDER
Page - 4 -

the Supreme Co. used in *Firestone* as plaint. 's brief suggests. Pl.'s Mem. Opp. Summ. J. at 8, (citing *Firestone*, 489 U.S. at 115). Plaintiff further claims that the phrase "as we may reasonably require" found in the policy "introduces an objective standard . . . thus limiting the discretionary authority of the plan administrator." Pl.'s Mem. Opp. Summ. J. at 8. This argument is without merit. The phrase dictates that the administrator's *requiring of evidence* must be objectively reasonable, not that the administrator's *satisfaction* with claimant's proof must be. Nor does *Firestone*, or any other precedent offered by plaintiff, require that the administrator's discretion be *unlimited* for an abuse of discretion review to be appropriate.

This finding is consistent with other opinions holding that the "satisfactory to us" language confers discretion on the plan administrator. As the court noted in *Sorreils v. Sun Life*,

> Three district courts, interpreting other Sun Life policies containing very similar (if not identical) "proof must be satisfactory to us" language, have held (albeit with little discussion) that the Plans granted Sun Life discretion to review claims. *See Harrison v. Sun Life Assurance Co. of Canada*, 1999 U.S. Dist. LEXIS 11214 at *4 (N.D. Ill. 1999) ("In this case, the policy broadly states that a claimant's proof of disability must be satisfactory to Sun Life, and we thus apply the (arbitrary and capricious) standard...."); *Marchetti v. Sun Life Assurance Co. of Canada*, 30 F. Supp. 2d 1001, 1007 (M.D. Tenn. 1998); *Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997) ("Where proof of eligibility for benefits must be 'satisfactory' to the company, courts have characterized the company's authority as discretionary within the meaning of (*Firestone Tire & Rubber*).").

ORDER
Page - 5 -

Sorrells v. Sun Life Assurance Co. of Can., 85 F. Supp. 2d 1221,
1229 (S.D. Ala. 2000)(citations omitted). See also Dames v. Paul
Revere Life Ins. Co., 49 F. Supp. 2d 1194, 1202 (D. Or. 1999)
(finding that the language requiring proof be "acceptable to us"
gives administrator discretionary authority to evaluate benefit
claims). Although the Ninth Circuit has held that the term "sat-
isfactory" in a plan policy is ambiguous and therefore does not
necessarily confer discretion on a plan administrator, see Kearney
v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999), the
added "to us" language removes the ambiguity that bothered the
Kearney court. Dames, 49 F. Supp. 2d at 1201-02. Kearney is
therefore not controlling here.

Finally, plaintiff claims that the "us" referenced in the
policy language is ambiguous. The court rejects this claim. "Us"
clearly refers to the plan providers. Since the plan confers
discretionary authority on the plan administrator to review a
denial of benefits, therefore, the court will employ an abuse of
discretion standard in reviewing the plan's decision.

2. Heightened Abuse of Discretion Review

A district court should employ a heightened abuse of discre-
tion review in the event there is reason to believe a conflict of
interest affected a plan administrator's determination. Atwood,
45 F.3d at 1322. Defendant concedes that "[s]uch a conflict could
arise where, as here, plan fiduciaries such as the Sun Life claims

ORDER
Page - 6 -

administrators are also employees of the company underwriting . e plan." Def.'s Mem. Supp. Summ. J. at 16. The Ninth Circuit has held, however, that the proper review is still "under the traditional abuse of discretion standard unless it appears that the conflict may have influenced the decision." Atwood, 45 F.3d at 1322. To meet this burden, the beneficiary must

> came forward with 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.' If the beneficiary cannot satisfy this burden, the district court should apply the traditional abuse of discretion review.

Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999) (citing Atwood, 45 F.3d at 1323). In this case, plaintiff has not met her burden. She offers as evidence of a breach only that defendant and the medical examiners retained to examine the plaintiff share letterhead stationery. Pl.'s Mem. Opp. Summ. J. at 7. Plaintiff does not explain how the possible affiliation between the plan and its medical examiners might have caused a breach of duty. Helm's allegations suggest a conflict of interest, but under the language quoted above from Bendixen and Atwood she must allege a causal connection between the alleged conflict and the breach. Bendixen, 185 F.3d at 943.

Moreover, a affiliation between the insurance provider and the medical examiners, even if proven, does not establish a "serious" conflict of interest militating for a heightened abuse of

ORDER
Page - 7 -

discretion review.  See id. at 943-44 (holding  t  t the conflict
of interest arising from t  fact that a policy is both issued and
administered by the same entity is not "serious" enough to require
a heightened abuse of discretion review.)

In her memorandum in opposition to summary judgment, Helm
moves "for a continuance of defendant's motion for summary judg-
ment" in order to conduct more discovery as to whether the admin-
istrator breached its duty to her as a plan beneficiary.  Pl.'s
Mem. Opp. Summ. J. at 6.  Helm's pleadings do not indicate to the
court that further discovery would reveal any facts that would
establish a conflict of such seriousness as to cause a breach of
duty, nor has she explained why her discovery efforts until now
have failed to do so.  She does not present the court with a
theory she hopes further discovery will substantiate, or with
material facts she hopes to uncover.  Her motion for continuance
of consideration of defendant's summary judgment motion is there-
fore denied.  The court will review the denial of plaintiff's
claims using a regular, and not a heightened, abuse of discretion
standard.

### 3. Defendant's Motion to Strike Helm Declaration

Defendant has moved to strike the Helm Declaration and the
exhibits attached thereto.  Because abuse of discretion is the
correct standard of review, the court should only consider facts
that were a part of the administrative record at the time of the
ORDER
Page - 8 -

administrator's decision. "[T]he abuse of discretion standard

permits the district court to 'review only the evidence presented

to the [plan] trustees.'" _Taft v. Equitable Life Assurance Soc'y_,

9 F.3d 1469, 1471 (9th Cir. 1993)(citing _Jones v. Laborers Health_

_& Welfare Trust Fund_, 906 F.2d 480, 482 (9th Cir. 1990)).  The

Helm Declaration was submitted to the court in support of her

cross-motion for summary judgment and contains allegations and

exhibits that were not a part of the administrative record.  More-

over, plaintiff has not opposed this motion.  Defendant's motion

to strike the declaration and the exhibits attached thereto is

therefore granted.

C. **Whether Administrator Abused Its Discretion**

The Ninth Circuit has held that a court will find an abuse of

discretion if plan administrators "render decisions without any

explanation, . . . construe provisions of the plan in a way that

conflicts with the plain language of the plan . . . [or] rely] on

clearly erroneous findings of fact in making benefit determina-

tions." _Bendixen_, 185 F.3d at 944, (citing _Eley v. Boeing Co._,

945 F.2d 276, 279 (9th Cir. 1991), _Taft v. Equitable Life Assur._

_Soc'y_, 9 F.3d 1469, 1473 (9th Cir. 1991).

1. **Sun Life's Explanations**

Sun Life provided a written explanation every time it denied

a benefit claim or appeal.  Prior Decl., Ex. A at 342-43, 454-56,

571-72, 624-25.  Plaintiff does not claim to the contrary.

ORDER
1 - 9 -

## 2. Plain Language of the Plan

The language in question provides that a beneficiary claiming partial long-term disability benefits must provide evidence showing that the employee "is in a continuous state of incapacity due to Illness which continues throughout the Elimination Period and thereafter prevents him from performing all of the material duties of his Regular Occupation on a full-time basis." Id. at 313. Similar language governs whether an employee will be eligible for total disability benefits.

Defendant offers medical opinion stating that Helm "was not in a 'continued state of incapacity' during the period of April 15, 1996 through February 14, 1997 that would have prevented her from performing the material duties of her occupation on a full-time basis." Id. at 459-60. Plaintiff does not counter this statement, and instead simply reiterates Helm's fibromyalgia diagnosis, and notes that courts have found that fibromyalgia "can and often does lead to disability such as to prevent a person from resuming his or her regular occupation." Pl.'s Mem. Opp. Summ. J at 9. This assertion is not enough to rebut defendant's contention that the plan administrator acted in accordance with the plain language of the policy. Moreover, the plan provides that the employee must be unable to perform all material duties of her job. Helm has not offered any admissible evidence that this is the case. The brief opposing defendant's summary judgment motion

ORDER
Page - 10 --

claim that "[t]hrough... her medical records health care providers
have noted that Ms. Helm suffered from fibromyalgia and like
symptoms and that it rendered her unable to perform 'all of the
material duties of [her] regular occupation.'" Id. The brief does
not cite which health care providers have so noted, or when, or
under what circumstances, and instead cites the plan policy for
this assertion. At most, Helm has put forward evidence that her
medical care providers at various times recommended a reduced work
load. Id. at 3, 4.

### 3. Based on Clearly Erroneous Findings of Fact

Finally, plaintiff has not sufficiently alleged that the
administrator based its decision on clearly erroneous findings of
fact. Although the medical opinions in the record differ as to
the kind and severity of Helm's condition, plaintiff does not
claim any of the opinions on which the administrator based its
decision were actually wrong. Accordingly, the administrator was
working within its discretion in evaluating competing medical
opinions. Plaintiff again alleges that the doctors evaluating her
condition were operating under a conflict of interest; her plead-
ings, however, do not amount to more than mere conclusions, and
she does not allege that the claimed conflicts of interest caused
erroneous diagnoses.

/ / /

/ / /

ORDER
Page - 12 -

III.  CONCLUSION

For the foregoing reasons, the plaintiff's motion for a continuance of consideration of defendant's summary judgment motion is DENIED; defendant's motion for summary judgment is GRANTED; defendant's motion to strike the Helm declaration is GRANTED; and plaintiff's summary judgment cross-motion is DENIED.

DATED at Seattle, Washington this 5th day of September, 2000.

Barbara Rothstein

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

ORDER
Page - 12 -

AO 72
(Rev. 8/82)