UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6197-CIV-ZLOCH
Magistrate Judge Seltzer

BRUCE ROXBY,

Plaintiff,

vs.

SUN LIFE OF CANADA, SUN LIFE OF CANADA REINSURANCE COMPANY, SUN LIFE ASSURANCE COMPANY OF CANADA and SUN LIFE OF CANADA (U.S.) DISTRIBUTORS, INC.,

Defendant.
_______________________________/

**NOTICE OF FILING AFFIDAVIT OF LEEANN PRIOR IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FILED BY ___ D.C.
00 OCT 20 PM 2:06
CLARENCE MADDOX
CLERK U.S. DIST. CT.

The Defendant, SUN LIFE ASSURANCE COMPANY OF CANADA, through its counsel, files the attached Affidavit of LeeAnn Prior in Support of Defendant's Motion for Summary Judgment

I HEREBY CERTIFY that a true and correct copy of the foregoing and attached Affidavit were mailed on October 20, 2000 to John P. Murray, Esq., The Wagar Law Firm, Attorneys for Plaintiff, 3250 Mary St., Suite 207, Miami FL 33133.

Bar# 750018

for MARK D. GREENBERG, ESQ.
Fla. Bar No: 283959
Greenberg & Lagomasino, P.A.
799 Brickell Plaza, Suite 700
Miami FL 33131
Phone: (305) 379-6600
Fax: (305) 379-6612
Attorneys for Defendant

C:\ddrive\3431\Pleadings\Notice of Aff In Supp of MSJ.wpd

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BRUCE ROXBY,

Plaintiff,

VERSUS

CASE NO. 00-6197-CIV-ZLOCH

SUN LIFE OF CANADA, SUN LIFE OF CANADA REINSURANCE COMPANY, SUN LIFE ASSURANCE COMPANY and SUN LIFE OF CANADA (U.S. ) DISTRIBUTORS, INC.,

Magistrate Judge Seltzer

Defendants.

**AFFIDAVIT OF LEEANN PRIOR**

LeeAnn Prior, being duly sworn upon her oath, states as follows on personal knowledge:

1. I am a Claim Consultant for Sun Life Assurance Company of Canada ("Sun Life").

2. Plan benefits were funded, at least in part, by a group policy of long term disability insurance issued by Sun Life. Attached hereto as Exhibit "A" and Bates-stamped pages 469-499 is a true, correct and complete copy of the disability insurance policy issued to the Employer, Group No. 96878 and applicable to Plaintiff Bruce Roxby's claim for benefits. A true, correct and complete copy of the applicable plan booklet is also attached hereto as part of Exhibit "A", Bates-stamped pages 500-513.

3. By virtue of his employment, Plaintiff was a participant in said employee benefit plan under the terms of the Plan.

4. Attached hereto as Exhibit "B" and Bates-stamped pages 1-16, 21-184, 188-468 is a true, correct and complete copy of the evidence and information that was before Sun Life at the time of its final decision to deny Plaintiff's claim for benefits (excluding documents protected by the

attorney-client privilege and/or work product doctrine, pages 17-20 and 185-187). The records included in Exhibit "B" were prepared, accumulated and maintained in the regular course of Sun Life's business. Documents generated by Sun Life were generated by persons with first hand knowledge of the information recorded therein and it was the regular practice of Sun Life to generate said documents. Such records were generated at or near the time of the events recorded therein.

5. It is my responsibility to maintain custody of the records identified herein and attached as Exhibits "A" and "B".

FURTHER AFFIANT SAITH NAUGHT.

LeeAnn Prior

STATE OF MASSACHUSETTS )
) SS:
COUNTY OF NORFOLK )

Before me, a Notary Public for the State of Massachusetts, personally appeared LeeAnn Prior and she, being first duly sworn by me upon her oath, says that the facts above-stated are true to the best of her knowledge and belief, this 9th day of October, 2000.

My commission expires:

Audrey G. Evans Notary Public

County of Residence: Suffolk



One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (617) 237-6030

POLICY AMENDMENT

POLICY NUMBER: 96878

POLICYHOLDER: J.M. Family Enterprises, Inc.

AMENDMENT EFFECTIVE DATE: May 1, 1992

This policy is reissued from the Amendment Effective Date to reflect the changes indicated below.

| Amendment Effective Date | Description of Change |
|---|---|
| May 1, 1992 | grace period |

Except as stated in this Amendment, nothing contained herein shall be held to alter or affect any of the policy provisions, including any prior amended policies, amendments, modifications, endorsements, or riders thereto.

SUN LIFE ASSURANCE COMPANY OF CANADA

President

EXHIBIT A

Amendment No. 1
Amendment Date May 1, 1992

Policy Specifications

| | | |
|---|---|---|
| Policy Number | - | 96878 |
| Policyholder | - | J.M. FAMILY ENTERPRISES, INC. |
| Effective Date | - | January 1, 1992 |
| Policy Anniversaries | - | January 1, 1993 and the same day of each subsequent year. |
| Premium Due Dates | - | The Effective Date and thereafter the 1st day of each month. |
| Currency | - | United States Dollars. |

| | Monthly Premium Rates | |
|---|---|---|
| | Employees | Dependents |
| Insurance Benefits* | (for each Employee) | (for the insured Dependents of each Employee) |
| Long Term Disability | To Be Advised | ** |

* for benefit details refer to appropriate Benefit Provision
** means that the benefit is not in force

Amendment No. 1
Amendment Date May 1, 1992

INDEX

| | PAGE |
|---|---|
| Action Against Us | 19 |
| Benefit Provisions | |
| Long Term Disability | 21 |
| Clerical or Mechanical Errors | 16 |
| Commencement of Insurance | 11 |
| Definitions | 4 |
| Entire Contract | 16 |
| Examinations | 20 |
| Experience Rating Refund | 15 |
| Facility of Payment | 18 |
| Gender | 20 |
| Governing Law | 20 |
| Grace Period | 15 |
| Incontestability | 17 |
| Individual Certificates | 18 |
| Individual Termination of Insurance | 12 |
| Insurance Data | 16 |
| Minimum Benefit Provision Requirements | 13 |
| Misstatement of Age | 16 |
| Notice of Claim | 18 |
| Payment of Benefits | 18 |
| Premium Adjustments | 14 |
| Premium Calculation | 14 |
| Premium Payments | 15 |
| Proof | 20 |
| Proof of Age | 16 |
| Proof of Claim | 19 |
| Termination of Benefits Provision(s) | 13 |
| Termination of Policy | 13 |
| Time of Payment | 18 |
| Workers' Compensation | 18 |

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

| | |
|---|---|
| Employer | The Policyholder or its subsidiaries Carnnett, Inc., Fidelity Warranty Services, Inc., Jim Moran & Associates, Inc., JMIC Life Insurance Corporation, J.M. Lexus, Joyserv Company, LTD, Petro Chemical Products, Southeast Industrial Equipment, Southeast Toyota Distributors, Inc., Toyota Distribution Center of Commerce, World Cars, Inc., World Omni Financial Corporation, WorldOmni Leasing Corporation, Youth Automotive Training Center, Automotive Distribution Group and J.M. Pontiac. |
| Employee | A person classified by the Employer as a permanent full-time employee who is scheduled to work at least 30 hours a week at the Employer's place of business or at some other site where the Employer requires him to be. |
| Employment | Performance of work as an Employee except that classification as an individual employed on a basis excluded above will be applied toward completion of an Employee's waiting period. |
| Waiting Period | The period of time during which an Employee must be in Employment before becoming eligible for the benefits provided by this Policy. The Waiting Period for this Policy is 12 months. |
| Actively at Work | An Employee is actively at work on any day in which he performs all the usual and customary duties of his occupation |

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

Actively at Work (continued)

at the Employer's place of business or at some other site where the Employer requires him to be. In the case of an Employee who is not on a flexible schedule of working hours, the Employee must work for 6 hours or the scheduled number of hours for that day, whichever is longer. In the case of an Employee who is on a flexible schedule, he must work the scheduled number of hours for that day.

An Employee is deemed Actively at Work on a scheduled non-working day if he was Actively at Work on the immediately preceding scheduled working day.

Termination of Employment

Termination occurs on the day a person ceases to qualify as an Employee for any reason.

However, the Policyholder, acting in accordance with rules which preclude individual selection, may deem that Employment continues:

1. for the period of the Employee's scheduled paid vacation, but not exceeding 3 months;

2a. for a period ending not later than 12 weeks, (in any period of 365 days) in which the Employee has been granted a Family or Medical Leave of Absence (per federal guidelines);

2b. unless otherwise provided by law, for a period ending not later

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

Termination of Employment (continued)

than the last day of the calendar month following the month in which the Employee is temporarily laid off or is granted a leave of absence for any reason other than Illness or paid vacation; or

3. for any period the Employee is absent from work due to Illness.

Illness

Bodily injury, sickness, disease, Pregnancy or mental infirmity.

Pregnancy

Childbirth, miscarriage, abortion and conditions which result directly or indirectly from any of these.

Totally Disabled

An Employee is totally disabled if he is in a continuous state of incapacity due to Illness which:

All Employees with annual Basic Earnings of $30,000 or greater

1. while it continues throughout the Elimination Period and during the following 60 months of incapacity, prevents him from performing all of the material duties of his regular occupation;

2. while it continues thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience.

All Other Employees

1. while it continues throughout the Elimination Period and during the following 36 months of incapacity,

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

Totally Disabled (continued)

prevents him from performing all of the material duties of his Regular Occupation; and

2. while it continues thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience.

Partially Disabled

An Employee is Partially Disabled if he is in a continuous state of incapacity due to Illness which continues throughout the Elimination Period and thereafter prevents him from performing all of the material duties of his Regular Occupation on a full-time basis; but

a) he is engaged in Partial Disability Employment; and

b) his current earnings are at least 20% less per month than his Indexed Monthly Basic Earnings due to that same Illness.

Disabled or Disability

The condition of being either Totally Disabled or Partially Disabled.

Regular Occupation

The profession, trade, work or the means of earning a living in which the Employee was primarily engaged immediately prior to commencement of Disability.

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

Partial Disability Employment

Partial Disability Employment is:

1. a program in which an Employee engages in vocational training or period of work for the purpose of rehabilitation; or

2. employment in which an Employee performs at least one of the material duties of his Regular Occupation or another occupation on a part-time or full-time basis.

Partial Disability Employment may begin during the Elimination Period, but a Partial Disability Benefit will not be paid until completion of the Elimination Period.

Doctor

A physician or surgeon licensed to practice medicine or osteopathy or any other licensed practitioner required to be recognized for health insurance purposes under the law of the jurisdiction where treatment is received. In all cases, treatment must be within the scope of the Doctor's license.

Basic Earnings

All Annualized Salary and wages paid or payable to an Employee by the Employer in the calendar year prior to the current year which are considered basic compensation for the J.M. Family Enterprises, Inc. Associates Profit Sharing Plan purposes. This includes any before tax contributions by an Employee to the Employer's plans involving IRS qualified salary reduction. Employer

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

| | |
|---|---|
| Basic Earnings (continued) | contributions to any benefit plan are not included. |
| Insured Earnings | The Employee's monthly Basic Earnings excluding any portion of his Basic Earnings in excess of $35,000. |
| Indexed Monthly Basic Earnings | The Employee's monthly Basic Earnings prior to his Disability adjusted on the first of the month following 12 calendar months of Partial Disability payments and each yearly anniversary thereafter. Each adjustment to the Indexed Monthly Basic Earnings is the lesser of 10% or the current annual percentage increase in the Consumer Price Index as published by the U.S. Department of Labor. |
| Gross Monthly Benefit | The Employee's Monthly Benefit prior to any reduction of Other Income benefits and Partial Disability Employment earnings. |
| Riot | Unlawful assembly, civil commotion, disorderly conduct and all other forms of disturbance of the public peace by three or more persons assembled together. |
| Participation in a Riot | Encouraging, promoting or taking part in a Riot, whether by signs, gestures, words or by distinctive devices which identify the person with the Riot. |

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

| | |
|---|---|
| Plan Administrator | The person or organization designated by the Policyholder to maintain the records of the people insured under the Policy. |
| Office | Our office at One Sun Life Executive Park, Wellesley Hills, Massachusetts 02181. |

ROXBY 0473

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

Commencement of Insurance

Long Term Disability

Applicable to All Employees (except Employees of J.M. Lexus and J.M. Pontiac)

An Employee is insured on the first day that the Employee is Actively at Work after completion of the Waiting Period.

An Employee previously insured under this Policy will not have to complete a new Waiting Period if he rejoins the Employer as an Employee within 6 months after Termination of Employment. The Employee will become insured on the first day that the Employee is Actively at Work.

An Employee who declines for religious or other reasons to be insured by signing a refusal card, is insured on the date his subsequent written request for insurance and evidence of insurability are approved by Sun Life.

Applicable to Employees of J.M. Lexus and J.M. Pontiac

An Employee is insured on the first day that the Employee is Actively at Work:

1. after completion of the Waiting Period, if his written request is received on or before completion of the Waiting Period;

2. after the date his written request is received, if it is received within one month after completion of the Waiting Period;

3. after the date of approval by us of evidence of his insurability, if his written request is received later than one month after completion of

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

Commencement of Insurance (continued)

Long Term Disability (continued)

the Waiting Period.

An Employee previously insured under this Policy will not have to complete a new Waiting Period if he rejoins the Employer as an Employee within 6 months after Termination of Employment, if his written request is received within one month thereafter. The Employee will become insured on the first day that the Employee is Actively at Work.

Commencement of Insurance on Policy Amendment

If an insured Employee is not Actively at Work on the date the Policy is amended to provide increased or additional benefits, the Employee will be insured for the increased or additional benefits only when he is again Actively at Work.

Individual Termination of Insurance

An Employee ceases to be insured on the earliest of:

1. the date of Termination of Employment;

2. the end of the period for which the last premium is paid to us for the Employee's insurance; or

3. the date of termination of the Policy.

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

**Termination of Benefit Provision**

We may terminate:

any Benefit Provision on any Premium Due Date because one or more of the Minimum Benefit Provision Requirements is not met. We will give the Policyholder 31 days' prior written notice.

**Minimum Benefit Provision Requirements**

Requirement No. 1 - At all times at least 25 insured Employees.

Requirement No. 2 - 100% of the Employees who have completed the Waiting Period must be insured.

**Termination of Policy**

This Policy will terminate:

1. at the end of the applicable Grace Period if, at that time, any premium remains unpaid;

2. if the Policyholder gives us a written notice that the Policy is to be terminated. The date of such termination will be the later of:

   (a) the date specified in the notice; and

   (b) the date we receive the notice at our Office, or

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

Termination of Policy (continued)

3. on the date all Benefit Provisions are terminated.

Premium Calculation

The premium due on the Effective Date and on each subsequent Premium Due Date is the sum of the monthly premiums for all insured Employees based on our then current Monthly Premium Rates. The Monthly Premium Rates shown in the Policy Specifications are our current rates on the Effective Date of this Policy.

We may change the Monthly Premium Rates after January 1, 1994. The change in rates can only be made once in a policy year, unless the terms of the Policy change. For other than policy changes, we will give the Policyholder 31 days' prior written notice.

Premium Adjustments

The additional premium for insurance that increases or commences on a date other than a Premium Due Date is payable from the next Premium Due Date.

The premium for insurance that decreases or ceases on a date other than a Premium Due Date is payable until the next Premium Due Date.

However, any change in premium due to a policy change will take effect on the date of change. The proportionate charge or refund will be made on the next Premium Due Date.

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

Premium Payments

Premiums are to be paid at our Office by the Policyholder on or before the Premium Due Dates.

We are not required to receive payment of any premium other than in one sum or from anyone other than the Policyholder. We are not required to see:

1. that any amounts referred to as contributions by Employees are, in fact, contributed by Employees; or

2. that all or any amounts so contributed by Employees are applied to the payment of premiums.

Grace Period

If a premium, after the first premium, is not paid by its Premium Due Date, it may be paid by the Policyholder within 45 days after its Premium Due Date. The Policy continues in force during this grace period. If a premium is not paid by the end of the grace period, this Policy will terminate. In any event, premiums are payable for any period of time during which the Policy remains in force.

Experience Rating Refund

On the second and each subsequent Policy Anniversary an experience rating process is applied to this Policy. We allot to this Policy such amount, if any, as we determine to be available as a refund as a result of that process. We reserve the right to change the basis of that process. Any refund is paid in cash to the Policyholder.

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

Insurance Data

The Employer is to provide us with information about the Employees and their benefits. This information is limited to that required for the calculation of premiums and to ensure that Policy terms are fulfilled. We reserve the right to inspect pertinent records of the Employer.

Clerical or Mechanical Errors

No clerical or mechanical error by the Employer, the Plan Administrator or by us will cause insurance:

1. which should be in force, not to commence;
2. which should continue, to cease;
3. which should not be in force, to commence; or
4. which should cease, to continue.

Misstatement of Age

If the age of a person is misstated, factors affecting his insurance will be based on the true age. Refunds or charges will be made accordingly.

Proof of Age

We have the right to request proof of age for any person insured or entitled to benefits under this Policy. If proof is not provided, benefits will not be paid. Any benefits which later become payable will be based on the true age.

Entire Contract

Your entire contract with us consists of

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

Entire Contract (continued)

the following:

1. this Policy; and

2. the Policyholder's Application, a copy of which is attached; and

3. the applications, if any, relating to persons insured under the Policy.

All statements made in the applications will, in the absence of fraud, be deemed representations and not warranties. No statement of any person may be used to contest the validity of the insurance unless it is written and signed by him, and a copy furnished to him or to his Beneficiary.

Only our President, Actuary, Secretary or one of our Vice Presidents can agree to change the Policy or to waive any of its provisions. No change or waiver will be valid unless endorsed on or attached to the Policy. No agent has authority to change the Policy or to waive any of its provisions.

Incontestability

Except for non-payment of premiums, the Policy will be incontestable after it has been in force for a period of two years from the Effective Date. No statement relating to the insurability of any person may be used in contesting the validity of the person's insurance after it has been in force for a period of two years during his lifetime.

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

| | |
|---|---|
| Individual Certificates | A certificate is issued by us to the Policyholder for delivery to each insured Employee. The certificate describes benefits payable and other essential information. |
| Workers' Compensation | This Policy does not replace or affect any Workers' Compensation or similar law. |
| Payment of Benefits | Survivor Benefits payable upon the death of an Employee are payable as set forth in the Long Term Disability Benefit Provision.<br><br>Benefits payable during the lifetime of the Employee will be paid to the Employee. |
| Facility of Payment | If the Employee is not able to give a valid release for benefit payments then we may make payment up to $5,000. The payment can be made to any person we consider capable of giving a valid release. |
| Time of Payment | Once we have received written Proof of Claim for benefits payable on a periodic basis, such payments will be made at the end of each benefit paying period as described in the Benefit Provision. |
| Notice of Claim | We must receive written notice of claim within certain time limits except for those arising from the death of an insured. The time limits for such |

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

Notice of Claim (continued)

notices are set forth in the respective Benefit Provisions.

The written notice is to be given to us at our Office. If it can be shown to us that the notice could not be given within the applicable period, then the notice must be given as soon as reasonably possible.

When we receive the notice of claim, we will send forms for filing Proof of Claim. If these forms are not sent to the Employee within 15 days after we receive the notice of claim, then written proof of the nature and extent of loss given within the time specified in the Proof of Claim provision is deemed to meet our requirements.

Proof of Claim

We must receive written proof of claim within certain time limits except for those arising from the death of an insured. The time limits for such proofs are set forth in the respective Benefit Provisions.

The proof, which must be satisfactory to us, is to be given to us at our Office. If it can be shown that proof could not be given within the applicable period, we will not deny or reduce benefits payable. However, proof of claim must be given within one year after the date such proof is due unless the Employee is legally incompetent.

Action Against Us

No legal action may be brought on any

Amendment No. 1
Amendment Date May 1, 1992

GENERAL PROVISIONS

(continued)

| | |
|---|---|
| Action Against Us (continued) | claim earlier than 60 days after a Proof of Claim is given. No such action may be brought after the expiration of the applicable statute of limitations from the time written Proof of Claim is required to be given. |
| Examinations | We have the right to examine any person for whom a claim for benefit payment has been made and to do so as often as we may reasonably require. |
| Gender | In the context of this Policy, the use of "he", "his" and "him" refers to both males and females. |
| Proof | We may require proof in connection with the terms or benefits of this Policy. If proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances. |
| Governing Law | This Policy is governed by the laws of the jurisdiction where the Application was signed. |

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

The amount of each Employee's Long Term Disability Benefit is based on the following schedule:

| Classification | Amount of Net Monthly Benefit |
| --- | --- |
| All Employees | The lesser of:<br><br>(1) 60% of monthly Basic Earnings;<br><br>(2) 70% of monthly Basic Earnings, reduced by Other Income; or<br><br>(3) $21,000.<br><br>In no event will the Net Monthly Benefit be less than $50.<br><br>The maximum monthly benefit will be increased each year as follows:<br><br>January 1, 1993 $21,500<br><br>January 1, 1994 $22,000<br><br>The Plan Maximum is determined on the date your Disability occurs and will n be increased during your period of Disability. |

Reduction in Benefits

The Employee's Long Term Disability Benefit will be reduced by the sum of all Other Income which may become available to the Employee from time to time, during the period of Disability.

Other Income includes:

- any amount of disability income provided for the Employee under any employer paid group insurance or group pre-payment plan including any policy issued to the Employee as a result of his membership in an association of any kind.

90-LTD(REV1)

ROXBY 0489

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

- any amount of income, other than salary continuance benefits, provided for the Employee by the Employer for the same or subsequent disability. However, any amount of salary continuance benefits provided for the Employee by the Employer which would cause the aggregate of Other Income and the Net Monthly Benefit to exceed 100% of the Employee's monthly Basic Earnings will cause the Net Monthly Benefit to be reduced by such excess.
- any amount of income provided for the Employee by any other employer for the same or subsequent disability.
- any amount of income provided for the Employee under any employer paid retirement or pension plan; except that this shall not include any income from a profit sharing plan, a thrift plan, an individual retirement account (IRA), an individual retirement annuity, a tax sheltered annuity (TSA), a stock ownership plan or a non-qualified plan of deferred compensation.
- any amount of disability income provided for the Employee under any compulsory benefit act or law.
- any amount of income provided for the Employee and his dependents for his same or subsequent disability under the Social Security Act. Dependent benefits are not included if the Employee is divorced and the dependent benefits are being paid directly to the divorced spouse or to the children not in custody of the Employee.
- any amount of Old Age income provided for the Employee under the Social Security Act.
- any amount of income provided for the Employee under any Workers' Compensation, occupational disease, or similar law.

Other Income will be deemed to include any amount described above which would have been available to the Employee had he applied for such benefit.

Other Income will not include:

- any retirement benefits which reduce the normal retirement benefit accrued under the retirement plan.
- Social Security Old Age income payable to the Employee or his dependents if Disability commenced on or after the Employee's 70th birthday and

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

payment of Old Age income began prior to the Employee's Disability date.

- any increase in the benefits under the Workers' Compensation Law, the Social Security Act, the Railroad Retirement Act, any Veteran's Disability Compensation and Survivor Benefits Act, or any similar Federal or State law, as amended subsequent to the date of commencement of such benefit, occurring while the Employee is receiving payments under this Long Term Disability Benefit Provision.

If a lump sum payment is provided to the Employee in substitution for or instead of any item of Other Income, the Employee shall be deemed to be receiving the monthly equivalent of the income to which he would have been entitled had there not been a lump sum payment, but not to exceed in total the amount of the lump sum payment.

Change in Coverage

Changes in the Amount of Net Monthly Benefit due to change in monthly Basic Earnings will occur on the date of change; except that any increase will become effective only if the Employee is then Actively at Work; otherwise on the date the Employee returns to Actively at Work status.

Coverage Ceases

Coverage for an Employee under this Benefit Provision ceases on the earliest of:

- the applicable Individual Termination of Insurance date;
- the date this Benefit Provision terminates for the Classification of Employees of which he is a member; or
- the date the Employee ceases to be eligible for this Benefit in accordance with the Classification shown in the schedule.

Elimination Period

The Elimination Period begins with the Employee's first day of Disability and ends after an uninterrupted Disability period of 180 days. No Benefit is payable during the Elimination Period.

If Disability during the Elimination Period ceases for 15 working days or less,

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

then the Disability will be treated as continuous. Any days that the Employee is not Disabled will not be counted towards completion of the Elimination Period.

Waiver of Premium

Premiums will be waived while the Net Monthly Benefit is being paid.

Maximum Benefit Period

The Net Monthly Benefit will continue for as long as the Employee is Disabled, up to the Maximum Benefit Period set forth in the following schedule:

| Age at Date Disability Commenced | Maximum Duration of Benefits |
|---|---|
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 or over | 12 months |

A. Total Disability Benefit

If we receive due Notice and Proof of Claim that:
- an Employee became Totally Disabled while insured; and
- his Total Disability continued beyond the Elimination Period;

we will pay, subject to the Limitations and the Exclusions, a Total Disability Benefit. The amount payable for each month of continuous Total Disability will be equal to the Net Monthly Benefit, based on the Employee's monthly Basic Earnings prior to his Disability. An amount equal to one-thirtieth of the Net Monthly Benefit is payable for each day of

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

A. Total Disability Benefit
(continued)

Total Disability for a period which is less than a full month.

Termination of Total Disability Benefit

The Total Disability Benefit will cease on the earliest of the following dates:

- the date the Employee ceases to be Totally Disabled; or
- the date the Employee dies; or
- the end of the Maximum Benefit Period.

B. Partial Disability Benefit

If we receive due Notice and Proof of Claim that:

- an Employee became Partially Disabled while insured; and
- his Partial Disability continued beyond the Elimination Period;

we will pay, subject to the Limitations and the Exclusions, a Partial Disability Benefit. The amount payable for each month of continuous Partial Disability will be equal to the Benefit as shown below, based on the Employee's monthly Basic Earnings prior to his commencement of Disability. An amount equal to one-thirtieth of the Partial Disability Benefit is payable for each day of Partial Disability for a period which is less than a full month.

During the first 24 months of Partial Disability after completion of the Elimination Period, the monthly Partial Disability Benefit will be equal to the Net Monthly Benefit. This amount will not be reduced by any Partial Disability Employment earnings unless the Employee's total monthly income arising from the sum of the Net Monthly Benefit, income from Partial Disability Employment and any income from sources referred to as Other Income, exceeds 100% of his Indexed Monthly Basic Earnings. If the Employee's total monthly income exceeds 100% of his Indexed Monthly Basic Earnings, his Partial Disability Benefit will be reduced by such excess.

After Partial Disability Benefits have been paid for 24 months, the amount

ROXBY 0493

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

B. Partial Disability Benefit
(continued)

of the Employee's monthly Partial Disability Benefit will be based on the following formula:

(A divided by B) multiplied by C

Where:

A = The Employee's Indexed Monthly Basic Earnings minus any income received from his Partial Disability Employment.

B = The Employee's Indexed Monthly Basic Earnings.

C = The Net Monthly Benefit as determined in the Schedule.

Termination of Partial Disability Benefit

The Partial Disability Benefit will cease on the earliest of the following dates:

- the date the Employee ceases to be Partially Disabled; or
- the date the Employee dies; or
- the end of the Maximum Benefit Period; or
- the date the Employee's current earnings from Partial Disability Employment exceeds 80% of his Indexed Monthly Basic Earnings; or
- the date the Employee fails to provide adequate employment earnings information or proof of continuing Partial Disability as requested.

C. Time Limits for Notice and Proof of Claim

The time limits for due Notice and Proof of Claim are:

Notice of Claim - not later than 30 days before the end of the applicable Elimination Period or, if earlier, within 30 days of the termination of this Benefit Provision.

Proof of Claim - not later than 90 days after the end of the applicable

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

C. Time Limits for Notice and Proof of Claim
(continued)

Elimination Period.

D. Successive Periods

Successive periods of Disability after the Net Monthly Benefit had become payable will be considered a single period if, in the interval between the successive periods, the Employee was Actively at Work for less than:

- six consecutive months - if due to the same or related causes; or
- one day - if due to an entirely unrelated cause.

In such cases there will be no new Elimination Period. Also, the amount of the Employee's Long Term Disability Benefit will be:

- based on the Employee's monthly Basic Earnings at the time of his initial Disability; and
- payable, in total, for no longer than the Maximum Benefit Period at the time of his initial Disability.

E. Limitations

No Disability benefit is payable for:

1. any period during which the Employee is not under the regular care of a Doctor.

2. a Disability which is due, directly or indirectly, to a nervous, mental, psychological, emotional or behavioral disorder, unless:

   (i) for the first 24 months after the date the Employee completes his Elimination Period, the Employee receives medical treatment for the Disability (mental or medical examination alone not being considered treatment) from a Doctor qualified to certify that

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

E. Limitations
(continued)

such treatment is medically necessary; and

(ii) after the 24 months referred to in (i) above, the Employee is confined in a medical facility licensed to provide psychiatric treatment.

3. a Disability which is due to abuse of drugs or alcohol, unless:

(i) a) the Employee is confined in a medical facility licensed to provide drug or alcohol treatment or is satisfactorily participating in a program of rehabilitation acceptable to us; and

b) the confinement in a medical facility licensed to provide drug or alcohol treatment or participation in the program of rehabilitation deemed appropriate by us began during his Elimination Period; or

(ii) there is also organic disease present which would cause Disability if the use of drugs or alcohol ceased; or

(iii) the abuse of drugs originated out of the treatment of an otherwise covered condition.

4. a Disability which is due to or results from a pre-existing condition that begins in the first 12 months after the Employee's effective date of insurance, unless he has received no treatment of that condition for 3 consecutive months ending while insured.

"Treatment" means consultation, care or services provided by a Doctor, including diagnostic measures and taking prescribed drugs and medicines.

"Pre-Existing Condition" means an Illness for which the Employee received treatment within 3 months prior to the Employee's effective date of insurance under this Policy.

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

E. Limitations
(continued)

However, if the Employee was insured under the Employer's previous long term disability policy on the date prior to the Effective Date of this Policy and was Actively at Work and insured under this Policy on the Effective Date, then a Benefit would be payable if the Employee had satisfied the pre-existing condition limitation under the Employer's previous long term disability policy, or would have satisfied such pre-existing condition limitation giving consideration towards continuous time insured under both policies. The benefit payable will be the lesser of:

- the benefit otherwise payable under this Policy; and
- the benefit which would have been payable had the previous policy remained in force.

Recommencement of Insurance - If an Employee returns to work and becomes insured again, such Employee will be subject to this Limitation with respect to any Illness which began during the period of time between his termination of insurance and recommencement of insurance, as if his insurance commenced for the first time.

F. Exclusions

Payment will not be made for a Disability which is due to or results from:

- war (declared or undeclared) or active duty in any armed service during a time of war;

- Participation in a Riot, rebellion, or insurrection;

- intentionally self-inflicted injuries, or attempted suicide; or

- commission or attempted commission of a criminal offense.

Amendment No. 1
Amendment Date May 1, 1992

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

G. No Loss/No Gain

An Employee who is not Actively at Work due to Illness on the Effective Date of this Policy will be covered under this Policy if:

1. he was insured under the Employer's previous long term disability policy on the date prior to the Effective Date of this Policy; and

2. he is a member of an eligible classification of Employees.

The benefit payable will be the lesser of:

- the benefit otherwise payable under this Policy; and
- the benefit payable under the Employer's previous group long term disability policy less any benefits payable under that policy.

H. Amendment or Termination of Benefit Provision

With one exception, an Employee's rights to benefits under this Benefit Provision are determined on the date the Disability commenced. These rights are subject to the terms of this Policy and will not be affected by subsequent amendment or termination of this Benefit Provision. The exception is "Successive Periods" will not apply after termination of this Benefit Provision.

I. Survivor Benefit

1. Amount of Benefit

The amount of the Employee's Survivor Benefit is based on the following schedule:

| Classification | Amount of Benefit |
|---|---|
| All Employees | An amount equal to 3 times the Employee's last Gross Monthly Benefit payable in 3 equal monthly installments. |

LONG TERM DISABILITY BENEFIT PROVISION

(continued)

I. Survivor Benefit
(continued)

2. Payment of Benefit

If we receive Due Proof that the Employee dies as a result of the Disability for which we were paying a Long Term Disability Benefit, then the Survivor Benefit is payable. Payment will be made to the Employee's surviving Spouse, to the oldest living Dependent Child under age 21 (23 if a full-time student wholly dependent on the Employee for support), or to the Employee's estate.

3. Limitations

No benefit is payable if, at the date of the Employee's death:

a) he had not been continuously Disabled for at least 6 months immediately prior to his death;

b) this Provision is not in force.

# Employee Group Benefits

UNDERWRITTEN BY
SUN LIFE ASSURANCE COMPANY OF CANADA

## J.M. FAMILY ENTERPRISES, INC.

GROUP POLICY NUMBER - 96878
POLICY EFFECTIVE DATE - JANUARY 1, 1992
POLICY AMENDMENT DATE - MAY 1, 1992

This folder contains important information about your group *insurance benefits*. Keep it handy as a ready source of information about your insurance

81-GLH (C) (US)

SunLife
of Canada
A member of Sun Financial Group
Wellesley Hills, MA 02181

ROXBY 0501

Sun Life certifies that, subject to the terms of the Group Policy, insurance is available to the persons described in DEFINITIONS. If you become insured, this booklet becomes your certificate of insurance.

The booklet is not a contract but explains the benefits provided by the group insurance plan. The terms of the Group Policy govern.

John R. Gardner

President

Sun Life Assurance Company of Canada

Possession of this booklet is not necessarily an indication that you are insured under the Group Policy. The requirements for becoming insured and the dates your insurance commences and ceases are explained in GENERAL INFORMATION.

**INDEX**

| | PAGE |
|---|---|
| Benefit Provisions | |
| - Long Term Disability | 11 |
| Definitions | 3 |
| General Information | |
| - Action Against Us | 10 |
| - Examinations | 10 |
| - Gender | 10 |
| - Insurance Ceases | 8 |
| - Insurance Commences | 8 |
| - Making a Claim | 9 |
| - Payment of Benefits | 9 |

ROXB

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

ROXBY 0503

## DEFINITIONS

**Employer** - The Policyholder or its subsidiaries Carnnett, Inc., Fidelity Warranty Services, Inc., Jim Moran & Associates, Inc., JMIC Life Insurance Corporation, J.M. Lexus, Joyserv Company, LTD, Petro Chemical Products, Southeast Industrial Equipment, Southeast Toyota Distributors, Inc., Toyota Distribution Center of Commerce, World Cars, Inc., World Omni Financial Corporation, WorldOmni Leasing Corporation, Youth Automotive Training Center, Automotive Distribution Group and J.M. Pontiac.

**Employee** - A person classified by the Employer as a permanent full-time employee who is scheduled to work at least 30 hours a week at the Employer's place of business or at some other site where the Employer requires him to be.

**Employment** - Performance of work as an Employee except that classification as an individual employed on a basis excluded above will be applied toward completion of an Employee's waiting period.

**Waiting Period** - The period of time during which an Employee must be in Employment before becoming eligible for the benefits provided by this Policy. The Waiting Period for this Policy is 12 months.

**Actively at Work** - An Employee is actively at work on any day in which he performs all the usual and customary duties of his occupation at the Employer's place of business or at some other site where the Employer requires him to be. In the case of an Employee who is not on a flexible schedule of working hours, the Employee must work for 6 hours or the scheduled number of hours for that day, whichever is longer. In

## LONG TERM DISABILITY BENEFIT PROVISION

*(continued)*

3 times your last Gross Monthly Benefit payable in 3 equal monthly installments.

2. Payment of Benefits

If we receive Due Proof that you died as a result of the Disability for which we were paying a Long Term Disability Benefit, then the Survivor Benefit is payable. Payment will be made to your surviving Spouse, to the oldest living Dependent child under age 21 (23 if a full-time student wholly dependent on you for support), or to your estate.

3. Limitations

No benefit is payable if, at the date of your death:

a) you had not been continuously Disabled for at least 6 months immediately prior to your death; or

b) this Provision is not in force.

## LONG TERM DISABILITY BENEFIT PROVISION

(continued)

of the Group Policy; and

2. you are a member of an eligible classification of Employees.

The benefit payable **will** be lesser of:

- the benefit **otherwise** payable under the Group Policy; and
- the benefit payable under the Employer's previous group long term disability policy less any benefits payable under that policy.

G. Amendment or Termination of Benefit Provision

With one exception, your rights to benefits under this Benefit Provision are determined on the date your Disability commenced. These rights are subject to the terms of the Group Policy and will not be affected by subsequent amendment or termination of this Benefit Provision. The exception is "Successive Periods" will not apply after termination of this Benefit Provision.

H. Survivor Benefit

1. Amount of Benefit

The amount of your Survivor Benefit is based on the following schedule:

| Classification | Amount of Benefit |
|---|---|
| All Employees | An amount equal to |

ROXBY 0504

## DEFINITIONS

(continued)

the case of an Employee who is on a flexible schedule, he must work the scheduled number of hours for that day.

An Employee is deemed Actively at Work on a scheduled non-working day if he was Actively at Work on the immediately preceding scheduled working day.

**Termination of Employment** - Termination occurs on the day a person ceases to qualify as an Employee for any reason.

However, the Policyholder, acting in accordance with rules which preclude individual selection, may deem that Employment continues:

1. for the period of the Employee's scheduled paid vacation, but not exceeding 3 months;

2. unless otherwise provided by law, for a period ending not later than the last day of the calendar month following the month in which the Employee is temporarily laid off or is granted a leave of absence for any reason other than Illness or paid vacation; or

3. for any period the Employee is absent from work due to Illness.

**Illness** - Bodily injury, sickness, disease, Pregnancy or mental infirmity.

**Pregnancy** - Childbirth, miscarriage, abortion and conditions which result directly or indirectly from any of these.

90-DEF-LTD(BC)

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

ROXBY 0505

## DEFINITIONS

(continued)

**Totally Disabled** - An Employee is totally disabled if he is in a continuous state of incapacity due to Illness which:

All Employees with annual Basic Earnings of $30, 000 or greater

1. while it continues throughout the Elimination Period and during the following 60 months of incapacity, prevents him from performing all of the material duties of his regular occupation;

2. while it continues thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience.

All Other Employees

1. while it continues throughout the Elimination Period and during the following 36 months of incapacity, prevents him from performing all of the material duties of his Regular Occupation; and

2. while it continues thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience.

**Partially Disabled** - An Employee is Partially Disabled if he is in a continuous state of incapacity due to Illness which continues

## LONG TERM DISABILITY BENEFIT PROVISION

(continued)

Recommencement of Insurance - If you return to work and become insured again, you will be subject to this Limitation with respect to any Illness which began during the period of time between your termination of insurance and recommencement of insurance, as if your insurance commenced for the first time.

E. EXCLUSIONS

Payment will not be made for a Disability which is due to or results from:

- war (declared or undeclared) or active duty in any armed service during a time of war;
- Participation in a Riot, rebellion, or insurrection;
- intentionally self-inflicted injuries, or attempted suicide; or
- commission or attempted commission of a criminal offense.

F. No Loss/No Gain

If you are not **Actively at Work** due to Illness on the **Effective** Date of the Group Policy, you will be covered under the Group Policy if:

1. you were insured under the Employer's previous long term disability policy on the date prior to the Effective Date

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

begins in the first 12 months after your effective date of insurance, unless you have received no treatment of that condition for 3 consecutive months ending while insured.

"Treatment" means consultation, care or services provided by a Doctor, including diagnostic measures and taking prescribed drugs and medicines.

"Pre-Existing Condition" means an Illness for which you received treatment within 3 months prior to your effective date of insurance under the Group Policy.

However, if you were insured under the Employer's previous long term disability policy on the date prior to the Effective Date of the Group Policy and were Actively at Work and insured under the Group Policy on the Effective Date, then a Benefit would be payable if you had satisfied the pre-existing condition limitation under the Employer's previous long term disability policy, or would have satisfied such pre-existing condition limitation giving consideration towards continuous time insured under both policies. The benefit payable will be the lesser of:

- the benefit otherwise payable under the Group Policy; and
- the benefit which would have been payable had the previous policy remained in force.

throughout the Elimination Period and thereafter prevents him from performing all of the material duties of his Regular Occupation on a full-time basis; but

a) he is engaged in Partial Disability Employment; and

b) his current earnings are at least 20% less per month than his Indexed Monthly Basic Earnings due to that same Illness.

**Disabled or Disability** - The condition of being either Totally Disabled or Partially Disabled.

**Regular Occupation** - The profession, trade, work or the means of earning a living in which the Employee was primarily engaged immediately prior to commencement of Disability.

**Partial Disability Employment** - Partial Disability Employment is:

1. a program in which an Employee engages in vocational training or period of work for the purpose of rehabilitation; or

2. employment in which an Employee performs at least one of the material duties of his Regular Occupation or another occupation on a part-time or full-time basis.

Partial Disability Employment may begin during the Elimination Period, but a Partial Disability Benefit will not be paid until completion of the Elimination Period.

**Doctor** - A physician or surgeon licensed to

ROXBY 0506

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

ROXBY 0507

## DEFINITIONS

(continued)

practice medicine or osteopathy or any other licensed practitioner required to be recognized for health insurance purposes under the law of the jurisdiction where treatment is received. In all cases, treatment must be within the scope of the Doctor's license.

**Basic Earnings** - All Annualized Salary and wages paid or payable to an Employee by the Employer in the calendar year prior to the current year which are considered basic compensation for the J M Family Enterprises, Inc. Associates' Profit Sharing Plan purposes. This includes any before tax contributions by an Employee to the Employer's plans involving IRS qualified salary reduction. Employer contributions to any benefit plan are not included.

**Insured Earnings** - The Employee's monthly Basic Earnings excluding any portion of his Basic Earnings in excess of $35,000.

**Indexed Monthly Basic Earnings** - The Employee's monthly Basic Earnings prior to his Disability adjusted on the first of the month following 12 calendar months of Partial Disability payments and each yearly anniversary thereafter. Each adjustment to the Indexed Monthly Basic Earnings is the lesser of 10% or the current annual percentage increase in the Consumer Price Index as published by the U.S. Department of Labor.

**Gross Monthly Benefit** - The Employee's Monthly Benefit prior to any reduction of Other Income benefits and Partial Disability Employment earnings.

## LONG TERM DISABILITY BENEFIT PROVISION

(continued)

to certify that such treatment is medically necessary; and

(ii) after the 24 months referred to in (i) above, you are confined in a medical facility licensed to provide psychiatric treatment.

3. a Disability which is due to abuse of drugs or alcohol, unless:

   (i) a) you are confined in a medical facility licensed to provide drug or alcohol treatment or are satisfactorily participating in a program of rehabilitation acceptable to us; and

   b) the confinement in a medical facility licensed to provide drug or alcohol treatment or participation in the program of rehabilitation deemed appropriate by us began during your Elimination Period; or

   (ii) there is also organic disease present which would cause Disability if the use of drugs or alcohol ceased; or

   (iii) the abuse of drugs originated out of the treatment of an otherwise covered condition.

4. a Disability which is due to or results from a pre-existing condition that

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

## LONG TERM DISABILITY BENEFIT PROVISION

(continued)

the interval between the successive periods, you were Actively at Work for less than:

- six consecutive months - if due to the same or related causes; or
- one day - if due to an entirely unrelated cause.

In such cases there will be no new Elimination Period. Also, the amount of your Long Term Disability Benefit will be:

- based on your monthly Basic Earnings at the time of your initial Disability; and
- payable, in total, for no longer than the Maximum Benefit Period at the time of your initial Disability.

D. Limitations

No Disability benefit is payable for:

1. any period during which you are not under the regular care of a Doctor.

2. a Disability which is due, directly or indirectly, to a nervous, mental, psychological, emotional or behavioral disorder, unless:

   (i) for the first 24 months after the date you complete your Elimination Period, you receive medical treatment for the Disability (mental or medical examination alone not being considered treatment) from a Doctor qualified

## GENERAL INFORMATION

Insurance Commences

Long Term Disability

You are insured on the first day that you are Actively at Work after completion of the Waiting Period.

If you were previously insured under the Group Policy you will not have to complete a new Waiting Period if you rejoin the Employer as an Employee within 6 months after Termination of Employment. You will become insured on the first day that you are Actively at Work.

If you declined for religious or other reasons to be insured by signing a refusal card, you are insured on the date your subsequent written request for insurance and evidence of insurability are approved by us.

Commencement of Insurance on Policy Amendment

If you are not Actively at Work on the date the Policy is amended to provide increased or additional benefits, you will be insured for the increased or additional benefits only when you are again Actively at Work.

Insurance Ceases

Your insurance ceases on the earliest of:

- the date of Termination of Employment;
- the end of the period for which the last premium is paid to us for your insurance; or
- the date of termination of the Group Policy.

ROXBY 0508

ROXBY 0509

## GENERAL INFORMATION

(continued)

Making a Claim

Notice and Proof of Claim should be sent to us as soon as possible. The Group Policy requires that Notice and Proof of Claim must be given in writing:

for Long Term Disability
- Notice not later than 30 days before the end of the applicable Elimination Period or, if earlier, within 30 days of the termination of this Benefit Provision.
- Proof not later than 90 days after the end of the applicable Elimination Period.

If you cannot give us the proper Notice and Proof within these time periods, you must give us proper Notice and Proof as soon as reasonably possible. In all cases, however, Proof must be given to us not later than one year after the date it is due unless you are legally incompetent during all that time.

Payment of Benefits

Survivor Benefits payable upon your death are payable as set forth in the Long Term Disability Benefit Provision.

Benefits payable during your lifetime will be paid to you.

Proof of Claim

We must receive written proof of claim within certain time limits except for those arising from your death. The time limits for such proofs are set forth in the respective Benefit

## LONG TERM DISABILITY BENEFIT PROVISION

(continued)

monthly Partial Disability Benefit will be based on the following formula:

(A divided by B) multiplied by C

Where:

A = Your Indexed Monthly Basic Earnings minus any income received from your Partial Disability Employment.

B = Your Indexed Monthly Basic Earnings.

C = The Net Monthly Benefit as determined in the Schedule.

Termination of Partial Disability Benefit

Your Partial Disability Benefit will cease on the earliest of the following dates:
- the date you cease to be Partially Disabled; or
- the date you die; or
- the end of the Maximum Benefit Period; or
- the date your current earnings from Partial Disability Employment exceeds 80% of your Indexed Monthly Basic Earnings; or
- the date you fail to provide adequate employment earnings information or proof of continuing Partial Disability as requested.

C. Successive Periods

Successive periods of Disability after the Net Monthly Benefit had become payable will be considered a single period if, in

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

FOXBY 0513

your dependents for your same or subsequent disability under the Social Security Act. Dependent benefits are not included if you are divorced and the dependent benefits are being paid directly to the divorced spouse or to the children not in your custody.

- any amount of Old Age income provided for you under the Social Security Act.
- any amount of income provided for you under any Workers' Compensation, occupational disease, or similar law.

Other Income will be deemed to include any amount described above which would have been available to you had you applied for such benefit.

Other Income will not include:

- any retirement benefits which reduce your normal retirement benefit accrued under the retirement plan.
- Social Security Old Age income payable to you or your dependents if Disability commenced on or after your 70th birthday and payment of Old Age income began prior to your Disability date.
- any increase in the benefits under the Workers' Compensation Law, the Social Security Act, the Railroad Retirement Act, any Veteran's Disability Compensation and Survivor Benefits Act, or any similar Federal or State law, as amended subsequent to the date of commencement of such benefit,

occurring while you are receiving payments under this Long Term Disability Benefit Provision.

If a lump sum payment is provided to you in substitution for or instead of any item of Other Income, you shall be deemed to be receiving the monthly equivalent of the income to which you would have been entitled had there not been a lump sum payment, but not to exceed in total the amount of the lump sum payment.

Change in Coverage

Changes in the Amount of Net Monthly Benefit due to change in your monthly Basic Earnings will occur on the date of change; except that any increase will become effective only if you are then Actively at Work; otherwise on the date you return to Actively at Work status.

Coverage Ceases

Your Long Term Disability Benefit ceases on the earliest of:

- the applicable "Insurance Ceases" date;
- the date this Benefit Provision terminates for your Classification; or
- the date you cease to be eligible for this Benefit in accordance with your Classification in the schedule.

Elimination Period

The Elimination Period begins with your first day of Disability and ends after an uninterrupted Disability period of 180 days. No benefit is payable during the Elimination

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

Period.

If Disability during the Elimination Period ceases for 15 working days or less, then the Disability will be treated as continuous. Any days that you are not Disabled will not be counted towards completion of the Elimination Period.

Waiver of Premium

Premiums will be waived while the Net Monthly Benefit is being paid.

Maximum Benefit Period

The Net Monthly Benefit will continue for as long as you are Disabled, up to the Maximum Benefit Period set forth in the following schedule:

| Age at Date Disability Commenced | Maximum Duration of Benefits |
|---|---|
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 or over | 12 months |

Other Income includes:

- any amount of disability income provided for you under any employer paid group insurance or group pre-payment plan including any policy issued to you as a result of your membership in an association of any kind.
- any amount of income, other than salary continuance benefits, provided for you by the Employer for the same or subsequent disability. However, any amount of salary continuance benefits provided for you by the Employer which would cause the aggregate of Other Income and the Net Monthly Benefit to exceed 100% of your monthly Basic Earnings will cause the Net Monthly Benefit to be reduced by such excess.
- any amount of income provided for you by any other employer for the same or subsequent disability.
- any amount of income provided for you under any employer paid retirement or pension plan; except that this shall not include any income from a profit sharing plan, a thrift plan, an individual retirement account (IRA), an individual retirement annuity, a tax sheltered annuity (TSA), a stock ownership plan or a non-qualified plan of deferred compensation.
- any amount of disability income provided for you under any compulsory benefit act or law.
- any amount of income provided for you and

ROXBY 0512

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

ROXBY 0511

## LONG TERM DISABILITY BENEFIT PROVISION

The amount of your Long Term Disability Benefit is based on the following schedule:

| Classification | Amount of Net Monthly Benefit |
|---|---|
| All Employees | The lesser of: |

(1) 60% of monthly Basic Earnings;

(2) 70% of monthly Basic Earnings, reduced by Other Income; and

(3) $21,000.

In no event will the Net Monthly Benefit be less than $50.

The maximum monthly benefit will be *increased each year* as follows:

January 1, 1993 $21,500

January 1, 1994 $22,000

The Plan Maximum is determined on the date your Disability occurs and will not be increased during your period of Disability.

Reduction in Benefits

Your Long Term Disability Benefit will be reduced by the sum of all Other Income which *may become available to you from* time to time, during the period of Disability.

90-LTD(BC)(REV1)

## LONG TERM DISABILITY BENEFIT PROVISION

(continued)

A. Total Disability Benefit

If we receive due Notice and Proof of Claim that:
- you became Totally Disabled while insured; and
- your Total Disability continued beyond the Elimination Period;

we will pay, subject to the Limitations and the Exclusions, a Total Disability Benefit. The amount payable for each month of continuous Total Disability will be equal to the Net Monthly Benefit, based on your monthly Basic Earnings prior to your Disability. An amount equal to one-thirtieth of the Net Monthly Benefit is payable for each day of Total Disability for a period which is less than a full month. The time limits for filing Notices and Proofs of Claim are listed in the *General Information* Provision, under "Making a Claim".

Termination of Total *Disability Benefit*

Your Total Disability Benefit will cease on the earliest of the following dates:
- the date you cease to be Totally Disabled;
- the date you die; or
- the end of the Maximum Benefit Period.

B. Partial Disability Benefit

If we receive due Notice and Proof of Claim that:
- you became Partially Disabled while

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pa

insured; and
- your Partial Disability continued beyond the Elimination Period;

we will pay, subject to the Limitations and the Exclusions, a Partial Disability Benefit. The amount payable for each month of continuous Partial Disability will be equal to the Benefit as shown below, based on your monthly Basic Earnings prior to your Disability. An amount equal to one-thirtieth of the Partial Disability Benefit is payable for each day of Partial Disability for a period which is less than a full month. The time limits for filing Notices and Proofs of Claim are listed in the General Information Provision, under "Making a Claim".

During the first 24 months of Partial Disability after completion of your Elimination Period, your monthly Partial Disability Benefit will be equal to the Net Monthly Benefit. This amount will not be reduced by any Partial Disability Employment earnings unless your total monthly income arising from the sum of the Net Monthly Benefit, income from Partial Disability Employment and any income from sources referred to as Other Income, exceed 100% of your Indexed Monthly Basic Earnings. If your total monthly income exceeds 100% of your Indexed Monthly Basic Earnings, your Partial Disability Benefit will be reduced by such excess.

After Partial Disability Benefits have been paid for 24 months, the amount of your

Provisions.

The proof, which must be satisfactory to us, is to be given to us at our Office. If it can be shown that proof could not be given within the applicable period, we will not deny or reduce benefits payable. However, proof of claim must be given within one year after the date such proof is due unless you are legally incompetent.

Action Against Us

No legal action may be brought on any claim earlier than 60 days after a Proof of Claim is given. No such action may be brought after the expiration of the applicable statute of limitations from the time written Proof of Claim is required to be given.

Examinations

We have the right to examine any person for whom a claim for benefit payment has been made and to do so as often as we may reasonably require.

Gender

In the context of this booklet certificate, the use of "he", "his" and "him" refers to both males and females.

ROXBY 0510

# LTD

Florida

ROXBY

96878

96878 Bruce Roxby 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

EXHIBIT B

# BASSETT AGENCY

INVOICE

name

DATE: 11/24/99

CLIENT: SunLife of Canada

CASE #: 990124

INSURED: Bruce Roxby

TYPE: Surveillance #-916878

---

**INVESTIGATIVE SERVICES:**

26.00 hours @ $49.00 per hour including: $1,274.00

- *Preliminary Investigation*
- *Surveillance*
- *Records Check*
- *Telephone services*
- *Activity check*
- *Travel*

---

**EXPENSES:**

| | |
|---|---|
| Mileage: 430 miles @ .35 ea. | $150.50 |
| Photographs: 6 @ $2.00 ea. | $12.00 |
| Video: | N/C |
| Database: | $39.00 |
| Office: | $47.50 |

RECEIVED
DEC 01 1999
LONG TERM DISABILITY

**TOTAL AMOUNT DUE** **$1,523.00**

---

TAX ID #04-3266744
*Please make checks payable to: THE BASSETT AGENCY*
*Net terms 30 days. Overdue invoices will be subject to interest at 1.5% per month.*

P.O. Box 151, So. Barre, MA 01074 Toll Free 800-616-4223 Fax (508) 365-8509

# BASSETT AGENCY

. . . no trail goes untracked

November 24, 1999

RE: 990124
TYPE: Surveillance
POLICY #: 96878
CONTROL #: 271293-20003-00
INSURED: Bruce Roxby

Ms. Jacqueline Heintz
SunLife of Canada
One SunLife Executive Park
Wellesley Hills, MA 02481

Dear Ms. Heintz:

Relative to the above-captioned subject matter, please be advised that we have completed our surveillance on insured Bruce Roxby.

Enclosed you will find our investigative report along with supportive documentation and our invoice for services. Should everything be in order, please remit payment at your earliest convenience.

Field surveillance was conducted from 11/17/99 thru 11/20/99. The insured was observed outside of residence visiting unknown persons on the east coast of Florida in the Hollywood area which is an approximate distance of 2 1/2 hours from his residence. Photographs and video documentation were obtained of the insured at the Olive Garden Restaurant in Pembroke Pines, Florida. The insured displayed no sign of pain, disability or discomfort and did not use any type of supportive device while outside of vehicle or residence.

Thank you for the opportunity to be of service. If, after review of the enclosed documentation you should have any questions or desire any additional investigation, please do not hesitate to contact me at 800-616-4223.

Respectfully submitted,

Attila A. Lore
President

AAL/rl

Enclosures

P.O. Box 151, So. Barre, MA 01074

Toll Free 800-616-4223 Fax (508) 865

# BASSETT AGENCY

CASE INFORMATION SHEET

**CASE #:** 990124
**CLIENT:** SunLife of Canada
**TYPE:** Surveillance

**POLICY #:** 96878

**CONTROL #:** 271293-20003-00

**INSURED:** Bruce Roxby

**ADDRESS:** 2636 SW Terrace
Naples, FL 34116

**DOB:** 04/25/47

**SSN#:** 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

**DESCRIPTION:** 52-year-old white male, approximately 5'10"-5'11" in height, weighing 170-185 lbs., salt and pepper colored hair, glasses, small mustache

**VEHICLES:** 1980's Cadillac, maroon, FL Registration XBZ64P

P.O. Box 151, So. Barre, MA 01074 Toll Free 800-616-4223 Fax (508) 355-[illegible]

# BASSETT AGENCY

INVESTIGATIVE REPORT

| | |
|---|---|
| **CLIENT:** | Jacqueline Heintz<br>SunLife of Canada |
| **CASE #:** | 990124 |
| **TYPE:** | Surveillance |
| **INSURED:** | Bruce Roxby |
| **POLICY#:** | 96878 |
| **CONTROL #:** | 271293-20003-00 |

10/20/99

Assignment received from Jacqueline Heintz of SunLife of Canada requesting surveillance on insured Bruce Roxby.

10/21/99-
11/16/99

A preliminary investigation was conducted by this office to confirm the insured's personal and statistical data. Please see the case information sheet for details.

Wednesday,
11/17/99

1:00 p.m.

The investigator arrives at the insured's residence and sets up suitable surveillance position. The residence is described as a light brown single family dwelling with an attached two-car garage brown in color located in a middle income neighborhood. The residence is well maintained on an approximate 1/2 acre lot. The rear area is completely shrouded in heavy shrubbery blocking any view to rear yard area.

P.O. Box 151, So. Barre, MA 01074 Toll Free 800-616-4223 Fax (508) [illegible]

Vehicles pertaining to insured are observed present, two mid 80 Cadillac Sedans, one white in color and one maroon in color, FL Registration XBZ64P.

2:00 p.m.

No activity of insured.

2:45 p.m.

Insured is confirmed to be present at residence at this time.

3:00 p.m.

No activity of insured.

4:00 p.m.

Activity is observed at neighboring residences with the neighbors being outside in yards.

5:00 p.m.

Surveillance position is moved at this time.

6:00 p.m.

No activity of insured.

6:15 p.m.

Surveillance is terminated at this time due to lack of activity of insured.

| Thursday, 11/18/99 |
|---|

6:30 a.m.

The investigator arrives at the insured's residence and sets up suitable surveillance position. Insured's vehicle is observed parked in driveway. Please note insured's vehicle has been moved and is now backed close to front entrance of the residence.

7:00 a.m.

No activity of insured.

8:00 a.m.

Several neighbors have departed the residential area, however, no activity of insured.

9:00 a.m.

No activity of insured.

10:00 a.m.

Surveillance position is maintained.

10:25 a.m.

Insured's vehicle, the maroon Cadillac, is observed departing the local area with male, matching insured's description as the driver and unknown female as a passenger. Vehicle tail commences at this time.

10:35 a.m.

The insured enters the toll road area connecting the east coast of Florida to the Naples area. This is also known as I-75.

11:00 a.m. - 12:50 p.m.

Vehicle tail is in progress eastbound on I-75 towards the Fort Lauderdale/Miami area.

12:55 p.m.

Insured arrives at 5940 Farragut Avenue in Hollywood, Florida, which is a light green colored single family residence with a Chevrolet van parked in the garage area. Insured backs vehicle directly up to the front step area and is observed exiting vehicle without any supportive device: i.e., cane. The insured walks with a possible slight limp, however, brisk movement. The insured is greeted at door area by unknown female.

1:00 p.m.

Surveillance position is maintained.

2:00 p.m. - 4:00 p.m.

No activity of insured.

4:10 p.m.

The insured's vehicle is observed departing the local area with the insured as the driver and female previously observed, along with older female as passenger in rear seat area.

4:45 p.m.

Insured arrives at the Olive Garden located at 11425 Pines Boulevard in Pembroke Pines, Florida. Photographs and video documentation are obtained of the insured entering the restaurant while using no supportive device. The insured is wearing a plaid shirt.

5:00 p.m.

Walk on is done into restaurant where insured is observed in booth area accompanied by two females.

5:15 p.m.

Vehicle surveillance is resumed.

6:00 p.m.

Video documentation is obtained of the insured exiting restaurant carrying unknown item in hand. The insured proceeds to open doors for females before entering vehicle as the driver. The insured is observed twisting neck and reaching up with arms to back vehicle up.

6:05 p.m.

Vehicle tail resumes as insured departs restaurant area.

6:45 p.m.

Insured arrives back at 5940 Farragut Avenue in Hollywood, Florida.

7:00 p.m.

Surveillance position is maintained.

8:00 p.m.

No activity of insured.

8:45 p.m.

Investigator terminates surveillance at this time.

Friday,
11/19/99

6:00 a.m.

Investigator has maintained surveillance of residence located in Hollywood, Florida. Vehicle pertaining to insured was observed parked in same area in front of residence.

6:15 a.m.

Surveillance position has been established.

7:00 a.m.

No activity of insured.

8:00 a.m.

No activity of insured.

8:55 a.m.

Activity is observed around the residence, however, not of the insured at this time.

9:00 a.m.

No activity of insured.

10:00 a.m.

Surveillance position is maintained.

11:00 a.m.

No activity of insured.

11:45 a.m.

Investigator terminates surveillance at this time.



Saturday,
11/20/99

7:00 a.m.

Insured has arrived back to residential area. Investigator resumes surveillance at this time. Maroon Cadillac is observed present.

8:00 a.m.

No activity of insured.

9:00 a.m.

No activity of insured.

9:45 a.m.

The insured is confirmed to be present at residence.

10:00 a.m.

No activity of insured.

11:00 a.m.

Shades are observed being adjusted inside insured's residence.

12:00 p.m.

No activity of insured.

1:00 p.m.

No activity of insured.

1:45 p.m.

Surveillance is terminated at this time due to lack of activity of insured.

3:00 p.m.

Investigator resumes surveillance position at insured's residence as insured's vehicle is observed present.

4:00 p.m.

No activity of insured.

5:00 p.m.

No activity of insured.

5:45 p.m.

The investigator terminates surveillance at this time.

**INVESTIGATION COMPLETE**

**BASSETT AGENCY**

PHOTO SEQUENCE SHEET

**POLICY #:** **96878**
**CONTROL #:** **271293-20003-00**

**PHOTOS 1-6:** Taken on 11/18/99 at approximately 4:50 p.m. of the insured exiting vehicle and proceeding on foot into the Olive Garden Restaurant located in Pembroke Pines, FL.

**VIDEO:** Obtained on the same date of the insured exiting vehicle and entering restaurant and later at approximately 6:00 p.m. of the insured exiting restaurant and opening doors for unknown females before entering vehicle as the driver.

All photographs and video obtained by **The Bassett Agency**



2 LB. POSTAGE RATE REGARDLESS OF WEIGHT
0-222-1811
PRIORITY
MAIL
UNITED STATES POSTAL SERVICE
PRIORITY
MAIL
UNITED STATES POSTAL SERVICE

HOW TO USE:

1. COMPLETE ADDRESS LABEL AREA
Type or print required return address and addressee information in customer block (white area) or on label (if provided).

2. PAYMENT METHOD
Affix postage or meter strip to area indicated in upper right hand corner.

3. ATTACH LABEL (if provided)
Remove label backing and adhere over customer address block area (white area).

PRIORITY MAIL
UNITED STATES POSTAL SERVICE™

NOV 29 '99
$3.20
00030848-06
9263
02481

From:

The Bassett Agency
P.O. Box 151
So. Barre, MA 01074

To:

Ms. Jacqueline Heintz
SunLife of Canada
One SunLife Executive Park
Wellesley Hills, MA 02481

*The efficient FLAT RATE ENVELOPE.*
*You don't have to weigh the envelope... Just pack all your correspondence and documents inside and pay only the 2 lb. Priority Mail postage rate.*
*We Deliver For You.*

ROXBY 0013

LONG TERM DISABILITY

REHABILITATION FILE REVIEW

Claimant Bruce Roxby Policy # 96878

Review date 6/30/95

Prior rehab. review. (yes) no

If yes, what was disposition? Reviewed for cont Rehab services as no WC award - Cl uncooperative

==========================================================================

Rehabilitation Potential: Poor 1 2 3 4 5 Excellent

Comments / Action Plan 48 yr old auto mechanic

Dx myofascial pain - facet syndrome

Released to PT/Sed employ Active WC

Case. Potential poor currently

based on WC case - prior when he

w/ Sivalips

Reviewer: Steve Ray



SunLife
of Canada
A member of Sun Financial Group

Memorandum

Date 3/7/94

To Janice Fishbein, GENEX Services

From Bill Harney, Rehabilitation Consultant

Re Bruce Roxby, JM Family Enterprises
96878-GD

---

Please conduct an initial vocational evaluation at claimant's residence. Determine motivation and return to work plans of claimant. Has he discussed RTW with his employer? What are his thoughts about RTW in general?

There are many "unknowns" associated with this case. Because of the significant exposure Sun Life has here it is important that all potential RTW efforts be explored. Please bear that in mind when working this case.

The claimant is receiving Workers Compensation of $1841. mo. His net LTD benefit is $2446. If he settles his WC then he will receive almost $4300. mo. from Sun Life. This is a 5 yr. own occ. policy.

Have Drew review the file and then call me prior to contacting the claimant.

3/28
No response from clmt.
Drew will contact ER Conduct job analysis

VOCATIONAL REHABILITATION REVIEW FORM

NAME: Bruce Roxby GROUP POLICY #: 96878

ADDRESS: 525 SE 10th Ave, Deerfield Beach Fl 33441

TELEPHONE #: 305.427.8733 ANY OCC DATE: 11.22.98

D.O.B.: 4.25.47 AGE: 46 D.O.D.: 5-26-93 STATUS: M S D

LTD BENEFIT: $3675.78 (6126.29) POLICYHOLDER: JM Family Enterprises

OCCUPATION: Auto mech. DATE OF EMPLOYMENT:

DIAGNOSIS: (L) Lumbar Facet Syndrome Myofascial Pain Syndrome

LIMITATIONS: light duty no heavy lifting, frequent positional changes.

WORK COMP: MVA:

SOCIAL SECURITY #: 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 SSDI STATUS:

SSDI AWARD: 12grd highly skilled auto mech.

V.R. POTENTIAL: Poor 1 2 (3) 4 5 Excellent REVIEW DATE: 3.2.94

COMMENTS - ACTION TAKEN: Hartford Ins. Beth Ann Irvin adjuster (904) 398-0345

305 938 9382 Drew West Jackson

Ft. LAUDERDALE

According to ER, clmt has verbally requested w/c settlement.

535C81941

Super. Karen Schaffer

V.R. VENDOR: REFERRAL DATE:

REHABILITATION CONSULTANT: W. P. Ha[illegible]



# [illegible]G TERM DISABILITY CLAIMS WORKSHEET

371393 36003-00

| Policyholder's Name | Policy Number | Sub | Certificate Number | Self-Administered | Disability Date |
|---|---|---|---|---|---|
| Jim Family Ent | 96375 | 001 | 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 | ☐ Yes ☐ No | 26 may 1993 |

| Claim Type | Claimant's Name (Surname first) | Lang Cd | Sex | Social Security Number | Clerk Code | Birth Date (day, mo., yr) |
|---|---|---|---|---|---|---|
| 02 | Roxby, Bruce | E | M | | BSA | 25 April 1947 |

| Trustee Name | Policy Curr | Mail Add. Cd | Dom Cd | Claimant's Address |
|---|---|---|---|---|
| | 12 | 436 | 210 | 2636 SW 53 Terr, Naples, FL 34116 |

| Cl Or. | Tax Code | Pay Meth. | Disab. Cd | Notification Date | First Payment Date | Last Payment Date |
|---|---|---|---|---|---|---|
| 041 | 1 | 4 | 52 | 27 Dec 1993 | 23 Nov 1993 | 30 Nov 1993 |

| E E Salary | Basic Benefit | E E Tp. | Fm Lity | Other Income |
|---|---|---|---|---|
| 6,126.29 | 3,675.78 | 1 | 6 | |

| Minimum Benefit | Pension Add Cd | Pay Cd | Pay Curr | Expiry Date |
|---|---|---|---|---|
| 50.00 | | 1 | 12 | [illegible] |

Is this a pre-existing condition? ............ [illegible] ☐ yes ☐ no

Is Worker's Compensation payable? ☐ yes ☐ no

Did disability occur in a state with state disability income? ☐ yes ☐ no

Is there a pension from the employer? ☐ yes ☐ no

Does employee's age at disability date qualify for extended benefits under ADEA? ☐ yes ☐ no

Is Social Security Retirement (Old Age Income) to be offset ☐ yes ☐ no

| BENEFITS | | OFFSETS 70% less other income | LIKELY | FIRM | | | |
|---|---|---|---|---|---|---|---|
| Salary | 6,126.29 | Social Security | | | Total Gross Benefit | | 4,288.41 |
| Benefit at 60 % | 3,675.78 | CALIF UCD at % | | | Less Total Offsets | | [illegible] |
| Benefit at 70 % | 4,288.41 | Employer's Pension | | | | | 106.12 |
| Pension Contr. | | W.C./Miscellaneous | | [illegible] | | | |
| | | Other Income | [illegible] 6/2/93 | 106.12 | Total Withholdings | | |
| | | | | | Net Payment | [illegible] | [illegible] |
| TOTAL GROSS BENEFIT | [illegible] | TOTAL OFFSETS | | | Pension Contr. | | [illegible] |

Benefit changes to $ ________ on ________ 19 ____

Benefit changes to $ ________ on ________ 19 ____

Benefit changes to $ ________ on ________ 19 ____

## PAYMENT

1 From [illegible] to [illegible] $ [illegible]

continue ____ months ____ weeks ____ days at $ ____

| Memo | Close | Initials | Date | Check No. |
|---|---|---|---|---|
| | | Sh | 21-1-94 | |

2 From ________ to ________ $ ________

continue ____ months ____ weeks ____ days at $ ____

| Memo | Close | Initials | Date | Check No. |
|---|---|---|---|---|
| | | | | |

## NOTES

[illegible]

JANUARY 3, 2000

NOTE TO FILE

MR. ROXBY WAS A "NO SHOW" FOR A SCHEDULED FCE ON NOVEMBER 18, 1999. NEITHER MR. ROXBY OR HIS ATTORNEY, SPENCER A. EMISON, CALLED MED SET OR SUN LIFE TO INFORM US THAT HE WOULD NOT BE ATTENDING THE FCE.

WE WERE CHARGED A "NO SHOW" FEE OF $550.00.

SUN LIFE HAS PAID THIS BILL OF $550.00, EVEN THOUGH IT IS THE CLAIMANT'S RESPONSIBILITY.

IF THIS CASE IS EVER REOPENED OR ANY SUIT FILED AGAINST SUN LIFE OF CANADA, MR. ROXBY IS LIABLE FOR THIS FEE OF $550.00 PAYABLE TO SUN LIFE DIRECTLY.

(DISCUSSED W/S. DECOFF)

JACQUELINE HEINTZ
ASSOCIATE CLAIMS ADMINISTRATOR
GROUP LTD

J. Heintz

Office
Microsoft
Voucher - Microsoft Internet Explorer
Home
Reg Entry
Worklist
Voucher
Query List
Web Voucher
Voucher Summary
Voucher Comments
Vendor
SUNCOAST-002
BRUCE ROXBY
Inv Date
12/28/1999
Terms
U0
AL
550.00
0.00
Status
Invoice Line
Add Invoice Line
FCE NoShow B.Roxby 96878
Detail Line
Amount
Account
Cost Cntr
Segment
Bus Unit
54400911
84217
0499
USBRH
Start
Voucher - Micro
Microsoft Word

#0000600047

PLEASE DO NOT STAPLE IN THIS AREA

SUN LIFE OF CA INSURANCE CO
ONE SUN LIFE EXECUTIVE PARK
WELLESLEY HILLS MA 02481

# HEALTH INSURANCE CLAIM FORM

1. MEDICARE / MEDICAID / CHAMPUS / CHAMPVA / GROUP HEALTH PLAN [X] / FECA BLK LUNG / OTHER

1a. INSURED'S I.D. NUMBER: 235704533

2. PATIENT'S NAME: ROXBY, BRUCE #96878

3. PATIENT'S BIRTH DATE: 04 25 1949 — SEX: M [X]

4. INSURED'S NAME: ATTORNEY SPENCE A EMISON

5. PATIENT'S ADDRESS: 1999 SW 27TH AVE — CITY: MIAMI — STATE: FL — ZIP CODE: 33145 — TELEPHONE: (305) 860 1901

6. PATIENT RELATIONSHIP TO INSURED: Other [X]

7. INSURED'S ADDRESS: 1999 SW 27TH AVE — CITY: MIAMI — STATE: FL — ZIP CODE: 33145 — TELEPHONE: (305) 860 1901

8. PATIENT STATUS: Other [X]

9. OTHER INSURED'S NAME:

10. IS PATIENT'S CONDITION RELATED TO:
a. EMPLOYMENT? (CURRENT OR PREVIOUS): [X] YES
b. AUTO ACCIDENT?: [X] NO
c. OTHER ACCIDENT?: [X] NO

11. INSURED'S POLICY GROUP OR FECA NUMBER: CLM 96878
a. INSURED'S DATE OF BIRTH: 04 25 1947 — SEX: M [X]
d. IS THERE ANOTHER HEALTH BENEFIT PLAN?: [X] NO

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED: SIGNATURE ON FILE — DATE: 12 23 1999

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED: SIGNATURE ON FILE

14. DATE OF CURRENT ILLNESS / INJURY / PREGNANCY: 05 25 1993

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS GIVE FIRST DATE:

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION: FROM — TO

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE: PAGES

17a. I.D. NUMBER OF REFERRING PHYSICIAN: YP

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES: FROM — TO

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?: [X] NO — $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY: 1. UNKNOWN

22. MEDICAID RESUBMISSION CODE — ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24 A. Date(s) of Service From | To | B. Place of Service | C. Type of Service | D. Procedures, Services or Supplies CPT/HCPCS | E. Diagnosis Code | F. $ Charges | G. Days or Units | H. EPSDT Family Plan | I. EMG | J. COB | K. Reserved for Local Use |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11181999 | 11181999 | 11 | 01 | 97799 | 1 | 550 00 | 1 | | | | |

RECEIVED
DEC 28 1999
LONG TERM DISABILITY

25. FEDERAL TAX I.D. NUMBER: 59 2262177 — EIN [X]

26. PATIENT'S ACCOUNT NO.: 00640

27. ACCEPT ASSIGNMENT?: [X] YES

28. TOTAL CHARGE: $ 550 00

29. AMOUNT PAID: $ 0 00

30. BALANCE DUE: $ 550 00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
Gregory Collins
GREGORY COLLINS RPT
SIGNED 12 23 1999

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office):
SUNCOAST REHABILITATION
90 CYPRESS WAY EAST SUITE
NAPLES FL 34110

33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #:
SUNCOAST REHABILITATION
90 CYPRESS WAY EAST SUIT
NAPLES FL 34104
941 591 3331
PIN# PT0002732 — GRP#

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88) PLEASE PRINT OR TYPE APPROVED OMB-0938-0008 FORM HCFA-1500 (12-90) FORM RRB-1500 APPROVED OMB-1215-0055 FORM OWCP-1500 APPROVED OMB-0720-0001 (CHAMPUS)

MED-SET
Independent Medical Examinations

October 28, 1999

Suncoast Rehabilitation
90 Cypress Way Ease Suite 65
Naples, FL 34110

| | |
|---|---|
| EXAM DATE: | 11-18-99 |
| TIME: | 9:00 a.m. to 1:00 p.m. |
| NAME: | Bruce Roxby c/o Attorney Spencer A. Emison |
| ADDRESS: | 1999 S.W. 27th Ave Miami FL 33145 |
| TELE: | 305-860-1901 |
| SS#: | 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 |
| DATE OF BIRTH: | 4-25-47 |
| DATE OF LOSS: | 5-25-93 |

Mail bill and report to: Ms. Jacqueline Heintz
Sun Life of Canada Ins. Co.
One Sun Life Executive Park
Wellesley Hills MA 02481
Tele: 781-446-1249

Dear Physical therapist

Thank you for accepting our request to perform a **Functional Capacity Examination** on the above-named insured. Sun Life of Canada Ins. Co. will provide you with specific written instructions, unless instructions are set out herein below.

The insured is/was usually employed as: autotech mechanic. The insured's diagnosis is that of: s/p cervical and lumbar strain and sprain.

Your office has indicated there will be a fee of $550.00 for your exam and report. A fee of $550.00 may be assessed for a missed exam if the insured fails to cancel within 48 hours of the appointment. **If the Insured/Claimant changes or cancels his or her FCE appointment, Med-Set must be notified immediately of these changes.**

Please bill the requesting insurance company directly for this service, and send your bill along with your final report. IT IS VERY IMPORTANT THAT A REPORT OF YOUR FINDINGS BE FORWARDED TO THE CLIENT INSURANCE COMPANY IN A TIMELY MANNER, USUALLY SEVEN TO TEN DAYS AFTER THE EXAM (UNLESS OTHERWISE INSTRUCTED). DO NOT RELEASE A COPY OF THIS REPORT OR DISCUSS YOUR FINDINGS WITH THE INSURED/CLAIMANT OR ANY AGENCY, PERSON OR REPRESENTATIVE OTHER THAN THE REQUESTING INSURER. PLEASE DO NOT PROVIDE THERAPY.

The requesting insurer is responsible for all authorized charges in connection with this Functional Capacity Examination. Please be advised that testing or procedures not set out with your fee listed above will not be reimbursed unless previously authorized. Please contact the insurance company directly for this authorization.

We thank you for performing this Functional Capacity Examination. If you have any questions, please contact us directly at 1-800-MED-SETT (633-7388) if you have any questions.

Sincerely,
Cristina Herrera

P O Box 161994, Altamonte Springs, FL 32716-1994 • Tel. (407) 862-4660 • Fax (407) 862-7760

Bill for FCE "no show"

$ 550.00
payable to Suncoast Rehabilitation
90 Cypress Way East
Suite 65
Naples FL 34110

Claimant - BRUCE Roxby
Pol. # 96878
SSN: 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

Thanks!
Jackie Heinty
1-3-00

J. Heintz

ROXBY

Examiner - J. Heintz

# BASSETT AGENCY

INVOICE

| | |
|---|---|
| **DATE:** | 11/24/99 |
| **CLIENT:** | SunLife of Canada |
| **CASE #:** | 990124 |
| **INSURED:** | Bruce Roxby |
| **TYPE:** | Surveillance |

Policy #96878

**INVESTIGATIVE SERVICES:**

| | |
|---|---|
| 26.00 hours @ $49.00 per hour including: | $1,274.00 |

- *Preliminary Investigation*
- *Surveillance*
- *Records Check*
- *Telephone services*
- *Activity check*
- *Travel*

**EXPENSES:**

| | |
|---|---|
| Mileage: 430 miles @ .35 ea. | $150.50 |
| Photographs: 6 @ $2.00 ea. | $12.00 |
| Video: | N/C |
| Database: | $39.00 |
| Office: | $47.50 |
| **TOTAL AMOUNT DUE** | **$1,523.00** |

RECEIVED
DEC 01 1999
LONG TERM DISABILITY

TAX ID #04-3266744

*Please make checks payable to: THE BASSETT AGENCY*

*Net terms 30 days. Overdue invoices will be subject to interest at 1.5% per month*

P.O. Box 151, So. Barre, MA 01074 Toll Free 800-616-4223 Fax



One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel: (781) 237-6030
(800) 225-3950

November 19, 1999

Mr. Spencer A. Emison
Law Offices
1999 SW 27th Avenue
1st Floor
Miami, FL 33145

RE: Policy Number: 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Emison:

This letter is in regard to Mr. Roxby's appeal of the denial of Long Term Disability benefits. Based on the review of Mr. Roxby's claim, our decision to deny Mr. Roxby's claim for Long Term Disability benefits has not changed. This is our final determination and his file will remain closed.

In order to be eligible for benefits, an insured must be considered Totally Disabled as defined by the Policy. During the first 60 months of disability, the Policy defines Total Disability as "the inability of the Insured to perform all of the material duties of his regular occupation." Once 60 months of benefits have been paid, the definition of disability changes. At that time, "the Insured must be Totally Disabled from performing the material duties of any gainful occupation for which he may reasonably be fitted by his training, education, or experience." In this case, the change of definition occurred on November 28, 1998.

Under the Policy, Sun Life of Canada also has the right to examine the Insured. "We have the right to examine any person for whom a claim for benefits has been made and to do so as often as we may reasonably require." (page 20 of the policy).

On October 21, 1999, a letter was sent to you indicating that we were reviewing Mr. Roxby's claim due to the appeal. We also informed you that we were exceptionally extending the timeframe and adding an additional 60 days as we planned to conduct a very detailed Functional Capacities Evaluation.

On October 28, 1999, a letter was sent to your office, from Med-Set, an Independent Medical Examination scheduling company, indicating that an appointment had been set up for Mr. Roxby to attend a Functional Capacities Evaluation on November 18, 1999, from 9:00 a.m. to 1:00 p.m. This examination was to take place at Suncoast Rehabilitation, 90 Cypress Way Ease, Suite 65, Naples, Florida.

The letter also stated that if Mr. Roxby could not make this appointment, you must contact Med-Set immediately. If Mr. Roxby failed to keep this appointment and if he did not cancel within the physical therapy center's time limits, which was 48 hours prior to the examination, he could be liable for the no-show fee of $550.00.

Neither Med-Set or Sun Life of Canada received any calls from you stating that Mr. Roxby was not going to attend this examination.

On November 18, 1999, Sun Life of Canada received a phone call from both Med-Set and Suncoast Rehabilitation indicating that Mr. Roxby did not attend the evaluation.

On November 18, 1999, Sun Life of Canada left a message at your office pertaining to this matter. We have not heard from you as to why Mr. Roxby did not attend this examination.

Our decision to uphold the denial is based on the information already submitted. The medical information along with the FCE and TSE on November 19, 1998, indicate that although Mr. Roxby has some restrictions/limitations, he appears capable of performing medium work. Our rehabilitation consultant noted on June 16, 1999 that "if we stepped down Mr. Roxby's restrictions to light vs. Medium, the TSA still shows a number of jobs that he is able and qualified to perform."

We scheduled the FCE for November 18, 1999, to further investigate his skills and to help us make a decision on his appeal. Since Mr. Roxby did not attend this examination, there is no other information to support his claim for disability from any occupation. Therefore, we are upholding our decision to deny his claim and no benefits are payable. This is our final determination and all levels of appeal have been exhausted.

If you have any questions, please feel free to contact our office at 1-800-247-6875.

Sincerely,

Jacqueline Heintz
Associate Claims Administrator
Group LTD

cc: Bruce Roxby

REVIEW OF APPEAL 11-19-99

BRUCE ROXBY
POLICY NO.: 96878

Mr. Roxby did not attend the FCE that was scheduled for 9:00 a.m. this morning. We did not receive any phone calls from him or his attorney indicating that he would not be attending.

Since he was noncompliant with our procedures, recommend we uphold denial based on the information in the file that he is not totally disabled any occupation.

Feel that we should continue with the surveillance for file documentation.

J Heintz

Jacqueline Heintz
Associate Claims Administrator
Group LTD

**TELEPHONE CONVERSATION**

From: Christina/Med Set and Pamela Freeman/ Physical Therapist
Telephone Number: 407-862-4660 //941-591-2620

**RE: BRUCE ROXBY**
Claim Number: 96878
Control Number: 271293-20003-00

Received call from Christina at MedSet and Pamela Freeman, P.T. regarding the above insured. Time was 9:30. He was scheduled for an FCE at 9:00 and is not there yet.

I called attorney's office, Spencer Emison and left msg w/secretary. Wanting to know if he did not plan to attend, we should have been contacted and want to know what the problem is that Mr. Roxby is not there....

Jheintz 11-18-99
Jacqueline Heintz
Associate Claims Administrator
Group LTD



October 28, 1999

96878

Ms. Jacqueline Heintz
Sun Life of Canada Ins. Co.
One Sun Life Executive Park
Wellesley Hills MA 02481

RE: **Bruce Roxby c/o**
Spencer A. Emison
1999 S.W. 27th Ave
Miami FL 33145
Tele: 305-860-1901
Claim No. not listed
Policy No. 96878

Dear Ms. Heintz:

As requested, we have arranged to have the above-named Claimant seen for a **Functional Capacity Examination** on 11-18-99 @ 9:00 a.m. to 1:00 p.m.

The Claimant will be examined by a : Pamela Freehan, Physical therapist

@ Suncoast Rehabilitation
90 Cypress Way Ease Suite 65
Naples, FL 34110
Tele: 941-591-2620

Please forward all relevant medical information and questionnaires you desire, if any, to the physical therapy center at your earliest convenience.

Thank you for your confidence in Med-Set. We greatly appreciate your business; we will follow up with a telephone call on the day after the examination.

Sincerely yours,

Cristina Herrera



MED-SET
Independent Medical Examinations

## INVOICE FOR SERVICES

October 28, 1999

Ms. Jacqueline Heintz
Sun Life of Canada Ins. Co.
One Sun Life Executive Park
Wellesley Hills, MA 02481

RE: Bruce Roxby CL: not listed

Date of Exam: 11-18-99 @ 9:00 a.m. to 1:00 p.m.

Examining Office: Suncoast Rehabilitation

| | |
|---|---|
| 1. Coordination of **Functional Capacity Examination** | $135.00 |
| 2. Notice to Claimant via regular mail and Certified Mail Return Receipt Requested: | $5.00 |
| | $140.00 |

**PAYMENT DUE UPON RECEIPT**
**Tax ID# 59-3244929**

**All payments should be mailed to the following address:**
**P.O. Box 161994**
**Altamonte Springs, FL 32716-1994**

Please make check payable in full to **MED-SET**

**We sincerely appreciate the opportunity to serve you.**

P.O. Box 161994, Altamonte Springs, FL 32716-1994 • Tel (407) 862-4060 • Fax (407) ...



MED-SET
Independent Medical Examinations

October 28, 1999

Suncoast Rehabilitation
90 Cypress Way Ease Suite 65
Naples, FL 34110

| | |
|---|---|
| **EXAM DATE:** | **11-18-99** |
| **TIME:** | **9:00 a.m. to 1:00 p.m.** |
| **NAME:** | **Bruce Roxby c/o Attorney Spencer A. Emison** |
| **ADDRESS:** | **1999 S.W. 27th Ave Miami FL 33145** |
| **TELE:** | **305-860-1901** |
| **SS#:** | **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** |
| **DATE OF BIRTH:** | **4-25-47** |
| **DATE OF LOSS:** | **5-25-93** |

Mail bill and report to: Ms. Jacqueline Heintz
Sun Life of Canada Ins. Co.
One Sun Life Executive Park
Wellesley Hills MA 02481
Tele: 781-446-1249

Dear Physical therapist:

Thank you for accepting our request to perform a **Functional Capacity Examination** on the above-named insured. Sun Life of Canada Ins. Co. will provide you with specific written instructions, unless instructions are set out herein below

The insured is/was usually employed as: autotech mechanic. The insured's diagnosis is that of: s/p cervical and lumbar strain and sprain.

Your office has indicated there will be a fee of $550.00 for your exam and report. A fee of $550.00 may be assessed for a missed exam if the insured fails to cancel within 48 hours of the appointment. **If the Insured/Claimant changes or cancels his or her FCE appointment, Med-Set must be notified immediately of these changes.**

Please bill the requesting insurance company directly for this service, and send your bill along with your final report. IT IS VERY IMPORTANT THAT A REPORT OF YOUR FINDINGS BE FORWARDED TO THE CLIENT INSURANCE COMPANY IN A TIMELY MANNER, USUALLY SEVEN TO TEN DAYS AFTER THE EXAM (UNLESS OTHERWISE INSTRUCTED). DO NOT RELEASE A COPY OF THIS REPORT OR DISCUSS YOUR FINDINGS WITH THE INSURED/CLAIMANT OR ANY AGENCY, PERSON OR REPRESENTATIVE OTHER THAN THE REQUESTING INSURER. PLEASE DO NOT PROVIDE THERAPY.

The requesting insurer is responsible for all authorized charges in connection with this Functional Capacity Examination. Please be advised that testing or procedures not set out with your fee listed above will not be reimbursed unless previously authorized. Please contact the insurance company directly for this authorization.

We thank you for performing this Functional Capacity Examination. If you have any questions, please contact us directly at 1-800-MED-SETT (633-7388) if you have any questions.

Sincerely,
Cristina Herrera

P.O. Box 161994, Altamonte Springs, FL 327[illegible] • Tel. (407) 862-4660 • Fax (407) 862-[illegible]



MED-SET
Independent Medical Examinations

October 28, 1999

Spencer A. Emison
1999 S.W. 27th Ave
Miami, FL 33145

RE: Bruce Roxby
Policy # 96878
Claim # not listed

Dear Claimant:

Med-Set has been contacted by the Sun Life of Canada Ins. Co. and they have asked us to arrange and coordinate a **Functional Capacity Examination.**

This examination will be at no cost to you and will be paid in full by the requesting company.

This appointment has been scheduled for 11-18-99 @ 9:00 a.m. to 1:00 p.m.

with: Suncoast Rehabilitation ( off Immokalee Rd.)
90 Cypress Way Ease Suite 65
Naples, FL 34110
941-591-2620

Please contact this rehabilitation office directly to confirm your appointment and to request specific directions, if needed.

If you cannot make this appointment and need to either change the date or time, please contact our office immediately **(800-633-7388)** and we will work with you and the physical therapy center in an effort to reschedule. If we do not hear from you, we will assume that you will keep this scheduled appointment. IF YOU FAIL TO KEEP THIS APPOINTMENT AND DO NOT CANCEL WITHIN THE PHYSICAL THERAPY CENTER'S TIME LIMITS, THEN YOU COULD BE LIABLE FOR THE NO SHOW FEE. The No Show fee is $550.00 if the appointment is not cancelled or rescheduled 48 hours prior to the appointment date set out above.

We thank you for your cooperation in this matter. If you have any questions, please contact Med-Set directly.

Sincerely yours,

C. Herrera
Cristina Herrera

RECEIVED
NOV 04 1999

P.O. Box 161994, Altamonte Springs, FL 32716-1994 • Tel. (407) 862-4660 • Fax (407) 862-

MED-SET
Independent Medical Examinations
P.O. Box 161991
Altamonte Springs, FL 32716-1991

3208

Ms. Jacqueline Heintz
Sun Life of Canada Ins. Co.
One Sun Life Executive Park
Wellesley Hills MA02481

02481-5699 97

**THE MED-SET CORPORATION**
QUALITY COORDINATION OF INDEPENDENT MEDICAL EXAMINATIONS
P.O. Box 161994
Altamonte Springs, FL 32716
tele: 407-862-4660
fax: 407-862-7760

**FACSIMILE TRANSMISSION:**

TO: Jacqueline Heintz

COMPANY: Sun Life of Canada

FAX #: speed dial (781) 235-0784

FROM: Cristina Herrera

DATE: 10-29-99

RE: B. Roxby

PAGES: 2 Including this cover sheet

MESSAGE:

Originals are in the mail. Thank you for the referral. Have a great weekend!



MED-SET
Independent Medical Examinations

October 28, 1999

2

Ms. Jacqueline Heintz
Sun Life of Canada Ins. Co.
One Sun Life Executive Park
Wellesley Hills MA 02481

RE: Bruce Roxby c/o
Spencer A. Emison
1999 S.W. 27th Ave
Miami FL 33145
Tele: 305-860-1901
Claim No. not listed
Policy No. 96878

Dear Ms. Heintz:

As requested, we have arranged to have the above-named Claimant seen for a **Functional Capacity Examination** on 11-18-99 @ 9:00 a.m. to 1:00 p.m.

The Claimant will be examined by a : Pamela Freehan, Physical therapist

@ Suncoast Rehabilitation
90 Cypress Way Ease Suite 65
Naples, FL 34110
Tele: 941-591-2620

Please forward all relevant medical information and questionnaires you desire, if any, to the physical therapy center at your earliest convenience.

Thank you for your confidence in Med-Set. We greatly appreciate your business; we will follow up with a telephone call on the day after the examination.

Sincerely yours,

Cristina Herrera

P.O. Box 161994, Altamonte Springs, FL 32716-1994 • Tel. (407) 862-4660 • Fax (407) 862-77[illegible]

October 22, 1999

Attention: Christina
Med-Set

Fax Number: 407-862-7760

Total Number of Pages Sent: 2

RE: Claimant: Bruce Roxby
SSN: 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

Dear Christina:

Attached is the Request for a Functional Capacities Evaluation on the above Claimant.

Please be advised that he has an attorney, Spencer E. Emison and we must deal with him directly. His telephone number is on the Request sheet.

Please let me know if there is anything else that you need. My direct number is 781-446-1249. I look forward to working with you.

Sincerely,

Jacqueline Heintz
Associate Claims Administrator
Group LTD

FCE request

MED-SET
Independent Medical Examinations

EE has Attorney: Spencer A. Emison

Date of Request 10-22-99

**REQUEST FOR EXAMINATION**

| | |
|---|---|
| CLAIMANT NAME Bruce Roxby | REFERRED BY (NAME) Jacqueline Heintz |
| ADDRESS 1999 SW 27th Ave | COMPANY Sun Life |
| CITY Miami First Floor ST. FL ZIP 33145 | ADDRESS One Sun Life Executive Park |
| PHYSICAL ADDRESS IF P.O. BOX (above is atty's address) | CITY Wellesley Hills ST. MA ZIP 02481 |
| PHONE atty- 305-860-1901 / DATE OF BIRTH 4-25-47 | PHONE 781-446-1249 |
| CLAIM NO. / SOC. SEC. NO. 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 | INSURANCE COVERAGE ___ W.C. ___ INDIVIDUAL DISABILITY X GROUP LONG-TERM DISABILITY ___ OTHER |
| POLICY NO. 96878 | |

DIAGNOSIS (DATE) 5-26-93 S/P cervical/lumbar strain-sprain

LIST CLINICS, DOCTORS, HOSPITALS NAMES, ADDRESSES AND PHONE NUMBERS WHERE PATIENT HAS RECEIVED CARE:(If possible, please list City & State and Physician Specialty):

1. Jeffrey Perkins MD 3230 Sterling Rd Hollywood FL 33021 954-963-5000
2. Francis T Schwerin MD 694 8th St N Naples FL 34102 (cardio) #941-434-7227
3. 
4. 

| | |
|---|---|
| DATE OF LOSS | HANDLING: RUSH OR REGULAR (please circle one): |
| OCCUPATION | |
| EMPLOYER NAME | EMPLOYER ADDRESS |

SPECIAL INSTRUCTIONS:

TYPE OF SPECIALIST PERFORMING IME ___
TYPE OF SPECIALIST CURRENTLY ATTENDING PHYSICIAN ___
AMOUNT OF MEDICAL RECORDS (e.g., ONE INCH) ___
COST CAP FOR IME ___
ADDL. TESTING AUTHORIZED, NO INVASIVE ___
ANY DRIVING OR RIDING RESTRICTIONS ___
ANY SPECIAL HANDLING FCE must be detailed for gainful employment

October 22, 1999

Attention: Christina
Med-Set

Fax Number: 407-862-7760

Total Number of Pages Sent: 2

RE: Claimant: Bruce Roxby
SSN: 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

Dear Christina:

Attached is the Request for a Functional Capacities Evaluation on the above Claimant.

Please be advised that he has an attorney, Spencer E. Emison and we must deal with him directly. His telephone number is on the Request sheet.

Please let me know if there is anything else that you need. My direct number is 781-446-1249. I look forward to working with you.

Sincerely,

J Heintz

Jacqueline Heintz
Associate Claims Administrator
Group LTD



One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel: (781) 237-6030
(800) 225-3950

October 21, 1999

Mr. Spencer A. Emison
Law Offices of Spencer A. Emison, P.A.
1999 S.W. 27th Avenue
First Floor
Miami, FL 33145

Re: Policy Number: 96878 -Appeal - Group Long Term Disability Benefits
Claimant: Bruce Roxby

Dear Mr. Emison:

I am writing to you with regard to Mr. Roxby's appeal of the denial for Long Term Disability Benefits.

Based on our letter to you dated September 20, 1999, you were informed that a final appeal determination would be made within 60 days, or October 30, 1999, unless special circumstance exist. At this time, I am exceptionally extending the timeframe and adding an additional 60 days or until December 30, 1999.

This extension is needed in order to make a full and fair review of his appeal.

At this time, we are conducting a very detailed Functinal Capacities Evaluation in regard to Mr. Roxby's occupation and the restrictions/limitations that are placed on him.

We look forward to resolving this appeal as soon as possible. Should you have any questions or concerns, please feel free to contact me at 1-800-247-6875.

Sincerely,

Jacqueline Heintz
Associate Claims Administrator
Long Term Disability

cc: file

************** -COMM. JAL- ****************** DATE OCT-20-19 *** TIME 09:31 *** P.01

MODE = MEMORY TRANSMISSION START=OCT-20 09:29 END=OCT-20 09:31

FILE NO.= 162

| STN NO. | COM | ABBR NO. | STATION NAME/TEL.NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | * | 918006154223 | 001/001 | 00:00'45" |

To: Attila Lore - Bassett Agency

Fm: Jacqueline Heintz, Sun Life

Re: *Surveillance Request*

**BRUCE ROXBY**
Policy # 96878
Control # 271293-20003-00

Address: 2636 SW Terrace, Naples, FL 34116
Telephone: (941)370-9289
SSN: 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

Diagnosis: Cervical Radiculopathy C6-7, Cervical Strain/Sprain
Symptoms: Pain in neck, lower Back with limited range of motion, decreased hand motion

Could walk with a limp, and/or with use of a cane. Limited in ability to stand, walk, sit, carry, crouch or climb stairs.

Advised to have surgery…to date, has not chosen to do so. Never really participated in a physical therapy program to recondition himself to be able to return to work.

Still a question as to the severity of his condition.

Physical description of the claimant:
5'10"
weight: 160-170 lbs.
Grayish hair
glasses

Attila, please set up surveillance for 3 days in order to video his activity level.

Call me with any questions. Thanks.

JHeintz
10-20-99

To: Attila Lore - Bassett Agency

Fm: Jacqueline Heintz, Sun Life

Re: *Surveillance Request*

**BRUCE ROXBY**
Policy # 96878
Control # 271293-20003-00

Address: 2636 SW Terrace, Naples, FL 34116
Telephone: (941)370-9289
SSN: 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

Diagnosis: Cervical Radiculopathy C6-7, Cervical Strain/Sprain
Symptoms: Pain in neck, lower Back with limited range of motion, decreased hand motion

Could walk with a limp, and/or with use of a cane. Limited in ability to stand, walk, sit, carry, crouch or climb stairs.

Advised to have surgery...to date, has not chosen to do so. Never really participated in a physical therapy program to recondition himself to be able to return to work.

Still a question as to the severity of his condition.

Physical description of the claimant:
5'10"
weight: 160-170 lbs.
Grayish hair
glasses

**Attila, please set up surveillance for 3 days in order to video his activity level.**

**Call me with any questions. Thanks.**



Appeal Review

B Roxby

Agree with recommendations.
ERISA 60 = 10/30/99

Need to extend additional 60 days until 12/30/99 explaining circumstances

Proceed.
Any questions please let me know

TKS
Sandy

S. DeCoff OCT 20 1999

MEMO

REVIEW OF APPEAL

CLAIMANT: Bruce Roxby
GROUP NUMBER: 96878
CONTROL NO.: 090998-20000-00

Mr. Roxby, through his attorney, Mr. Spencer Emison, has submitted an appeal of the denial of his Long Term Disability claim.

He was 46 years old at onset date of disability, occupation-Auto Technician/Mechanic.
Diagnosis: Cervical Radiculopathy C6-7, cervical and lumbar strain/sprain.
Hired: July 14, 1982
Effective: July 14, 1983
Last Day Worked: May 25, 1993
Onset Date: 5/24/97
Own Occ Period of Disability: 5 years own occupation

Mr. Roxby became disabled due to a work related injury. He was carrying something and a car was on a lift, and he walked into it and hit his head on the tire, which caused him to fall. He complained of neck pain and was seen by Dr. Lang, on 5/26/93 who gave a dx of low grade cervical radiculopathy C6-7 w/numbness and tingling in C-7 distribution. He prescribed physical therapy and anti-inflammatories. Not sure if ee completed p.t.

Next visit w/Dr. Novick states the diagnosis as Myofascial Pain Syndrome, left lumbar facet syndrome. He found Mr. Roxby to be MMI at this time. Restrictions: walk 15 min., sit- 20 min., stand- 20 min., lift- 25 lbs., push- 10 lbs.

Denied SSDI on March 24, 1994 and also denied at appeals level. Cannot locate the date in the file at this time. No SSDI benefits awarded at all up to this time.

October 3, 1994, Dr. Mendelsohn agrees w/Dr. Novick that Mr. Roxby has reached MMI.
March 28, 1995, Dr. Bonis gives ee diagnosis of Cervical Lumbar Strain/Sprain.
October 1998: Medical consult review found functional capacity: recommended FCE, TSA, but said to get clearance from ee's cardiologist, Dr. Sxhwerin who recently diagnosed ee w/CAD.

FCE: Medium capacity, FT, limited walking, sustained bending, overhead reaching, ladder climbing, writing and firm grasping on an occasional basis. Cardiologist agrees with the FCE but won't comment on neurological aspects.

TSA: identified occupations within sedentary or light duty capacity, service repair estimator, service manager, dispatcher, auto tester or auto damage appraiser.

Mr. Roxby, through his attorney, submits additional office treatment notes dated January 7, 1999, from Dr. Perkins (who last tx ee on 8/7/98) that Mr. Roxby only has PT minimal work capacity.

Attorney also feels ee's claim underpaid, rather than overpaid (60% vs. 70%). (refer to file for additional information on this).

Based on the above information, it appears that the employee, Mr. Roxby, has not treated with one specific physician this entire time. Several different doctors submit physicians statements and there doesn't appear to be continual treatment. It does not appear that Mr. Roxby ever attended a work hardening, physical therapy type program when the injury first occurred to help him return to work.

The Functional Capacity Assessment should be further investigated as the jobs indicated above may not be "gainful" to Mr. Roxby It is very doubtful that Mr. Roxby and his attorney will accept a settlement for this claim. I also feel that we should obtain an Activities check on Mr. Roxby. Once this information is received, review for decision of appeal.

J. Heintz 10-19-99

Jacqueline Heintz
Associate Claims Administrator
Group LTD

TO: FILE

FROM: Laura L. Ketchum LLK

DATE: 10/10/99

RE: ERISA review for Bruce Roxby
Group No.: 96878
Control No.: 090998-20000

The clmt is a 52 y.o. auto technician/mechanic claiming disability due to a neck and back injury resulting from a fall at work. DOH 7/14/82; EDOC 7/14/83; LDW 5/25/93. 60 month own occ def of dis. Claim denied not TD any occ based on FCE, cardio opinion (sed-light wc) and TSA which identified occs w/in light capacity.

AP Lang 5/26/93: low grade cervical radiculopathy C6-7 w/ numbness and tingling in C7 distribution; Rx PT and anti-inflammatories 4-6 weeks.

12/8/93: Dx myofascial pain syndrome, left lumbar facet syndrome; clmt found to be at MMI by Dr. Novick. Walk 15 min; sit 20 min; stand 20 min; lift 25 lbs; push 10 lbs.

3/24/94 SSDI denied.

10/3/94 Dr. Mendelsohn agrees w/ Dr. Novick that clmt is at MMI.

3/28/95 Dr. Bonis Dx cervical lumbar sprain and strain.

Med consult review 10/98 found functional capacity: rec FCE and TSA, but said to get okay from cardiologist (Dr. Schwerin) (recent Dx CAD).

FCE: medium capacity, FT; limited walking, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping on an occasional basis.

Med consult 6/10/99: clmt has sed or light duty capacity based on cardio and back info. (Cardiologist agrees w/ FCE but won't comment on neurological aspects 4/13/99).

TSA in file based analysis on AP Perkins info from APS dated 8/7/98 and FCE results of 11/98. TSA identified occs w/in sed or light duty capacity: service repair estimator, service manager, dispatcher, auto tester, auto damage appraiser.

Clmt appeals through atty and submits OTN dated 1/7/99 from Dr. Perkins (last saw clmt 8/7/98) who asserts that clmt only has PT minimal capacity work capacity. Also asserts that there was an underpayment of clmt's benefits (60% v. 70% benefit minus offsets, whichever is lesser amt; atty wants 70% minus worker's comp offset).

Pre-dis earnings: $59,527.83/yr; 4,960.65/month; 1,144.77/week.
Gainful (<u>w/out 5 yrs indexation</u>): $35,716.70/yr; 2,976.39/month; 686.86/week

REC: gainful is an issue. Voc identified occs that are not gainful (60% of pre-dis indexed earnings) but are w/in clmt's skills. Claim is payable unless med supports functional capacity for own occ or voc can identify gainful any occs. Consider further investigation of functional capacity and/or settlement.

Additional note: file needs page 8 of the policy.

DATE: 9-24-99

APPEAL

NAME: **BRUCE ROXBY**

GROUP NO: 96878

CONTROL NO: 271293-20003

APPEAL RECEIVED 8/30/99 60 DAYS =10/30/99
NEED TO REVIEW ENTIRE FILE AND MAKE ANY RECOMMENDATIONS OR SUGGESTIONS AND/OR FINAL APPEAL DETERMINATION.

PLEASE DICTATE ANY APPROPRIATE CORRESPONDENCE.

ANY QUESTIONS, PLEASE LET ME KNOW.

THANK YOU



 Sun Life
of Canada

One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel: (781) 237-6030
(800) 225-3950

COPY

September 20, 1999

Mr. Spencer A. Emison
Law Offices of Spencer A. Emison, P.A.
1999 S.W. 27th Avenue
First Floor
Miami, FL 33145

Re: Policy No: 96878- Group Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Spencer:

Thank you for your letter dated August 27, 1999 in which on behalf of Mr. Roxby, you requested an appeal to our decision and request a re-evaluation of his claim.

Under the appeal process we will conduct a further review of your file to include the additional information submitted and provide you with a response within 60 days from the receipt of your appeal. In the event we find additional time is needed to complete our review, you will be notified immediately.

Thank you for your patience and cooperation as we move through this process. If you have any questions please contact Sandy DeCoff at 1-800-247-6875.

Sincerely,

Lee Ann Engert, ALHC
Sr. Claims Administrator
Group Long Term Disability

cc. Ms. Pam Abis

Sun Life of Canada
*Group LTD Claims*

**FILE MEMO**

Re : Bruce Roxby, 96878-GD
Date : September 17, 1999
From : **Laurel E. Morris**

**Claim has come in for appeal. One office note dated 6-3-99 has been submitted.**

**As I have rendered my decision previously, Mark recommends you refer Mr. Roxby's file to our outside review specialist.**

**We have done an FCE and a TSA and medical reviews by Alice Cluett, RN and Dr. Kaufman.**

---



FL

LAW OFFICES OF SPENCER A. EMISON, P.A.

August 27, 1999

VIA FAX & CERTIFIED MAIL

Ms. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

**RE: Claimant Bruce Roxby,**
**Policy No. 96878-GD-Long Term Disability**

Dear Ms. Morris:

**APPEAL FROM CLAIM DENIAL**

Mr. Roxby appeals your July 1, 1999 denial of his claim for benefits under the above referenced policy on the following grounds:

1. Roxby references and incorporates herein the attached January 26,1999 letter by attorney Mark Hicks which details defects in Sun Life's analysis and denial of this claim.

2. **Sun Life has failed to give proper consideration to Roxby's treating physician's findings:**

In your possession (another copy attached) is a 1/7/99 office note from Roxby's long term treating physician, Dr. Jeffrey Perkins, which sets forth Dr. Perkins finding that Roxby has a very limited capacity and endurance to work due to his central spinal cord injury and significant blockage of an artery. Dr. Perkins specifically disagrees with the functional capacity assessment because of Roxby's history and condition, including weakness, coordination problems, and heart condition. Dr. Perkins also points out the danger of Roxby aggravating his spinal cord injury and heart condition if he overexerts himself or moves his hands in common actions. Yet your denial of benefits entirely fails to consider these findings and opinions.

Dr. Perkin's 6/3/99 office note (attached) also references Roxby's difficulty walking, because of a significant limp and decreased range of motion, which further limits his activities.

RECEIVED
SEP 01 1999
LONG TERM DISABILITY

999 S.W. [illegible] AVENUE
FIRST FLOOR
MIAMI, FLORIDA
33145
TEL [illegible]
FAX [illegible]

3. **Sun Life's evaluation of Roxby is inadequate and unsupported:**

To date, no doctor who has actually treated or examined Roxby has come to the conclusions Sun Life has regarding Roxby's physical abilities or capacity to work. You reference the opinion of Roxby's cardiologist, Dr. Schwerin, that Roxby is capable of sedentary or light duty work, but you fail to appreciate that this takes into consideration only Roxby's heart condition. Your "in-house consultant," whose records and reports are hereby requested, cannot make an adequate determination of Roxby's abilities without examining him herself. Nor have you stated her qualifications to render an opinion which takes into consideration Roxby's orthopedic, neurological, and cardiac condition.

The Work Capacities Assessment acknowledges the severe limitations and difficulties Roxby suffers from, even commenting on his need to assist his dominant right hand with his left when writing, and the pain he experienced while performing simple tasks. It also records his report, the day after the assessment, of severe pain which resulted from the 4 hours of testing.

Despite this assessment, the "Transferable Skills Analysis" found Roxby capable of full time, Medium category work. The analysis references the physicians' diagnoses regarding Roxby's disc injuries and back pain, but makes no mention of the much more serious spinal cord injury. Nor does it factor in his heart condition. The analyst completely misses the simple truth that Roxby cannot even write without difficulty, and that the most sedentary of tasks, done repetitively, cause him great pain. Nor does the report consider the potential for aggravating Roxby's spinal cord injury, the result of which could be paralysis.

What company will hire, train, and retain for the position of Service-Repair Estimator, Service Manager, Dispatcher, Auto Tester, or any position, a 52 year old man who has difficulty simply writing, and who exposes such company to significant risk of liability for an on the job injury ?

4. **Sun Life has failed to give any consideration to the chronic and cumulative nature and impact of Roxby's injuries and heart condition:**

Mr. Roxby was first injured 10 years ago in an automobile accident at which time he was diagnosed with the disc injuries and related ulnar neuropathy. He continued to work until he was once again injured on the job when his head struck a tire while he was walking out from underneath a car. Added to his physical problems was the diagnosis of central spinal cord ischemia and increasingly exacerbated symptomology. He was left with a severe limp, decreased fine motor skills, weakness and numbness in both hands, herniated and bulging discs, restricted range of motion and weakness in his extremeties, and severe, constant pain in his neck, back, and shoulder. On top of all of this he is

suffering from exercise induced myocardial ischemia which further limits his ability to carry on normal activities, including work, which he simply cannot do in any capacity.

Your Work Capacities Assessment Report confirms that Mr. Roxby is no malingerer. He showed consistent effort on all tests. He did not exaggerate his symptoms. He had no non-anatomical distribution of pain.

Mr. Roxby is suffering from a completely disabling, and debilitating, combination of physical ailments which prevent him from working in any capacity. He is totally disabled as that term is defined in the policy, and in the case law on this issue. He is entitled to his benefits under the policy.

It is further our position that Sun Life has waived preemption under ERISA by the policy language which states the policy is governed by the laws of the jurisdiction where the application was signed, which is Florida. Therefore, contemporaneously with this appeal, I am filing suit in state court to recover benefits past due, and to obtain a declaration from the court that Sun Life is obligated to pay future disability benefits. Mr. Roxby will also be pursuing a claim for Social Security disability benefits.

I await your response.

Very truly yours,

Spencer A. Emison

FL

LAW OFFICES OF SPENCER A. EMISON, P.A.

August 27, 1999

VIA FAX & CERTIFIED MAIL

Ms. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

RE: **Claimant Bruce Roxby**
**Policy No. 96878-GD-Long Term Disability**

Dear Ms. Morris:

**APPEAL FROM CLAIM DENIAL**

Mr. Roxby appeals your July 1, 1999 denial of his claim for benefits under the above referenced policy on the following grounds:

1. Roxby references and incorporates herein the attached January 26,1999 letter by attorney Mark Hicks which details defects in Sun Life's analysis and denial of this claim.

2. **Sun Life has failed to give proper consideration to Roxby's treating physician's findings:**

In your possession (another copy attached) is a 1/7/99 office note from Roxby's long term treating physician, Dr. Jeffrey Perkins, which sets forth Dr. Perkins finding that Roxby has a very limited capacity and endurance to work due to his central spinal cord injury and significant blockage of an artery. Dr. Perkins specifically disagrees with the functional capacity assessment because of Roxby's history and condition, including weakness, coordination problems, and heart condition. Dr. Perkins also points out the danger of Roxby aggravating his spinal cord injury and heart condition if he overexerts himself or moves his hands in common actions. Yet your denial of benefits entirely fails to consider these findings and opinions.

Dr. Perkin's 6/3/99 office note (attached) also references Roxby's difficulty walking, because of a significant limp and decreased range of motion, which further limits his activities.

RECEIVED
AUG 30 1999
LONG TERM DISABILITY

FIRST FLOOR
MIAMI, FLORIDA

3. **Sun Life's evaluation of Roxby is inadequate and unsupported:**

To date, no doctor who has actually treated or examined Roxby has come to the conclusions Sun Life has regarding Roxby's physical abilities or capacity to work. You reference the opinion of Roxby's cardiologist, Dr. Schwerin, that Roxby is capable of sedentary or light duty work, but you fail to appreciate that this takes into consideration only Roxby's heart condition. Your "in-house consultant," whose records and reports are hereby requested, cannot make an adequate determination of Roxby's abilities without examining him herself. Nor have you stated her qualifications to render an opinion which takes into consideration Roxby's orthopedic, neurological, and cardiac condition.

The Work Capacities Assessment acknowledges the severe limitations and difficulties Roxby suffers from, even commenting on his need to assist his dominant right hand with his left when writing, and the pain he experienced while performing simple tasks. It also records his report, the day after the assessment, of severe pain which resulted from the 4 hours of testing.

Despite this assessment, the "Transferable Skills Analysis" found Roxby capable of full time, Medium category work. The analysis references the physicians' diagnoses regarding Roxby's disc injuries and back pain, but makes no mention of the much more serious spinal cord injury. Nor does it factor in his heart condition. The analyst completely misses the simple truth that Roxby cannot even write without difficulty, and that the most sedentary of tasks, done repetitively, cause him great pain. Nor does the report consider the potential for aggravating Roxby's spinal cord injury, the result of which could be paralysis.

What company will hire, train, and retain for the position of Service-Repair Estimator, Service Manager, Dispatcher, Auto Tester, or any position, a 52 year old man who has difficulty simply writing, and who exposes such company to significant risk of liability for an on the job injury ?

4. **Sun Life has failed to give any consideration to the chronic and cumulative nature and impact of Roxby's injuries and heart condition:**

Mr. Roxby was first injured 10 years ago in an automobile accident at which time he was diagnosed with the disc injuries and related ulnar neuropathy. He continued to work until he was once again injured on the job when his head struck a tire while he was walking out from underneath a car. Added to his physical problems was the diagnosis of central spinal cord ischemia and increasingly exacerbated symptomology. He was left with a severe limp, decreased fine motor skills, weakness and numbness in both hands, herniated and bulging discs, restricted range of motion and weakness in his extremeties, and severe, constant pain in his neck, back, and shoulder. On top of all of this he is

suffering from exercise induced myocardial ischemia which further limits his ability to carry on normal activities, including work, which he simply cannot do in any capacity.

Your Work Capacities Assessment Report confirms that Mr. Roxby is no malingerer. He showed consistent effort on all tests. He did not exaggerate his symptoms. He had no non-anatomical distribution of pain.

Mr. Roxby is suffering from a completely disabling, and debilitating, combination of physical ailments which prevent him from working in any capacity. He is totally disabled as that term is defined in the policy, and in the case law on this issue. He is entitled to his benefits under the policy.

It is further our position that Sun Life has waived preemption under ERISA by the policy language which states the policy is governed by the laws of the jurisdiction where the application was signed, which is Florida. Therefore, contemporaneously with this appeal, I am filing suit in state court to recover benefits past due, and to obtain a declaration from the court that Sun Life is obligated to pay future disability benefits. Mr. Roxby will also be pursuing a claim for Social Security disability benefits.

I await your response.

Very truly yours,

Spencer A. Emison

RECEIVED
AUG 30 1999
LONG TERM DISABILITY

MEMORY TRANSMISSION REPORT

TIME : 07-01-99 01:21PM
TEL NUMBER1: 17812350784
NAME : SUN LIFE GROUP DISABILITY

FILE NUMBER : 296

DATE : 07-01 01:15PM

TO : 13058601902

DOCUMENT PAGES : 04

START TIME : 07-01 01:15PM

END TIME : 07-01 01:21PM

SENT PAGES : 04

FILE NUMBER : 296 *** SUCCESSFUL TX NOTICE ***

Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

FAX transmittal

**Recipient** : **Spencer A. Emison**

**Fax Number** : 305-860-1902

**Subject** : **Bruce Roxby, 96878-GD Long Term Disability**

**From** : **Laurel E. Morris (ext. 3399)**

**Date** : July 1, 1999

Number of pages including header : 4

**COMMENTS :**

The original denial letter and copies of the FCE & TSA will be forthcoming in the mail



One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel (781) 237-6030
(800) 225-3950

July 1, 1999

Pam Abis
JM Family Enterprises, Inc.
8019 Bayberry Rd.
Jacksonville, FL 32256

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Ms. Abis:

We have completed our review of the claim for the Long Term Disability submitted for Bruce Roxby and have denied benefits beyond November 21, 1998.

We have provided the specifics of that denial to Mr. Roxby in a separate letter. As the letter may contain confidential information, we are not able to provide you with a copy.

If you have any questions, please contact this office at 1-800-432-1102 x3399.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208



*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

# FAX transmittal

Recipient : **Spencer A. Emison**

Fax Number: 305-860-1902

Subject : Bruce Roxby, 96878-GD Long Term Disability

From : **Laurel E. Morris (ext. 3399)**

Date : July 1, 1999

Number of pages including header : 4

***COMMENTS :***

The original denial letter and copies of the FCE & TSA will be forthcoming in the mail.

ROXBY

Sun Life of Canada
*Group LTD Claims*

Re : Bruce Roxby. 96878
Date : July 1, 1999
From : Laurel E. Morris

**Called Mr. Emison for his fax #. He is no longer with this firm. I was told to call 305-860-1901.**

**Mr. Emison gave me his new address & fax #. He advised he was filing suit upon receipt of the denial. I advised he has to go through the appeal process first. He acknowledged this.**

**1999 SW 27th Ave.**
**1st floor**
**Miami, FL 33145**
**telephone 305-860-1901**
**fax # 305-860-1902**



One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel: (781) 237-6030
(800) 225-3950

July 1, 1999



Spencer A. Emison
Law Offices
1999 SW 27th Ave.
1st floor
Miami, FL 33145

Re:    Policy No: 96878-GD-Long Term Disability
       Claimant: Bruce Roxby

Dear Mr. Emison:

We are writing to you at this time concerning the above-captioned Long Term Disability claim.

As you are aware, in order to be eligible for benefits, an insured must be considered totally disabled as defined by the Policy. During the first 60 months of disability, the Policy defines total disability as the inability of the insured to perform all of the material duties of his regular occupation.

Once 60 months of benefits have been paid, the definition of disability changes. At that time, the insured must be totally disabled from performing the material duties of any gainful occupation for which he may be reasonably fitted by his training, education or experience. In Mr. Roxby's case, that change of definition occurred on November 22, 1998.

The medical information provided to date, does not establish eligibility for benefits beyond November 21, 1998. Mr. Roxby was treated by Dr. Jeffrey Perkins, for Status post cervical spinal cord injury and Status post cervical and lumbar strain and sprain syndrome where maximum medical improvement was reached in 1993. He was also treated by Dr. Francis T. Schwerin for symptoms suggestive of angina and several risk factors for coronary disease. A Functional Capacity Evaluation (FCE), was performed on November 19, 1998 and a Transferable Skills Analysis (TSA) was done which shows that Mr. Roxby can work specifically at jobs which include, but are not limited to Service-Repair Estimator, Service Manager, Dispatcher or Auto Tester. Auto Damage Appraiser maybe another option for Mr. Roxby. Since Mr. Roxby is not totally disabled from performing any gainful occupation, we will be unable to provide any benefits beyond November 21, 1998.

Our records reveal that we sent Mr. Roxby a letter, dated July 24, 1998, advising him of the change in definition language which would become effective November 22, 1998. We asked that he have his physician complete an Attending Physician's Statement which we enclosed.

On September 30, 1998 we wrote to Mr. Roxby noting the Attending Physician's Statement we received, completed by Dr. Perkins, states he was last seen November 9, 1997. We asked for confirmation that he did have current treatment and, in addition requested he have his doctor submit copies of all office notes, physical therapy notes and diagnostic testing for January, 1996 through the current time.

On October 14, 1998 we received Dr. Perkins' notes for a visit on October 30, 1996 which stated "Physical examination reveals a pleasant make in no acute distress. Chest was clear. Heart had a regular rate and rhythm. Abdomen and bowel sounds positive. The patient has restricted passive ROM of the cervical spine with flexion extension. The patient has limitation of back ROM in all planes. Both hands have decreased coordination and dexterity. Muscle strength appears functional throughout all the extremities. Patient does ambulate without an assistive device with an antalgic-type gait." IMPRESSION: "1. Status post Cervical lumbar strain, sprain. 2. Probable central cervical spinal cord injury.." PLAN: "1. The patient should continue with his exercise program. 2. The disability form was filled out. 3. I will see the patient for further evaluation."

The next note, dated October 9, 1997, states "Examination reveals a pleasant male in no acute distress. There is essentially no change. Bowel sounds positive. The patient has some restriction of the cervical spine on extension. Both hands have decreased fine motor skills. The favoring the right lower extremity. Per the patient, his wife gve him a wooden cane but he is not using is presently." IMPRESSION: "1. Status post central cervical spinal cord injury. 2. Status post cervical lumbar strain and sprain syndrome, MMI reached in 1993. PLAN: 1. The patient will continue his home exercise program. 2. A disability form was filled out. 3. The patient will benefit from ambulating with a straight cane or a quad cane. 4. I will see the patient back in follow-up appointment."

The last office note received, dated August 7, 1998, states "Physical examination is essentially unchanged. Chest is clear. Heart had regular rate and rhythm. The patient still has bilateral hand movement with decreased coordination. The patient was able to ambulate with a functional but slow gait pattern. There is decreased range of motion of the right lower extremity hip extensors and the extensors in ankle dorsi flexion." IMPRESSION: "1. Status post cervical spinal cord injury. 2. Status post cervical and lumbar strain and sprain syndrome. Maximum medical improvement was reached in 1993. PLAN: 1. The patient will benefit from continuation of his home exercise program. 2. A disability form was filled out. 3. The patient will benefit from continuing with his cholesterol sparing diet and continue with his vitamins including B complex and folic acid. 4. I would like to see the patient back in the office for follow-up in approximately one year. The patient does have a hip hiking gate pattern with a Trendelburg type weakness of the left gluteus medius and decreased swing through on the right lower extremity."

At this point Mr. Roxby's file was reviewed by our Medical Consultant and it was recommended that we have the Functional Evaluation Examination and Transferable Skills Analyst, which we mentioned above. The results of this examination were forwarded to Attorney Mark Hicks, however, another copy is enclosed with this letter for your perusal along with a copy of the Transferable Skills Analyst. We also wrote to Mr. Roxby's cardiologist, Dr. Schwerin, as it was suggested we receive medical clearance from his cardiologist before his return to work. Dr. Schwerin's response was received on April 19, 1999 and he stated "I am able to agree with the "cardiovascular assessment" contained within the Functional Capacity Evaluation. A stress test was performed 5/11/98 for 5 minutes of the Bruce Protocol without chest pain or ST shift. (MAX HR 144 BPM and max BP 170/80.) Nuclear images

suggested a small area of inferior ischemia at this level of exercise. Mr. Roxby has remained asymptomatic and wishes to continue his strict dietary and nutritional therapy before considering an invasive procedure. In summary, while there was evidence of a mild degree of exercise-induced ischemia at last year's evaluation. CAD probably contributed minimally to his disability."

We had Mr. Roxby's file reviewed by our in-house consultant, Dr. Valerie Kaufman. Dr. Kaufman's review acknowledged some restrictions and limitations, but noted the the FCE verified considerable residual functionality. Dr. Kaufman also notes that Mr. Roxby appears to have some CAD although not very limiting. Mr. Roxby should not perform heavy physical or sustained physical exertion, but appears capable of sedentary or light duty work per Dr. Schwerin's letter.

The FCE suggests Mr. Roxby is capable of performing medium duty work. Our Rehabilitation Consultant noted on June 16, 1999 that "If we step down his restrictions to light vs. Medium the TSA still shows a number of occupations that he is able & qualified to perform."

In conclusion, based on the information stated above, we must deny further benefits as Mr. Roxby no longer is eligible to receive them. In making this denial we fully reserve and do not waive any of our rights, whether arising under the policy or otherwise.

The decision which has been reached regarding this claim may be appealed by filing a written request for review with Sun Life of Canada or the plan administrator for submission to Sun Life. The request should be made in writing within 60 days from receipt of this letter and should include any medical information which you and Mr. Roxby may feel has a bearing on this decision. If you desire to pursue an appeal, please be advised that under ERISA you are entitled to review the pertinent documents upon which this initial denial decision was based. The claim will be given prompt and full review after which you will be advised of our decision in writing.

Should you have any questions, please do not hesitate to contact this office at 1-800-432-1102 x3399.

Sincerely,

Laurel E. Morris

Laurel E. Morris
Sr. Claims Administrator
SC 3208

Enc.

LAW OFFICES OF SPENCER A. EMISON, P.A.

August 27, 1999

**VIA FAX & CERTIFIED MAIL**

Ms. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

**RE: Claimant [redacted]**
**Policy No. [redacted]GD-Long Term Disability**

Dear Ms. Morris:

**APPEAL FROM CLAIM DENIAL**

Mr. Roxby appeals your July 1, 1999 denial of his claim for benefits under the above referenced policy on the following grounds.

1. Roxby references and incorporates herein the attached January 26,1999 letter by attorney Mark Hicks which details defects in Sun Life's analysis and denial of this claim.

2. **Sun Life has failed to give proper consideration to Roxby's treating physician's findings:**

In your possession (another copy attached) is a 1/7/99 office note from Roxby's long term treating physician, Dr. Jeffrey Perkins, which sets forth Dr Perkins finding that Roxby has a very limited capacity and endurance to work due to his central spinal cord injury and significant blockage of an artery. Dr Perkins specifically disagrees with the functional capacity assessment because of Roxby's history and condition, including weakness, coordination problems, and heart condition. Dr. Perkins also points out the danger of Roxby aggravating his spinal cord injury and heart condition if he overexerts himself or moves his hands in common actions. Yet your denial of benefits entirely fails to consider these findings and opinions.

Dr Perkin's 6/3/99 office note (attached) also references Roxby's difficulty walking, because of a significant limp and decreased range of motion, which further limits his activities.

1999 S.W. 27th AVENUE
FIRST FLOOR
MIAMI, FLORIDA
33145
TEL (305) 362-[illegible]
FAX (305) 362-[illegible]

RECEIVED
AUG 30 1999
LONG TERM DISABILITY

3. **Sun Life's evaluation of Roxby is inadequate and unsupported:**

To date, no doctor who has actually treated or examined Roxby has come to the conclusions Sun Life has regarding Roxby's physical abilities or capacity to work. You reference the opinion of Roxby's cardiologist, Dr. Schwerin, that Roxby is capable of sedentary or light duty work, but you fail to appreciate that this takes into consideration only Roxby's heart condition. Your "in-house consultant," whose records and reports are hereby requested, cannot make an adequate determination of Roxby's abilities without examining him herself. Nor have you stated her qualifications to render an opinion which takes into consideration Roxby's orthopedic, neurological, and cardiac condition.

The Work Capacities Assessment acknowledges the severe limitations and difficulties Roxby suffers from, even commenting on his need to assist his dominant right hand with his left when writing, and the pain he experienced while performing simple tasks. It also records his report, the day after the assessment, of severe pain which resulted from the 4 hours of testing.

Despite this assessment, the "Transferable Skills Analysis" found Roxby capable of full time, Medium category work. The analysis references the physicians' diagnoses regarding Roxby's disc injuries and back pain, but makes no mention of the much more serious spinal cord injury. Nor does it factor in his heart condition. The analyst completely misses the simple truth that Roxby cannot even write without difficulty, and that the most sedentary of tasks, done repetitively, cause him great pain. Nor does the report consider the potential for aggravating Roxby's spinal cord injury, the result of which could be paralysis.

What company will hire, train, and retain for the position of Service-Repair Estimator, Service Manager, Dispatcher, Auto Tester, or any position, a 52 year old man who has difficulty simply writing, and who exposes such company to significant risk of liability for an on the job injury ?

4. **Sun Life has failed to give any consideration to the chronic and cumulative nature and impact of Roxby's injuries and heart condition:**

Mr. Roxby was first injured 10 years ago in an automobile accident at which time he was diagnosed with the disc injuries and related ulnar neuropathy. He continued to work until he was once again injured on the job when his head struck a tire while he was walking out from underneath a car. Added to his physical problems was the diagnosis of central spinal cord ischemia and increasingly exacerbated symptomology. He was left with a severe limp, decreased fine motor skills, weakness and numbness in both hands, herniated and bulging discs, restricted range of motion and weakness in his extremities, and severe, constant pain in his neck, back, and shoulder. On top of all of this he is

suffering from exercise induced myocardial ischemia which further limits his ability to carry on normal activities, including work, which he simply cannot do in any capacity.

Your Work Capacities Assessment Report confirms that Mr. Roxby is no malingerer. He showed consistent effort on all tests. He did not exaggerate his symptoms. He had no non-anatomical distribution of pain.

Mr. Roxby is suffering from a completely disabling, and debilitating, combination of physical ailments which prevent him from working in any capacity. He is totally disabled as that term is defined in the policy, and in the case law on this issue. He is entitled to his benefits under the policy.

It is further our position that Sun Life has waived preemption under ERISA by the policy language which states the policy is governed by the laws of the jurisdiction where the application was signed, which is Florida. Therefore, contemporaneously with this appeal, I am filing suit in state court to recover benefits past due, and to obtain a declaration from the court that Sun Life is obligated to pay future disability benefits. Mr. Roxby will also be pursuing a claim for Social Security disability benefits.

I await your response.

Very truly yours,

Spencer A. Emison

RECEIVED
AUG 30 1999
LONG TERM DISABILITY

HICKS & ANDERSON, P.A.
ATTORNEYS AT LAW
New World Tower - Suite 2402
100 North Biscayne Boulevard
Miami, Florida 33132-2513

Telephone (305) 374-8171
Fax (305) 372-8038

MARK HICKS*
RALPH O. ANDERSON*
JEAN KNEALE

GARY A. MAGNARINI
CINDY L. EBENFELD
ILA J. KLION
DINAH S. STEIN
DAVID J. MAHER
DEBRA B. POTTER
LISA E. LANG-LOPEZ

OF COUNSEL:
JAMES E. TRIBBLE
ROGER L. BLACKBURN

*[illegible]

January 26, 1999

**VIA FEDERAL EXPRESS**

Mr. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

RE: Policy No. 96878-GD-Long Term Disability
Claimant Bruce Roxby

Dear Ms. Morris:

This firm represents Bruce Roxby in connection with his long term disability claim. Mr. Roxby is an insured employee under the Sun Life policy. Mr. Roxby has been totally disabled and receiving monthly total disability benefits under the Sun Life policy. However you have unilaterally stopped paying him as of November 22, 1998 without notice or warning and without any formal denial of benefits. It is our understanding that you at one time verbally stated to Mr. Roxby that his benefits were denied, but later retracted that statement and said that his entitlement to benefits is under review. Benefits through the end of November and the monthly benefit for December, 1998 are overdue and owing.

Additionally, after five years of paying monthly benefits at 70% of Mr. Roxby's monthly Basic Earnings reduced by his monthly worker's compensation offset (benefit of $4,182.29), as of October 1, 1998, you unilaterally reduced the amount of the monthly benefit to 60% of monthly basic earnings (benefit of $3,675.78), a difference of $506.51 per month.

We hereby demand that you pay the overdue benefits and reinstate payment of monthly benefits at 70% of Mr. Roxby's monthly Basic Earnings, reduced by his monthly worker's compensation offset.

We also request that you provide us with a complete copy of the policy and advise whether the disability insurance is part of an ERISA plan. If it is part of an ERISA plan, please

HICKS & ANDERSON, P.A.
ATTORNEYS AT LAW
New World Tower - Suite 2402
100 North Biscayne Boulevard
Miami, Florida 33132-2513

Telephone (305) 374-8171
Fax (305) 372-8038

MARK ...
RALPH O. ANDERSON*
JEAN KNEALE
GARY A. MAGNARINI
CINDY L. EBENFELD
ILA J. KLION
DINAH S. STEIN
DAVID J. MAHER
DEBRA B. POTTER
LISA E. LANG-LOPEZ

OF COUNSEL
JAMES E. TRIBBLE
ROGER L. BLACKBURN

*OFFICERS

Mrs. Laurel E. Morris
January 26, 1999
Page 2

provide proof of same and all additional documents which govern the plan.

After repeated requests you finally provided Mr. Roxby with pages 2 through 31 of what purports to be the long term disability policy, policy no. 96878. Page 2 is titled:

> Amendment No. 1
> Amendment Date May 1, 1992
> Policy Specifications

This does not appear to be the complete policy in that (1) it is missing page 1, (2) it is an Amendment, and (3) the general provisions state:

> Your entire contract with us consists of the following:
>
> 1. this Policy; and
> 2. the Policyholder's Application, a copy of which is attached; and
> 3. the applications, if any, relating to persons insured under the policy.

There is no "Policyholder's Application" attached to the pages you sent Mr. Roxby and you have not advised Mr. Roxby if there are any applications relating to persons insured under the policy or provided him with a copy of same. Page 20 of the policy states that "[t]his Policy is governed by the laws of the jurisdiction where the Application was signed." Please provide copies of all applications and advise which state the applications were signed in and the state whose law you contend governs. As Mr. Roxby was employed by J.M. Pontiac in Florida, it would appear that Florida law may apply.

Additionally, we request that you provide us with a copy of any report, notes and/or evaluation of your "medical consultant", together with a detailed explanation of all facts, policy provisions, and law you rely upon to justify your discontinuance of Mr. Roxby's monthly disability benefits.

As discussed more fully below, your actions in this matter have been in bad faith as you have continually and unjustifiably delayed Mr. Roxby's monthly benefits, refused to provide him with documents and information, and have made inconsistent statements concerning the policy, your review and/or denial, and his rights to benefits. If you do not immediately continue Mr. Roxby's benefits, we will file suit forthwith and pursue all available remedies.

**I. Total Disability Benefits Are Due Pursuant to the Policy.**

The Long Term Disability Benefit Provision provides:

A. Total Disability Benefit

If we receive due Notice and Proof of Claim that:
- an Employee became Totally Disabled while insured; and
- his Total Disability continued beyond the Elimination Period;

we will pay, subject to the Limitations and the Exclusions, a Total Disability Benefit. The amount payable for each month of continuous Total Disability will be equal to the Net Monthly Benefit, based on the Employee's monthly Basic Earnings prior to his Disability. An amount equal to one-thirtieth of the Net Monthly Benefit is payable for each day of Total Disability for a period which is less than a full month.

(pp. 24-25). The General Provisions state that "Time of Payment" is as follows:

Once we have received written Proof of Claim for benefits payable on a periodic basis, such payments will be made at the end of each benefit paying period as described in the Benefit Provision.

Consequently, benefits are due monthly. Under the heading "Termination of Total Disability Benefit", the policy provides:

The Total Disability benefit will cease on the earliest of the following dates:
- the date the Employee ceases to be Totally Disabled; or
- the date the Employee dies; or
- the end of the Maximum Benefit Period.

(pp. 24-25).

The term "Totally Disabled", with respect to employees with annual Basic Earnings of$30,000 or greater, is defined on page 6 as:

An Employee is totally disabled if he is in a continuous state of incapacity due to Illness which:

1. while it continues throughout the Elimination Period and during the following 60 months of incapacity, prevents him from performing all of the material duties of his regular occupation;

ROXBY 0071

> 2. while it continues thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience.

The Term "Illness" is defined as "Bodily injury, sickness, disease, Pregnancy or mental infirmity." (p. 6)

It is our understanding from your letter to Mr. Roxby dated November 5, 1998, that the 60 month (5 year) period referred to in paragraph 1 of the Total Disability definition ended on November 22, 1998. You scheduled a Functional Capacity Evaluation for November 19, 1998, just 3 days before the end of the 60 day period. Your November 5, 1998 letter stated that this Functional Capacity Evaluation ("FCE") was requested "[i]n order that we may properly review your claim for disability benefits beyond the 5 year Own Occupation date of November 22, 1998" and that "[o]nce the results of this examination are received and reviewed by Our Medical Consultant, we will advise you accordingly."

Mr. Roxby attended the Functional Capacity Evaluation (FCE). While Mr. Roxby finally obtained a copy of FCE report after repeated requests, you have failed and refused to provide him with a copy of the report of any review by your "Medical Consultant." Moreover, you have unilaterally and arbitrarily discontinued the payment of Mr. Roxby's total disability benefits without informing him of the facts, policy provisions, and legal authority which you rely upon.

Under Florida law, the burden of establishing that the insured is not disabled from engaging in an occupation is on the insurance company. New York Life Ins. Co. v. Lecks, 165 So. 50, 54 (Fla. 1936) ("The burden was upon the company to establish the insured's recovery to the degree of ability enabling him to engage in an occupation for profit or remunerations"). Moreover, an insurer may not discontinue monthly disability benefits simply because the insured may be able to render some small service related to his occupation and may not refuse monthly disability benefits on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engage in when the policy was written. Id. In connection with a disability policy defining "total disability to be such injury or disease as to prevent the insured 'thereby from engaging in any occupation whatsoever for remuneration or profit'", the Florida Supreme Court held:

> A person may be injured or diseased to such an extent as to prevent him from engaging in an occupation for remuneration or profit, but which would not prevent an occasional subsidiary employment or avocation.
>
> The term 'occupation' is itself a relative one, having relation to one's capabilities. A person whose occupation is that of merchant,

ROXBY 0072

> or mechanic, or day laborer, who becomes 'wholly disabled' from engaging in his occupation, might nevertheless, after years of preparatory study and mental training, follow some gainful occupation, but, until that end is accomplished and the insured is receiving profits or remuneration from his new vocation, the insurance company carrying the insurance for the injured person would not under a clause like the one included in the policies in this case be justified in refusing the monthly benefit payments on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engaged in when the policy was written. Nor would it be justified in discontinuing the monthly disability payments so soon as the injured person recovered partially from his injuries enough to enable him to occasionally render some small service related or unrelated to his occupation.

165 So. at 52.

In the instant case, the policy definition of total disability after the 60 day period is broader than the definition interpreted by the Florida Supreme Court. The definition here does not require that the insured be prevented from engaging in any occupation, but that he is "prevent[ed] from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience." Thus, the Florida Supreme Court's holding that discontinuation of monthly disability benefits is not permitted unless and until the insured has become qualified for and is earning remuneration from a new vocation applies here with even greater force.

Moreover, the general rule is that where the disability policy defines total disability in terms of the inability to engage in any occupation for which the insured is or becomes reasonably qualified by education, training or experience, as it does here, benefits must be paid unless the insured is capable of engaging in another occupation comparable to his previous occupation. See Genzer v. Insurance Co. of North America, 633 P.2d 1267, 1270 (Okla. App. Div. 2 1981) (insured's new occupation "had to be at least comparable in 'dignity, permanency and remuneration' to his past position before he could be adjudicated not totally disabled."); Couch on Insurance 3d, §147:26, p.147-42 ("As a general rule, the remuneration from the insured's employment must be reasonable comparable with that which he or she earned prior to being injured in order for the insurer to escape liability"); Rowe v. Home Sec. Life Ins. Cop., 289 S.C. 236, 345 S.E.2d 758 (Ct. App. 1986) (work for which insured is reasonably fitted must rationally approach the same livelihood and standard of living which the insured enjoyed prior to injury).

ROXBY 0073

Mr. Roxby has been an automobile mechanic for many years. You have provided absolutely no evidence that he is qualified by education, training or experience to engage in any full time occupation, much less one which is comparable to his previous employment. In fact, the FCE report does not even mention Mr. Roxby's qualifications, education, training or experience. Nor does it specify any particular occupation he is capable of performing with the limitations of his disability. Moreover, you have not provided any proof that any qualified physician has determined that Mr. Roxby is able to perform any full time occupation.

We are enclosing for your information and review a copy of Dr. Jeffrey C. Perkins' clinic note for Mr. Roxby's January 7, 1999 visit. As you can see, Dr. Perkins has reviewed and disagrees with the conclusion of the FEC report. Dr. Perkins states, *inter alia*, that Mr. Roxby cannot return to work in a full time capacity at medium category.[1] "At best, he would only qualify in my professional opinion for short term, less than 4 hours a day in minimal category." Moreover, if Mr. Roxby "were to overexert himself or carry heavy objects or be in a situation where he would have to have quick alternating motions with his hands, this may aggravate the symptoms as well as aggravate the ischemia o[r] the heart problem."

Dr. Perkins' evaluation demonstrates that Mr. Roxby's condition "prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience." Thus, Mr. Roxby remains totally disabled within the meaning of paragraph 2 of the policy definition. It is also well settled that if the requirements of an occupation will impair the insured's health, as is the case here, he remains totally disabled. See, e.g., Equitable Life Assurance Society of U.S. v. Neill, 243 F.2d 193, 195 (5th Cir. 1957) (citing New York Life Insurance Co. v. Bird, 12 So. 2d 454 (Fla. 1943)).

---

[1] It should be noted that the FEC report itself (prepared by a non-physician) does not unequivocally conclude that Mr. Roxby is capable of performing full time work within the medium category. Rather, it states, under "recommendations," that he demonstrates the ability to perform within the Medium category or less," with limitations, and with a proviso that his cardiac condition must be taken into account. Moreover, an eight hour work day in the medium category is not supported by the remainder of the report and the results of the testing. For example, as noted on page 9 of the FCE report, Mr. Roxby had to terminate lifting due to fatigue and pain with shortness of breath; and as noted on p. 5, Mr. Roxby suffered from greatly elevated pain after the testing. Additionally, immediately following the testing period, when he went home that day he suffered from exhaustion requiring 4 hours of sleep. These examples and observations are provided by way of example only and in no way concede the validity of any conclusions reported.

ROXBY 0074

II. **Your September 30, 1998 Letter - Regular Care of a Doctor.**

In a letter dated September 30, 1998, you stated, incorrectly, that Mr. Roxby had not been seen by a doctor since November 9, 1997. You cited the following purported excerpt from the policy:

> "Payment will not be made under this provision
> A. For any period of disability during which the employee is not under the regular medical care of a doctor."

However, this language does not appear in the policy you finally sent to Mr. Roxby months later (post-marked November 24, 1998) after his repeated request. Rather, on page 27 of the policy you sent Mr. Roxby, under the heading "limitations", it is stated:

> No Disability benefit is payable for:
>
> 1. any period during which the Employee is not under the regular care of a doctor.

In any event, you have long ago received copies of Dr. Perkins' office notes showing that your statement that he had not been seen by a doctor is not true. However, you have wholly failed to inform Mr. Roxby as to whether you still contend that he has not been under the regular care of a doctor. In this regard, it should be noted that you have for the past five years recognized that Mr. Roxby satisfied the "regular care" requirement by seeing his doctor once a year as he long ago reached maximum medical improvement. Moreover, as a matter of law, Mr. Roxby has been under the regular care of a doctor, and your position that this limitation applies (if that remains your position) is without merit. See Lorber v. Aetna Life Ins. Co., 207 So. 2d 305, 309 (Fla. 3rd DCA), cert. denied, 212 So. 2d 876 (Fla. 1968):

> [T]he policy .. limits recovery to a period in which the claimant was 'under the regular care of a licensed physician.' The evidence to the effect that [claimant] would have to see a physician at least once in every eight months and that his physical condition is degenerative so that treatment is not curative. The weight of authority supports a holding that under such conditions the requirement for 'regular care' is met by medical supervision and less regular consultation that otherwise would be the case. See cases and discussion in 15 Couch on Insurance 2d, s. 53.156 and s. 53.157. We hold that this defense does not appear as a matter of law from plaintiff-appellant's case.

ROXBY 0075

**III. Amount of Benefits Payable.**

After five years of paying monthly benefits at 70% of Mr. Roxby's monthly Basic Earnings reduced by his monthly worker's compensation offset (benefit of $4,182.29), as of October 1, 1998, you unilaterally reduced the amount of the monthly benefit to 60% of monthly basic earnings (benefit of $3,675.78), a difference of $506.51 per month.

To begin with, the policy language you rely upon (and which was not provided to Mr. Roxby until late November, 1998) is ambiguous and must be construed in favor of the insured. Moreover, the description of Long-Term Disability Coverage contained in the description of benefits given to Mr. Roxby clearly states that "if you are eligible to receive any other disability income (for example, Social Security or Workers' Compensation) the combined benefit maximum is 70% of monthly earnings." Consistent with this language, Sun Life itself interpreted the policy as requiring payment at 70% less the worker's compensation offset, by doing so for the last 5 years. Furthermore, your payment at the 70% figure (less the offset) was reasonably relied upon by Mr. Roxby who took action to his detriment and prejudice. Therefore, you are estopped from denying benefits at the 70% figure (less the worker's compensation offset). See, e.g., Doe v. Allstate Ins. Co., 653 So. 2d 371, 373 (Fla. 1995).

CONCLUSION

Please comply with all of the demands in this letter forthwith. If you fail to do so we will file suit forthwith and pursue all available remedies.

If you contend that Mr. Roxby has not fully complied with all of the conditions of the policy, please advise immediately with specifics as to any asserted failure.

Very truly yours,

Mark Hicks /ip

MARK HICKS

MH:ip
Enclosure: Dr. Perkins' January 7, 1999 clinic note (2 pages)
cc: Bruce Roxby

ROXBY 0076

**ROXBY, BRUCE**
**JANUARY 7, 1999**

**CLINIC NOTE**

Mr. Roxby returns today for a follow-up appointment. He was last seen on August 7, 1998. At that time, I recommended continuation of a home exercise program and a disability form was filled out. He continues to be diligent with his cholesterol sparing diet and is taking multiple vitamins, including Folic acid. He is also contemplating beginning cessation of cigarette smoking. Of note, he was found to have 80% blockage of the posterior descending artery and is on aspirin 325 mg three times a day. According to his cardiologist, Dr. Schwann, he feels he should have a bypass graft. He had a functional capacity workup assessment done on 11/19/98. The recommendations from that demonstrated that he had the ability to return to work full time with medium category or less with limited walking, sustained bending, overhead reaching, ladder climbing, writing and grasping on an occasional basis. Per review of the records and review of the history, I disagree with that.

I feel that the patient has a very limited capacity with very limited endurance to enable him to carry out a full job of 8 hours a day. When he is doing gardening, he has to come in after a short while and rest for a longer while. He does have decreased arm swing on the right and decreased ankle dorsiflexion on the right. He also has noted disk bulge at C3, C4, C5, C7 and central cord syndrome and central cord ischemia. He does have weakness of his right hand compared to the left hand. He does compensate by handing items from his left to his right. He had a test which involved pegs and he was compensating by being helped with the left hand in sliding the items. He definitely has coordination problems of the right hand and some on the left.

Physical examination reveals a pleasant male in no acute distress. The patient was able to transfer with standby assist and ambulate for moderate distances with a decreased arm swing on the right and a Trendelenburg type gait pattern with hip hiking on the right. There continues to be decreased range of motion of the right lower extremity, the ankle extensors and ankle dorsiflexors.

**IMPRESSION**:

1. Status post cervical spinal cord injury. central cord ischemia
2. Status post cervical and lumbar strain and sprain syndrome.

**PLAN**:

1. The patient will benefit from continuation of his home exercise program.
2. He will also benefit from continuation of his vitamin regimen which includes B complex and Folic acid.

ROXBY, BRUCE
JUNE 3, 1999

CLINIC NOTE

The patient returns today for a follow-up appointment. He was last seen on 1/7/99. At that time, I recommended continuation of his home exercise program and also continuation of his vitamin regimen including B complex and folic acid. I also recommended that the patient not return to work at full capacity, however, for four hours at minimum category. The patient did have a nuclear cardiology scintigraphy test done on 5/11/99 which demonstrated that he was exercise induced myocardial ischemia in the territory of the posterior descending artery. This would prohibit him from doing any strenuous activities continuously. The patient would like to go back to work, however he is not able to in his present condition. His cardiologist also agrees with me. If he does go back to work, it is with limited walking, decreased overhead reaching, no ladder climbing and no excessive grasping or writing.

I feel that he has a very limited capacity, very limited endurance and not able to carry on his full job. He is only able to work approximately four hours a day at minimum capacity. He does have disc bulge at C3, C4, C5, C7 and central core syndrome and central cord ischemia. There is weakness of the right hand compared to the left. He does have coordination problems in the right upper extremity and some on the left.

Physical examination is essentially unchanged. The patient could transfer with standby assist and ambulate with a functional gait pattern though he does have decreased arm swing on the right side and a Trendelenburg type gait pattern with hip hiking on the right side. There continues to be decreased range of motion at all gait cycles of the right lower extremity.

**IMPRESSION:**

1. Status post cervical cord ischemia with cervical spinal cord injury.
2. Status post cervical and lumbar strain and sprain syndrome.

**PLAN:**

1. The patient will continue with his home exercise program.
2. He will also benefit from his Vitamin B complex and also continue with his not working at this point. I recommend strongly that if he were to go back to work, it would only be for four hours or less at minimal capacity.
3. I would like to see the patient back in the office in approximately six months.

Jeffrey C. Perkins, M.D.

JCP/act

RECEIVED
SEP 01 1999
LONG TERM DISABILITY

Sun Life of Canada
*Group LTD Claims*

Re : Bruce Roxby. 96878
Date : July 1, 1999
From : **Laurel E. Morris**

**Called Mr. Emison for his fax #. He is no longer with this firm. I was told to call 305-860-1901.**

**Mr. Emison gave me his new address & fax #. He advised he was filing suit upon receipt of the denial. I advised he has to go through the appeal process first. He acknowledged this.**

**1999 SW 27th Ave.**
**1st floor**
**Miami, FL 33145**
**telephone 305-860-1901**
**fax # 305-860-1902**

Fl.

LAW OFFICES
FRANCISCO & EMISON
A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS
757 N.W. 27TH AVE.
SUITE 202
MIAMI, FLORIDA 33125

JOSE M. FRANCISCO
SPENCER A. EMISON

TEL (305) 649-5060

June 21, 1999

VIA FAX & U.S. MAIL

Ms. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

**RE: Claimant Bruce Roxby**
**Policy No. 96878-GD-Long Term Disability**

Dear Ms. Morris:

I represent the above referenced claimant who is a participant and beneficiary of the Disability Plan issued by Sun Life of Canada. The administration of the plan appears to be governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

§ 1133 of ERISA provides that every employee benefit plan shall provide adequate notice in writing to any participant or beneficiary whose claim has been denied, setting forth the specific reasons for denial, and shall afford a reasonable opportunity for a full and fair review by the appropriate fiduciary of the claim denial. The denial is also required to reference the pertinent plan provision upon which the denial is based.

Thus far, in violation of ERISA, you have entirely failed to provide any denial of Mr. Roxby's claim, much less the notice required by ERISA. Yet you have terminated Mr. Roxby's benefits which he relies upon for his very livelihood.

Demand is hereby made for a denial and the notice required by law within ten days.

Very truly yours,

RECEIVED
JUN 29 1999
LONG TERM DISABILITY

Spencer A. Emison

ROXBY 0080

Bruce Roxby 96578

In reference to Dr Kaufman's note of 6/10/99 If we step down his restriction to Light as medium the TSA still shows a number of occupation that he is able + qualified to perform

W Harney JUN 15 1999

Sun Life of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (781) 237-6030
Tel (800) 225-3950

# TRANSFERABLE SKILLS ANALYSIS

Claimant: Bruce Roxby
Policy #: 96878
Policyholder: J.M. Family Enterprises, Inc.

This claimant is a 51 yr. old man who was employed as a dealership Auto Mechanic when he injured his back in a fall at work in May of 1993. The initial diagnosis was noted to be Left Lumbar Facet Syndrome and Myofascial Pain Syndrome with a C6-7 Bulging Disc. The current diagnosis, based on Dr. Perkins' APS of 8/7/98, is noted to be C5-6 Disc Herniation with Lumbar Pain Syndrome.

Education and Work History

The claimant is a High School graduate. He has also completed a number of auto service courses and is an ASE certified auto mechanic. He has many years of experience in this field and has worked at several auto dealerships. Mechanics who work at these locations tend to have a higher level of technical knowledge and skill than the average garage mechanic. Mr. Roxby was also employed as an Air Traffic Controller while in the Air Force.

Functional Limitations and Restrictions

A Functional Capacity Evaluation was conducted at the HealthSouth Rehabilitation Center of Ft. Myers on 11/19/98 at Sun Life's request. Those test results indicated that he can perform work within the Medium category, full time, limited walking, sustained bending, overheard reaching, ladder climbing, writing, and firm grasping on an occasional basis. Because he has recently been diagnosed with CAD, the FCE facility recommended that medical clearance be obtained from his cardiologist prior to his RTW. His cardiologist did clear him for this evaluation.

Skills Analysis

Although Mr. Roxby presents with some physical limitations he still possesses a number of excellent work skills and knowledge that would still be highly marketable. His higher level of technical knowledge in the automotive field would be an asset today even though he cannot do much of the very heavy physical labor required in his previous occupation. He retains much of the ability to work at exact tolerances and performance levels and complying with precise instruments and specifications and working to standards. He will suffer some loss of the ability



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (781) 237-6030
Tel (800) 225-3950

to use some of the tools utilized in heavy work. He also, apparently, has some limitations on fine manual tasks, at least with one of his hands, due to some loss of sensation and dexterity.
The analysis shows a number of occupations he does qualify for based on his residual skills. In the auto industry he could easily transition to Service-Repair Estimator, Service Manager, Dispatcher or Auto Tester. Auto Damage Appraiser may be another option for Mr. Roxby.

The required ability to deal with people as a mechanic would not be affected by his limitations an would be an asset in customer service roles as mentioned above. His past military experience in the Air Traffic Control position is also useful. His familiarity with the air transportation industry, albeit at the military level, would still be of some value for the less physical occupations within that field.

Overall, this individual does have residual skills that are transferable to a number of occupations and, therefore, does not appear to be disabled from all occupations.

William J. Harney CRC LRC

galTech, Inc 1997

# LifeStep

Licensed to Sun Life of Canada

## TSA With Wage Data Report For Bruce Roxby

11/25/98

ased on search results, this report divides job titles into levels arranged in order of decreasing transferability. Each level compares a person's skills, as monstrated in work experience, with selected jobs from the Dictionary of Occupational Titles(DOT). These comparisons describe levels of transferability from 9. Highlighted entries represent jobs currently selected as vocational goals. The MPSMS and/or Work Fields have been modified for at least one of the jobs tained in the client's work history, in order to accurately reflect the unique skills acquired in a work environment.

### Job Search Parameters - Search Conducted On Work History & Functional Capacity

SVP | GED | Aptitudes | Strength & Physical Demands | Environmental | Temperaments

R M L G V N S P Q K F M E C S 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 1 2 3 4 5 6 7 8 9 10 11 12 13 14 D R I V E A S T U P J

4 3 4 M O F F F F F F O

3 193.162-018 - AIR TRAFFIC CONTROL CRAFTSMAN

7 620.261-010 - AUTOMOBILE MECHANIC

### Level 1 Transferability: Same Work Fields and MPSMS as demonstrated in work history

4 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20.261-014 | AUTOMOBILE TESTER | 433 | 7 | L | 05 07 02 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 3 | 3 | 3 | 4 | 689 | $593 00 |
| 38 367-010 | GATE AGENT | 323 | 4 | L | 09 05 04 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 318 | $498 00 |
| 20 364-010 | SQUEAK, RATTLE, AND LEAK REPAIRER | 222 | 4 | M | 05 12 15 | 3 | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 3 | 5 | 5 | 514 | $396 00 |
| 20 261-018 | AUTOMOBILE-REPAIR-SERVICE ESTIMATOR | 433 | 7 | L | 05 07 02 | 3 | 3 | 3 | 3 | 4 | 3 | 4 | 4 | 3 | 4 | 5 | 689 | $593 00 |

### Level 3 Transferability: Same Work Fields and similar MPSMS as demonstrated in work history

26 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 248 367-030 | WATERWAY TRAFFIC CHECKER | 333 | 3 | S | 07 04 05 | 3 | 3 | 4 | 3 | 3 | 3 | 4 | 4 | 5 | 5 | 4 | 357 | $381 00 |
| 352.577-010 | BUS ATTENDANT | 323 | 2 | L | 09 01 04 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 3 | 3 | 5 | 463 | N/A |
| 9 687-014 | HELPER, MANUFACTURING | 211 | 2 | M | 06 04 34 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 5 | 5 | 874 | N/A |
| 249 167-014 | DISPATCHER, MOTOR VEHICLE | 323 | 5 | S | 07 05 01 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 359 | $478 00 |
| 249 167-018 | LABOR EXPEDITER | 434 | 5 | L | 07 01 02 | 3 | 3 | 3 | 5 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 373 | $416 00 |
| 237 137-010 | SUPERVISOR, TELEPHONE INFORMATION | 434 | 7 | S | 07 04 04 | 2 | 2 | 2 | 4 | 4 | 2 | 4 | 4 | 4 | 5 | 5 | 303 | $677 00 |
| 248 367-026 | DISPATCHER, SHIP PILOT | 333 | 4 | S | 07 04 05 | 3 | 3 | 3 | 4 | 4 | 2 | 3 | 4 | 4 | 5 | 5 | 359 | $478 00 |
| 352 677-010 | PASSENGER SERVICE REPRESENTATIVE I | 323 | 3 | L | 09 01 04 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 5 | 463 | N/A |
| 625 684-018 | BATTERY CHARGER | 221 | 3 | M | 05 12 16 | 4 | 4 | 4 | 4 | 3 | 5 | 4 | 4 | 3 | 5 | 5 | 389 | $347 00 |
| 638 131-026 | MECHANICAL-MAINTENANCE SUPERVISOR | 433 | 7 | M | 05 05 09 | 3 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 2 | 5 | 5 | 503 | N/A |
| 621 137-010 | SUPERVISOR, RECLAMATION | 433 | 6 | L | 05 05 09 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 5 | 628 | N/A |
| 219 367-030 | SHIPPING-ORDER CLERK | 323 | 4 | L | 07 05 04 | 3 | 3 | 3 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 364 | $390 00 |
| 237 367-018 | INFORMATION CLERK | 423 | 2 | L | 07 04 04 | 3 | 2 | 3 | 4 | 4 | 3 | 4 | 3 | 4 | 5 | 5 | 323 | N/A |
| 910 367-026 | PASSENGER REPRESENTATIVE | 323 | 4 | L | 09 01 04 | 3 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 463 | N/A |
| 910 384-010 | TANK-CAR INSPECTOR | 323 | 4 | M | 05 10 02 | 3 | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 3 | 5 | 5 | 689 | $593 00 |
| 910 167-014 | TRAIN DISPATCHER, ASSISTANT CHIEF | 423 | 7 | S | 05 09 02 | 2 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 3 | 5 | 5 | 359 | $478 00 |
| 237 267-010 | INFORMATION CLERK, AUTOMOBILE CLUB | 434 | 5 | S | 07 04 04 | 3 | 2 | 3 | 4 | 4 | 2 | 4 | 4 | 4 | 5 | 5 | 323 | N/A |
| 219 462-014 | TRAIN CLERK | 322 | 3 | S | 07 05 03 | 3 | 3 | 3 | 5 | 4 | 3 | 3 | 3 | 4 | 5 | 5 | 336 | N/A |
| 237 137-014 | SUPERVISOR, TRAVEL-INFORMATION CENTER | 434 | 6 | L | 07 04 04 | 2 | 2 | 3 | 4 | 4 | 2 | 4 | 4 | 4 | 5 | 5 | 303 | $677 00 |
| 353 167-010 | GUIDE, TRAVEL | 434 | 6 | L | 07 05 01 | 2 | 2 | 3 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 4 | 461 | N/A |
| 729 684-010 | BATTERY INSPECTOR | 333 | 4 | L | 05 10 03 | 3 | 4 | 3 | 3 | 4 | 4 | 3 | 4 | 3 | 5 | 4 | 533 | $604 00 |
| 239 367-022 | RECEIVER-DISPATCHER | 323 | 4 | L | 07 04 05 | 3 | 3 | 3 | 5 | 5 | 3 | 4 | 4 | 4 | 5 | 5 | 359 | $478 00 |
| 706 684-046 | BENCH HAND | 222 | 3 | M | 06 04 22 | 4 | 4 | 4 | 4 | 4 | 5 | 4 | 4 | 3 | 4 | 5 | 785 | $396 00 |
| 21 684-014 | RECLAMATION WORKER | 322 | 4 | M | 05 12 12 | 3 | 4 | 4 | 3 | 4 | 4 | 3 | 4 | 3 | 5 | 5 | 547 | $521 00 |
| 37 167-030 | MANAGER, TRAFFIC II | 322 | 6 | S | 07 04 04 | 3 | 3 | 3 | 5 | 5 | 3 | 4 | 4 | 4 | 5 | 5 | 389 | N/A |
| 38 367-030 | TRAVEL CLERK | 333 | 4 | S | 07 04 04 | 3 | 3 | 3 | 4 | 3 | 2 | 4 | 4 | 4 | 5 | 5 | 318 | $498 00 |

### Level 4 Transferability: Similar Work Fields and similar MPSMS as demonstrated in work history

4 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 137-014 | SUPERVISOR, CAR AND YARD | 322 | [illegible] | L | 05 05 06 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 5 | 503 | [illegible] |

v-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

# LifeStep

Licensed to Sun Life of Canada

## TSA With Wage Data Report For Bruce Roxby

11/25/98

ased on search results, this report divides job titles into levels arranged in order of decreasing transferability. Each level compares a person's skills, as monstrated in work experience, with selected jobs from the Dictionary of Occupational Titles(DOT). These comparisons describe levels of transferability from ɔ 9. Highlighted entries represent jobs currently selected as vocational goals. The MPSMS and/or Work Fields have been modified for at least one of the jobs ıtained in the client's work history, in order to accurately reflect the unique skills acquired in a work environment.

### Job Search Parameters - Search Conducted On Work History & Functional Capacity

| SVP | GED | Aptitudes | Strength & Physical Demands | Environmental | Temperaments |
|---|---|---|---|---|---|
| | R M L | G V N S P Q K F M E C | S 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 | D R I V E A S T U P J |
| | 4 3 4 | | M O F F F F F F O | | |
| 8 | 193.162-018 - AIR TRAFFIC CONTROL CRAFTSMAN | | | | |
| 7 | 620.261-010 - AUTOMOBILE MECHANIC | | | | |

### Level 4 Transferability: Similar Work Fields and similar MPSMS as demonstrated in work history

4 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | Aptitudes G V N S P Q K F M E C | Average Earnings CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|
| 34.167-286 | GENERAL CAR SUPERVISOR, YARD | 433 | 7 | L | 05 02.02 | 3 3 4 4 3 3 5 4 5 5 5 | 022 | N/A |
| 22.684-022 | TANK-CAR INSPECTOR | 212 | 4 | M | 05 12.12 | 3 4 4 4 4 4 3 4 3 4 5 | 796 | $508.00 |
| 9 687-018 | CANOE INSPECTOR, FINAL | 211 | 4 | L | 06 03.02 | 4 4 4 4 3 4 4 4 3 5 5 | 796 | $508.00 |

# EmpNet℠ F.C.E. Summary

Bruce Roxby — Patient Name

11.19.98 — Date of Evaluation

1. How would you rate this patient's effort?

☐ Invalid ☐ Lack of effort exhibited, but test results remain valid ☒ Valid

2. A) Was the examinee's job description provided? ☐ Yes ☒ No
   B) If yes, can the examinee return to pre-injury job demands? ☐ Yes ☐ No
   C) If the answer to "2. B)" is "No," can examinee return to pre-injury job with modified duty? ☐ Yes ☐ No
   D) At what physical demand level can examinee work?
   ☐ Sedentary ☐ Light ☒ Medium ☐ Heavy ☐ Very Heavy

3. What is the workday tolerance level for this individual?
   ☒ 8 ☐ 7 ☐ 6 ☐ 5 ☐ 4 ☐ 3 ☐ 2 ☐ 1 Hours

4. What issues, if any, have been uncovered during this F.C.E. that would prevent this individual from returning to work or normal activity? Under cardiologist care for coronary artery disease - diagnosed 6/98. Cardiologist did clear him for FCE evaluation.

5. A) Were the patient's stated reports and demonstrated behaviors consistent with one another? ☒ Yes ☐ No
   B) Were the patient's stated reports and demonstrated behaviors consistent with the presenting diagnosis? ☒ Yes ☐ No
   C) Were the patient's stated reports and demonstrated behaviors consistent with the activities being performed? ☒ Yes ☐ No

6. Check any outside influences present during the F.C.E. that may alter or interfere with this data.
   ☐ Therapist coaching ☐ 3rd party present ☐ Attorney involvement ☐ other ____________

7. Were there any inconsistencies demonstrated throughout this F.C.E. that should be identified and addressed? ☐ Yes ☒ No
   If Yes, please explain ____________

8. Was inappropriate illness behavior present during any part of this test? ☐ Yes ☒ No

9. How long did the F.C.E. take? 4½ Hours

10. How many of the Department of Labor's 20 physical demands of work are assessed in your particular physical abilities test? ? ?

11. Was the assessment protocol followed throughout the entire F.C.E.? ☒ Yes ☐ No
    If no, why not? ____________

12. Have the identified capabilities/restrictions in this report been compared against normative data statistics? ☐ Yes ☒ No

13. Type of F.C.E.? Generic Healthsouth FCE

Managed by *Empire Medical Management, Ltd.*

Copyright ©

IAIABC Certified Vendor

April 23, 1998

# F.C.E. Summary (continued)

Name Bruce Roxby

Please check appropriate box and add weight amounts where appropriate

**ACTIVITY RECOMMENDATIONS***

| *As defined by the "Dictionary of Occupational Titles" | NEVER | OCCASIONAL 0 - 2.5 HOURS (1-33%) | FREQUENT 2.5 - 5.5 HOURS (34-66%) | CONSTANT OVER 5.5 HOURS (67-100%) |
|---|---|---|---|---|
| SITTING | | | | ✓ with occas. position changes into standing |
| STANDING | | | ✓ | |
| WALKING | | ✓ | | |
| PUSHING | | 40 lbs. force | 30 lbs force | |
| PULLING | | 40 lbs. force | 30 lbs. force | |
| CARRY (B) | | 30 lbs - 100 ft | | |
| CARRY | | | | |
| KNEELING | | | ✓ | |
| CRAWLING | Not Tested | | | |
| CROUCHING | | | ✓ | |
| BENDING | | ✓ | | |
| SQUATTING | | | ✓ | |
| LIFT (overhead) | | 22 lbs. | | |
| LIFT (waist lv) | | 35 lbs | | |
| LIFT (floor) | | 45 lbs. | | |
| STAIRS | | ✓ | | |
| REPETITIVE FOOT | Not tested | | | |
| FINE MANIP. | | | ✓ | |
| FIRM GRASP | | ✓ | | |
| SIMPLE GRASP | | | ✓ | |
| CLIMBING | | ✓ | | |
| BALANCING | | | ✓ | |
| STOOPING | | | ✓ | |
| REACHING | | | ✓ | |

COMFORTABLE WORK LEVEL HEIGHT: 28 INCHES(SITTING) 40 INCHES (STANDING)

[signature] MS / C. Borgon PT — Technician Signature

11 19 98 — Date

April 23, 1998

Copyright ©

**HEALTHSOUTH**
*Rehabilitation Center-Ft. Myers*

CLIENT: Bruce Roxby
EMPLOYER: JM Pontiac-Hollywood FL
DATE OF INJURY: 5/25/98

DATE OF EVALUATION: 11/19/98

DATE OF REPORT: 11/19/98
HEALTHSOUTH I.D. NO. 235704533

REFERRED BY: Insurance Company
PHYSICIAN: Jeffrey Perkins, M.D.
INSURANCE CARRIER: Sunlife of Canada/Empire Medical Management
INSURANCE REP: Bill Harney/Sandy Mangano
INSURANCE I.D. NO.: 96878

**WORK CAPACITIES ASSESSMENT REPORT**

PURPOSE OF ASSESSMENT

Mr. Roxby was referred to HEALTHSOUTH Rehabilitation Center of Fort Myers for assessment of his current physical/functional capabilities and for determination of his potential to safely return to work.

SUMMARY OF RESULTS

Mr. Roxby is a 51 year old male with the current diagnosis of status post cervical spinal cord injury and cervical/lumbar strain/sprain syndrome, onset 5/25/98. He reported that his injuries took place when he hit his head on a car tire while walking out from under a vehicle up on a hydraulic jack. Deficits found in the musculoskeletal evaluation included: postural and gait deviations; decreased spinal range of motion; decreased bilateral shoulder and abdominal strength; decrease lower extremity flexibility with limits greater on left; positive root tension tests on right; tenderness over C7 region; diminished lower extremity reflexes; unable to elicit C6-7 reflex. Other medical history positive for coronary artery disease diagnosed in May 1998 by Dr. Francis Schwerin (further medical evaluations and procedures pending).

Mr. Roxby had a Waddell's test score in the negative range (4 out of 16) for magnified illness behavior. Dynamometer testing revealed consistent effort on 6 out of 6 tests. Ransford Pain Diagram was negative for non-anatomical distributions of pain. Multidimensional Pain Inventory revealed dysfunctional coping skills regarding pain management. No inconsistencies in performance were observed during formal and informal evaluation.

Functional testing revealed that Mr. Roxby is presently lifting in the **Medium** category of work as demonstrated by his occasional floor to knuckle lift of 45 pounds, knuckle to shoulder lift of 35 pounds, shoulder to overhead lift of 22 pounds, and carry of 30 pounds 100 feet with pivoting. During positional tolerance testing, the client demonstrated tolerance of sitting on a constant basis; standing, repetitive bending, repetitive reaching, repetitive squatting, sustained squatting,

Work Capacities Assessment
RE: Roxby, Bruce

kneeling, pivot twisting, pushing/pulling, assemble, fine motor, and simple grasping on a frequent basis; and walking, stair climbing, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping on an occasional basis.

RECOMMENDATIONS

Mr. Roxby currently demonstrates the ability to perform work within the Medium category or less, full-time, limiting walking, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping to an occasional basis. However, we would recommend that medical clearance from his cardiologist be obtained before his return to work.

SUBJECTIVE HISTORY

Mr. Roxby is a 51-year-old male with the diagnosis of status post cervical spinal cord injury and cervical/lumbar strain/sprain syndrome. He was injured on 5/25/93 when he hit his head on a car tire while walking out from under a vehicle up on a hydraulic jack. At the time of injury, reports working for JM Pontiac as a line technician (heavy mechanic). He reports that he had worked as a mechanic for 33 years. He also received training and experience in air traffic control while in the service for 13 years. He reports that he has not worked since the time of his injury in 1993.

Previous diagnostic tests for these injuries (as stated by the client) include x-rays, nerve conduction test, EMG and a MRI. He reports that these tests have been positive for cervical spinal cord injury with disc bulges at C3-4 and C5-7, decreased ulnar nerve function on right, as well as cervical and lumbar sprain/strain syndrome.

Previous treatment for this injury (as stated by the client) included physical therapy 3 times per week for 4-5 months. He reports this treatment consisted of moist heat, electrical stimulation, ultrasound, electrophoresis, and strengthening exercises. He reports that physical therapy provided no improvement in his symptoms.

Mr. Roxby's pain complaints presently are a stabbing/burning pain surrounded C7; numbness with pins & needles over right cervicoscapular region; burning centrally over lumbosacral region; and an aching pain down posterior right leg from mid-thigh to knee. He reported his pain is at an intensity of 5 (0 = no pain; 10 = severe pain). He reported that recently his pain ranges from a 5 at best to 10 at its worst. He stated that walking aggravates his symptoms the most, and that hot baths provide the most relief. He currently takes aspirin three times per day to help manage his pain symptoms. At the end of the evaluation, he said that his pain was at the same intensity as it was prior to evaluation, but that he was now more uncomfortable. He called the following day to update us on his condition as instructed. He reported his pain at that time was now an 8 out of 10 with most of his pain in his neck and shoulders.

Work Capacities Assessment
RE: Roxby, Bruce

JOB DESCRIPTION

A formal job analysis was not provided prior to the evaluation, therefore, a job description was obtained from the client and the Dictionary of Occupational Titles.

(By Client)
Mr. Roxby reported that, at the time of his injury, he was employed by JM Pontiac as a line technician (heavy mechanic). He described work in this job as requiring:

| | |
|---|---|
| Maximum weight lifted: | 150 lbs. (transmissions) within floor to knuckle level on an occasional basis. |
| Frequent weight lifted: | 70 lbs. (tires) within floor to shoulder range approximately 8 times per hour. |
| Maximum push/pull weight: | a vehicle with assistance of 2 to 3 people, a distance of 30 feet on an occasional basis. |
| Maximum carry: | 80 lbs. (torque converter / head) a distance of 150 feet on an occasional basis. |

Frequent standing walking, repetitive bending, sustained bending, overhead reaching, forward reaching, repetitive reaching, repetitive squatting, pivot twisting, pushing/pulling, repetitive wrist and forearm movements, fine motor, simple and firm grasping.

By Mr. Roxby's description, this work falls into the Very Heavy work classification category.

(By D.O.T.)
The Dictionary of Occupational Titles lists the work of a mechanic/repairer (heavy) (D.O.T.# 620.381-022) in the Heavy work classification category.

CARDIOVASCULAR ASSESSMENT

The American Heart Association "cardiovascular profile" ranked Mr. Roxby in the Medium risk category for the development of cardiovascular disease. His resting blood pressure was 122/90 mmHg, and his resting heart rate was 84 beats per minute.

The aerobic capacity assessment using a sub maximal 12-minute treadmill protocol was deferred due to current coronary artery disease. Dr. Francis Schwerin, Mr Roxby's cardiologist, was contacted for medical clearance to perform FCE. Dr. Schwerin reported that Mr. Roxby could perform evaluation as tolerated.

Work Capacities Assessment
RE: Roxby, Bruce

Blood pressures and heart rate responses throughout evaluation were within normal limits. Highest heart rate of 120 bpm was noted during positional tolerance testing. Highest blood pressure was noted at 132/80 mmHg during lifting evaluation.

MUSCULOSKELETAL SCREEN

POSTURE: Increased cervical lordosis and thoracic kyphosis. No scoliosis noted. Bony landmarks of pelvic girdle are even.

GAIT PATTERN: Patient ambulates independently without devices. His gait is antalgic with limp on right. Decreased arm swing on right noted. Patient is able to heel and toe walk.

RANGE OF MOTION: Trunk range of motion is minimally to severely limited without complaints of increased pain with testing. Measurements are as follows:

| | | | |
|---|---|---|---|
| Total Flexion | 31° | Lateral Flexion Right | 15° |
| Lumbar Flexion | 27° | Lateral Flexion Left | 20° |
| Total Extension | 15° | Rotation Right | 15° |
| Lumbar Extension | 8° | Rotation Left | 15° |

STRENGTH: Bilateral lower extremity strength is 5/5 throughout. Weaknesses noted in abdominal strength (3/5), shoulder flexion (4/5 on right and 4+ on left) and shoulder abduction (4/5 bilaterally). No weakness noted in bilateral wrist and elbow flexion/extension (5/5).

NEUROLOGICAL: Bilateral lower extremity DTRs are present but hyporeactive. C5 reflex is intact bilateral. Unable to elicit C6-7 reflex. Sensation is intact with exception of patient reports of numbness along ulnar nerve path. Root tension tests (SLR, Kernig, and Bilateral SLR) are positive on right.

FLEXIBILITY: Bilateral lower extremity flexibility is within normal limits with exception of bilateral hip rotators (moderate restrictions) and left rectus femoris (minimum restrictions).

SOFT TISSUE ASSESSMENT: Tenderness noted over C7 paraspinal region.

WADDELL'S QUESTIONNAIRE: Mr. Roxby score was negative for magnified illness behavior. He scored 2 out of 7 for subjective symptoms, 2 out of two for past medical history, and 0 out of 7 for objective/physical signs for a total of 4 out of 16 (8 and > is positive).

Work Capacities Assessment
RE: Roxby, Bruce

BEHAVIORAL MEDICINE SCREEN: Mr. Roxby completed the Multidimensional Pain Inventory (MPI) which revealed possible dysfunctional coping with regard to his current physical condition.

RANSFORD PAIN DIAGRAM: Mr. Roxby scored 0 out of 25 possible indicators of non-anatomical distributions of pain. Positive score of 3 or more reveals possible need for further psychological evaluation.

FUNCTIONAL CAPACITIES ASSESSMENT/WORK TOLERANCE SCREEN

A thorough "functional" evaluation was completed. The safe maximum limits for material handling activities and the functional limits for non-material handling activities are summarized in the tables below.

Frequent material handling and non-material handling (positional) tolerances were assessed in a continuous activity circuit. The interval of activity lasted 70 minutes of a scheduled 90 minutes.

Consistency of Effort Testing:

Mr. Roxby underwent a formal screening procedure of six different isometric strength tests designed to identify those individuals who put forth less than maximum effort on the evaluation tasks. Each task was repeated four times to test for consistency of response. A coefficient of variance statistic was calculated for each task. Mr. Roxby was consistent on 6 out of 6 tasks.

FUNCTIONAL CAPACITIES EVALUATION
WORK TOLERANCE SCREEN

ISOMETRIC CONSISTENCY TESTS:

| TEST | TRIALS (POUNDS OF FORCE) | AVERAGE | S.D./C.V. |
|---|---|---|---|
| Isometric Push | 52,60,60,58 | 57.5 | 3.7/8.5% |
| Isometric Pull | 52,54,54,58 | 54.5 | 2.5/4.6% |
| Grip Strength, Left Hand | 78,85,85,85 | 82.7 | 4.4/5.4% |
| Grip Strength, Right Hand | 85,85,80,80 | 82.5 | 2.8/3.4% |
| 3-Jaw Pinch, Left Hand | 18,17,18,15 | 16.5 | 1.2/7.5% |
| 3-Jaw Pinch, Right Hand | 16.5,15,19,18 | 17.1 | 1.7/10.3% |

0%-15% considered consistent in effort
S.D. = Standard Deviation C.V. = Coefficient of Variation

Work Capacities Assessment
RE: Roxby, Bruce

MATERIAL HANDLING (LIFTING):

| LIFT | DEMONSTRATED | | JOB REQUIREMENT BY D.O.T. | | ADEQUATE FOR JOB |
|---|---|---|---|---|---|
| | Occasional | Frequent | Occasional | Frequent | YES/NO |
| Floor to Knuckle | 45 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Knuckle to Shoulder | 35 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Shoulder to Overhead | 22 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| 100 Ft. Carry | 30 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Push/Pull | 40 lbs. Of force | 30 lbs. Of force | 100 lbs. Of force | 50 lbs. Of force | NO |

Comments: Mr. Roxby's lifting abilities were self-limited due to pain and fatigue. Mr. Roxby requested to terminate frequent lifting evaluation due to fatigue. At this time, his heart rate was 100 bpm and his blood pressure was 132/80. He was noted to be moderately short of breath at this time.

Work Capacities Assessment
RE: Roxby, Bruce

**NON-MATERIAL HANDLING:**

| ACTIVITY | DEMONSTRATED | JOB REQUIREMENT By Client | ADEQUATE FOR JOB (YES/NO) |
|---|---|---|---|
| Sitting (60 Min/Episode) | Constant (17 min. continuous/56 min cumulative) | Occasional | YES |
| Standing (30 Min/Episode) | Frequent (continuous 30 min.) | Frequent | YES |
| Walking (30 Min/Episode) | Occasional (5 min. continuous/10 min. cumulative at moderate pace) | Frequent | NO |
| Climbing (stairs) (4 Flights/Episode) | Occasional | Not Required | YES |
| Sustained Bending (1 Min/Episode) | Occasional | Frequent | NO |
| Overhead Reach (1 Min/Episode) | Occasional | Frequent | NO |
| Squatting (repetitive) (5X/Episode) | Frequent | Frequent | YES |
| Kneeling (1 Min/Episode) | Frequent | Occasional | YES |
| Repetitive Bending (5X/Episode) | Frequent | Frequent | YES |
| Crouching(sustained squat) (1 Min/Episode) | Frequent | Occasional | YES |
| Ladder Climb (3 Rungs 3x/Episode) | Occasional | Occasional | YES |
| Trunk Twisting (5x/Episode) | Frequent | Frequent | YES |
| Forward Reaching (sustained) (1 Min/Episode) | Frequent | Frequent | YES |
| Forward Reaching (repetitive) (5X/Episode) | Frequent | Frequent | YES |
| Assembly | Frequent | Frequent | YES |
| Simple Grasp | Frequent | Frequent | YES |
| Firm Grasp | Occasional | Frequent | NO |
| Fine Motor | Frequent | Frequent | YES |
| Writing | Occasional (demonstrates compensatory writing behavior) | Occasional | YES |

Comments: Mr. Roxby is right-hand dominant. He assists his right hand during writing with the left as if to push right hand along. Intermittently, his right elbow is elevated significantly during writing. He reports that he pushes his hand along due to weakness and was unaware of his elbow movement. His writing is shaky but legible. Firm grasp is limited in right hand due to complaints of fatigue and decreased sensation. Sustained bending and overhead reaching were limited due to complaints of increased neck, shoulder, and low back pain.

Work Capacities Assessment
RE: Roxby, Bruce

| PHYSICAL CHARACTERISTICS OF WORK | | | |
|---|---|---|---|
| PHYSICAL DEMAND | OCCASIONAL (0-33% OF WORKDAY) | FREQUENT (34-66% OF WORKDAY) | CONSTANT (67-100% OF WORKDAY) |
| SEDENTARY | 10 lbs. | NEGLIGIBLE | NEGLIGIBLE |
| LIGHT | 20 lbs. | 10 lbs. | NEGLIGIBLE |
| MEDIUM | 50 lbs. | 20 lbs. | 10 lbs. |
| HEAVY | 100 lbs. | 50 lbs. | 20 lbs. |
| VERY HEAVY | Over 100 lbs. | Over 50 lbs. | 50 lbs. |
| U.S. DEPT. OF LABOR STRENGTH FACTOR: LIFTING/CARRYING/ PUSHING, PULLING OR OTHERWISE MOVING OBJECTS. | | | |

Thank you for referring to HEALTHSOUTH Rehabilitation Center of Fort Myers. If you have any further question regarding this evaluation or the recommendations made, please do not hesitate to contact us.

Constance Hohzom, P.T.

Janeen Daniels, M.S.

FRANCISCO & EMISON
757 N.W.27TH Avenue
Suite 202
Miami, Florida 33125

| | | | |
|---|---|---|---|
| To: | Ms. Laurel E. Morris | Fax: | 78[illegible]-235-0784 |
| From: | Spencer A. Emison, Esq. | Date: | 5/[illegible]2/99 |
| Re: | Bruce Roxby, Policy No. 96878-GD-Long Term Disability | Pages: | 2 |
| CC: | | | |

☒ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

RECEIVED
JUN 23 [illegible]
LONG TERM DISABILITY

Confidential

ROXBY 0096

LAW OFFICES
FRANCISCO & EMISON
A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS
757 N.W. 27TH AVE.
SUITE 202
MIAMI, FLORIDA 33125

JOSE M. FRANCISCO
SPENCER A. EMISON

TEL. (305) 649-5060

June 21, 1999

**VIA FAX & U.S. MAIL**

Ms. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

**RE: Claimant Bruce Roxby**
**Policy No. 96878-GD-Long Term Disability**

Dear Ms. Morris:

I represent the above referenced claimant who is a participant and beneficiary of the Disability Plan issued by Sun Life of Canada. The administration of the plan appears to be governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

§ 1133 of ERISA provides that every employee benefit plan shall provide adequate notice in writing to any participant or beneficiary whose claim has been denied, setting forth the specific reasons for denial, and shall afford a reasonable opportunity for a full and fair review by the appropriate fiduciary of the claim denial. The denial is also required to reference the pertinent plan provision upon which the denial is based.

Thus far, in violation of ERISA, you have entirely failed to provide any denial of Mr. Roxby's claim, much less the notice required by ERISA. Yet you have terminated Mr. Roxby's benefits which he relies upon for his very livelihood.

Demand is hereby made for a denial and the notice required by law within ten days.

ROXBY 0097

Very truly yours,

Spencer A. Emison

RECEIVED
LONG TERM DISABILITY

# Medical Review

**To be completed by Examiner:**

Claimant: Bruce Cobby  Date Referred: 6-10-99

Policy/Cert: 96878  Referred by: [illegible]

Type of claim: ✓ LTD __ STD

Claim Status: __ New __ Ongoing ✓ Change in Definition __ Appeal

Reason for Review: 51 y.o. at time of def. change (11-22-98). Now must be TD "any" occ. Initial dx: lumbar facet syndrome, myofascial pain syndrome. See Dr. 1x bp. See notes in file. Recent FCE & TSA done. As it was suggested we get release from cardiologist before release to RTW we sent FCE

**To be completed by Medical Consultant:** to him. See response

Assessment: from Dr Schweim dated 4-13-99

Please review as to restrictions & limitations Mr Cobby may have

6/16/99 51 yo [illegible] worked as auto mechanic until 5/25/93. On that day he sustained an injury at work – but he hit [illegible] as he was coming out from under the car. His head was [illegible] [illegible]. Initially he was dx'd c̄ [illegible] lumbar facet syndrome and myofascial pain. He had been on a MVA 5 yrs [illegible] and suffered a herniated disc at C6-7. He had LUE [illegible] due to this injury. At the time of the 5/25/93 injury he [illegible] with pain a[illegible] LUE pain. An MRI on 5/20/93 showed "a [illegible] [illegible] disc [illegible] at C5-6". This was [illegible] [illegible] [illegible] Subsequent [illegible] [illegible] [illegible] [illegible] [illegible] ([illegible] – [illegible] [illegible] [illegible] 5 yrs injury) and [illegible] [illegible] spinal cord injury [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] the file does not indicate [illegible] [illegible] [illegible] [illegible] [illegible]. Through 1996 and 1997 Drs [illegible] [illegible] [illegible] indicated claimant could do "light duty." There were [illegible] – lifting, pushing, pulling, bending, twisting and fine motor ability [illegible] [illegible]

[illegible]

ROXBY 0099

# Medical Review

**Assessment Continued:** [illegible] claimant [illegible]

[illegible] [illegible]

[illegible] claimant [illegible] FCE.

A [illegible] letter from the [illegible] [illegible] Dr.

[illegible] which states he agrees with the [illegible] [illegible]

[illegible] FCE, [illegible] [illegible] a [illegible] [illegible]

[illegible] [illegible] for [illegible] light duty work.

The claimant's [illegible] [illegible]

[illegible]

[illegible] with FCE and [illegible], [illegible] [illegible]

[illegible] that [illegible] could [illegible]

[illegible]. However [illegible] Dr. [illegible] has

[illegible] indicated that claimant could do light duty.

The [illegible] [illegible] [illegible] [illegible].

**Recommendations:** 1) For R + L hand [illegible] wrist and [illegible] [illegible] conditions would [illegible] to [illegible] [illegible] [illegible]. FCE suggests [illegible] R + L but [illegible] [illegible] functionality.

2) Appears to have [illegible] some LOP, although not [illegible]. Should not perform heavy physical or sustained physical exertion but appears capable of performing a light duty work per Dr. [illegible]'s letter.

[signature]

**Consultant's Signature:** **Date of Review:**

Francis T. Schwerin, M.D., F.A.C.C.

Cardiovascular Diseases

Laurel E Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02181
April 13, 1999

Re: Policy No 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sr. Claims Administrator:

In response to your letter of 12/3/98, I am able to agree with the "cardiovascular assessment" contained within the Functional Capacity Evaluation. A stress test was performed 5/11/98 for 5 minutes of the Bruce Protocol witthout chest pain or ST shift. (MAX HR 144 BPM and max BP 170/80.) Nuclear images suggested a small area of inferior ischemia at this level of exercise. Mr. Roxby has remained asymptomatic and wishes to continue his strict dietary and nutritional therapy before considering an invasive procedure.

In summary, while there was evidence of a mild degree of exercise-induced ischemia at last year's evaluation, CAD probably contributed minimally to his disability. I am not in a position to evaluate the merits of his disability claim from the point of view of his neurologic deficit. I have enclosed a copy of office notes and the stress test. Please let me know if I may be of further assistance.

Sincerely,

Francis T. Schwerin, M.D.

RECEIVED
APR 19 1999
LONG TERM DISABILITY

L Morr

694 Eighth St., N., Naples, FL 34102 • (941) 434-7227 • Fax (941) 434-6411

Sun Life of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (781) 237-6030
Tel (800) 225-3950

December 3, 1998

COPY

Dr. Francis P. Schwerin
694 8th St. N
Naples, FL 34102

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Dr. Schwerin:

Enclosed please find the results of a recent Functional Capacity Evaluation performed on Bruce Roxby.

As Mr. Roxby's cardiologist, please advise if you agree with these results and if not, please be specific as to what areas you would not be in agreement with. Copies of office notes and diagnostic test results for our review would be appreciated also.

As your response is needed to continue our assessment of Mr Roxby's claim for disability, we would appreciate a prompt response.

My fax number is 1-781-235-0784. If you have any questions, please contact me at 1-800-432-1102 x3399.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

Francis T. Schwerin, M.D., F.A.C.C.

Cardiovascular Diseases

**CONSULTATION ON BRUCE ROXBY**

**DATE OF CONSULTATION:** 5/6/98

**CHIEF COMPLAINT:** 51 year old man with risk factors for coronary disease.

**HISTORY OF PRESENT ILLNESS:** Mr. Roxby has chronic pain as a result of a car crash. He has central cord syndrome. He had this recent episode of chest pain following an argument. He states that yard work does not bother him and he can do this for 15-20 minutes at a time. Cholesterol has been elevated previously at over 300. In addition, he has high triglycerides. He is now here for evaluation of his coronary status.

**MEDICATIONS:** Ascriptin 800 mg. daily, Vitamin B complex and Folic acid.

**ALLERGIES:** He reports allergy to IVP dye and to MSG.

**PAST MEDICAL HISTORY:** Notable for malrotation of his left kidney, and he has chronic pain due to the MVA as noted above.

**FAMILY HISTORY:** Father died age 71 of heart attack. Mother is age 71 in good health. Brother died age 39 of leukemia.

**PHYSICAL EXAM:** On examination, patient is 5' 8" tall and weighs 218 pounds. Blood pressure is 144/94 on the right with a heart rate of 98. Lungs are clear. Heart is regular. There is no murmur. Abdomen is soft and non-tender. Extremities are free of edema. 12 lead EKG documents sinus rhythm with left axis deviation and prominent S-wave in the lateral leads consistent with possible pulmonary disease.

**IMPRESSION:**

(1) Symptoms suggestive of angina.

(2) Several risk factors for coronary disease.

**PLAN:**

(1) Thyroid profile, HDL profile, liver panel, electrolytes, BUN, creatinine, magnesium and adenosine Myoview stress test. Because of his spinal cord injury, he is not a candidate for conventional treadmill test.

Francis T. Schwerin, M.D.

FTS/mld D: 10/11/98 T: 10/16/98

694 Eighth St., N., Naples, FL 34102 • (941) 434-7227 • Fax (941) 434-6411

CONTINUATION SHEET

Bruce Roxbury

6-3-98 OV F/u

wt 210.5
Bp 118/70
P 88
J Thompson RN

Rec. Hx of mild [illegible] nuclear stress test [illegible]
patient reluctant to consider cath.
He wishes to try medical therapy to [illegible] level
He also wishes to follow Homocysteine level
Imp: CAD
hyperlipidemia
plan →

Meds
Accupril 20mg qd
Vit B
Lipitor ← not taking

Begin Zocor 40 [illegible]
RX 30 [illegible]
[illegible] HDL, LFTS, [illegible]
[illegible] 2 months
[illegible]
The LDL
Homocysteine 2 months

1-12-99 OV F/u

wt 187
Bp 120/70
P 80
J Thompson

wants to avoid Zocor
wt loss 30 lbs
strict low fat diet
still smoking.
Imp: ? CG
prob CAD
plan →

Meds
ASA
Folate

(Homocysteine [illegible]
Lipid panel
[illegible])
→ in a few months

**Francis T. Schwer'n, M.D., P.A.**
***Nuclear Cardiology***

**Bruce Roxby** Referring Physician: Francis Schwerin

Birth Date 4-25-47 Age 51 Chart Number 20338

**Myoview Stress Test, Gated** Date of study 5-11-98

**Scintigraphy:**

Mr. Roxby was studied using Tc99m Myoview and tomographic imaging.
A two day rest and stress injection protocol was used. 24.5 mCi of Tc99m Myoview were administered on the first day and mCi of Tc99m Myoview were administered 20 hours later. Images were obtained approximately 30 minutes after each injection.
The left ventricle was normal size. Right ventricular perfusion was normal.
Breast attenuation was not seen. Gated wall motion analysis suggested normal EF and wall motion.
Stress images demonstrated a small inferior defect which partially improved with resting images.

Conclusion: This test is POSITIVE for exercise-induced myocardial ischemia in the territory of the PDA.

D 5 12 98
T 5 12 98
M

May 13, 1998

electronically affixed

Francis T. Schwerin, M.D.

594 Eighth Street North Naples FL 34 [illegible] 94[illegible] 434-7227 Fax 94[illegible] 434-64[illegible]

**Francis T. Schwe[illegible], M.D., P.A.**
***Nuclear Cardiology***

**Bruce Roxby**

Referring Physician: Francis Schwerin

Birth Date 4-25-47 Age51 Chart Number 20338

**Myoview Stress Test, Gated** Date of study 5-11-98

Page 1/2

**Clinical History and indication for test:**

51 year old man with risk factors for CAD and chest pain syndrome.

**Stress test:**

The exercise portion of the test was supervised by Francis T. Schwerin, M.D.
Resting EKG showed sinus rhythm.
At rest, blood pressure was 120/70 mmHg and heart rate was 92
The patient was exercised for 5 minutes 3 seconds of the Bruce protocol
and achieved a maximum heart rate of 144 which was 85 percent of the maximum heart rate predicted by age. The maximum BP was 170 /80 for a BP x HR of 24, 000.
The test was stopped due to fatigue. The patient completed stage I.
There was no ST depression at peak exercise.
There were no PVCs .
Chest pain did not occur.
Following exercise there was left shoulder discomfort.

**Impression:**

1. No EKG evidence of ischemia.
2. Atypical symptoms with exercise.
3. Mildly reduced exercise capacity.
4. Normal BP response to exer[illegible]ise.
5. Normal HR response to exercise.
6. No ectopy throughout test.

**Conclusion:** The above is negative for exercise-induced ischemia. Scintigraphic images are pending.

RECEIVED
[illegible]
LONG TERM [illegible]

D. 5/12/98
T. 5/12/98
M.

May 13, 1998

electronically affixed

Francis T. Schwerin, M.D.

694 Eighth Street North, Naples, FL 34102 (941)434-7227 Fax (941)434-6411

Francis T. Schwerin, M.D., F.A.C.C.
Cardiovascular Diseases
694 Eighth St., N., Naples, Fl. 34102

Laurel E. Morris
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02181

02481/3699

Bruce Copley
96828

"Stopped paying w/o notice as of 11-22-98..."
letter sent 9-30-98 re change of def

Med. Consult recommended FCE & TSA
scheduled 11-19-98

11-24 sent copy of policy to Mr. Copley
re: lesser of 60% or 70% - offsets

FCE rec'd.
"Under cardiologist care for CAD, diagnosed 5-98. Cardiologist did clear him for FCE"
Recommendations "... we would recommend that medical clearance from his cardiologist be obtained before his return to work"

12-3-98 FCE to Dr. Schwein
resent 2-19-99

L.M.. MAR 3 1999

ROXBY

HICKS & ANDERSON, P.A.
ATTORNEYS AT LAW
New World Tower - Suite 2402
100 North Biscayne Boulevard
Miami, Florida 33132-2513

Telephone (305) 374-8171
Fax (305) 372-8038

MARK HICKS*
RALPH O. ANDERSON*
JEAN KNEALE

GARY A. MAGNARINI
CINDY L. EBENFELD
ILA J. KLION
DINAH S. STEIN
DAVID J. MAHER
DEBRA B. POTTER
LISA E. LANG-LOPEZ

OF COUNSEL:
JAMES E. TRIBBLE
ROGER L. BLACKBURN

January 26, 1999

**VIA FEDERAL EXPRESS**

Mr. Laurel E. Morris
Sr. Claims Administrator
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

RECEIVED
JAN 27 1999
LONG TERM DISABILITY

RE: Policy No. 96878-GD-Long Term Disability
Claimant Bruce Roxby

Dear Ms. Morris:

This firm represents Bruce Roxby in connection with his long term disability claim. Mr. Roxby is an insured employee under the Sun Life policy. Mr. Roxby has been totally disabled and receiving monthly total disability benefits under the Sun Life policy. However you have unilaterally stopped paying him as of November 22, 1998 without notice or warning and without any formal denial of benefits. It is our understanding that you at one time verbally stated to Mr. Roxby that his benefits were denied, but later retracted that statement and said that his entitlement to benefits is under review. Benefits through the end of November and the monthly benefit for December, 1998 are overdue and owing.

Additionally, after five years of paying monthly benefits at 70% of Mr. Roxby's monthly Basic Earnings reduced by his monthly worker's compensation offset (benefit of $4,182.29), as of October 1, 1998, you unilaterally reduced the amount of the monthly benefit to 60% of monthly basic earnings (benefit of $3,675.78), a difference of $506.51 per month.

We hereby demand that you pay the overdue benefits and reinstate payment of monthly benefits at 70% of Mr. Roxby's monthly Basic Earnings, reduced by his monthly worker's compensation offset.

We also request that you provide us with a complete copy of the policy and advise whether the disability insurance is part of an ERISA plan. If it is part of an ERISA plan, please



HICKS & ANDERSON, P.A.
ATTORNEYS AT LAW
New World Tower - Suite 2402
100 North Biscayne Boulevard
Miami, Florida 33132-2513
Telephone (305) 374-8171
Fax (305) 372-8038

MARK
RALPH P. ANDERSON*
JEAN KNEALE
GARY A. MAGNARINI
CINDY L. EBENFELD
ILA J. KLION
DINAH S. STEIN
DAVID S. MAHER
DEBRA B. POTTER
LISA E. LANG-LOPEZ
OF COUNSEL
JAMES E. TRIBBLE
ROGER L. BLACKBURN
*OFFICERS

provide proof of same and all additional documents which govern the plan.

After repeated requests you finally provided Mr. Roxby with pages 2 through 31 of what purports to be the long term disability policy, policy no. 96878. Page 2 is titled:

Amendment No. 1
Amendment Date May 1, 1992
Policy Specifications

This does not appear to be the complete policy in that (1) it is missing page 1, (2) it is an Amendment, and (3) the general provisions state:

Your entire contract with us consists of the following:

1. this Policy; and
2. the Policyholder's Application, a copy of which is attached; and
3. the applications, if any, relating to persons insured under the policy.

There is no "Policyholder's Application" attached to the pages you sent Mr. Roxby and you have not advised Mr. Roxby if there are any applications relating to persons insured under the policy or provided him with a copy of same. Page 20 of the policy states that "[t]his Policy is governed by the laws of the jurisdiction where the Application was signed." Please provide copies of all applications and advise which state the applications were signed in and the state whose law you contend governs. As Mr. Roxby was employed by J.M. Pontiac in Florida, it would appear that Florida law may apply.

Additionally, we request that you provide us with a copy of any report, notes and/or evaluation of your "medical consultant", together with a detailed explanation of all facts, policy provisions, and law you rely upon to justify your discontinuance of Mr. Roxby's monthly disability benefits.

As discussed more fully below, your actions in this matter have been in bad faith as you have continually and unjustifiably delayed Mr. Roxby's monthly benefits, refused to provide him with documents and information, and have made inconsistent statements concerning the policy, your review and/or denial, and his rights to benefits. If you do not immediately continue Mr. Roxby's benefits, we will file suit forthwith and pursue all available remedies.

**I. Total Disability Benefits Are Due Pursuant to the Policy.**

The Long Term Disability Benefit Provision provides:

-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

Mr. Laurel E. Morris
January 26, 1999
Page 3

A. Total Disability Benefit

If we receive due Notice and Proof of Claim that:
- an Employee became Totally Disabled while insured; and
- his Total Disability continued beyond the Elimination Period;

we will pay, subject to the Limitations and the Exclusions, a Total Disability Benefit. The amount payable for each month of continuous Total Disability will be equal to the Net Monthly Benefit, based on the Employee's monthly Basic Earnings prior to his Disability. An amount equal to one-thirtieth of the Net Monthly Benefit is payable for each day of Total Disability for a period which is less than a full month.

(pp. 24-25). The General Provisions state that "Time of Payment" is as follows:

Once we have received written Proof of Claim for benefits payable on a periodic basis, such payments will be made at the end of each benefit paying period as described in the Benefit Provision.

Consequently, benefits are due monthly. Under the heading "Termination of Total Disability Benefit", the policy provides:

The Total Disability benefit will cease on the earliest of the following dates:
- the date the Employee ceases to be Totally Disabled; or
- the date the Employee dies; or
- the end of the Maximum Benefit Period.

(pp. 24-25).

The term "Totally Disabled", with respect to employees with annual Basic Earnings of$30,000 or greater, is defined on page 6 as:

An Employee is totally disabled if he is in a continuous state of incapacity due to Illness which:

1. while it continues throughout the Elimination Period and during the following 60 months of incapacity, prevents him from performing all of the material duties of his regular occupation;

HICKS & ANDERSON P A
SUITE 2402 · NEW WORLD TOWER, 100 NORTH BISCAYNE BOULEVARD MIAMI FL 33132 • TEL. 305 374 8171 • FAX 305 372 8038

ROXBY 0110

2. while it continues thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience.

The Term "Illness" is defined as "Bodily injury, sickness, disease, Pregnancy or mental infirmity." (p. 6)

It is our understanding from your letter to Mr. Roxby dated November 5, 1998, that the 60 month (5 year) period referred to in paragraph 1 of the Total Disability definition ended on November 22, 1998. You scheduled a Functional Capacity Evaluation for November 19, 1998, just 3 days before the end of the 60 day period. Your November 5, 1998 letter stated that this Functional Capacity Evaluation ("FCE") was requested "[i]n order that we may properly review your claim for disability benefits beyond the 5 year Own Occupation date of November 22, 1998" and that "[o]nce the results of this examination are received and reviewed by Our Medical Consultant, we will advise you accordingly."

Mr. Roxby attended the Functional Capacity Evaluation (FCE). While Mr. Roxby finally obtained a copy of FCE report after repeated requests, you have failed and refused to provide him with a copy of the report of any review by your "Medical Consultant." Moreover, you have unilaterally and arbitrarily discontinued the payment of Mr. Roxby's total disability benefits without informing him of the facts, policy provisions, and legal authority which you rely upon.

Under Florida law, the burden of establishing that the insured is not disabled from engaging in an occupation is on the insurance company. New York Life Ins. Co. v. Lecks, 165 So. 50, 54 (Fla. 1936) ("The burden was upon the company to establish the insured's recovery to the degree of ability enabling him to engage in an occupation for profit or remunerations"). Moreover, an insurer may not discontinue monthly disability benefits simply because the insured may be able to render some small service related to his occupation and may not refuse monthly disability benefits on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engage in when the policy was written. Id. In connection with a disability policy defining "total disability to be such injury or disease as to prevent the insured 'thereby from engaging in any occupation whatsoever for remuneration or profit'", the Florida Supreme Court held:

> A person may be injured or diseased to such an extent as to prevent him from engaging in an occupation for remuneration or profit, but which would not prevent an occasional subsidiary employment or avocation.
>
> The term 'occupation' is itself a relative one, having relation to one's capabilities. A person whose occupation is that of merchant,

> or mechanic, or day laborer, who becomes 'wholly disabled' from engaging in his occupation, might nevertheless, after years of preparatory study and mental training, follow some gainful occupation, but, until that end is accomplished and the insured is receiving profits or remuneration from his new vocation, the insurance company carrying the insurance for the injured person would not under a clause like the one included in the policies in this case be justified in refusing the monthly benefit payments on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engaged in when the policy was written. Nor would it be justified in discontinuing the monthly disability payments so soon as the injured person recovered partially from his injuries enough to enable him to occasionally render some small service related or unrelated to his occupation.

165 So. at 52.

In the instant case, the policy definition of total disability after the 60 day period is broader than the definition interpreted by the Florida Supreme Court. The definition here does not require that the insured be prevented from engaging in any occupation, but that he is "prevent[ed] from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience." Thus, the Florida Supreme Court's holding that discontinuation of monthly disability benefits is not permitted unless and until the insured has become qualified for and is earning remuneration from a new vocation applies here with even greater force.

Moreover, the general rule is that where the disability policy defines total disability in terms of the inability to engage in any occupation for which the insured is or becomes reasonably qualified by education, training or experience, as it does here, benefits must be paid unless the insured is capable of engaging in another occupation comparable to his previous occupation. See Genzer v. Insurance Co. of North America, 633 P.2d 1267, 1270 (Okla. App. Div. 2 1981) (insured's new occupation "had to be at least comparable in 'dignity, permanency and remuneration' to his past position before he could be adjudicated not totally disabled."); Couch on Insurance 3d, §147:26, p.147-42 ("As a general rule, the remuneration from the insured's employment must be reasonable comparable with that which he or she earned prior to being injured in order for the insurer to escape liability"); Rowe v. Home Sec. Life Ins. Cop., 289 S.C. 236, 345 S.E.2d 758 (Ct. App. 1986) (work for which insured is reasonably fitted must rationally approach the same livelihood and standard of living which the insured enjoyed prior to injury).

ROXBY 0112

Mr. Roxby has been an automobile mechanic for many years. You have provided absolutely no evidence that he is qualified by education, training or experience to engage in any full time occupation, much less one which is comparable to his previous employment. In fact, the FCE report does not even mention Mr. Roxby's qualifications, education, training or experience. Nor does it specify any particular occupation he is capable of performing with the limitations of his disability. Moreover, you have not provided any proof that any qualified physician has determined that Mr. Roxby is able to perform any full time occupation.

We are enclosing for your information and review a copy of Dr. Jeffrey C. Perkins' clinic note for Mr. Roxby's January 7, 1999 visit. As you can see, Dr. Perkins has reviewed and disagrees with the conclusion of the FEC report. Dr. Perkins states, *inter alia*, that Mr. Roxby cannot return to work in a full time capacity at medium category.[1] "At best, he would only qualify in my professional opinion for short term, less than 4 hours a day in minimal category." Moreover, if Mr. Roxby "were to overexert himself or carry heavy objects or be in a situation where he would have to have quick alternating motions with his hands, this may aggravate the symptoms as well as aggravate the ischemia o[r] the heart problem."

Dr. Perkins' evaluation demonstrates that Mr. Roxby's condition "prevents him from engaging in any occupation for which he is or becomes reasonably qualified by education, training or experience." Thus, Mr. Roxby remains totally disabled within the meaning of paragraph 2 of the policy definition. It is also well settled that if the requirements of an occupation will impair the insured's health, as is the case here, he remains totally disabled. See, e.g., Equitable Life Assurance Society of U.S. v. Neill, 243 F.2d 193, 195 (5th Cir. 1957) (citing New York Life Insurance Co. v. Bird, 12 So. 2d 454 (Fla. 1943)).

---

[1] It should be noted that the FEC report itself (prepared by a non-physician) does not unequivocally conclude that Mr. Roxby is capable of performing full time work within the medium category. Rather, it states, under "recommendations," that he demonstrates the ability to perform within the Medium category or less," with limitations, and with a proviso that his cardiac condition must be taken into account. Moreover, an eight hour work day in the medium category is not supported by the remainder of the report and the results of the testing. For example, as noted on page 9 of the FCE report, Mr. Roxby had to terminate lifting due to fatigue and pain with shortness of breath; and as noted on p. 5, Mr. Roxby suffered from greatly elevated pain after the testing. Additionally, immediately following the testing period, when he went home that day he suffered from exhaustion requiring 4 hours of sleep. These examples and observations are provided by way of example only and in no way concede the validity of any conclusions reported.

**II. Your September 30, 1998 Letter - Regular Care of a Doctor.**

In a letter dated September 30, 1998, you stated, incorrectly, that Mr. Roxby had not been seen by a doctor since November 9, 1997. You cited the following purported excerpt from the policy:

> "Payment will not be made under this provision
> A. For any period of disability during which the employee is not under the regular medical care of a doctor."

However, this language does not appear in the policy you finally sent to Mr. Roxby months later (post-marked November 24, 1998) after his repeated request. Rather, on page 27 of the policy you sent Mr. Roxby, under the heading "limitations", it is stated:

> No Disability benefit is payable for:
>
> 1. any period during which the Employee is not under the regular care of a doctor.

In any event, you have long ago received copies of Dr. Perkins' office notes showing that your statement that he had not been seen by a doctor is not true. However, you have wholly failed to inform Mr. Roxby as to whether you still contend that he has not been under the regular care of a doctor. In this regard, it should be noted that you have for the past five years recognized that Mr. Roxby satisfied the "regular care" requirement by seeing his doctor once a year as he long ago reached maximum medical improvement. Moreover, as a matter of law, Mr. Roxby has been under the regular care of a doctor, and your position that this limitation applies (if that remains your position) is without merit. See Lorber v. Aetna Life Ins. Co., 207 So. 2d 305, 309 (Fla. 3rd DCA), cert. denied, 212 So. 2d 876 (Fla. 1968):

> [T]he policy .. limits recovery to a period in which the claimant was 'under the regular care of a licensed physician.' The evidence to the effect that [claimant] would have to see a physician at least once in every eight months and that his physical condition is degenerative so that treatment is not curative. The weight of authority supports a holding that under such conditions the requirement for 'regular care' is met by medical supervision and less regular consultation that otherwise would be the case. See cases and discussion in 15 Couch on Insurance 2d, s. 53.156 and s. 53.157. We hold that this defense does not appear as a matter of law from plaintiff-appellant's case.

III. **Amount of Benefits Payable.**

After five years of paying monthly benefits at 70% of Mr. Roxby's monthly Basic Earnings reduced by his monthly worker's compensation offset (benefit of $4,182.29), as of October 1, 1998, you unilaterally reduced the amount of the monthly benefit to 60% of monthly basic earnings (benefit of $3,675.78), a difference of $506.51 per month.

To begin with, the policy language you rely upon (and which was not provided to Mr. Roxby until late November, 1998) is ambiguous and must be construed in favor of the insured. Moreover, the description of Long-Term Disability Coverage contained in the description of benefits given to Mr. Roxby clearly states that "if you are eligible to receive any other disability income (for example, Social Security or Workers' Compensation) the combined benefit maximum is 70% of monthly earnings." Consistent with this language, Sun Life itself interpreted the policy as requiring payment at 70% less the worker's compensation offset, by doing so for the last 5 years. Furthermore, your payment at the 70% figure (less the offset) was reasonably relied upon by Mr. Roxby who took action to his detriment and prejudice. Therefore, you are estopped from denying benefits at the 70% figure (less the worker's compensation offset). See, e.g., Doe v. Allstate Ins. Co., 653 So. 2d 371, 373 (Fla. 1995).

**CONCLUSION**

Please comply with all of the demands in this letter forthwith. If you fail to do so we will file suit forthwith and pursue all available remedies.

If you contend that Mr. Roxby has not fully complied with all of the conditions of the policy, please advise immediately with specifics as to any asserted failure.

Very truly yours,

MARK HICKS

MH:ip
Enclosure: Dr. Perkins' January 7, 1999 clinic note (2 pages)
cc: Bruce Roxby

ROXBY, BRUCE
JANUARY 7, 1999

CLINIC NOTE

Mr. Roxby returns today for a follow-up appointment. He was last seen on August 7, 1998. At that time, I recommended continuation of a home exercise program and a disability form was filled out. He continues to be diligent with his cholesterol sparing diet and is taking multiple vitamins, including Folic acid. He is also contemplating beginning cessation of cigarette smoking. Of note, he was found to have 80% blockage of the posterior descending artery and is on aspirin 325 mg three times a day. According to his cardiologist, Dr. Schwann, he feels he should have a bypass graft. He had a functional capacity workup assessment done on 11/19/98. The recommendations from that demonstrated that he had the ability to return to work full time with medium category or less with limited walking, sustained bending, overhead reaching, ladder climbing, writing and grasping on an occasional basis. Per review of the records and review of the history, I disagree with that.

I feel that the patient has a very limited capacity with very limited endurance to enable him to carry out a full job of 8 hours a day. When he is doing gardening, he has to come in after a short while and rest for a longer while. He does have decreased arm swing on the right and decreased ankle dorsiflexion on the right. He also has noted disk bulge at C3, C4, C5, C7 and central cord syndrome and central cord ischemia. He does have weakness of his right hand compared to the left hand. He does compensate by handing items from his left to his right. He had a test which involved pegs and he was compensating by being helped with the left hand in sliding the items. He definitely has coordination problems of the right hand and some on the left.

Physical examination reveals a pleasant male in no acute distress. The patient was able to transfer with standby assist and ambulate for moderate distances with a decreased arm swing on the right and a Trendelenburg type gait pattern with hip hiking on the right. There continues to be decreased range of motion of the right lower extremity, the ankle extensors and ankle dorsiflexors.

**IMPRESSION:**

1. Status post cervical spinal cord injury.
2. Status post cervical and lumbar strain and sprain syndrome.

**PLAN:**

1. The patient will benefit from continuation of his home exercise program.
2. He will also benefit from continuation of his vitamin regimen which includes B complex and Folic acid.

ROXBY 0116

ROXBY, BRUCE
JANUARY 7, 1999
PAGE TWO

CLINIC NOTE

**PLAN:** (continued)

3. I strongly recommend that Mr. Roxby not return to work in full capacity at medium category. At best, he would only qualify in my professional opinion for short term, less than 4 hours a day in minimal category.
4. Of note, he also has central cord ischemia and, if he were to overexert himself or carry heavy objects or be in a situation where he would have to have quick alternating motions with his hands, this may aggravate the symptoms as well as aggravate the ischemia of the heart problem.
5. I would like to see the patient back in the office for follow-up in approximately one year, six months or sooner if need be.

Jeffrey C. Perkins, M.D.

JCP/act

SOR13

**FedEx. USA Airbill** FedEx Tracking Number 809034520530 Form I.D. No. 0210 **Recipient's Co**

**1 From**
Date 1/26/99

Sender's Name Mark Hicks Phone (305) 374-8171

Company HICKS & ANDERSON PA

Address 100 BISCAYNE BLVD STE 2400 Dept./Floor/Suite/Room

City MIAMI State FL ZIP 33132

**2** Your Internal Billing Reference Information Roxby

**3 To**
Recipient's Name Laurel E. Morris Phone

Company Sun Life of Canada

Address One Sun Life Executive Park Dept./Floor/Suite/Room

City Wellesley Hills State MA ZIP 02481

For HOLD at FedEx Location check here — Hold Weekday / Hold Saturday
For WEEKEND Delivery check here — Saturday Delivery / NEW Sunday Delivery

8 0 9 0 3 4 5 2 0 5 3 0

**4a Express Package Service** Packages under 150 lbs.
- [X] FedEx Priority Overnight
- [ ] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service** Packages over 150 lbs.
- [ ] FedEx Overnight Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx Express Saver Freight

**5 Packaging**
- [X] FedEx Letter
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube

**6 Special Handling**
Does this shipment contain dangerous goods? No / Yes / Yes
Dry Ice
Cargo Aircraft Only

**7 Payment**
Bill to: [X] Sender / Recipient / Third Party / Credit Card

Total Packages | Total Weight | Total Declared Value | Total Charges

**8 Release Signature**

Questions? Call 1·800·Go·FedEx® (800) 463-3339

321

0075916293

MEMORY TRANSMISSION REPORT

TIME : 03-09-99 05:22PM
TEL NUMBER1 : 17812350784
NAME : SUN LIFE GROUP DISABILITY

FILE NUMBER : 251

DATE : 03-09 05:21PM

TO : 19414346411

DOCUMENT PAGES : 01

START TIME : 03-09 05:21PM

END TIME : 03-09 05:22PM

SENT PAGES : 01

FILE NUMBER : 251 *** SUCCESSFUL TX NOTICE ***

Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

FAX transmittal

Recipient : Dr. Francis P. Schwerin

Fax Number : 941-434-6411

Subject : Bruce Roxby

From : Laurel E. Morris (ext. 3399)

Date March 9, 1999

Number of pages including header : 1

**COMMENTS :**

We would appreciate a response to our requests regardin the Fuctional Capacity Evaluation sent to you for review and comments in order that we may continue our review of Mr. Roxby's claim for Long Term Disability. He must be considered totally disabled from any occupation in accordance with his age, education and experience.

MEMORY TRANSMISSION REPORT

TIME : 03-09-99 05:32PM
TEL NUMBER1 : 17812350784
NAME : SUN LIFE GROUP DISABILITY

| | | |
|---|---|---|
| FILE NUMBER | : | 252 |
| DATE | : | 03-09 05:24PM |
| TO | : | 13053728038 |
| DOCUMENT PAGES | : | 23 |
| START TIME | : | 03-09 05:24PM |
| END TIME | : | 03-09 05:32PM |
| SENT PAGES | : | 23 |

FILE NUMBER : 252 *** SUCCESSFUL TX NOTICE ***

Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

FAX transmittal

| | |
|---|---|
| Recipient | : Mark Hicks, Attorney |
| Fax Number | : 305-372-8038 |
| Subject | : Bruce Roxby, Policy 96878-GD |
| From | : Laurel E. Morris (ext. 3399) |
| Date | : March 9, 1999 |
| Number of pages including header | 23 |

**COMMENTS :**

I am sending over copies of our letters to Mr. Roxby regarding the change in definition, regular care and treatment, Functional Capacity Evaluation date and subsequent report along with the Transferrable Skills Analyst and the letters sent to Dr. Schwenn, cardiologist.



Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

# FAX transmittal

Recipient : **Mark Hicks, Attorney**

Fax Number: 305-372-8038

Subject : Bruce Roxby, Policy 96878-GD

From : **Laurel E. Morris (ext. 3399)**

Date : March 9, 1999

Number of pages including header : 24

**COMMENTS :**

I am sending over copies of our letters to Mr. Roxby regarding the change in definition, regular care and treatment, Functional Capacity Evaluation date and subsequent report along with the Transferrable Skills Analyst and the letters sent to Dr. Schwerin, cardiologist.

I have forwarded Mr. Roxby's file and your letter to our Law Department for review and to address the legal issues you have raised.

I have also sent another follow up to Dr. Schwerin and will wait for responses from all parties in order to determine if benefits will continue for Mr. Roxby past November 21, 1998.

Please call me with any questions.



Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

# FAX transmittal

Recipient : **Dr. Francis P. Schwerin**

Fax Number: 941-434-6411

Subject : Bruce Roxby

From : **Laurel E. Morris (ext. 3399)**

Date : March 9, 1999

Number of pages including header : 1

***COMMENTS :***

We would appreciate a response to our requests regardin the Fuctional Capacity Evaluation sent to you for review and comments in order that we may continue our review of Mr. Roxby's claim for Long Term Disability. He must be considered totally disabled from any occupation in accordance with his age, education and experience.



Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

# FAX transmittal

Recipient : **Dr. Francis P. Schwerin**

Fax Number: 941-434-6411

Subject : Bruce Roxby, Policy #96878-GD
Long Term Disability

From : **Laurel E. Morris (ext. 3399)**

Date : February 18, 1999

Number of pages including header : 13

Please respond as soon as possible in order that we may continue our review of Mr. Roxby's Long Term Disability benefits.

***COMMENTS :***



Sun Life of Canada
*Shining over America since 1895*

U.S. Headquarters Office

Tel (781) 237-6030
Tel (800) 225-3950

December 3, 1998

Dr. Francis P. Schwerin
694 8th St. N
Naples, FL 34102

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Dr. Schwerin:

Enclosed please find the results of a recent Functional Capacity Evaluation performed on Bruce Roxby.

As Mr. Roxby's cardiologist, please advise if you agree with these results and if not, please be specific as to what areas you would not be in agreement with. Copies of office notes and diagnostic test results for our review would be appreciated also.

As your response is needed to continue our assessment of Mr. Roxby's claim for disability, we would appreciate a prompt response.

My fax number is 1-781-235-0784. If you have any questions, please contact me at 1-800-432-1102 x3399.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

# EmpNet℠ F.C.E. Summary

Bruce Roxby
Patient Name

11·19·98
Date of Evaluation

1. How would you rate this patient's effort?

☐ Invalid ☐ Lack of effort exhibited, but test results remain valid ☒ Valid

2. A) Was the examinee's job description provided? ☐ Yes ☒ No
   B) If yes, can the examinee return to pre-injury job demands? ☐ Yes ☐ No
   C) If the answer to "2. B)" is "No," can examinee return to pre-injury job with modified duty? ☐ Yes ☐ No
   D) At what physical demand level can examinee work?
   ☐ Sedentary ☐ Light ☒ Medium ☐ Heavy ☐ Very Heavy

3. What is the workday tolerance level for this individual?
   ☒ 8 ☐ 7 ☐ 6 ☐ 5 ☐ 4 ☐ 3 ☐ 2 ☐ 1 Hours

4. What issues, if any, have been uncovered during the F.C.E. that would prevent this individual from returning to work or normal activity? Under cardiologist care for coronary artery disease - diagnosed 5/98. Cardiologist did clear him for FCE evaluation.

5. A) Were the patient's stated reports and demonstrated behaviors consistent with one another? ☒ Yes ☐ No
   B) Were the patient's stated reports and demonstrated behaviors consistent with the presenting diagnosis? ☒ Yes ☐ No
   C) Were the patient's stated reports and demonstrated behaviors consistent with the activities being performed? ☒ Yes ☐ No

6. Check any outside influences present during the F.C.E. that may alter or interfere with this data.
   ☐ Therapist coaching ☐ 3rd party present ☐ Attorney involvement ☐ other ______

7. Were there any inconsistencies demonstrated throughout this F.C.E. that should be identified and addressed? ☐ Yes ☒ No
   If Yes, please explain ______

8. Was inappropriate illness behavior present during any part of this test? ☐ Yes ☒ No

9. How long did the F.C.E. take? 4 1/2 Hours

10. How many of the Department of Labor's 20 physical demands of work are assessed in your particular physical abilities test? ______

11. Was the assessment protocol followed throughout the entire F.C.E.? ☒ Yes ☐ No
    If no, why not? ______

12. Have the identified capabilities/restrictions in this report been compared against normative data statistics? ☐ Yes ☒ No

13. Type of F.C.E.? Generic HealthSouth FCE

Managed by ***Empire Medical Management℠ Ltd.***

Copyright ©

IAIABC

# F.C.E. Summary (continued)

Name Bruce Roxby

Please check appropriate box and add weight amounts where appropriate.

**ACTIVITY RECOMMENDATIONS***

| *As defined by the "Dictionary of Occupational Titles" | NEVER | OCCASIONAL 0 - 2.5 HOURS (1-33%) | FREQUENT 2.5 - 5.5 HOURS (34-66%) | CONSTANT OVER 5.5 HOURS (67-100%) |
|---|---|---|---|---|
| SITTING | | | | ✓ with occas posit. changes into sta. |
| STANDING | | | ✓ | |
| WALKING | | ✓ | | |
| PUSHING | | 40 lbs. force | 30 lbs force | |
| PULLING | | 40 lbs force | 30 lbs. force | |
| CARRY (R) (B) | | 30 lbs - 100 ft | | |
| ~~CARRY (L)~~ | | | | |
| KNEELING | | | ✓ | |
| CRAWLING | Not Tested | | | |
| CROUCHING | | | ✓ | |
| BENDING | | ✓ | | |
| SQUATTING | | | ✓ | |
| LIFT (overhead) | | 22 lbs. | | |
| LIFT (waist lv) | | 35 lbs | | |
| LIFT (floor) | | 45 lbs. | | |
| STAIRS | | ✓ | | |
| REPETITIVE FOOT | Not tested | | | |
| FINE MANIP. | | | ✓ | |
| FIRM GRASP | | ✓ | | |
| SIMPLE GRASP | | | ✓ | |
| CLIMBING | | ✓ | | |
| BALANCING | | | ✓ | |
| STOOPING | | | ✓ | |
| REACHING | | | ✓ | |

COMFORTABLE WORK LEVEL HEIGHT: 28 INCHES(SITTING) 40 INCHES (STANDING)

[signature] / C. [signature] PT — Technician Signature

11 19 98 — Date

April 23 1998

Copyright ©

CLIENT: Bruce Roxby
EMPLOYER: JM Pontiac-Hollywood FL
DATE OF INJURY: 5/25/98

DATE OF EVALUATION: 11/19/98

DATE OF REPORT: 11/19/98
HEALTHSOUTH I.D. NO. 235704533

REFERRED BY: Insurance Company
PHYSICIAN: Jeffrey Perkins, M.D.
INSURANCE CARRIER: Sunlife of Canada/Empire Medical Management
INSURANCE REP: Bill Harney/Sandy Mangano
INSURANCE I.D. NO.: 96878

## WORK CAPACITIES ASSESSMENT REPORT

PURPOSE OF ASSESSMENT

Mr. Roxby was referred to HEALTHSOUTH Rehabilitation Center of Fort Myers for assessment of his current physical/functional capabilities and for determination of his potential to safely return to work.

SUMMARY OF RESULTS

Mr. Roxby is a 51 year old male with the current diagnosis of status post cervical spinal cord injury and cervical/lumbar strain/sprain syndrome, onset 5/25/98. He reported that his injuries took place when he hit his head on a car tire while walking out from under a vehicle up on a hydraulic jack. Deficits found in the musculoskeletal evaluation included: postural and gait deviations; decreased spinal range of motion; decreased bilateral shoulder and abdominal strength; decrease lower extremity flexibility with limits greater on left; positive root tension tests on right; tenderness over C7 region; diminished lower extremity reflexes; unable to elicit C6-7 reflex. Other medical history positive for coronary artery disease diagnosed in May 1998 by Dr. Francis Schwerin (further medical evaluations and procedures pending).

Mr. Roxby **had a Waddell's test score** in the **negative** range (4 out of 16) for **magnified illness behavior**. Dynamometer testing revealed **consistent** effort on 6 out of 6 **tests**. Ransford Pain Diagram **was negative** for non-anatomical distributions of pain. Multidimensional Pain Inventory revealed dysfunctional coping skills regarding pain management. No inconsistencies in performance were observed during formal and informal evaluation.

Functional testing revealed that Mr. Roxby is presently lifting in the **Medium** category of work as demonstrated by his occasional floor to knuckle lift of 45 pounds, knuckle to shoulder lift of 35 pounds, shoulder to overhead lift of 22 pounds, and carry of 30 pounds 100 feet with pivoting. During positional tolerance testing, the client demonstrated tolerance of sitting on a constant basis; standing, repetitive bending, repetitive reaching, repetitive squatting, sustained squatting,

kneeling, pivot twisting, pushing/pulling, assemble, fine motor, and simple grasping on a frequent basis; and walking, stair climbing, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping on an occasional basis.

RECOMMENDATIONS

Mr. Roxby currently demonstrates the ability to perform work within the Medium category or less, full-time, limiting walking, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping to an occasional basis. However, we would recommend that medical clearance from his cardiologist be obtained before his return to work.

SUBJECTIVE HISTORY

Mr. Roxby is a 51-year-old male with the diagnosis of status post cervical spinal cord injury and cervical/lumbar strain/sprain syndrome. He was injured on 5/25/93 when he hit his head on a car tire while walking out from under a vehicle up on a hydraulic jack. At the time of injury, reports working for JM Pontiac as a line technician (heavy mechanic). He reports that he had worked as a mechanic for 33 years. He also received training and experience in air traffic control while in the service for 13 years. He reports that he has not worked since the time of his injury in 1993.

Previous diagnostic tests for these injuries (as stated by the client) include x-rays, nerve conduction test, EMG and a MRI. He reports that these tests have been positive for cervical spinal cord injury with disc bulges at C3-4 and C5-7, decreased ulnar nerve function on right, as well as cervical and lumbar sprain/strain syndrome.

Previous treatment for this injury (as stated by the client) included physical therapy 3 times per week for 4-5 months. He reports this treatment consisted of moist heat, electrical stimulation, ultrasound, electrophoresis, and strengthening exercises. He reports that physical therapy provided no improvement in his symptoms.

Mr. Roxby's pain complaints presently are a stabbing/burning pain surrounded C7; numbness with pins & needles over right cervicoscapular region; burning centrally over lumbosacral region; and an aching pain down posterior right leg from mid-thigh to knee. He reported his pain is at an intensity of 5 (0 = no pain; 10 = severe pain). He reported that recently his pain ranges from a 5 at best to 10 at its worst. He stated that walking aggravates his symptoms the most, and that hot baths provide the most relief. He currently takes aspirin three times per day to help manage his pain symptoms. At the end of the evaluation, he said that his pain was at the same intensity as it was prior to evaluation, but that he was now more uncomfortable. He called the following day to update us on his condition as instructed. He reported his pain at that time was now an 8 out of 10 with most of his pain in his neck and shoulders.

## JOB DESCRIPTION

A formal job analysis was not provided prior to the evaluation, therefore, a job description was obtained from the client and the Dictionary of Occupational Titles.

(By Client)
Mr. Roxby reported that, at the time of his injury, he was employed by JM Pontiac as a line technician (heavy mechanic). He described work in this job as requiring:

| | |
|---|---|
| Maximum weight lifted: | 150 lbs. (transmissions) within floor to knuckle level on an occasional basis. |
| Frequent weight lifted: | 70 lbs. (tires) within floor to shoulder range approximately 8 times per hour. |
| Maximum push/pull weight: | a vehicle with assistance of 2 to 3 people, a distance of 30 feet on an occasional basis. |
| Maximum carry: | 80 lbs. (torque converter / head) a distance of 150 feet on an occasional basis. |

Frequent standing walking, repetitive bending, sustained bending, overhead reaching, forward reaching, repetitive reaching, repetitive squatting, pivot twisting, pushing/pulling, repetitive wrist and forearm movements, fine motor, simple and firm grasping.

By Mr. Roxby's description, this work falls into the Very Heavy work classification category.

(By D.O.T.)
The Dictionary of Occupational Titles lists the work of a mechanic/repairer (heavy) (D.O.T.# 620.381-022) in the Heavy work classification category.

## CARDIOVASCULAR ASSESSMENT

The American Heart Association "cardiovascular profile" ranked Mr. Roxby in the Medium risk category for the development of cardiovascular disease. His resting blood pressure was 122/90 mmHg, and his resting heart rate was 84 beats per minute.

The aerobic capacity assessment using a sub maximal 12-minute treadmill protocol was deferred due to current coronary artery disease. Dr. Francis Schwerin, Mr. Roxby's cardiologist, was contacted for medical clearance to perform FCE. Dr. Schwerin reported that Mr. Roxby could perform evaluation as tolerated.

Blood pressures and heart rate responses throughout evaluation were within normal limits. Highest heart rate of 120 bpm was noted during positional tolerance testing. Highest blood pressure was noted at 132/80 mmHg during lifting evaluation.

MUSCULOSKELETAL SCREEN

POSTURE: Increased cervical lordosis and thoracic kyphosis. No scoliosis noted. Bony landmarks of pelvic girdle are even.

GAIT PATTERN: Patient ambulates independently without devices. His gait is antalgic with limp on right. Decreased arm swing on right noted. Patient is able to heel and toe walk.

RANGE OF MOTION: Trunk range of motion is minimally to severely limited without complaints of increased pain with testing. Measurements are as follows:

| | | | |
|---|---|---|---|
| Total Flexion | 31° | Lateral Flexion Right | 15° |
| Lumbar Flexion | 27° | Lateral Flexion Left | 20° |
| Total Extension | 15° | Rotation Right | 15° |
| Lumbar Extension | 8° | Rotation Left | 15° |

STRENGTH: Bilateral lower extremity strength is 5/5 throughout. Weaknesses noted in abdominal strength (3/5), shoulder flexion (4/5 on right and 4+ on left) and shoulder abduction (4/5 bilaterally). No weakness noted in bilateral wrist and elbow flexion/extension (5/5).

NEUROLOGICAL: Bilateral lower extremity DTRs are present but hyporeactive. C5 reflex is intact bilateral. Unable to elicit C6-7 reflex. Sensation is intact with exception of patient reports of numbness along ulnar nerve path. Root tension tests (SLR, Kemig, and Bilateral SLR) are positive on right.

FLEXIBILITY: Bilateral lower extremity flexibility is within normal limits with exception of bilateral hip rotators (moderate restrictions) and left rectus femoris (minimum restrictions).

SOFT TISSUE ASSESSMENT: Tenderness noted over C7 paraspinal region.

WADDELL'S QUESTIONNAIRE: Mr. Roxby score was negative for magnified illness behavior. He scored 2 out of 7 for subjective symptoms, 2 out of two for past medical history, and 0 out of 7 for objective/physical signs for a total of 4 out of 16 (8 and > is positive).

BEHAVIORAL MEDICINE SCREEN: Mr. Roxby completed the Multidimensional Pain Inventory (MPI) which revealed possible dysfunctional coping with regard to his current physical condition.

RANSFORD PAIN DIAGRAM: Mr. Roxby scored 0 out of 25 possible indicators of non-anatomical distributions of pain. Positive score of 3 or more reveals possible need for further psychological evaluation.

## FUNCTIONAL CAPACITIES ASSESSMENT/WORK TOLERANCE SCREEN

A thorough "functional" evaluation was completed. The safe maximum limits for material handling activities and the functional limits for non-material handling activities are summarized in the tables below.

Frequent material handling and non-material handling (positional) tolerances were assessed in a continuous activity circuit. The interval of activity lasted 70 minutes of a scheduled 90 minutes.

### Consistency of Effort Testing:

Mr. Roxby underwent a formal screening procedure of six different isometric strength tests designed to identify those individuals who put forth less than maximum effort on the evaluation tasks. Each task was repeated four times to test for consistency of response. A coefficient of variance statistic was calculated for each task. Mr. Roxby was consistent on 6 out of 6 tasks.

FUNCTIONAL CAPACITIES EVALUATION
WORK TOLERANCE SCREEN

**ISOMETRIC CONSISTENCY TESTS:**

| TEST | TRIALS (POUNDS OF FORCE) | AVERAGE | S.D./C.V. |
|---|---|---|---|
| Isometric Push | 52,60,60,58 | 57.5 | 3.7/6.5% |
| Isometric Pull | 52,54,54,58 | 54.5 | 2.5/4.6% |
| Grip Strength, Left Hand | 76,85,85,85 | 82.7 | 4.4/5.4% |
| Grip Strength, Right Hand | 85,85,80,80 | 82.5 | 2.8/3.4% |
| 3-Jaw Pinch, Left Hand | 16,17,18,15 | 16.5 | 1.2/7.8% |
| 3-Jaw Pinch, Right Hand | 16.5,15,19,18 | 17.1 | 1.7/10.3% |

0%-15% considered consistent in effort
S.D. = Standard Deviation C.V. = Coefficient of Variation

MATERIAL HANDLING (LIFTING):

| LIFT | DEMONSTRATED | | JOB REQUIREMENT BY D.O.T. | | ADEQUATE FOR JOB |
|---|---|---|---|---|---|
| | Occasional | Frequent | Occasional | Frequent | YES/NO |
| Floor to Knuckle | 45 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Knuckle to Shoulder | 35 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Shoulder to Overhead | 22 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| 100 Ft. Carry | 30 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Push/Pull | 40 lbs. Of force | 30 lbs. Of force | 100 lbs. Of force | 50 lbs. Of force | NO |

Comments: Mr. Roxby's lifting abilities were self-limited due to pain and fatigue. Mr. Roxby requested to terminate frequent lifting evaluation due to fatigue. At this time, his heart rate was 100 bpm and his blood pressure was 132/80. He was noted to be moderately short of breath at this time.

Work Capacities Assessment
RE: Roxby, Bruce

**NON-MATERIAL HANDLING:**

| ACTIVITY | DEMONSTRATED | JOB REQUIREMENT By Client | ADEQUATE FOR JOB (YES/NO) |
|---|---|---|---|
| Sitting (60 Min/Episode) | Constant (17 min. continuous/56 min. cumulative) | Occasional | YES |
| Standing (30 Min/Episode) | Frequent (continuous 30 min.) | Frequent | YES |
| Walking (30 Min/Episode) | Occasional (5 min. continuous/10 min. cumulative at moderate pace) | Frequent | NO |
| Climbing (stairs) (4 Flights/Episode) | Occasional | Not Required | YES |
| Sustained Bending (1 Min/Episode) | Occasional | Frequent | NO |
| Overhead Reach (1 Min/Episode) | Occasional | Frequent | NO |
| Squatting (repetitive) (5X/Episode) | Frequent | Frequent | YES |
| Kneeling (1 Min/Episode) | Frequent | Occasional | YES |
| Repetitive Bending (5X/Episode) | Frequent | Frequent | YES |
| Crouching(sustained squat) (1 Min/Episode) | Frequent | Occasional | YES |
| Ladder Climb (3 Rungs 3x/Episode) | Occasional | Occasional | YES |
| Trunk Twisting (5x/Episode) | Frequent | Frequent | YES |
| Forward Reaching (sustained) (1 Min/Episode) | Frequent | Frequent | YES |
| Forward Reaching (repetitive) (5X/Episode) | Frequent | Frequent | YES |
| Assembly | Frequent | Frequent | YES |
| Simple Grasp | Frequent | Frequent | YES |
| Firm Grasp | Occasional | Frequent | NO |
| Fine Motor | Frequent | Frequent | YES |
| Writing | Occasional (demonstrates compensatory writing behavior) | Occasional | YES |

Comments: Mr. Roxby is right-hand dominant. He assists his right hand during writing with the left as if to push right hand along. Intermittently, his right elbow is elevated significantly during writing. He reports that he pushes his hand along due to weakness and was unaware of his elbow movement. His writing is shaky but legible. Firm grasp is limited in right hand due to complaints of fatigue and decreased sensation. Sustained bending and overhead reaching were limited due to complaints of increased neck, shoulder, and low back pain.

Work Capacities Assessment
RE: Roxby, Bruce

| PHYSICAL CHARACTERISTICS OF WORK | | | |
|---|---|---|---|
| PHYSICAL DEMAND | OCCASIONAL (0-33% OF WORKDAY) | FREQUENT (34-66% OF WORKDAY) | CONSTANT (67-100% OF WORKDAY) |
| SEDENTARY | 10 lbs. | NEGLIGIBLE | NEGLIGIBLE |
| LIGHT | 20 lbs. | 10 lbs. | NEGLIGIBLE |
| MEDIUM | 50 lbs. | 20 lbs. | 10 lbs. |
| HEAVY | 100 lbs. | 50 lbs. | 20 lbs. |
| VERY HEAVY | Over 100 lbs. | Over 50 lbs. | 50 lbs. |
| U.S. DEPT. OF LABOR STRENGTH FACTOR. LIFTING/CARRYING/ PUSHING PULLING OR OTHERWISE MOVING OBJECTS. | | | |

Thank you for referring to HEALTHSOUTH Rehabilitation Center of Fort Myers. If you have any further question regarding this evaluation or the recommendations made, please do not hesitate to contact us.

Constance Hohzorn, P.T.

Janeen Daniels, M.S.

RECEIVED
DEC 07 1998
LONG TERM DISABILITY

Sun Life of Canada'
Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel. (800) 225-3950

# TRANSFERABLE SKILLS ANALYSIS

Claimant: Bruce Roxby
Policy #: 96878
Policyholder: J.M. Family Enterprises, Inc.

This claimant is a 51 yr. old man who was employed as a dealership Auto Mechanic when he injured his back in a fall at work in May of 1993. The initial diagnosis was noted to be Left Lumbar Facet Syndrome and Myofascial Pain Syndrome with a C6-7 Bulging Disc. The current diagnosis, based on Dr. Perkins' APS of 8/7/98, is noted to be C5-6 Disc Herniation with Lumbar Pain Syndrome.

Education and Work History

The claimant is a High School graduate. He has also completed a number of auto service courses and is an ASE certified auto mechanic. He has many years of experience in this field and has worked at several auto dealerships. Mechanics who work at these locations tend to have a higher level of technical knowledge and skill than the average garage mechanic. Mr. Roxby was also employed as an Air Traffic Controller while in the Air Force.

Functional Limitations and Restrictions

A Functional Capacity Evaluation was conducted at the HealthSouth Rehabilitation Center of Ft. Myers on 11/19/98 at Sun Life's request. Those test results indicated that he can perform work within the Medium category, full time, limited walking, sustained bending, overheard reaching, ladder climbing, writing, and firm grasping on an occasional basis. Because he has recently been diagnosed with CAD, the FCE facility recommended that medical clearance be obtained from his cardiologist prior to his RTW. His cardiologist did clear him for this evaluation.

Skills Analysis

Although Mr. Roxby presents with some physical limitations he still possesses a number of excellent work skills and knowledge that would still be highly marketable. His higher level of technical knowledge in the automotive field would be an asset today even though he cannot do much of the very heavy physical labor required in his previous occupation. He retains much of the ability to work at exact tolerances and performance levels and complying with precise instruments and specifications and working to standards. He will suffer some loss of the ability

Sun Life of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (781) 237-6030
Tel (800) 225-3950

to use some of the tools utilized in heavy work. He also, apparently, has some limitations on fine manual tasks, at least with one of his hands, due to some loss of sensation and dexterity. The analysis shows a number of occupations he does qualify for based on his residual skills. In the auto industry he could easily transition to Service-Repair Estimator, Service Manager, Dispatcher or Auto Tester. Auto Damage Appraiser may be another option for Mr. Roxby.

The required ability to deal with people as a mechanic would not be affected by his limitations an would be an asset in customer service roles as mentioned above. His past military experience in the Air Traffic Control position is also useful. His familiarity with the air transportation industry, albeit at the military level, would still be of some value for the less physical occupations within that field.

Overall, this individual does have residual skills that are transferable to a number of occupations and, therefore, does not appear to be disabled from all occupations.

William J. Harney CRC LRC

© LegalTech, Inc 1997

# LifeStep

Licensed to Sun Life of Canada

## TSA With Wage Data Report For Bruce Roxby

11/25/98

**Based on search results, this report divides job titles into levels arranged in order of decreasing transferability. Each level compares a person's skills, as demonstrated in work experience, with selected jobs from the Dictionary of Occupational Titles(DOT). These comparisons describe levels of transferability from 1 to 9. Highlighted entries represent jobs currently selected as vocational goals. The MPSMS and/or Work Fields have been modified for at least one of the jobs contained in the client's work history, in order to accurately reflect the unique skills acquired in a work environment.**

### Job Search Parameters - Search Conducted On Work History & Functional Capacity

| SVP | GED | Aptitudes | Strength & Physical Demands | Environmental | Temperaments |
|---|---|---|---|---|---|
| | R M L | G V N S P Q K F M E C | S 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 | D R I V E A S T U P J |
| | 4 3 4 | | M O F F F F F F O | | |
| 8 | 193.162-018 - AIR TRAFFIC CONTROL CRAFTSMAN | | | | |
| 7 | 620.261-010 - AUTOMOBILE MECHANIC | | | | |

### Level 1 Transferability: Same Work Fields and MPSMS as demonstrated in work history

4 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 620.261-014 | AUTOMOBILE TESTER | 433 | 7 | L | 05 07.02 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 3 | 3 | 3 | 4 | 689 | $593.00 |
| 238.367-010 | GATE AGENT | 323 | 4 | L | 09 05.04 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 318 | $498.00 |
| 620.364-010 | SQUEAK, RATTLE AND LEAK REPAIRER | 222 | 4 | M | 05 12.15 | 3 | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 3 | 5 | 5 | 514 | $396.00 |
| 620.261-018 | AUTOMOBILE-REPAIR-SERVICE ESTIMATOR | 433 | 7 | L | 05 07 02 | 3 | 3 | 3 | 3 | 4 | 3 | 4 | 4 | 3 | 4 | 5 | 689 | $593.00 |

### Level 3 Transferability: Same Work Fields and similar MPSMS as demonstrated in work history

26 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 248.367-030 | WATERWAY TRAFFIC CHECKER | 333 | 3 | S | 07 04 05 | 3 | 3 | 4 | 3 | 3 | 3 | 4 | 4 | 5 | 5 | 4 | 357 | $381.00 |
| 352.577-010 | BUS ATTENDANT | 323 | 2 | L | 09 01 04 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 3 | 3 | 5 | 463 | N/A |
| 809.687-014 | HELPER, MANUFACTURING | 211 | 2 | M | 06 04 34 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 5 | 5 | 874 | N/A |
| 249.167-014 | DISPATCHER, MOTOR VEHICLE | 323 | 5 | S | 07 05 01 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 359 | $478.00 |
| 249.167-018 | LABOR EXPEDITER | 434 | 5 | L | 07 01 02 | 3 | 3 | 3 | 5 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 373 | $416.00 |
| 237.137-010 | SUPERVISOR, TELEPHONE INFORMATION | 434 | 7 | S | 07 04 04 | 2 | 2 | 2 | 4 | 4 | 2 | 4 | 4 | 4 | 5 | 5 | 303 | $677.00 |
| 248.367-026 | DISPATCHER, SHIP PILOT | 333 | 4 | S | 07 04 05 | 3 | 3 | 3 | 4 | 4 | 2 | 3 | 4 | 4 | 5 | 5 | 359 | $478.00 |
| 352.677-010 | PASSENGER SERVICE REPRESENTATIVE I | 323 | 3 | L | 09 01 04 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 5 | 463 | N/A |
| 825.684-018 | BATTERY CHARGER | 221 | 3 | M | 05 12.16 | 4 | 4 | 4 | 4 | 3 | 5 | 4 | 4 | 3 | 5 | 5 | 389 | $347.00 |
| 638.131-026 | MECHANICAL-MAINTENANCE SUPERVISOR | 433 | 7 | M | 05 05 09 | 3 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 2 | 5 | 5 | 503 | N/A |
| 621.137-010 | SUPERVISOR, RECLAMATION | 433 | 6 | L | 05 05 09 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 5 | 628 | N/A |
| 219.367-030 | SHIPPING-ORDER CLERK | 323 | 4 | L | 07 05 04 | 3 | 3 | 3 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 5 | 364 | $390.00 |
| 237.367-018 | INFORMATION CLERK | 423 | 2 | L | 07 04 04 | 3 | 2 | 3 | 4 | 4 | 3 | 4 | 3 | 4 | 5 | 5 | 323 | N/A |
| 910.367-026 | PASSENGER REPRESENTATIVE | 323 | 4 | L | 09 01 04 | 3 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 463 | N/A |
| 910.384-010 | TANK-CAR INSPECTOR | 323 | 4 | M | 05 10 02 | 3 | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 3 | 5 | 5 | 689 | $593.00 |
| 910.167-014 | TRAIN DISPATCHER, ASSISTANT CHIEF | 423 | 7 | S | 05 09 02 | 2 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 3 | 5 | 5 | 359 | $478.00 |
| 237.267-010 | INFORMATION CLERK, AUTOMOBILE CLUB | 434 | 5 | S | 07 04 04 | 3 | 2 | 3 | 4 | 4 | 2 | 4 | 4 | 4 | 5 | 5 | 323 | N/A |
| 219.462-014 | TRAIN CLERK | 322 | 3 | S | 07 05 03 | 3 | 3 | 3 | 5 | 4 | 3 | 3 | 3 | 4 | 5 | 5 | 336 | N/A |
| 237.137-014 | SUPERVISOR, TRAVEL-INFORMATION CENTER | 434 | 6 | L | 07 04 04 | 2 | 2 | 3 | 4 | 4 | 2 | 4 | 4 | 4 | 5 | 5 | 303 | $677.00 |
| 353.167-010 | GUIDE, TRAVEL | 434 | 6 | L | 07 05 01 | 2 | 2 | 3 | 4 | 4 | 3 | 4 | 4 | 4 | 5 | 4 | 461 | N/A |
| 829.684-010 | BATTERY INSPECTOR | 333 | 4 | L | 05 10 03 | 3 | 4 | 3 | 3 | 4 | 4 | 3 | 4 | 3 | 5 | 4 | 533 | $604.00 |
| 239.367-022 | RECEIVER-DISPATCHER | 323 | 4 | L | 07 04 05 | 3 | 3 | 3 | 5 | 5 | 3 | 4 | 4 | 4 | 5 | 5 | 359 | $478.00 |
| 706.684-046 | BENCH HAND | 222 | 3 | M | 06 04 22 | 4 | 4 | 4 | 4 | 4 | 5 | 4 | 4 | 3 | 4 | 5 | 735 | $396.00 |
| 621.684-014 | RECLAMATION WORKER | 322 | 4 | M | 05 12 12 | 3 | 4 | 4 | 3 | 4 | 4 | 3 | 4 | 3 | 5 | 5 | 547 | $521.00 |
| 237.367-030 | MANAGER, TRAFFIC II | 322 | 6 | S | 07 04 04 | 3 | 3 | 3 | 5 | 5 | 3 | 4 | 4 | 4 | 5 | 5 | 389 | N/A |
| 238.367-030 | TRAVEL CLERK | 333 | 4 | S | 07 04 04 | 3 | 3 | 3 | 4 | 3 | 2 | 4 | 4 | 4 | 5 | 5 | 318 | $498.00 |

### Level 4 Transferability: Similar Work Fields and similar MPSMS as demonstrated in work history

4 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 622.137-014 | SUPERVISOR, CAR AND YARD | 322 | 6 | L | 05 05 06 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 5 | 503 | N/A |



Sun Life of Canada
*Shining over America since 1895*

RECEIVED
SEP 03 1998
LONG TERM DISABILITY

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

TO BE COMPLETED BY THE PHYSICIAN

ATTENDING PHYSICIAN'S STATEMENT

The patient is responsible for any costs associated with the completion of this form.

| Name of Patient: Bruce Roxby | Employer's Name: | Group Policy Number: 96878 | Date of Birth: 04/25/47 |
|---|---|---|---|
| Patient's Address (Street, City, State, Zip Code): 2636 SW 53 TERR, NAPLES, FL, 34116 | | | |

**1. HISTORY**

A. When did symptoms first appear or accident happen? 5/25/93

B. Date disability commenced. 7/15/93.

C. Has patient ever had same or similar condition? ☐ Yes ☑ No If yes, when: ______

D. Is condition due to injury or sickness arising out of patient's employment? ☑ Yes ☐ No ☐ Unknown

E. If condition due to car accident, indicate state in which accident occurred.

F. Patient's Height 5'8" Patient's Weight 200 lb

G. Names and addresses of other treating physicians (if applicable). Dr. [illegible] - [illegible]

**2. DIAGNOSIS**

A. Diagnosis (including any complications). Include ICD9 Code. C5 C6. Disc herniation [illegible]

B. Objective findings (including current X-Rays, EKG's, MRI's, laboratory data, scans and/or any other clinical findings): MRI

C. Subjective Symptoms: weakness, [illegible] [illegible]

D. If pregnancy, what is date or expected date of delivery?

E. Type of Delivery: ☐ Vaginal ☐ C-Section

F. Please describe any complications that would extend this disability longer than a normal pregnancy.

**3. TREATMENT**

A. Date of first visit. 7/11/93

B. Date of last visit. 10/9/97

C. Date of last examination. 10/9/97

D. Frequency of treatment: ☐ Weekly ☐ Monthly ☐ Other
If Other, specify frequency: 4

E. Nature of treatment (including surgery, therapeutic modalities, psychological intervention and medications prescribed, if any): P.T. [illegible] Pain Mgt. [illegible]

**4. PROGRESS**

A. Has Patient: ☐ Recovered ☐ Improved ☐ Unchanged ☑ Retrogressed

B. Is Patient: ☑ Ambulatory ☐ House confined ☐ Bed confined ☐ Hospital confined

C. If unchanged or retrogressed, please explain:

D. Has patient been hospital confined? ☐ Yes ☑ No
From ______ Through ______

E. If yes, give name and address of hospital.

**5. CARDIAC (IF APPLICABLE)**

A. Functional Capacity (American Heart Association):
☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)

B. Therapeutic Class (Activity):
☐ No restriction ☐ Slight restriction ☐ Moderate restriction ☐ Marked restriction ☐ Complete restriction

C. Blood Pressure - Last Visit

**6. PHYSICAL IMPAIRMENT** (*As defined in federal dictionary of occupation titles)

☐ Class 1 - No limitation of functional capacity; capable of heavy work* ........ No Restrictions (0 - 10%)
☐ Class 2 - Medium manual activity* ........ (15 - 30%)
☐ Class 3 - Slight limitation of functional capacity; capable of light work* ........ (35 - 55%)
☑ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity ........ (60 - 70%)
☐ Class 5 - Severe limitation of functional capacity; incapable of minimum (sedentary*) activity ........ (75 - 100%)

X-GP18/768

## 7. MENTAL IMPAIRMENT (IF APPLICABLE)

- [x] Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitation).
- [ ] Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitation).
- [ ] Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitation).
- [ ] Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation).
- [ ] Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustments (severe limitation).

A. Please define stress as it applies to this patient. pain · causes ↑stress ↓sleep

B. What stress and problems in interpersonal relations has this patient had at work?

C. Do you believe this patient is competent to endorse checks and direct the use of proceeds thereof? ☑ Yes ☐ No

D. What is the patient's current DSM-III-R diagnosis?

Axis I: ______

Axis II: ______

Axis III: ______

Axis IV: ______

Axis V: ______

## 8. LIMITATIONS

1. In a normal day, the patient may: move

A. Stand/Walk ___ None ✓ 1-4 hours ___ 4-6 hours ___ 6-10 hours

B. Sit ✓ 1-3 hours ___ 3-5 hours ___ 5-10 hours

C. Drive ✓ 1-3 hours ___ 3-5 hours ___ 5-10 hours

2. Patient may use hands for repetitive actions such as:

| | Simple Grasping | Firm Grasping | Fine Manipulating |
|---|---|---|---|
| RIGHT | ✓ Yes ___ No | ✓ Yes ✓ No | ___ Yes ✓ No |
| LEFT | ✓ Yes ___ No | ✓ Yes ___ No | ___ Yes ✓ No |

3. Patient may use feet for repetitive movement as in operating foot controls:

___ Yes ___ No

4. During the day, is the patient able to:

| | 67-100% | 34-66% | 1-33% | 0% |
|---|---|---|---|---|
| a. Bend | | | ✓ | |
| b. Squat | | | | |
| c. Climb | | | | ✓ |
| d. Twist Body | | | ✓ | |
| e. Push | | | ✓ | |
| f. Pull | | | | ✓ |
| g. Balance | | ✓ | | |
| h. Kneel | | | | ✓ |
| i. Crawl | | ✓ | | |
| j. Grasp | | | ✓ | |
| k. Reach | | | ✓ | |

5. Maximum lifting is ___ pounds

## 9. WORK CAPABILITIES

A. When do you feel these limitations first became applicable? 5/15/93

B. Is patient capable of working within these limitations? ☐ Full time ☑ Part time maybe

C. Is patient capable of another occupation on a full-time basis? ☐ Yes ☑ No Part-time basis? ☑ Yes ☐ No

## 10. PROGNOSIS

A. How long will these limitations apply?

Full-time work? indef. ☐ 3 weeks or less ☐ One Month ☐ 1-2 Months ☐ 2-3 Months ☐ 4-6 Months ☐ Never

Part-time work? indef. ☐ 3 weeks or less ☐ One Month ☐ 1-2 Months ☐ 2-3 Months ☐ 4-6 Months ☐ Never

B. If you expect a fundamental change in limitations, please describe: slowly progressing

## 11. VOCATIONAL REHABILITATION

A. Have you reviewed the material and substantial duties of the patient's occupation? ☑ Yes ☐ No

B. Would vocational counseling and/or vocational rehabilitation be recommended? ☑ Yes ☐ No

C. Would job modification enable patient to work with impairment? ☐ Yes ☑ No If yes, how?

## 12. VERIFICATION

Name of Attending Physician: Jeffrey C. Perkins

Degree/Specialty: MD

Telephone: 954-963-5[illegible]

Street Address: 3231 Stirling Rd

City: Hollywood

State: Fl

Zip Code: 3302[illegible]

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Attending Physician's Signature* [signature]

Date 8/7/98

* A stamp or signature of a person other than the examining physician is not acceptable.

96878

ROXBY, BRUCE
AUGUST 7, 1998

CLINIC NOTE

Mr. Roxby returns today for a follow-up appointment. He was last seen on October 9, 1997. He is a 51-year-old gentleman. He feels that he is improving his strength and is able to ambulate about the same, however he feels he has retrogressed. He recently had a weight reduction program and feels that he is losing approximately 1 lb. a week. He is doing this through a self-diet. He reached maximum medical improvement in 1993 with a 10% permanent disability rating due to chronic cervical and lumbar strain and probable central cervical spinal cord injury. He continues to live in Naples with his wife.

Physical examination is essentially unchanged. Chest is clear. Heart had regular rate and rhythm. The patient still has bilateral hand movement with decreased coordination. The patient was able to ambulate with a functional but slow gait pattern. There is decreased range of motion of the right lower extremity hip extensors and the extensors in ankle dorsi flexion.

**IMPRESSION:**

1. Status post cervical spinal cord injury.
2. Status post cervical and lumbar strain and sprain syndrome. Maximum medical improvement was reached in 1993.

**PLAN:**

1. The patient will benefit from continuation of his home exercise program.
2. A disability form was filled out.
3. The patient will benefit from continuing with his cholesterol sparing diet and continue with his vitamins including B complex and folic acid.
4. I would like to see the patient back in the office for follow-up in approximately one year.

The patient does have a hip hiking type gait pattern with a Trendelenburg type weakness of the left gluteus medius and decreased swing through on the right lower extremity.

Jeffrey C. Perkins, M.D.

JCP/act

RECEIVED
OCT 14 1998
LONG TERM DISABILITY

L Morr

ROXBY, BRUCE
OCTOBER 9, 1997

FOLLOW-UP EVALUATION

Mr. Roxby returns today for his annual visit. He is a 50-year-old gentleman who was last seen on October 30, 1996. At that time, the patient was recommended to continue with his home exercise program and a disability form was filled out. He feels his walking is worse and unsteady compared to a year ago. He continues to live in Naples, Florida with his wife. He did suffer from an injury to the central cervical spinal cord resulting in decreasing fine motor movement and decreased agility to the upper extremities. He reached MMI in 1993 with a 5 to 10% permanent disability rating due to chronic cervical and lumbar strain and probable central cervical spinal cord injury.

**PHYSICAL EXAMINATION**: Examination reveals a pleasant male in no acute distress. There is essentially no change. Bowel sounds positive. The patient has some restriction of the cervical spine on extension. Both hands have decreased fine motor skills. The patient ambulates without an assistive device with an antalgic gait favoring the right lower extremity. Per the patient, his wife gave him a wooden cane but he is not using is presently.

**IMPRESSION**:

1. Status post central cervical spinal cord injury.
2. Status post cervical lumbar strain and sprain syndrome, MMI reached in 1993.

**PLAN**:

1. The patient will continue his home exercise program.
2. A disability form was filled out.
3. The patient will benefit from ambulating with a straight cane or a quad cane.
4. I will see the patient back in follow-up appointment.

______________________________
Jeffrey C. Perkins, M.D.

JCP/act

OCTOBER 30, 1996 RE: ROXBY, BRUCE JCP

OFFICE NOTE

Mr. Roxby is a forty-nine year old gentleman who was last seen [illegible]/23/96. He continues to have chronic cervical and low back pain. He is requesting a completion of attending physician's table for disability. He has been seen by Dr. Novak, Dr. Mendelsohn and Dr. [illegible] for rehab. He presently lives in Naples, Florida. As you know he suffered injury to a central cervical spinal cord resulting in difficulty with fine motor movement and agility to upper extremities. He reached MMI in 1993 and has a five to ten percent permanent disability due to chronic cervical and lumbar strain and probable central cervical spinal cord injury.

EXAMINATION:

Physical examination reveals a pleasant male in no acute distress. Chest was clear. Heart had regular rate and rhythm. Abdomen and bowel sounds positive. The patient has restricted passive ROM of the cervical spine with flexion extension. The patient has limitation of back ROM in all planes. Both hands have decreased coordination and dexterity. Muscle strength appears functional throughout all the extremities. Patient does ambulate without an assistive device with an antalgic-type gait.

IMPRESSION:

1. Status post cervical lumbar strain sprain.
2. Probable central cervical spinal cord injury.

PLAN:

1. The patient should continue with his exercise program.
2. The disability form was filled out.
3. I will see the patient for further evaluation.

Jeffrey C. Perkins, M.D.

JCP/km

RECEIVED
OCT 14 1998
LONG TERM DISABILITY



SUN LIFE ASSURANCE COMPANY OF CANADA
U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA.

814840

62-20
311 -1

9-4333

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIV*
PO BOX 247
CHARLESTON WV 25321

AMOUNT

U.S. CURRENCY

$417.50*

10/31/98

$417.50

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Bank Delaware
bsidiary of Citicorp
Penn's Way
Castle, DE 19720

ROXBY 0178



Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel. (781) 237-6030
Tel. (800) 225-3950

October 27, 1998

Child Support Enforcement Division
P. O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #814840 in the amount of $417.58 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.

## RECORD OF TELEPHONE CONVERSATION

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☐

Certificateholder Bruce Roxby Spoke With Cheri Lamie

Employer's Name Branch/Address

Policy No.(s) 96878

Phone Number

Soc. Sec. # Claim #

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other

Insured ☐ Dependent ☐ Name

Message

Cheri agrees Child Support Benefit
A/B $50.00 plus 10% of 3675.78
367.50
50.00
417.58

Will advise

☐ Reply no later than:

Received By

Name and Section [signature]

Date 10-26-98 Referred To

Time Date

X-HICL70403

ROXBY 0183

**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☐

Certificateholder Bruce Roxby Spoke With ____

Employer's Name ____ Branch/Address ____

Policy No.(s) 96878

Phone Number ____

Soc. Sec. # ____ Claim # ____

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ____

Insured ☐ Dependent ☐ Name ____

Message

Called Cheri Lamie

In adjusting his benefit, does the child support payment get reduced?

☐ Reply no later than: ____

Received By

Name and Section [signature]

Date 10-20-98 Referred To ____

Time ____ Date ____

X-HICL70403

```
GCI1TEMP            ****LTD/W BENEFIT PLAN DETAILS****                    GCIMF3MP
                                 INQUIRY                                  PAGE 5
POLICY   096878  BEN PLAN . J  411 01      PLAN EFF DATE    010193
---------------------------------------------------------------------------------
SPECIAL INSTRUCTIONS CODE TYPE VALUES:                                       MORE
AE=AGE EXCLUS.        ED=EE DEFINITION     MI=MAILING INST.       RE=REHAB
AI=AMT. OF INS. CAL.  EL=ELIM PERIOD       NP=NOTICE&PROOF        SP=SUCC. PER.
AL=AGE LIMIT          ER=ER DEFINITION     OI=OFFSET DEFN.        TA=TERM AGE ADJ.
BG=BILLING GROUP      GR=GROUP REPREST.    PF=PAYMT. FREQUENCY    WK=PAY WK BASIS
CA=COLA               LE=LIMITS&EXCLUS.    PN=PENS. CONTRIB.      WP=WAITING PERIOD
DC=DISAB. CLAUSE      MB=MAX. BNFT. PER    PT=BNFTS. AFT. POL. TER 00-99=OTHERS
CODE
TYPE INSTRUCTIONS
 AI    BENEFIT IS 60% OF SALARY OR 70% OF SALARY LESS OTHER INCOME
       CLAIMS WITH OTHER INCOME WILL NEED TO CALCULATED MANUALLY

       BASIC MOTHLY EARNINGS IS BASED ON W2'S BUT DOES NOT INCLUDE
       EMPLOYER PAID PORTIONS TO PROFIT SHARING WE WOULD USE THE
       PREVIOUS YEARS W2. (PREVIOUS TO BECOMING DISABLED)

 DC    60MONTH OWN OCC

 ED    FT EES 30 HOURS PER WEEK EARNING GREATER THAN 30K PER YEAR

          DISPLAY CODE  LE          CONT. NEXT PAGE(1,2,3,4,Y/N/S)  Y
```

ROXBY 0188



Laurel Morris
10/05/98 11:54 AM

To: Barbara Remington/Group/USHO/SunLife
cc:
Subject: Task: Bruce Roxby, 96878, 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 is complete as of 10/5/98 11:50:18 AM

Explained policy provisions. He never had a copy of the policy. He'll ask JM Family. Will get the medical requested and send it in.

Sees Dr. once a year for completion of APS. He's MMI

Laurel

From: Barbara Remington on 10/05/98 11:35 AM

**Task**

Subject: Bruce Roxby, 96878, 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

Priority: ● None ○ High (1) ○ Medium (2) ○ Low (3)

Due Date: 10/07/98

Start Date: 10/05/98

Assigned to: Laurel Morris/Group/USHO/SunLife

cc:

Additional information:
271293-20003
Tampa

11:30

Bruce called. He received a letter from Laurel. He has some questions about the letter but only wanted to speak with Laurel about this. Please give him a call.

941-370-9289

Thank you

Barbara

doesn't have a copy of policy
will ask J M family
will get records. Is MMI and
sees Dr 1 x yr for our ATS



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel. (781) 237-6030
Tel. (800) 225-3950

September 30, 1998

Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

We have received the Attending Physician's Statement and note that you have not been seen by a doctor since November 9, 1997. Regarding this matter, please review the following excerpt from your company's contract.

> "payment will not be made under this provision
>
> A. For any period of disability during which the employee is not under the regular medical care of a doctor."

In order for us to consider extending benefits on this claim, we will need confirmation that you, in fact, did have an office visit in August, 1998 and we will also need copies of all office notes, physical therapy notes and diagnostic testing for January, 1996 through the current time.

Once all this information is received and reviewed by our Medical Consultant, we may require an Independent Medical Examination and will advise at that time.

Should you have any questions, please do not hesitate to contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.

Sun Life of Canada
A member of Sun Financial Group

a) To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.

b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

ML

LTD

To: Laurel Morris From: Greta x2499

Date: 9/10 Time: 2.40

Group Policy Number & Name: 96878 JM Family Ent.

Contact's Name: Bruce Relationship: clmt

Phone Number: 941-370-9389 Group Office: Tampa

Claimant Name & Social Security Number: Bruce Roxby 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

MESSAGE: 271293 2000300

Where is August check? 8 Screen says check would be out for ~~A~~ 8/17, but was not. Please call

Thanks.

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL:

Check didn't go out. Will release w/in 1 day or two. Also get Sept. Check. APS says last treated 10-97. Sees only 1X yr as [illegible] reached MMI. Saw 8-98 for

Return Call Made (Date): 9-14-98 (Time):

(By Whom): [signature]

Dr to fill out form

Resolved

Further Action Required

If further action required, give details:

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

Work Capacities Assessment
RE: Roxby, Bruce

Blood pressures and heart rate responses throughout evaluation were within normal limits. Highest heart rate of 120 bpm was noted during positional tolerance testing. Highest blood pressure was noted at 132/80 mmHg during lifting evaluation.

MUSCULOSKELETAL SCREEN

POSTURE: Increased cervical lordosis and thoracic kyphosis. No scoliosis noted. Bony landmarks of pelvic girdle are even.

GAIT PATTERN: Patient ambulates independently without devices. His gait is antalgic with limp on right. Decreased arm swing on right noted. Patient is able to heel and toe walk.

RANGE OF MOTION: Trunk range of motion is minimally to severely limited without complaints of increased pain with testing. Measurements are as follows:

| | | | |
|---|---|---|---|
| Total Flexion | 31° | Lateral Flexion Right | 15° |
| Lumbar Flexion | 27° | Lateral Flexion Left | 20° |
| Total Extension | 15° | Rotation Right | 15° |
| Lumbar Extension | 8° | Rotation Left | 15° |

STRENGTH: Bilateral lower extremity strength is 5/5 throughout. Weaknesses noted in abdominal strength (3/5), shoulder flexion (4/5 on right and 4+ on left) and shoulder abduction (4/5 bilaterally). No weakness noted in bilateral wrist and elbow flexion/extension (5/5).

NEUROLOGICAL: Bilateral lower extremity DTRs are present but hyporeactive. C5 reflex is intact bilateral. Unable to elicit C6-7 reflex. Sensation is intact with exception of patient reports of numbness along ulnar nerve path. Root tension tests (SLR, Kernig, and Bilateral SLR) are positive on right.

FLEXIBILITY: Bilateral lower extremity flexibility is within normal limits with exception of bilateral hip rotators (moderate restrictions) and left rectus femoris (minimum restrictions).

SOFT TISSUE ASSESSMENT: Tenderness noted over C7 paraspinal region.

WADDELL'S QUESTIONNAIRE: Mr. Roxby score was negative for magnified illness behavior. He scored 2 out of 7 for subjective symptoms, 2 out of two for past medical history, and 0 out of 7 for objective/physical signs for a total of 4 out of 16 (8 and > is positive).

Work Capacities Assessment
RE: Roxby, Bruce

BEHAVIORAL MEDICINE SCREEN: Mr. Roxby completed the Multidimensional Pain Inventory (MPI) which revealed possible dysfunctional coping with regard to his current physical condition.

RANSFORD PAIN DIAGRAM: Mr. Roxby scored 0 out of 25 possible indicators of non-anatomical distributions of pain. Positive score of 3 or more reveals possible need for further psychological evaluation.

## FUNCTIONAL CAPACITIES ASSESSMENT/WORK TOLERANCE SCREEN

A thorough "functional" evaluation was completed. The safe maximum limits for material handling activities and the functional limits for non-material handling activities are summarized in the tables below.

Frequent material handling and non-material handling (positional) tolerances were assessed in a continuous activity circuit. The interval of activity lasted 70 minutes of a scheduled 90 minutes.

Consistency of Effort Testing:

Mr. Roxby underwent a formal screening procedure of six different isometric strength tests designed to identify those individuals who put forth less than maximum effort on the evaluation tasks. Each task was repeated four times to test for consistency of response. A coefficient of variance statistic was calculated for each task. Mr. Roxby was consistent on 6 out of 6 tasks.

FUNCTIONAL CAPACITIES EVALUATION
WORK TOLERANCE SCREEN

ISOMETRIC CONSISTENCY TESTS:

| TEST | TRIALS (POUNDS OF FORCE) | AVERAGE | S.D./C.V. |
|---|---|---|---|
| Isometric Push | 52,60,60,58 | 57.5 | 3.7/6.5% |
| Isometric Pull | 52,54,54,58 | 54.5 | 2.5/4.6% |
| Grip Strength, Left Hand | 76,85,85,85 | 82.7 | 4.4/5.4% |
| Grip Strength, Right Hand | 85,85,80,80 | 82.5 | 2.8/3.4% |
| 3-Jaw Pinch, Left Hand | 16,17,18,15 | 16.5 | 1.2/7.8% |
| 3-Jaw Pinch, Right Hand | 16.5,15,19,18 | 17.1 | 1.7/10.3% |

0%-15% considered consistent in effort
S.D. = Standard Deviation C.V. = Coefficient of Variation

Work Capacities Assessment
RE: Roxby, Bruce

MATERIAL HANDLING (LIFTING):

| LIFT | DEMONSTRATED | | JOB REQUIREMENT BY D.O.T. | | ADEQUATE FOR JOB |
|---|---|---|---|---|---|
| | Occasional | Frequent | Occasional | Frequent | YES/NO |
| Floor to Knuckle | 45 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Knuckle to Shoulder | 35 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Shoulder to Overhead | 22 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| 100 Ft. Carry | 30 lbs. | Unable | 100 lbs. | 50 lbs. | NO |
| Push/Pull | 40 lbs. Of force | 30 lbs. Of force | 100 lbs. Of force | 50 lbs. Of force | NO |

Comments: Mr. Roxby's lifting abilities were self-limited due to pain and fatigue. Mr. Roxby requested to terminate frequent lifting evaluation due to fatigue. At this time, his heart rate was 100 bpm and his blood pressure was 132/80. He was noted to be moderately short of breath at this time.

Work Capacities Assessment
RE: Roxby, Bruce

**NON-MATERIAL HANDLING:**

| ACTIVITY | DEMONSTRATED | JOB REQUIREMENT By Client | ADEQUATE FOR JOB (YES/NO) |
|---|---|---|---|
| Sitting (60 Min/Episode) | Constant (17 min. continuous/58 min. cumulative) | Occasional | YES |
| Standing (30 Min/Episode) | Frequent (continuous 30 min.) | Frequent | YES |
| Walking (30 Min/Episode) | Occasional (5 min. continuous/10 min. cumulative at moderate pace) | Frequent | NO |
| Climbing (stairs) (4 Flights/Episode) | Occasional | Not Required | YES |
| Sustained Bending (1 Min/Episode) | Occasional | Frequent | NO |
| Overhead Reach (1 Min/Episode) | Occasional | Frequent | NO |
| Squatting (repetitive) (5X/Episode) | Frequent | Frequent | YES |
| Kneeling (1 Min/Episode) | Frequent | Occasional | YES |
| Repetitive Bending (5X/Episode) | Frequent | Frequent | YES |
| Crouching(sustained squat) (1 Min/Episode) | Frequent | Occasional | YES |
| Ladder Climb (3 Rungs 3x/Episode) | Occasional | Occasional | YES |
| Trunk Twisting (5x/Episode) | Frequent | Frequent | YES |
| Forward Reaching (sustained) (1 Min/Episode) | Frequent | Frequent | YES |
| Forward Reaching (repetitive) (5X/Episode) | Frequent | Frequent | YES |
| Assembly | Frequent | Frequent | YES |
| Simple Grasp | Frequent | Frequent | YES |
| Firm Grasp | Occasional | Frequent | NO |
| Fine Motor | Frequent | Frequent | YES |
| Writing | Occasional (demonstrates compensatory writing behavior) | Occasional | YES |

Comments: Mr. Roxby is right-hand dominant. He assists his right hand during writing with the left as if to push right hand along. Intermittently, his right elbow is elevated significantly during writing. He reports that he pushes his hand along due to weakness and was unaware of his elbow movement. His writing is shaky but legible. Firm grasp is limited in right hand due to complaints of fatigue and decreased sensation. Sustained bending and overhead reaching were limited due to complaints of increased neck, shoulder, and low back pain.

Work Capacities Assessment
RE: Roxby, Bruce

| PHYSICAL CHARACTERISTICS OF WORK | | | |
|---|---|---|---|
| PHYSICAL DEMAND | OCCASIONAL (0-33% OF WORKDAY) | FREQUENT (34-66% OF WORKDAY) | CONSTANT (67-100% OF WORKDAY) |
| SEDENTARY | 10 lbs. | NEGLIGIBLE | NEGLIGIBLE |
| LIGHT | 20 lbs. | 10 lbs. | NEGLIGIBLE |
| MEDIUM | 50 lbs. | 20 lbs. | 10 lbs. |
| HEAVY | 100 lbs. | 50 lbs. | 20 lbs. |
| VERY HEAVY | Over 100 lbs. | Over 50 lbs. | 50 lbs. |
| U.S. DEPT. OF LABOR STRENGTH FACTOR: LIFTING/CARRYING/PUSHING PULLING OR OTHERWISE MOVING OBJECTS. | | | |

Thank you for referring to HEALTHSOUTH Rehabilitation Center of Fort Myers. If you have any further question regarding this evaluation or the recommendations made, please do not hesitate to contact us.

Constance Hohzorn, P.T.

Janeen Daniels, M.S.



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (781) 237-6030
Tel (800) 225-3950

COPY

November 24, 1998

Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

Enclosed please find a copy of the above-referenced policy. It would appear you are interested in the wording on page 21 that indicates the Amount of Net Monthly Benefit will be

"**The lessor of:**
(1) 60% of monthly Basic Earnings;
(2) 70% of monthly Basic Earnings,
reduced by Other Income:...."

As your monthly Workers' Compensation offset of $106.12 from 70% of your earnings or $4288.41 produces a benefit of $4182.29, the 60% or $3675.78 would prevail and should have been paid.

As discussed, it was Sun Life's error as to the incorrect calculation as of June 12, 1995 and we will not ask for the overpayment. We have corrected the monthly benefit payable to 60% or $3675.78 as of October 1, 1998.

If you have any questions, please contact this office at 1-800-432-1102 x3399.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Pam Abis, JM Family Enterprises, Inc.



U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel (800) 225-3950

Noember 5, 1998

Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: Policy No: 96878-GD Long Term Disability

Dear Mr. Roxby:

In order that we may properly review your claim for disability benefits beyond the 5 year Own Occupation date of November 22, 1998, we have arranged for a Functional Capacity Evaluation which will take place Thursday, November 19, 1998 at 9:00 a.m.

Once the results of this examination are received and reviewed by our Medical Consultant, we will advise you accordingly.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Pam Abis, JM Family Enterprises, Inc.

Sun Life of Canada
Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel. (800) 225-3950

Laurel Morris
11/24/98 01:27 PM

To: Barbara Remington/Group/USHO/SunLife
cc:
Subject: Task: Bruce Roxby, 96878, 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 is complete as of 11/24/98 1:23:39 PM

THE AREA CODE IS 941.

HE HAS A BOOKLET THAT SAYS HE IS ENTITLED TO 70% MINUS OFFSETS. IT DOES NOT SAY "THE LESSOR OF". HE WILL DISCUSS WITH JM FAMILY AND IF IT CAN NOT BE RESOLVED WILL TAKE IT TO COURT.

THE FCE WAS DONE AND SHOULD BE RECEIVED SHORTLY. I WILL CHECK WITH BILL HARNEY AND ASK THAT IT BE SENT ALONG ASAP.

LAUREL



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel. (800) 225-3950

From: Barbara Remington on 11/24/98 11:29 AM

## Task

Subject: Bruce Roxby, 96878, 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

Priority: ● None ○ High (1) ○ Medium (2) ○ Low (3)

Due Date: 11/25/98

Start Date: 11/24/98

Assigned to: Laurel Morris/Group/USHO/SunLife
cc:

Additional information:
271293-20003
Tampa
10:50

Bruce called about his claim. He said that he called and left a message on Friday and he said that he has not heard back yet. He told me that this wass not an issue that I could help him with, that he needed to speak with you about this Please call him.

971-370-9289

Thank you

Barbara

**Empire Medical Management,℠ Ltd.**

IAIABC
Certified Vendor

3959 NORTH BUFFALO ROAD
ORCHARD PARK, NY 14127
TEL: (716) 667-0072
FAX: (716) 667-1323

TO: Bill Harney, Sun Life of Canada 781-235-078

FROM: Sandy Mangano

DATE: 11-5-98

SUBJECT: FCE for Bruce Roxby

3 TOTAL PAGES INCLUDING COVER

E Morri. NOV 04 1998

W Harnev 1998

**CONFIDENTIAL INFORMATION**

ransmission is intended only for the individual or entity to which it is addressed, and may contain information is privileged, confidential and exempt from disclosure under applicable law. If the reader of this unication is not the intended recipient, or its employee or agent responsible for delivering the communication intended recipient you are notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify the sender immediately by one and return the original communication to us at the above address by the U.S. Postal Service. Thank you.

Bruce Roxby
96878

Bill
Can you do a TSA, FCE
both? either or? Anything?
Let's talk.

L Morris [illegible] 1998

Send records meds, etc to
Sandy Magano

# Medical Review

**To be completed by Examiner:**

**Claimant:** [illegible] Roxby **Date Referred:** 10-26-98

**Policy/Cert:** 96878 **Referred by:** [illegible]

**Type of claim:** ✓ LTD __ STD

**Claim Status:** __ New __ Ongoing ✓ Change in Definition __ Appeal

**Reason for Review:** Claimant now 51 y.o. w/dx of L5 disc herniation. 5-yr own occ. is up 11-22-98. Sees Dr once a year. Has reached MMI. See yellow sticker for claimant interview in 1997.
Must be TD ANY OCC as of 11-22-98
Consider FCE - TSA.

**To be completed by Medical Consultant:**

**Assessment:** Reviewed file 10/30/98.

S. 52 yo. old ex-car salesman who injured his back in a fall @ work
DOD 5/93
CC Chronic low back pain - L5-S1 disc herniation

2/18/97. Rehab Summary -
[illegible] stated that he felt he could have returned to some type of work, i.e. upper management however it did not occur. He [illegible] by his M.D. 1x yr.

Recommend FCE + TSA

Thank you

10/30/98 [illegible signature]

# Sun Life of Canada

Date: 10-30-98

Fax #: 904-443-6670

To: Pam Elkins

From: Laurel Morris

Message: Pam -
As discussed

amend 5-1-92

## Why Sun Life?

Sun Life of Canada is a major international financial institution that has been helping people plan for and achieve financial security since 1871. In the U.S., Sun Life heads a broad-based network of financial services companies offering a ~~wide range~~ of financial products and services to meet the needs of individuals, small businesses and corporations.

Standard & Poor's has called Sun Life of Canada "among the strongest life insurers in North America." Sun Life features:

- Worldwide company assets of $56 billion
- Worldwide assets under management of $130 billion
- A total worldwide surplus of $4 billion
- Life insurance in force totaling $412 billion worldwide
- Outstanding ratings from major independent rating agencies

All financial data as of 12/31/97

Number of pages, including this page 3

Call Laurel at 1-800-432-1102 x 3399 if you do not receive all the pages.

This material is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, proprietary, confidential and exempt from disclosure. If you are not the intended recipient or the person responsible for delivering the material to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone (collect if required) and destroy this material accordingly.

Sun Life
of Canada

SLPC 4321

XFAXSHEET 6/98



Laurel Morris
10/28/98 12:16 PM

To: Jessica Fontaine/Group/USHO/SunLife@SunLife
cc:
Subject: Task: Ltd - Bruce Roxby # 96878 ss 235704533 is complete as of 10/28/98 12:11:26 PM

CLAIM IN MEDICAL REVIEW. I'LL LET HIM KNOW WHAT THE RESULTS ARE WHEN REC'D. BACK. ALSO EXPLAINED THE LESSOR OF 60% OR 70% MINUS OFFSETS. WE HAVE OVERPAID BUT WILL CORRECT OCT.'S BENEFIT AND, PER DIANE MARINO, DO NOT ASK FOR THE OVERPAYMENT.

LAUREL

From: Jessica Fontaine on 10/28/98 09:54 AM

Tas[illegible]

Subject: Ltd - Bruce Roxby # 96878 ss 235704533

Priority: ● None ○ High (1) ○ Medium (2) ○ Low (3)

Due Date: 10/29/98

Start Date: 10/28/98

Assigned to: Laurel Morris/Group/USHO/SunLife@SunLife
cc:

Additional information:
271293 20003
Tampa J M Family Enterpnses
9:35
Hi! Ee would like to know what you need for November's check to go out. I couldn't find any info for him. Please call him at 941-370-9289.
Thanks!
Jess

© LegalTech, Inc 1997

# LifeStep

Licensed to Sun Life of Canada

## TSA With Wage Data Report For Bruce Roxby

11/25/98

**Based on search results, this report divides job titles into levels arranged in order of decreasing transferability. Each level compares a person's skills, as demonstrated in work experience, with selected jobs from the Dictionary of Occupational Titles(DOT). These comparisons describe levels of transferability from 1 to 9. Highlighted entries represent jobs currently selected as vocational goals. The MPSMS and/or Work Fields have been modified for at least one of the jobs contained in the client's work history, in order to accurately reflect the unique skills acquired in a work environment.**

### Job Search Parameters - Search Conducted On Work History & Functional Capacity

| SVP | GED | Aptitudes | Strength & Physical Demands | Environmental | Temperaments |
|---|---|---|---|---|---|
| | R M L | G V N S P Q K F M E C S | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 | D R I V E A S T U P J |
| | 4 3 4 | | M O F F F F F F O | | |
| 8 | 193.162-018 - AIR TRAFFIC CONTROL CRAFTSMAN | | | | |
| 7 | 620.261-010 - AUTOMOBILE MECHANIC | | | | |

### Level 4 Transferability: Similar Work Fields and similar MPSMS as demonstrated in work history

4 Occupations

| DOT Code | Job Title | GED | SVP | S | GOE | G | V | N | S | P | Q | K | F | M | E | C | CEN Code | Average Earnings Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 184.167-286 | GENERAL CAR SUPERVISOR, YARD | 433 | 7 | L | 05.02.02 | 3 | 3 | 4 | 4 | 3 | 3 | 5 | 4 | 5 | 5 | 5 | 022 | N/A |
| 622.684-022 | TANK-CAR INSPECTOR | 212 | 4 | M | 05.12.12 | 3 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 5 | 796 | $508.00 |
| 769.687-018 | CANOE INSPECTOR, FINAL | 211 | 4 | L | 06.03.02 | 4 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 3 | 5 | 5 | 796 | $508.00 |

Sun Life of Canada
*Group LTD Claims*

 **FILE MEMO**

Re    : Bruce Roxby, 96878-GD
Date  : February 18, 1999
From  : **Laurel Morris**

Returned phone call from Mark Hicks @ 3:20 p.m.
He was not available.
Left message I was returning his call.

MEMORY TRANSMISSION REPORT

TIME : 02-18-99 04:21PM
TEL NUMBER1 : 17812350784
NAME : SUN LIFE GROUP DISABILITY

FILE NUMBER : 463

DATE : 02-18 04:13PM

TO : 19414346411

DOCUMENT PAGES : 13

START TIME : 02-18 04:13PM

END TIME : 02-18 04:21PM

SENT PAGES : 13

FILE NUMBER : 463 *** SUCCESSFUL TX NOTICE ***

Sun Life
of Canada

*Group LTD - Claims*
*tel* (800) 432-1102
*fax* (781) 235-0784

# FAX transmittal

**Recipient** : **Dr. Francis P. Schwerin**

**Fax Number**: 941-434-6411

**Subject** : Bruce Roxby, Policy #96878-OD
Long Term Disability

**From** : **Laurel E. Morris (ext. 3399)**

**Date** : February 18, 1999

Number of pages including header : 13

*Please respond* as soon as possible in order that we may continue our review of Mr. Roxby's Long Term Disability benefits.

**COMMENTS :**





Laurel Morris
12/09/98 04:55 PM

To: Tara Shugrue/Group/USHO/SunLife
cc:
Subject: Task: Bruce Roxby 96878 235704533 9:15 is complete as of 12/9/98 4:51:55 PM

Advised his claim was denied and letter was in mail. I'll send another copy.

He will go to Insurance Commissioner and get an attorney.

Laurel

Explained claim was sent to cardiologist for response.

L Morris

From: Tara Shugrue on 12/09/98 09:26 AM

**Task**

Subject: Bruce Roxby 96878 235704533 9:15

Priority: ● None ○ High (1) ○ Medium (2) ○ Low (3)

Due Date: 12/10/98

Start Date: 12/09/98

Assigned to: Laurel Morris/Group/USHO/SunLife
cc:

Additional information:
C# 271293 200003
Hi Laurel-
He called to only speak with you. Wouldn't let me assist him at all. Sorry about that! Please call him back at 941 370 9289. thank you. tara

CALL FOR PICKUP ✓

From:

| Department | Prepared by | Extension | Date | Approval |
|---|---|---|---|---|
| GROUP Claims | [signature] | 3399 | 12-9-98 | |

F X W: A

A — Parent
B — Sun (US)

| USER | SEQUENCE | T | REL | CURR | CHECK DATE | EXPIRY DATE | SSN OR PO NUM | VENDOR NO | L |
|---|---|---|---|---|---|---|---|---|---|
| 86 | | | 01 | 12 | | | | | |

PAYEE NAME: EMA NET

PAYEE NAME CONTINUED:

ADDRESSEE:

ADDRESS:
PO BOX 1715
BINGHAMTON NY 13902

CHECK AMOUNT: 675.00

DESCRIPTION: B ROXBY 96828 FCE

| FUND | PURCHASE/POLICY NO | TERR | RES | MUN | BUDGET/BRANCH | PRIME | MVT | SUB | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 320 | | 444 | | | 8417 | 3999 | 740 | 2910 | 67500 |

ACCTG

REMIT PAYMENT TO:
EmpNet
P.O. Box 1715
Binghamton, New York 13902
(800) 383-4806

ORIGINAL INVOICE 12/03/98 900134-33

BILL TO:
SUNLIFE OF CANADA 7492
ONE SUNLIFE EXECUTIV
WELLESLEY, MA 02181
ATTN: MR BILL HARNEY

EXAMINEE:
NAME: BRUCE ROXBY
REF#: 235704533
CASE#: 96878
INSURED BY:

FOR SERVICES RENDERED BY EmpNet SM30

| Date | Service | Description | Examined By | Charges |
|---|---|---|---|---|
| /19/98 | FUNCTIONAL CAPACITY | | | 675.00 |

RECEIVED
DEC 07 1998
LONG TERM DISABILITY

NCLUDE INVOICE # WITH REMITTANCE. TOTAL AMOUNT DUE --->$ 675.00

TAX-ID# 31-1101042

......... FORWARD ALL OTHER BILLING INQUIRIES TO ...
P.O. Box 5070, Syracuse, New York 13250-5070 (Attn: C-TEAM)



815000

SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE, WELLESLEY HILLS, MA.

62-20/311 -1

PAY TO THE ORDER OF

**Child Support Enforcement Div.**
P.O. Box 247
Charleston, WV 25321

AMOUNT

U.S. CURRENCY

$292.31**

1/98 TO 11/21/98 $ 292.31

TOTAL $292.31

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

ROXBY 0146

Sun Life of Canada
*Shining over America since 1895*

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel (800) 225-3950

December 3, 1998

Child Support Enforcement Division
P. O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #815000 in the amount of $292.31 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division.

This check represents payment for November 1, 1998 through November 21, 1998 only as we are awaiting a response from Mr. Roxby's doctor before we can complete our review of whether additional Long Term Disability benefits would be payable under the terms of Mr. Roxby's Long Term Disability contract.

This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Pam Abis, JM Family Enterprises, Inc.

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel (800) 225-3950

Date: December 3, 1998

To: Dr. Francis P. Schwerin

Fax #. 941-434-6411

From: Laurel E. Morris, Senior Claims Administrator
telephone # 1-800-432-1102 x3399
fax # 781-235-0784

# of pages, including this one: 13

Message:

Please review and, if possible, fax your response as soon as possible.

Thank you.

ROXBY 0149

**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☐

Certificateholder Bruce Roxby Spoke With Sue

Employer's Name ______ Branch/Address ______

Policy No.(s) 96878

Phone Number ______

Soc. Sec. # ______ Claim # ______

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ______

Insured ☐ Dependent ☐ Name ______

Message Cardiologist
941-434-7227
Dr. Francis P. [illegible]
694 8th St N
Naples, Fl 34102
fax 941-434-6411

☐ Reply no later than: ______

Received By

Name and Section [signature]

Date 12-2-98 Referred To ______

Time ______ Date ______

X-HICL70403

**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☐

Certificateholder Bruce Roxby Spoke With Jill Trawinski

Employer's Name ______ Branch/Address ______

Policy No.(s) 96878

Phone Number ______

Soc. Sec. # ______ Claim # ______

**In Reference To** Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ______

Insured ☐ Dependent ☐ Name ______

**Message**

Asked for address & or telephone #
for Dr. Schwerin – Cardiologist
She will return call

☐ Reply no later than: ______

**Received By**

Name and Section Am

Date 12-2-98 Referred To ______

Time ______ Date ______

X-HICL70403

ROXBY 0151

# EmpNet℠ FCE Network

IAIABC
Certified Vendor

3959 NORTH BUFFALO RO
ORCHARD PARK, NY 14
TEL: (716) 667-0
FAX: (716) 667-13

**TO:** Bill Harney
SunLife of Canada

**FROM:** Jill Trawinski

**DATE:** November 24, 1998

**SUBJECT:** FCE for Bruce Roxby, Claim No.: 96878

**11 Total Pages**

---

Dear Bill:

Please find following this FAX the report for the FCE performed on Bruce Roxby on November 19, 1998. The original report will follow by mail.

If I may be of further assistance please do not hesitate to call me.

Thank you for your referral!

Thank you.
Jill

**CONFIDENTIAL INFORMATION**

This transmission is intended only for the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or its employee or agent responsible for delivering the communication to the intended recipient you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and return the original communication to us at the above address by the U.S. Postal Service. Thank you.

# EmpNet℠ F.C.E. Summary

Bruce Roxby — Patient Name

11.19.98 — Date of Evaluation

1. How would you rate this patient's effort?

☐ Invalid ☐ Lack of effort exhibited, but test results remain valid ☒ Valid

2. A) Was the examinee's job description provided? ☐ Yes ☒ No
   B) If yes, can the examinee return to pre-injury job demands? ☐ Yes ☐ No
   C) If the answer to "2. B)" is "No," can examinee return to pre-injury job with modified duty? ☐ Yes ☐ No
   D) At what physical demand level can examinee work?
   ☐ Sedentary ☐ Light ☒ Medium ☐ Heavy ☐ Very Heavy

3. What is the workday tolerance level for this individual?
   ☒ 8 ☐ 7 ☐ 6 ☐ 5 ☐ 4 ☐ 3 ☐ 2 ☐ 1 Hours

4. What issues, if any, have been uncovered during this F.C.E. that would prevent this individual from returning to work or normal activity? Under Cardiologist care for coronary artery disease - diagnosed 6/98. Cardiologist did clear him for FCE evaluation

5. A) Were the patient's stated reports and demonstrated behaviors consistent with one another? ☒ Yes ☐ No
   B) Were the patient's stated reports and demonstrated behaviors consistent with the presenting diagnosis? ☒ Yes ☐ No
   C) Were the patient's stated reports and demonstrated behaviors consistent with the activities being performed? ☒ Yes ☐ No

6. Check any outside influences present during the F.C.E. that may alter or interfere with this data.
   ☐ Therapist coaching ☐ 3rd party present ☐ Attorney involvement ☐ other ____________

7. Were there any inconsistencies demonstrated throughout this F.C.E. that should be identified and addressed? ☐ Yes ☒ No
   If Yes, please explain ____________

8. Was inappropriate illness behavior present during any part of this test? ☐ Yes ☒ No

9. How long did the F.C.E. take? 4½ Hours

10. How many of the Department of Labor's 20 physical demands of work are assessed in your particular physical abilities test? ?

11. Was the assessment protocol followed throughout the entire F.C.E.? ☒ Yes ☐ No
    If no, why not? ____________

12. Have the identified capabilities/restrictions in this report been compared against normative data statistics? ☐ Yes ☒ No

13. Type of F.C.E.? Generic Healthsouth FCE

# F.C.E. Summary (continued)

Name Bruce Roxby

Please check appropriate box and add weight amounts where appropriate.

**ACTIVITY RECOMMENDATIONS***

| *As defined by the "Dictionary of Occupational Titles" | NEVER | OCCASIONAL 0 - 2.5 HOURS (1-33%) | FREQUENT 2.5 - 5.5 HOURS (34-66%) | CONSTANT OVER 5.5 HOURS (67-100%) |
|---|---|---|---|---|
| SITTING | | | | ✓ with occas. pos. changes into sta. |
| STANDING | | | ✓ | |
| WALKING | | ✓ | | |
| PUSHING | | 40 lbs. force | 30 lbs force | |
| PULLING | | 40 lbs. force | 30 lbs. force | |
| CARRY (B) | | 30 lbs - 100 ft | | |
| CARRY | | | | |
| KNEELING | | | ✓ | |
| CRAWLING | Not Tested | | | |
| CROUCHING | | | ✓ | |
| BENDING | | ✓ | | |
| SQUATTING | | | ✓ | |
| LIFT (overhead) | | 22 lbs. | | |
| LIFT (waist lv) | | 35 lbs | | |
| LIFT (floor) | | 45 lbs. | | |
| STAIRS | | ✓ | | |
| REPETITIVE FOOT | Not tested | | | |
| FINE MANIP. | | | ✓ | |
| FIRM GRASP | | ✓ | | |
| SIMPLE GRASP | | | ✓ | |
| CLIMBING | | ✓ | | |
| BALANCING | | | ✓ | |
| STOOPING | | | ✓ | |
| REACHING | | | ✓ | |

COMFORTABLE WORK LEVEL HEIGHT: 28 INCHES(SITTING) 40 INCHES (STANDING)

[signature] / C. Bergon PT — Technician Signature

11 19 98 — Date

April 23, 1998

Copyright ©



Rehabilitation Center-Ft. Myers

CLIENT: Bruce Roxby
EMPLOYER: JM Pontiac-Hollywood FL
DATE OF INJURY: 5/25/98

DATE OF EVALUATION: 11/19/98

DATE OF REPORT: 11/19/98
HEALTHSOUTH I.D. NO. 235704533

REFERRED BY: Insurance Company
PHYSICIAN: Jeffrey Perkins, M.D.
INSURANCE CARRIER: Sunlife of Canada/Empire Medical Management
INSURANCE REP: Bill Harney/Sandy Mangano
INSURANCE I.D. NO.: 96878

## WORK CAPACITIES ASSESSMENT REPORT

### PURPOSE OF ASSESSMENT

Mr. Roxby was referred to HEALTHSOUTH Rehabilitation Center of Fort Myers for assessment of his current physical/functional capabilities and for determination of his potential to safely return to work.

### SUMMARY OF RESULTS

Mr. Roxby is a 51 year old male with the current diagnosis of status post cervical spinal cord injury and cervical/lumbar strain/sprain syndrome, onset 5/25/98. He reported that his injuries took place when he hit his head on a car tire while walking out from under a vehicle up on a hydraulic jack. Deficits found in the musculoskeletal evaluation included: postural and gait deviations; decreased spinal range of motion; decreased bilateral shoulder and abdominal strength; decrease lower extremity flexibility with limits greater on left; positive root tension tests on right; tenderness over C7 region; diminished lower extremity reflexes; unable to elicit C6-7 reflex. Other medical history positive for coronary artery disease diagnosed in May 1998 by Dr. Francis Schwerin (further medical evaluations and procedures pending).

Mr. Roxby had a Waddell's test score in the negative range (4 out of 16) for magnified illness behavior. Dynamometer testing revealed consistent effort on 6 out of 6 tests. Ransford Pain Diagram was negative for non-anatomical distributions of pain. Multidimensional Pain Inventory revealed dysfunctional coping skills regarding pain management. No inconsistencies in performance were observed during formal and informal evaluation.

Functional testing revealed that Mr. Roxby is presently lifting in the Medium category of work as demonstrated by his occasional floor to knuckle lift of 45 pounds, knuckle to shoulder lift of 35 pounds, shoulder to overhead lift of 22 pounds, and carry of 30 pounds 100 feet with pivoting. During positional tolerance testing, the client demonstrated tolerance of sitting on a constant basis: standing, repetitive bending, repetitive reaching, repetitive squatting, sustained squatting,

Work Capacities Assessment
RE: Roxby, Bruce

kneeling, pivot twisting, pushing/pulling, assemble, fine motor, and simple grasping on a frequent basis; and walking, stair climbing, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping on an occasional basis.

## RECOMMENDATIONS

Mr. Roxby currently demonstrates the ability to perform work within the Medium category or less, full-time, limiting walking, sustained bending, overhead reaching, ladder climbing, writing, and firm grasping to an occasional basis. However, we would recommend that medical clearance from his cardiologist be obtained before his return to work.

## SUBJECTIVE HISTORY

Mr. Roxby is a 51-year-old male with the diagnosis of status post cervical spinal cord injury and cervical/lumbar strain/sprain syndrome. He was injured on 5/25/93 when he hit his head on a car tire while walking out from under a vehicle up on a hydraulic jack. At the time of injury, reports working for JM Pontiac as a line technician (heavy mechanic). He reports that he had worked as a mechanic for 33 years. He also received training and experience in air traffic control while in the service for 13 years. He reports that he has not worked since the time of his injury in 1993.

Previous diagnostic tests for these injuries (as stated by the client) include x-rays, nerve conduction test, EMG and a MRI He reports that these tests have been positive for cervical spinal cord injury with disc bulges at C3-4 and C5-7, decreased ulnar nerve function on right, as well as cervical and lumbar sprain/strain syndrome.

Previous treatment for this injury (as stated by the client) included physical therapy 3 times per week for 4-5 months. He reports this treatment consisted of moist heat, electrical stimulation, ultrasound, electrophoresis, and strengthening exercises. He reports that physical therapy provided no improvement in his symptoms.

Mr. Roxby's pain complaints presently are a stabbing/burning pain surrounded C7; numbness with pins & needles over right cervicoscapular region; burning centrally over lumbosacral region; and an aching pain down posterior right leg from mid-thigh to knee. He reported his pain is at an intensity of 5 (0 = no pain; 10 = severe pain). He reported that recently his pain ranges from a 5 at best to 10 at its worst. He stated that walking aggravates his symptoms the most, and that hot baths provide the most relief. He currently takes aspirin three times per day to help manage his pain symptoms. At the end of the evaluation, he said that his pain was at the same intensity as it was prior to evaluation, but that he was now more uncomfortable. He called the following day to update us on his condition as instructed. He reported his pain at that time was now an 8 out of 10 with most of his pain in his neck and shoulders.

Work Capacities Assessment
RE: Roxby, Bruce

## JOB DESCRIPTION

A formal job analysis was not provided prior to the evaluation, therefore, a job description was obtained from the client and the Dictionary of Occupational Titles.

(By Client)
Mr. Roxby reported that, at the time of his injury, he was employed by JM Pontiac as a line technician (heavy mechanic). He described work in this job as requiring:

| | |
|---|---|
| Maximum weight lifted: | 150 lbs. (transmissions) within floor to knuckle level on an occasional basis. |
| Frequent weight lifted: | 70 lbs. (tires) within floor to shoulder range approximately 8 times per hour. |
| Maximum push/pull weight: | a vehicle with assistance of 2 to 3 people, a distance of 30 feet on an occasional basis. |
| Maximum carry: | 80 lbs. (torque converter / head) a distance of 150 feet on an occasional basis. |

Frequent standing walking, repetitive bending, sustained bending, overhead reaching, forward reaching, repetitive reaching, repetitive squatting, pivot twisting, pushing/pulling, repetitive wrist and forearm movements, fine motor, simple and firm grasping.

By Mr. Roxby's description, this work falls into the Very Heavy work classification category.

(By D.O.T.)
The Dictionary of Occupational Titles lists the work of a mechanic/repairer (heavy) (D.O.T.# 620.381-022) in the Heavy work classification category.

## CARDIOVASCULAR ASSESSMENT

The American Heart Association "cardiovascular profile" ranked Mr. Roxby in the Medium risk category for the development of cardiovascular disease. His resting blood pressure was 122/90 mmHg, and his resting heart rate was 84 beats per minute.

The aerobic capacity assessment using a sub maximal 12-minute treadmill protocol was deferred due to current coronary artery disease. Dr. Francis Schwerin, Mr. Roxby's cardiologist, was contacted for medical clearance to perform FCE. Dr. Schwerin reported that Mr. Roxby could perform evaluation as tolerated.

Sun Life of Canada*
A member of Sun Financial Group

Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

## Statement of Information - Update

To Be Completed by Insured:

Insured Bruce Roxby Policy No. 96878-GD

Insured's Social Security No. 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

Insured's Address 2636 SW 53 TERR, NAPLES, FL 34116

Insured's Phone Number (Area Code) (941) 370-9289 Policyholder TM. FAMILY

A. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training? Yes ☐ No ☑
If Yes, please describe

B. Are you currently working or have you worked at any time since the inception of your disability for any employer or in your own business? Yes ☐ No ☑

If Yes, please describe

C. The following questions should be answered to reflect your current income status. Please answer "yes" or "no" to each source of income other than Sun Life Long Term Disability Benefits. For every "yes" answer indicate the current amount of each periodic benefit (monthly, weekly, etc.).

| | Yes | Current Amount | Specify Weekly/Monthly | No |
|---|---|---|---|---|
| 1. Social Security or Railroad Retirement Act? | | | | |
| a) primary (amount for person disabled) | ☐ | $ | | ☑ |
| b) dependent | ☐ | $ | | ☑ |
| 2. Workers' Compensation or similar legislation? | ☐ | $ | | ☑ |
| 3. Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ | | ☑ |
| 4. Veteran's Administration or Welfare Plan? | ☐ | $ | | ☑ |
| 5. Monthly Income Disability Benefit from any Group Life Policies? | ☐ | $ | | ☑ |
| 6. Federal, State, Provincial, Municipal or other Government Agency? | ☐ | $ | | ☑ |
| 7. Pension or Retirement Allowance? | ☐ | $ | | ☑ |
| 8. Wages, Salary, Commissions and fees for Personal Services Rendered? | ☐ | $ | | ☑ |
| 9. Other Sources? | ☐ | $ | | ☑ |

D. For any "YES" answer in item "C", provide the following information:

| NAME & ADDRESS OF SOURCE | POLICY OR CLAIM NO., IF ANY | EXACT DATE BENEFITS COMMENCED OR WILL COMMENCE |
|---|---|---|

RECEIVED
SEP 03 1998
LONG TERM DISABILITY

Certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

Date 30 Aug 98 Signature [signature]

X-LTD35/28



Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

## LONG TERM DISABILITY CLAIM

## EMPLOYEE'S AUTHORIZATION

**I AUTHORIZE** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada or its legal representative any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further **AUTHORIZE** the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

**I UNDERSTAND** the information obtained by using this Authorization will be utilized by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization **EXCEPT** to reinsuring companies, the Medical Information Bureau, Inc., and other persons or organizations performing business or legal services in connection with my application or claim, or as otherwise required by law, or as I may further authorize.

**I KNOW** that a true copy of this Authorization is available to me at any time upon request.

**I AGREE** that a photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Signed this 20 Day of Aug 19 98

[signature]
Signature of Employee

ROXBY 0196

814565

# SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

62-20 / 311 - 1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96878 | | | | [illegible] | | | | | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 9/1/98 | 9/30/98 | $ 468.23 | | | | | | $ 468.23 |

DATE

SEPTEMBER 15,1998

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIV.*
PO BOX 247
CHARLESTON WV

AMOUNT

U.S. CURRENCY

$468.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈00814565⑈ ⑆031100209⑆ 38851505⑈

**Check Request**
**To: Accounting Dept. - SC 3335**

Y3399

Date: 9-15-98
Control No. [illegible]
Soc. Sec. No.

In Reference To LTD ☐ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 16578 | | 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 | | | | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| 1-1-98 | 1-31-98 | $ 413.33 | $ | $ | $ | $ [illegible] |

Pay To The Order Of: Child Support Enforcement Div.
Address: P.O. Box 247
Charleston, W.V.

Currency: 12 [illegible] Amount: $ 413.33
Prepared By: [illegible] Approved:

CHECK NO. DATE ISSUED ACCT. APPROVED

POL BEN 3/60 (5M-12-92) 19938

ROXBY 0198



Sun Life
of Canada®

*Shining over America since 1895*

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel. (781) 237-6030
Tel. (800) 225-3950

September 17, 1998

COPY

Child Support Enforcement Division
P. O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #814565 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.

814556

SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA.

62-20 / 311 -1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | REC. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96678 | | | | Bruno Roxby | | | | | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 8-1-98 | 8-31-98 | $448.23 | | | | | | $448.23** |

DATE: September 15, 1998

PAY TO THE ORDER OF

**Child Support Enforcement Div.**
P.O. Box 247
Charleston, WV 25321

AMOUNT
U.S. CURRENCY
$448.23**

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

*Citibank Delaware*
*A subsidiary of Citicorp*
*One Penn's Way*
*Newcastle, DE 19720*

⑈0081455⑈ ⑆031100209⑆ 38851505⑈

ROXBY 0200

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: [illegible]
Control No. [illegible]
Soc. Sec. No. [illegible]

In Reference To LTD ☒ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 10378 | | [illegible] | | | | |

| Employee's Name | Dependent's Name |
|---|---|
| [illegible] | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| | [illegible] | $[illegible] | $ | $ | $ | $ |

Pay To The Order Of: Child Support Enforcement Div.
Address: P.O. Box 247
Charleston, WV 25321

Currency: 2 Amount: $[illegible]

Prepared By: [signature] Approved: [signature]

CHECK NO. 814[illegible] DATE ISSUED 15 Sep 98 ACCT. APPROVED

POL SER 1/60 (SM-12-92) 69930



Sun Life
of Canada

Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02481

Tel. (781) 237-6030
Tel. (800) 225-3950

COPY

August 15, 1998

Child Support Enforcement Division
P. O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #814556 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.

814339

# SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

62-20
311

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96078 | | | | Bruce Roxby | | | | | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) | HOSPITAL DAILY | HOSPITAL SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|
| FROM 7/1/98 TO 7/31/98 $ 448.23 | | | | | | $448.23 |

DATE
July 24, 1998

PAY TO THE ORDER OF
*Child Support Enforcement Div.*
P.O. Box 247
Charleston, WV 25321

AMOUNT
U.S. CURRENCY $448.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈008143339⑈ ⑆031100209⑆ 38851809⑈

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: [illegible]
Control No. [illegible]
Soc. Sec. No. [illegible]

In Reference To LTD ☑ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| [illegible] | | 35-[illegible]-[illegible]533 | | | | |

| Employee's Name | Dependent's Name |
|---|---|
| [illegible] | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| [illegible] | 7-[illegible] | $ [illegible] | $ | $ | $ | $ [illegible] |

Pay To The Order Of: [illegible]

Address: [illegible]

[illegible]

Currency: [illegible] Amount: $ [illegible]

Prepared By: [illegible] Approved:

CHECK NO. DATE ISSUED ACCT. APPROVED

POL BEN 3/60 (5M-12-92) 69938

Sun Life of Canada
*Shining over America since 1895*

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (781) 237-6030
Tel. (800) 225-3950

August 3, 1998

Child Support Enforcement Division
P. O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #814339 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.


Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel. (781) 237-6030
Tel. (800) 225-3950

COPY

July 24, 1998

Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

On November 22, 1998, you will have been receiving long term disability benefits for 60 months. At that time it will be necessary for you to provide evidence of total disability from any occupation. An excerpt from our contract reads as follows:

"Totally Disabled-an employee is totally disabled if he is in a continuous state of incapacity due to illness which

> -while it continued throughout the Elimination Period and during the following 24 months of incapacity, prevents him from performing each and every duty of his normal occupation.
> -while continued thereafter, prevents him from engaging in any occupation for which he is or becomes reasonably qualified for by education, training, or experience."

A Supplementary Statement is enclosed for completion. When returned, the statement will be reviewed by us and our medical staff for consideration of benefits beyond the 60 month period.

Should you have any questions, do not hesitate to contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, J.M. Family Enterprise



Laurel Morris
07/24/98 09:01 AM

To: Lee Ann Engert/Group/USHO/SunLife,
cc: Leeann Prior/Group/USHO/SunLife,
Subject: bruce roxby 96878

Lee Ann:

We still show a demand check in the system as both a demand and benefit. You will remember I tried to correct it but the system keeps showing it as issued twice.

This will cause problems at year end and should have been corrected by now. Have you heard anything?

Laurel

 **Lee Ann Engert**
**06/19/98 10:14 AM**

To: Laurel Morris/Group/USHO/SunLife@SunLife
cc:
Subject: Re: chess-demand check correction problem

I will f/up w/ Diane and Roger. I need to go back and see where it was left off.
Will keep you posted.

Lee Ann

Bruce Ropley
96878



 Laurel Morris
08/19/98 09:52 AM

To: Lee Ann Engert/Group/USHO/SunLife@SunLife
cc:
Subject: chess-demand check correction problem

Lee Ann:

The problem on Chess has not been corrected. Bruce Roxby, cntrl. # 271293-20003.

There is a $468.23 entry for benefit that was to be deleted. I deleted it and it still shows as paid. You had contacted Roger Henkel, I think. Did you ever get a response? I don't want to have this scre up the w 2's at year end. Believe it or not, it's not that far away.

Laurel

GO1THOP ***** LTD SUMMARY CLAIM PAYMENTS ***** GOHF1MP

POLICY : 096878 CERT : 235704533
LAST NAME: ROXBY FIRST: BRUCE A
DISAB DTE: 260593
REG CNTRL NUM: 271293-20003-00 MORE

| NO | CHEQUE NUMBER | ISSUE DATE | CREATE DATE | FROM DATE | TO DATE | TP | CRCY | NET AMOUNT | TOTAL TAXES |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 00814251 | 180698 | 190698 | 010698 | 300698 | D | 12 | 468.23 | 0.00 |
| 2. | 93096723 | 310598 | 140598 | 221193 | 310598 | B | 12 | 7428.12 | 0.00 |
| 3. | 00814130 | 140598 | 170598 | 010598 | 310598 | D | 12 | 468.23 | 0.00 |
| 4. | 81406700 | 220498 | 260498 | 010498 | 300498 | B | 12 | 468.23 | 0.00 |
| 5. | 00814067 | 220498 | 280498 | 010498 | 300498 | D | 12 | 468.23 | 0.00 |
| 6. | 93092935 | 050498 | 050498 | 221193 | 310398 | B | 12 | 3714.06 | 0.00 |
| 7. | 00814027 | 010498 | 050498 | 010398 | 310398 | D | 12 | 468.23 | 0.00 |
| 8. | 93089316 | 080398 | 080398 | 221193 | 280298 | B | 12 | 3714.06 | 0.00 |
| 9. | 00813943 | 060398 | 080398 | 010298 | 280298 | D | 12 | 468.23 | 0.00 |
| 10. | 93085564 | 310198 | 270198 | 221193 | 310198 | B | 12 | 3714.06 | 0.00 |
| 11. | 00813857 | 270198 | 270198 | 010198 | 310198 | D | 12 | 468.23 | 0.00 |
| 12. | 93082181 | 060198 | 060198 | 221193 | 311297 | B | 12 | 3714.06 | 0.00 |
| 13. | 00813796 | 050198 | 060198 | 011297 | 311297 | D | 12 | 468.23 | 0.00 |
| 14. | 93078517 | 011297 | 011297 | 221193 | 301197 | B | 12 | 3714.06 | 0.00 |
| 15. | 00813604 | 241197 | 011297 | 011197 | 301197 | D | 12 | 468.23 | 0.00 |
| 16. | 93075034 | 041197 | 041197 | 221193 | 311097 | B | 12 | 3714.06 | 0.00 |
| 17. | 00813557 | 031197 | 041197 | 011097 | 311097 | D | 12 | 468.23 | 0.00 |
| 18. | 00813469 | 071097 | 081097 | 010997 | 300997 | B | 12 | 468.23 | 0.00 |
| 19. | 93071458 | 061097 | 061097 | 010997 | 300997 | B | 12 | 3714.06 | 0.00 |
| 20. | 93067831 | 310897 | 260897 | 221193 | 310897 | B | 12 | 3714.06 | 0.00 |
| 21. | 00813319 | 220897 | 260897 | 010897 | 310897 | D | 12 | 468.23 | 0.00 |
| 22. | 93063909 | 310797 | 200797 | 010797 | 310797 | B | 12 | 4182.29 | 0.00 |

OPTION:

1. RETURN TO CLAIM DISPLAY
2. RETURN TO CLAIM LIST
3. RETURN TO HISTORY INQUIRY MENU
4. RESTART BROWSE
5. CONTINUE BROWSE
6. CLAIMS/REHAB STATUS INFO
7. DISPLAY DETAIL STARTING WITH LN NUM

ROXBY 0210

814251

# SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

62-20 / 311 -1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | REC. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96878 | | | | Bruce Roxby | | | | | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | HOSPITAL SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 6/1/98 | 6/30/98 | $448.23 | | | | | | $ 448.23 |

DATE

June 18, 1998

PAY TO THE ORDER OF

Child Support Enforcement div.**
PO Box 247
Charleston, WV 25321

AMOUNT

U.S. CURRENCY $448.23**

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈008 14 25 1⑈ ⑆031100209⑆ 38851150 5⑈

ROXBY 1211

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: [illegible]
Control No. [illegible]
Soc. Sec. No. [illegible]

In Reference To LTD ☒ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| [illegible] | | [illegible] | | | | |

| Employee's Name | Dependent's Name |
|---|---|
| [illegible] | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| [illegible] 98 | 6 30 [illegible] | $ | $ | $ | $ | $ |

Pay To The Order Of: [illegible]

Address: [illegible] 47

[illegible] 5331

Currency: 12 Amount: $ 468.23

Prepared By: [illegible] Approved:

CHECK NO. 814251 DATE ISSUED 6-18-98 ACCT. APPROVED

POL BEN 3/60 (SM-12-92) 69938

Sun Life of Canada
*Shining over America since 1895*

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills MA 02181

Tel (781) 237-6030
Tel (800) 225-3950

June 19, 1998

Child Support Enforcement Division
P. O. Box 247
Charleston, WV 25321

c drive
Roxby.doc

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #814251 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris

Laurel E. Morris
Sr. Claims Administrator
SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.

814130

SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA.

62-20 / 311 -1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYER'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 94678 | | | | [illegible] | | | | | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 5/1/98 | 5/31/98 | $ 460.23 | | | | | | $ 460.23 |

DATE

MAY 14,1998

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIVISION*
PO BOX 247
CHARLESTON WV 25321

AMOUNT

U.S. CURRENCY

$460.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈008141130⑈ ⑆031100209⑆ 38851509⑈

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: [illegible]
Control No. [illegible]
Soc. Sec. No. [illegible]

In Reference To LTD ☒ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| [illegible] | | [illegible] | | | | |

| Employee's Name | Dependent's Name |
|---|---|
| [illegible] | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | $ [illegible] | $ | $ | $ | $ [illegible] |

Pay To The Order Of: [illegible]

Address: [illegible]

Charleston, [illegible] [illegible]

Currency: [illegible] Amount: $ [illegible]3

Prepared By: [illegible] Approved: ____________

CHECK NO. 814 130 DATE ISSUED 14 may 98 ACCT. APPROVED ____________

POL BEN 3/60 (5M-12-92) 69938

ROXBY 0215

Sun Life of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (781) 237-6030
Tel (800) 225-3950

May 15, 1998

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check # 814130 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris
Senior Claims Administrator
Group LTD Claims SC 3208

cc: Karen Davis, JM Family Enterprises, Inc

Sun Life of Canada*
A member of Sun Financial Group

a) To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.

b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

To: LTD ~~Randy Johnson~~ Laurel

From: Lou

Date: 5-13-98

Time:

Group Policy Number & Name: 096878

Contact's Name: Bruce Roxby

Relationship:

Phone Number: (941) 370-9289

Group Office: 34290

Claimant Name & Social Security Number: 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

MESSAGE: What info is needed to process claim

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: Advised April & May being released

Return Call Made (Date): 5-13-98 (Time):

(By Whom): Lou

____ Resolved

____ Further Action Required

If further action required, give details:

X-GR16/316

FOLLOW UP COPY
(GSC Keeps)

ROXBY 0217

SLIMS -- DISPLAY OF PASS-ON ITEM LEE ANN ENGERT

Subject: Manual checks Page: 01 OF 07
From: LEE ANN ENGERT Key Words:
To: ROGER HENKEL DIANE MARINO
Copies:
Date: 98-05-11,17:06

LTD claims does not get a file maintenance report. Can we set up a meeting later this week to resolve this problem? Thanks Lee Ann E.

Reply to all = PF10 Pass on = PF9 File ( ) = PF4
sender only = PF6 U.K. Print = PF12 Follow-up-date ( ) = ENTER

GCI1THCP ***** LTD SUMMARY CLAIM PAYMENTS ***** GCIHF1MP
POLICY : 096878[illegible] CERT : 235704533
LAST NAME: ROXB[illegible] FIRST: BRUCE A
DISAB DTE: 260[illegible]
REG CNTRL NUM: [illegible]3-20003-00 MORE

| NO. | CHEQUE NUMBER | ISSUE DATE | CREATE DATE | FROM DATE | TO DATE | TP | CRCY | NET AMOUNT | TOTAL TAXES |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 81406700 | 220498 | 260498 | 010498 | 300498 | B | 12 | 468.23 | 0.00 |
| 2. | 00814067 | 220498 | 280498 | 010498 | 300498 | D | 12 | 468.23 | 0.00 |
| 3. | 93092935 | 050498 | 050498 | 221193 | 310398 | B | 12 | 3714.06 | 0.00 |
| 4. | 00814027 | 010498 | 050498 | 010398 | 310398 | D | 12 | 468.23 | 0.00 |
| 5. | 93089316 | 080398 | 080398 | 221193 | 280298 | B | 12 | 3714.06 | 0.00 |
| 6. | 00813943 | 060398 | 080398 | 010298 | 280298 | D | 12 | 468.23 | 0.00 |
| 7. | 93085564 | 310198 | 270198 | 221193 | 310198 | B | 12 | 3714.06 | 0.00 |
| 8. | 00813857 | 270198 | 270198 | 010198 | 310198 | D | 12 | 468.23 | 0.00 |
| 9. | 93082181 | 060198 | 060198 | 221193 | 311297 | B | 12 | 3714.06 | 0.00 |
| 10. | 00813796 | 050198 | 060198 | 011297 | 311297 | D | 12 | 468.23 | 0.00 |
| 11. | 93078517 | 011297 | 011297 | 221193 | 301197 | B | 12 | 3714.06 | 0.00 |
| 12. | 00813604 | 241197 | 011297 | 011197 | 301197 | D | 12 | 468.23 | 0.00 |
| 13. | 93075034 | 041197 | 041197 | 221193 | 311097 | B | 12 | 3714.06 | 0.00 |
| 14. | 00813557 | 031197 | 041197 | 011097 | 311097 | D | 12 | 468.23 | 0.00 |
| 15. | 00813469 | 071097 | 081097 | 010997 | 300997 | B | 12 | 468.23 | 0.00 |
| 16. | 93071458 | 061097 | 061097 | 010997 | 300997 | B | 12 | 3714.06 | 0.00 |
| 17. | 93067831 | 310897 | 260897 | 221193 | 310897 | B | 12 | 3714.06 | 0.00 |
| 18. | 00813319 | 220897 | 260897 | 010897 | 310897 | D | 12 | 468.23 | 0.00 |
| 19. | 93063909 | 310797 | 200797 | 010797 | 310797 | B | 12 | 4182.29 | 0.00 |
| 20. | 93060452 | 300697 | 170697 | 010697 | 300697 | B | 12 | 4182.29 | 0.00 |
| 21. | 93056941 | 310597 | 180597 | 010597 | 310597 | B | 12 | 4182.29 | 0.00 |
| 22. | 93053591 | 300497 | 170497 | 010497 | 300497 | B | 12 | 4182.29 | 0.00 |

OPTION:

1. RETURN TO CLAIM DISPLAY
2. RETURN TO CLAIM LIST
3. RETURN TO HISTORY INQUIRY MENU
4. RESTART BROWSE
5. CONTINUE BROWSE
6. CLAIMS/REHAB STATUS INFO
7. DISPLAY DETAIL STARTING WITH LN NUM:

B cancelled yesterday
now its not showing
Re-did it.
L. Morris APR

GCI1THCP ***** LTD SUMMARY CLAIM PAY..ENTS ***** GCIHF1MP
POLICY : 096878 CERT : 235704533
LAST NAME: ROXBY FIRST: BRUCE A
DISAB DTE: 260593
REG CNTRL NUM : 271293-20003-00 MORE

| NO. | CHEQUE NUMBER | ISSUE DATE | CREATE DATE | FROM DATE | TO DATE | TP | CRCY | NET AMOUNT | TOTAL TAXES |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 81406700 | 220498 | 260498 | 010498 | 300498 | B | 12 | 468.23 | 0.00 |
| 2. | 00814067 | 220498 | 280498 | 010498 | 300498 | D | 12 | 468.23 | 0.00 |
| 3. | 81406700 | 220498 | 290498 | 010498 | 300498 | B | 12 | 468.23- | 0.00 |
| 4. | 93092935 | 050498 | 050498 | 221193 | 310398 | B | 12 | 3714.06 | 0.00 |
| 5. | 00814027 | 010498 | 050498 | 010398 | 310398 | D | 12 | 468.23 | 0.00 |
| 6. | 93089316 | 080398 | 080398 | 221193 | 280298 | B | 12 | 3714.06 | 0.00 |
| 7. | 00813943 | 060398 | 080398 | 010298 | 280298 | D | 12 | 468.23 | 0.00 |
| 8. | 93085564 | 310198 | 270198 | 221193 | 310198 | B | 12 | 3714.06 | 0.00 |
| 9. | 00813857 | 270198 | 270198 | 010198 | 310198 | D | 12 | 468.23 | 0.00 |
| 10. | 93082181 | 060198 | 060198 | 221193 | 311297 | B | 12 | 3714.06 | 0.00 |
| 11. | 00813796 | 050198 | 060198 | 011297 | 311297 | D | 12 | 468.23 | 0.00 |
| 12. | 93078517 | 011297 | 011297 | 221193 | 301197 | B | 12 | 3714.06 | 0.00 |
| 13. | 00813604 | 241197 | 011297 | 011197 | 301197 | D | 12 | 468.23 | 0.00 |
| 14. | 93075034 | 041197 | 041197 | 221193 | 311097 | B | 12 | 3714.06 | 0.00 |
| 15. | 00813557 | 031197 | 041197 | 011097 | 311097 | D | 12 | 468.23 | 0.00 |
| 16. | 00813469 | 071097 | 081097 | 010997 | 300997 | B | 12 | 468.23 | 0.00 |
| 17. | 93071458 | 061097 | 061097 | 010997 | 300997 | B | 12 | 3714.06 | 0.00 |
| 18. | 93067831 | 310897 | 260897 | 221193 | 310897 | B | 12 | 3714.06 | 0.00 |
| 19. | 00813319 | 220897 | 260897 | 010897 | 310897 | D | 12 | 468.23 | 0.00 |
| 20. | 93063909 | 310797 | 200797 | 010797 | 310797 | B | 12 | 4182.29 | 0.00 |
| 21. | 93060452 | 300697 | 170697 | 010697 | 300697 | B | 12 | 4182.29 | 0.00 |
| 22. | 93056941 | 310597 | 180597 | 010597 | 310597 | B | 12 | 4182.29 | 0.00 |

OPTION:

1. RETURN TO CLAIM DISPLAY
2. RETURN TO CLAIM LIST
3. RETURN TO HISTORY INQUIRY MENU
4. RESTART BROWSE
5. CONTINUE BROWSE
6. CLAIMS/REHAB STATUS INFO
7. DISPLAY DETAIL STARTING WITH LN NUM:

SLIMS -- DISPLAY OF M LAUREL MORRIS

Subject: CITIBANK MATCH PAY - LTD 814067 Page: 01 of 01
From: WANDA RAMOS Key Words:
To: LM,RM,DM,BC,AF
Copies:

Date: 98-04-29,11:40

Laurel,

Check # 814067 is on todays Citibank match pay report without an issue on file. Please process your issue TODAY. Info is as follows:

Control #:271293-20003-00
Cert #: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
Policy #: 96878
Payee: Child Support Enforcement Div.
Amount: 468.23
Issue Date: April 22

Thanks...Wanda :)

---

Reply to: all = PF10 Pass on = PF9 File ( ) = PF4
sender only = PF6 U.K. Print = PF12 Follow-up-date ( ) = ENTER

EMPLOYEE'S COPY

SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

00 814067

62-20 / 311 - 1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96878 | | | | Bryan Roxby | | | | | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 4/1/98 | 4/30/98 | $468.23 | | | | | | $468.23** |

DATE

April 22, 1998

PAY TO THE ORDER OF

*Child Support Enforcement Division**
PO Box 247
Charleston, WV 25321

AMOUNT

U.S. CURRENCY $468.23**

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈00814067⑈ ⑆031100209⑆ 38851505⑈

**Check Request**
**To: Accounting Dept. - SC 3335** Y3399

Date: 4-2-98
Control No. [illegible]
Soc. Sec. No. 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

In Reference To LTD ☑ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 76373 | | 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 | | | | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| 1-1-98 | 4-30-98 | $468.33 | $ | $ | $ | $468.33 |

Pay To The Order Of: Child Support Enforcement Division

Address: PO Box 247

Charleston WV 25321

Currency: 12 Amount: $ 468.33

Prepared By: [illegible] Approved: [illegible]

CHECK NO. 8[illegible] DATE ISSUED 22 Apr 98 ACCT. APPROVED

POL BEN 3/60 (SH-12-92) 60938

ROXBY 0223



U.S. Headquarte ffice One Sun Life Executive Park Wellesley Hills, MA 02181

Tel (781) 237 6030
Tel (800) 225-3950

April 23, 1998

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No: 96878-GD Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check # 814067 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long Term Disability contract.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Laurel E. Morris
Senior Claims Administrator
Group LTD Claims SC 3208

cc: Karen Davis, JM Family Enterprises, Inc.

EMPLOYER'S COPY

# SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

814027

82-20 / 311 -1

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

| POLICY NO. | SUB. | CERT NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | 210 | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96878 | | | | Bruce Roxby | | 12/27/93 | | 6/26/93 | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | $ | | | | | | $468.23** |

DATE

April 1, 1998

PAY TO THE ORDER OF

*Child Support Enforcement Division**
P.O Box 247
Charleston, WV 25321

AMOUNT

U.S. CURRENCY $468.23**

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈00814027⑈ ⑆031100209⑆ 38851505⑈



Sun Life
of Canada

Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (781) 237-6030
Tel. (800) 225-3950

April 3, 1998

COPY

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-GD Long-Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #814027 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson

Randy D. Johnson
Associate Claims Administrator
Group LTD
SC 3208

cc: JM Family Enterprises, Inc., Karen Davis

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: March 31, 1998
Control No. 271243-20003
Soc. Sec. No. 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

MAR 3 1 1998

In Reference To LTD [X] STD [ ] Excess Risk [ ] Health Conversion [ ] Dental [ ]

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 96878 | | 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 | 27 Dec 93 | 216 | 26 May 93 | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| 1 March 98 | 31 March 98 | $ 468.23 | $ | $ | $ | $468.23 |

Pay To The Order Of: Child Support Enforcement Division
Address: P.O. Box 247
Charleston, WV 25321

Currency: 12 Amount: $ 468.23

Prepared By: Randy Johnson Approved: [signature]

CHECK NO ______ DATE ISSUED ______ ACCT. APPROVED ______

POL BEN 3/60 (5M-12-92) 69938

813943

EMPLOYER'S COPY **SUN LIFE ASSURANCE COMPANY OF CANADA**

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA.

62-20/311 - 1

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 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 96878 | | | | BRUCE ROXBY | | 27DEC 1993 | 210 | 26MAY 1993 | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 01FEB98 | 28FEB98 | $468.23 | | | | | | $468.23 |

DATE

MARCH 6,1998

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIVISION*
PO BOX 247
CHARLESTOWN WV 25321

AMOUNT

U.S. CURRENCY

$468.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

*Citibank Delaware*
*A subsidiary of Citicorp*
*One Penn's Way*
*Newcastle, DE 19720*

⑈00813943⑈ ⑆031100209⑆ 38851505⑈

ROXBY 0228



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (781) 237-6030
Tel. (800) 225-3950

March 6, 1998

COPY

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-GD Long-Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check **#813943** in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson
Associate Claims Administrator
Group LTD
SC 3208

cc: JM Family Enterprises, Inc. Karen Davis

813857

EMPLOYER'S COPY

SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE, WELLESLEY HILLS, MA.

62-20/311 -1

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

| POLICY NO. | SUB. | CERT NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 94878 | | | | BRUCE ROXBY | | 12/27 1993 | 210 | 5/26 1993 | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | HOSPITAL SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1/1/98 | 1/31/98 | $ 468.23 | | | | | | $468.23 |

DATE

JANUARY 27, 1998

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIVISION*
P.O. BOX 247
CHARLESTOWN, WV 25321

AMOUNT

U.S. CURRENCY $468.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈0081385 7⑈ ⑆031100209⑆ 38851505⑈

ROXBY 0230

Sun Life of Canada
*Shining over America since 1895*

U.S. Headquarters Offic
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (781) 237-6030
Tel. (800) 225-3950

January 28, 1998

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-GD Long-Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #813857 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below:

"Absent Patent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract.

Sincerely,

Randy D. Johnson
Associate Claims Administrator
Group LTD Claims

cc: JM Family Enterprises, Inc., Karen Davis

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: Jc 27, 1998
Control No. 271293-20003
Soc. Sec. No. 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

In Reference To LTD ☒ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 96878 | | 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 | 27 Dec 93 | 210 | 26 May 93 | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| 1 Jan 98 | 31 Jan 98 | $ 468.23 | $ | $ | $ | $ 468.23 |

Pay To The Order Of: Child Support Enforcement Division

Address: P.O. Box 247
Charlestown, WV 25321

Currency: 12 Amount: $ 468.23

Prepared By: Randy Johnson XT: 1717 Approved: [signature]

CHECK NO. ______ DATE ISSUED ______ ACCT. APPROVED ______

POL BEN 3/60 (5M-12-92) 69938

Sun Life of Canada
A member of Sun Financial Group

Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.
... reply: Write reply, retain canary and return white to Group Service to make return call.
c) Final reply: Write final comments and return to Claims.

To: Randy Johnson LTD From: Lora

Date: 1/6/98 Time: 12:00

Group Policy Number & Name: 96828 J.M. Family Enter

Contact's Name: Bruce Roxby Relationship: EE

Phone Number: 941-370-9289 Group Office: Tampa

Claimant Name & Social Security Number: 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

MESSAGE: 271293-20005-CC

Checks are being received around the 14th of the month. Is there any way to get them sooner? Please call.

ACTION TO BE TAKEN: Thanks

COMMENTS TO BE MADE IN RETURN CALL: Check [illegible] month. [illegible] nothing we can [illegible]

Return Call Made (Date): 1/6/98 (Time): 2:[illegible]

(By Whom): Randy

Resolved

Further Action Required

If further action required, give details:

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

ROXBY 0233

**813796**

EMPLOYER'S COPY     SUN LIFE ASSURANCE COMPANY OF CANADA
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         U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA.

$\frac{62-20}{311}$ -1

| POLICY NO 96878 | SUB | CERT. NO. | CL | EMPLOYEE'S NAME BRUCE ROXBY | | DEPENDENT'S NAME | 12/27/ 1993 | RES. 210 | 9/28 1993 | CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) 1/1/97 TO 12/31/97 | | | $468.23 | DAILY | HOSPITAL SPECIAL | SURGICAL | MEDICAL | | | TOTAL $468.23 |

| DATE | PAY TO THE ORDER OF | AMOUNT |
|---|---|---|
| JANUARY 5, 1998 | *CHILD SUPPORT ENFORCEMENT DIVISION* P.O. BOX 247 CHARLESTON, WV 25321 | U.S. CURRENCY $468.23* |

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

SUN LIFE ASSURANCE COMPANY OF CANADA

**NON-NEGOTIABLE**

⑊008 13796⑊  ⑊03 1100209⑊    3885150 5⑊

ROXBY 0234



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Offi

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel. (781) 237-6030
Tel. (800) 225-3950

January 6, 1998

COPY

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-GD Long-Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #813796 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below:

"Absent Patent" Number 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
Obligee's Name: Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract. Sun Life will notify you if Mr. Roxby's benefits are discontinued.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson
Associate Claims Administrator
Group LTD Claims

cc: JM Family Enterprises, Inc., Karen Davis

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: Jan 2, 1998
Control No. 271293-20003
Soc. Sec. No. 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

In Reference To LTD ☒ STD ☐ Excess Risk ☐ Health Conversion ☐ Dental ☐

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 96878 | | 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 | 27 Dec 93 | 210 | 26 May 93 | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| 1 Dec 97 | 31 Dec 97 | $ 468.23 | $ | $ | $ | $ 468.23 |

Pay To The Order Of: Child Support Enforcement Division
Address: P.O. Box 247
Charleston, WV 25321

Currency: 12 Amount: $ 468.23

Prepared By: Randy Johnson X#:1717 Approved: [signature]

CHECK NO. ______ DATE ISSUED ______ ACCT. APPROVED ______

POL 51N 3760 (5M-12-92) 69938

ROXBY 0233

813604

EMPLOYER'S COPY **SUN LIFE ASSURANCE COMPANY OF CANADA**

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

62-20 / 311 - 1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 94878 | | | | BRUCE ROXBY | | 12/27/ 1993 | 210 | 5/26/ 1993 | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FR | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1/1/97 | 11/30/97 | $ 468.23 | | | | | | $468.23 |

DATE

NOVEMBER 24, 1997

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIVISION*
P.O. BOX 247
CHARLESTON, WV 25321

AMOUNT

U.S. CURRENCY $468.23

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

*Citibank Delaware*
*A subsidiary of Citicorp*
*One Penn's Way*
*Newcastle, DE 19720*

⑈008136O4⑈ ⑆031100209⑆ 38851505⑈



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (781) 237-6030
Tel. (800) 225-3950

November 25 1997

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-GD Long-Term Disability
Claimant: Bruce Roxby

Dear Sir/ Madam:

Enclosed is check #813604 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name-Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract. Sun Life will notify you if Mr. Roxby's benefits are discontinued.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson
Claims Specialist
Group LTD Claims

cc: JM Family Enterprises,Inc. Karen Davis

**Check Request**
**To: Accounting Dept. - SC 3335**

Date: 11/24/97
Control No. 271293-20003
Soc. Sec. No. 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

In Reference To LTD [X] STD [ ] Excess Risk [ ] Health Conversion [ ] Dental [ ]

| Policy No. | Sub | Cert. No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 96878 | | 235704533 | 27Dec93 | 216 | 26May93 | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| 1 Nov 97 | 30 Nov 97 | $ 468.23 | $ | $ | $ | $ 468.23 |

Pay To The Order Of: Child Support Enforcement Division
Address: P.O. Box 247
Charleston, WV 25321

Currency: 12 Amount: $ 468.23
Prepared By: Randy Johnson X1717 Approved: Diane J Marino

CHECK NO. ________ DATE ISSUED ________ ACCT APPROVED ________

POL BEN 3/60 (5M-12-92) 69938

ROXBY 0239

1) Go To B999 To release check
Advance the dates (Both)

release - Show underpayment - delete underpayment

2) Go to K option 2
check #
___ Type "d" Gross = net -
From Date To Date
Issue Date Tax code - N
Proceed Check Issue # 2
Tax code - N

3) Go to G
Basics change red date back 1 month
release Check overpayment and go
~~release~~
Back to Basics - change pay date again
release Screen - Should Show right amount.

813557

EMPLOYER'S COPY

# SUN LIFE ASSURANCE COMPANY OF CANADA

U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA.

62-20/311 - 1

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

| POLICY NO. | SUB. | CERT. NO. | CL. | EMPLOYER'S NAME | DEPENDENT'S NAME | REPORTED | RES. | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96878 | | | | BRUCE ROXBY | | 27DEC 1993 | 210 | 26MAY 1993 | |

| WEEKLY INDEMNITY (BOTH DATES INCLUSIVE) FROM | TO | | HOSPITAL DAILY | SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1 OCT. 97 | 31 OCT 97 | $468.23 | | | | | | $ 468.23 |

DATE

NOVEMBER 3, 1997

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIVISION*
P.O. BOX 247
CHARLESTON, WV 25321

AMOUNT

U.S. CURRENCY $468.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

*Citibank Delaware*
*A subsidiary of Citicorp*
*One Penn's Way*
*Newcastle, DE 19720*

⑈0081355 7⑈ ⑆031100209⑆ 38851505⑈

ROXBY 0241



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (617) 237-6030

November 3, 1997

COPY

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #813557 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name-Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract. Sun Life will notify you if Mr. Roxby's disability benefits are discontinued.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson
Claims Specialist
Group LTD Claims

cc: JM Family Enterprises, Inc., Karen Davis

Sun Life of Canada
A member of Sun Financial Group

Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

(FL)

# Statement of Information - Update

To Be Completed by Insured:

Insured BRUCE A. ROXBY Policy No. 96878 -GD

Insured's Social Security No. 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

Insured's Address 2636 SW. 53 TERR - NAPLES FL 34116

Insured's Phone Number (Area Code 941) 270-9289 Policyholder

A. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training? Yes ☐ No ☑
If Yes, please describe

B. Are you currently working or have you worked at any time since the inception of your disablity for any employer or in your own business? Yes ☐ No ☑

If Yes, please describe

C. The following questions should be answered to reflect your current income status. Please answer "yes" or "no" to each source of income other than Sun Life Long Term Disability Benefits. For every "yes" answer indicate the current amount of each periodic benefit (monthly, weekly, etc.).

| | Yes | Current Amount | Specify Weekly/Monthly | No |
|---|---|---|---|---|
| 1. Social Security or Railroad Retirement Act? | | | | |
| a) primary (amount for person disabled) | ☐ | $ | | ☑ |
| b) dependent | ☐ | $ | | ☑ |
| 2. Workers' Compensation or similar legislation? | ☐ | $ | | ☑ |
| 3. Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ | | ☑ |
| 4. Veteran's Administration or Welfare Plan? | ☐ | $ | | ☑ |
| 5. Monthly Income Disability Benefit from any Group Life Policies? | ☐ | $ | | ☑ |
| 6. Federal, State, Provincial, Municipal or other Government Agency? | ☐ | $ | | ☑ |
| 7. Pension or Retirement Allowance? | ☐ | $ | | ☑ |
| 8. Wages, Salary, Commissions and fees for Personal Services Rendered? | ☐ | $ | | ☑ |
| 9. Other Sources? | ☐ | $ | | ☑ |

D. For any "YES" answer in item "C", provide the following information:

| NAME & ADDRESS OF SOURCE | POLICY OR CLAIM NO., IF ANY | EXACT DATE BENEFITS COMMENCED OR WILL COMMENCE |
|---|---|---|
| | | |

RECEIVED
OCT 28 1997
LONG TERM DISABILITY

R. Johnson NOV 3 1997

Certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

Date 10/27/97 Signature [signature]

X-LTD35/28



Group Long Term Disability Claims •
One Sun Life Executive Park (SC-3408)
Wellesley Hills, MA 02181
(800) 247-6875

## LONG TERM DISABILITY CLAIM

## EMPLOYEE'S AUTHORIZATION

**I AUTHORIZE** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada or its legal representative any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further **AUTHORIZE** the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

**I UNDERSTAND** the information obtained by using this Authorization will be utilized by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization **EXCEPT** to reinsuring companies, the Medical Information Bureau, Inc., and other persons or organizations performing business or legal services in connection with my application or claim, or as otherwise required by law, or as I may further authorize.

**I KNOW** that a true copy of this Authorization is available to me at any time upon request.

**I AGREE** that a photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Signed this 27 Day of Oct 19 97

[signature]

Signature of Employee



EMPLOYEE COPY

SUN LIFE ASSURANCE COMPANY OF CANADA
U.S. HEADQUARTERS OFFICE: WELLESLEY HILLS, MA

813469
62-20/311 1

| REC NO | | | | EMPLOYEE'S NAME | DEPENDENT'S NAME | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 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 | | | | | | | | | |
| 96878 | | | | BRUCE ROXBY | | 27DEC 1993 | 210 | 26MAY 1993 | |
| FROM 1SEP97 | TO 30SEP97 | $468.23 | | | | | | | TOTAL $468.23 |

DATE
OCTOBER 7,1997

PAY TO THE ORDER OF

*CHILD SUPPORT ENFORCEMENT DIVISION*
PO BOX 247
CHARLESTON WV 25321

AMOUNT
U.S. CURRENCY
$468.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈00813469⑈ ⑆031100209⑆ 38815150⑈

R. Johnson OCT 7 1997

ROXBY 0245



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (617) 237-6030

October 8, 1997

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

Re: Policy No. 96878-Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is check #813469 in the amount of $468.23 which represents withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name-Lois E. Hercules
Case Number: 23674206601

We will continue this amount from Mr. Roxby's benefit as long as he remains disabled by the terms of his Long-Term Disability contract. Sun Life will notify you if Mr. Roxby's disability benefits are discontinued.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson

Randy D. Johnson
Claims Examiner
Group LTD Claims

cc: JM Family Enterprises, Inc., Karen Davis

Sun Life of Canada* Ltd
A member of Sun Financial Group

a) To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy. b) Interim reply: Write reply, retain canary and return white to Group Service to make return call. c) Final reply: Write final comments and return to Claims.

To: Randy Johnson From: Jodi
Date: 10/6/97 Time: 9:40
Group Policy Number & Name: 96878 - J.M. Family
Contact's Name: Bruce Roxby Relationship: ee
Phone Number: (1) (941) 353-9459 (2) (941) 370-9289 cell Bruce Group Office: Tampa
Claimant Name & Social Security Number: Bruce Roxby - 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

MESSAGE: 271293 - 30003-00
This thursday has dr's appt. and cannot have SOL APS returned in such a short turnaround time. Has called dr's already and left message. Pls. call

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: Called all see will pouls.
4182.29
and 3714.00
other = $

Return Call Made (Date): 10/6/97 (Time): 3:15
(By Whom): Randy

_______ Resolved
_______ Further Action Required

If further action required, give details:

X-GR19/316 FOLLOW UP COPY (GSC Keeps) ROXBY 0247

Sun Life of Canada®
A member of Sun Financial Group

To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.

Claims reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

(LD)

To: Randy Johnson

From: Joanna

Date: 10/3/97

Time: 11:10

Group Policy Number & Name: 090878, JM Family Enterprises Inc.

Contact's Name: Bruce Roxby

Relationship:

Phone Number: (941) 370-7289

Group Office: Tampa FL

Claimant Name & Social Security Number: Bruce Roxby 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

MESSAGE: 271193-20003-00

Called to inquire about check for September & did receive request for info. on 9/23 and can't be able to submit it until next week & wants to know status of check. This is his second call he called at 10:00am yesterday thank you

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: Called all set. will process

Return Call Made (Date): 10/6/97

(Time): 3:15

(By Whom): Randy

_______ Resolved

_______ Further Action Required

If further action required, give details:

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

ROXBY 0248

-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

Sun Life of Canada

| Group No. | Certificate No. | Social Security No. | Date |
|---|---|---|---|
| | -33-70-4553 | | 9/16/97 |

Name

1. _____ Attached are claim forms for completion.

2. _____ Please have the attached form completed and returned to us as soon as possible for further consideration of benefits. Please be sure that all sections of the form are filled in completely to avoid a delay on this claim.

3. _____ Please complete the highlighted areas and return to us as soon as possible for further consideration of benefits.

4. _____ We have not yet received the __________ requested on __________.

5. _____ We have not yet received a response to our letter sent on __________. A copy of our previous correspondence is attached.

6. _____ Thank you for your payment of $__________. The overpayment has now been reduced to $__________.

7. _____ We have not yet received a reply regarding the overpayment of $__________. Please contact this office regarding repayment of the outstanding amount.

8. _____ Please furnish us with a copy of the Social Security Award or Denial Notice as soon as it becomes available, including Dependent Awards.

9. _____ If application has not yet been made for Social Security Disability/Retirement, may we suggest that the claimant apply as soon as possible as we feel he/she may be eligible. A copy of the Administration's decision should be sent to us when received.

10. _____ Please send a copy of the Workers' Compensation Award as soon as it becomes available.

11. X Please advise on the status of application to Social Security Disa. If an award or denial has been received, please forward a copy of the award/denial notice so we may correctly recalculate your claim.

12. _____ Other. __________

Thank You

Sincerely,

Randy Johnson

Group LTD Claims
SC 3208

CC: __________

X-LTD35/1 (5/95)

ROXBY 0249

Sun Life of Canada
A member of Sun Financial Group

To Originator: ... and forward white and canary copy.
... white to Group Services to make return call.
c) Final reply: Write final comments and return to Claims.

To: Randy J. LTD
From: Barry

Date: 8-28
Time: 11:20

Group Policy Number & Name: 096878 J.M. Family

Contact's Name: Bruce Roxby
Relationship: EE

Phone Number: 941-370-9289
Group Office: Tampa/F

Claimant Name & Social Security Number: 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

MESSAGE: C# 271293-2003-00

Re: There is a mistake w/ child support/spousal support check (008,13319) ... he claims it should be less. Please c/b —

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: Called, Said his Attorney will send letter to us clarify agreement. Very Rude. We will take a look at letter and decide if a change is necessary.

Return Call Made (Date): 8/28/97
(Time): 2:15

(By Whom): RANDY

AUG 2 7 1997

_______ Resolved

_______ Further Action Required

If further action required, give details:

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

ROXBY 0250

Sun Life of Canada
A member of Sun Financial Group

Group Disability Benefits
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel: 1-800-247-8876

# Attending Physician's Statement of Disability
## Group Insurance

*The patient is responsible for the completion of this form without expense to Sun Life of Canada.*

Please print

Policy No. 96878-GD

Name of patient: BRUCE ROXBY    Date of birth: 04, 25, 47

Patient's address: 2636 SW 53 TERR (No., Street)  NAPLES (City)  FL (State or Province)  34116 (Zip Code)

Employer's name: J.M. FAMILY    Control number:

I hereby authorize release of information requested on this form, by the below named physician for the purpose of claim processing.

Signed (Patient): [signature]    Date: 10/9/97

**1. History**

(a) When did symptoms first appear or accident happen? Mo. 5 Day 25 19 96
(b) Date patient ceased work because of disability Mo. 5 Day 15 19 95
(c) Has patient ever had same or similar condition? ☑ Yes ☐ No If "Yes" state when and describe.
(d) Is condition due to injury or sickness arising out of patient's employment? ☑ Yes ☐ No ☐ Unknown
(e) If condition due to automobile accident, indicate state in which it occured: ~~11/13/46~~ Fla
(f) Names and addresses of other treating physicians

**2. Diagnosis (including any complications)**

(a) Date of last examination Mo. 12 Day 30 19 98
(b) Diagnosis (including any complications)
(c) If disability is due to pregnancy what is expected/was delivery date Mo. ____ Day ____ 19 ____
(d) Please describe any complications that would extend this disability longer than a normal pregnancy.
(e) Subjective symptoms
(f) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings)

RECEIVED
OCT 28 1997
LONG TERM DISABILITY

**3. Dates of Treatment**

(a) Date of first visit Mo. 6 Day 1 19 96
(b) Date of last visit Mo. 10 Day 5 19 97
(c) Frequency ☐ Weekly ☐ Monthly ☐ Other (specify)

**4. Nature of Treatment (including surgery and medications prescribed, if any)** Physical Therapy

**5. Progress**

(a) Has patient ☐ Recovered? ☐ Improved? ☑ Unchanged? ☐ Retrogressed?
(b) Is patient ☑ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?
(c) Has patient been hospital confined? ☐ Yes ☑ No If "Yes", give name and address of hospital
Confined from ____ through ____

**6. Cardiac (if applicable)**

(a) Functional capacity (American Heart Association) ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)
(b) Blood pressure (last visit) Systolic ____ / Diastolic ____

R. Johns... NOV 3 1997



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (617) 237 6030

August 26, 1997

Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

COPY

Re: Policy No. 96878-Long Term Disability
Claimant: Bruce Roxby

Dear Sir/Madam:

Enclosed is a check # 813319 in the amount of $468.23 which represents our first withholding of benefits from Bruce Roxby and our payment to the Child Support Enforcement Division. This is in reference to the information listed below.

"Absent Parent" Number 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
Obligee's Name-Lois E. Hercules
Case Number: 23674206601

We will continue to withhold this amount from Mr. Roxby's benefit as long as he remains disabled as defined by the terms of his Long-Term Disability contract. Sun Life will notify you if Mr. Roxby's disability benefits are discontinued.

Thank you. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson

Randy D. Johnson
Claims Examiner
Group LTD Claims

cc: JM Family Enterprises, Inc.-Karen Davis

BF 10th
E 999

First child support check (manual) for Aug 1997

813319

SUN LIFE ASSURANCE COMPANY OF CANADA
U.S. HEADQUARTERS OFFICE WELLESLEY HILLS, MA

62-20 / 311 -1

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

| | SUB | CERT NO | CL | EMPLOYEE'S NAME | DEPENDENT'S NAME | REPORTED | RES | INCURRED | CODE |
|---|---|---|---|---|---|---|---|---|---|
| 96878 | | | | BRUCE ROXBY | | 27DEC 1993 | 210 | 26MAY 1993 | |

| FROM | TO | | HOSPITAL DAILY | HOSPITAL SPECIAL | SURGICAL | MEDICAL | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1AUG97 | 31AUG97 | $468.23 | | | | | | $468.23* |

DATE: AUGUST 22,1997

PAY TO THE ORDER OF
*CHILD SUPPORT ENFORCEMENT DIVISION*
PO BOX 247
CHARLESTON WV 25321

AMOUNT
U.S. CURRENCY
$468.23*

SUN LIFE ASSURANCE COMPANY OF CANADA

NON-NEGOTIABLE

Citibank Delaware
A subsidiary of Citicorp
One Penn's Way
Newcastle, DE 19720

⑈00813319⑈ ⑆031100209⑆ 38851505⑈

AUG 22 1997

ROXBY 0254



Sun Life of Canada

Shining over America since 1895

Date August 13, 1997

Memorandum

RECEIVED
AUG 14 1997
LONG TERM DISABILITY

To Randy Johnson
Group LTD Claims

From Cheri Lamie
Legal Assistant

Re Order of Attachment of Income
**Bruce Allen Roxby** - SS# 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

---

Attached please find a Notice to Initiate Withholding regarding the above-captioned claimant. Please review your files and and ensure that $50 plus 10% of the benefit payment amount for all future disability benefits are forwarded directly to :

Check Payable to: Child Support Enforcement Division
P.O. Box 247
Charleston, WV 25321

The following information must appear on the check or check stub:

Full Name and Social Security Number of Claimant
"Absent Parent Number 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
Obligee's Name Lois E. Hercules
Case Number 23674206601"

**Please advise me when disability benefits are discontinued so that I can notify the attornies and family court.**

Please feel free to contact me on X1223 if you have any questions.

Cheri

R. Johnson AUG 21 1997

Employer/Source of Income: SUN LIFE ASSURANCE CO./CANADA
ONE SUN LIFE EXECUTIVE PART
WELLESLEY HILLS, MA 02181-5615

OFFICE OF THE MARSHALL COUNTY CHILD SUPPORT ENFORCEMENT DIVISION
CIRCUIT Court of OHIO County, WEST VIRGINIA

LOIS E HERCULES
Plaintiff,

v. Civil Action No:77-C-135

BRUCE ALLEN ROXBY
Defendant.

NOTICE TO EMPLOYER/SOURCE OF INCOME TO INITIATE WITHHOLDING

You are hereby notified, pursuant to West Virginia Code Section 48A-5-3 and Section 48-2-15b, as the employer/source of income of BRUCE ALLEN ROXBY, hereafter referred to as the "obligor", Social Security Number 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, Date of Birth 04-25-1947:

1. To withhold from the obligor's income the amounts set forth below and to send the amount withheld the same day of the obligor's pay day to:

CHILD SUPPORT ENFORCEMENT DIVISION
P. O. BOX 247
CHARLESTON, WEST VIRGINIA 25321

The following identifying information must appear on the check or check stub to assist in crediting payments to the proper case:

Obligor's full name and social security number as stated above
Absent Parent Number 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
Obligee's Name LOIS E HERCULES
Case Number 23674206601

Also include the DATE the money was withheld from the income.

2. Subject to the maximum permitted by state and federal statute, you must withhold the following:

The sum of $ 50.00 per MONTH as current/SPOUSAL support. + 10% of net income for arrearages

If the amount being withheld is for current support only at this time, you may be directed later to withhold additional amounts to pay the arrearage. Furthermore, this withholding notice may be modified by further notice.

CSE-1Y (REVISED 7-87)

ROXBY 0256

X You are also required to withhold for the arrearage that is due. The arrearage due to date is $78,783.06 , including interest. **YOU ARE HEREBY NOTIFIED THAT THE AMOUNT TO BE WITHHELD MUST BE IN ACCORDANCE WITH THE ATTACHED STATE AND FEDERAL LIMITS ON WITHHOLDINGS.** The amounts to be withheld for the arrearage may range from 10% to 100% of the income. You may be liable if you do not withhold enough money. For your information, the arrearage has been due for more than 12 weeks.

**FURTHER, PURSUANT TO WEST VIRGINIA CODE Section 48A-5-3:**

1. You must implement this withholding no later than the first pay period or first date of payment of income that occurs after fourteen (14) days from the date of mailing this notice.

2. This withholding notice is binding upon you until further notice from the Child Support Enforcement Division or until you notify the CSED that the obligor has been terminated.

3. You are subject to a fine of not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1000.00) if you discharge, refuse to employ, or take disciplinary action against the obligor because of this withholding.

4. If you fail to withhold income pursuant to this notice, you are liable for the accumulated amount of income that you should have withheld.

5. A source of income who knowingly and willfully conceals the fact that the source of income is paying income to an obligor, with the intent to avoid withholding from the obligor's income of amounts payable as support, is guilty of a crime and the source of income is liable for the amount of child support which it failed to withhold. Further, when a source of income and the obligor knowingly and willfully engage in a cash wage agreement so that the obligor could evade paying child support, the source of income could be liable for punitive damages.

6. THIS WITHHOLDING HAS PRIORITY OVER ANY OTHER LEGAL PROCESS OF THE LAWS OF THIS STATE AGAINST THE SAME INCOME AND SHALL BE EFFECTIVE DESPITE ANY EXEMPTION THAT MIGHT BE OTHERWISE APPLICABLE TO THE SAME INCOME.

7. You may combine withholdings for more than one individual into a single payment to the Child Support Enforcement Division AS LONG AS YOU SEPERATELY IDENTIFY THE PORTION OF THE SINGLE PAYMENT WHICH IS ATTRIBUTABLE TO EACH INDIVIDUAL.

8. You must notify the Child Support Enforcement Division within 14 days of the date the obligor terminates employment or ceases receiving income from you. If this occurs, you must provide the last known address and the name and address of the new employer of the obligor, if known, to the Child Support Enforcement Division. THIS AND ANY OTHER CORRESPONDENCE SHOULD BE MAILED TO THE LOCAL COUNTY CHILD SUPPORT ENFORCEMENT DIVISION. The address is on the Certificate of Service.

9. You may withhold from the income of the obligor an administrative fee of $1.00. This fee is in addition to the amount withheld for support.

10. The total amount that you withhold, including the $1.00 fee, may not be in excess of the maximum amounts permitted under Section 303(b) of the Federal Consumer Credit Protection Act or the limitation imposed by the CODE OF WEST VIRGINIA.

# CERTIFICATE OF SERVICE

A copy of the foregoing was sent by United States Postal Service CERTIFIED mail on the 30th day of July, 1997, to the following:

Employer/Source of Income:

SUN LIFE ASSURANCE CO./CANADA
ONE SUN LIFE EXECUTIVE PART
WELLESLEY HILLS, MA 02181-5615

Obligor: BRUCE ALLEN ROXBY

Address not disclosed hereon, per West Virginia Code Section 48A-2-23(A)(2)

Obligee: LOIS E HERCULES

Address not disclosed hereon, per West Virginia Code SECTION 48A-2-23-(A)(2)

Counsel:

OHIO County Circuit Court Clerk
LIN V. HUMPHRIES
CITY/COUNTY BLDG. 4TH FLOOR
WHEELING, WV 26003

CHILD SUPPORT ENFORCEMENT DIV.

1005 FOURTH STREET

MOUNDSVILLE, WV 26041
Telephone: (304)843-4120

(Please send all information regarding this obligor to this address.)

By: [signature]

# FOR YOUR INFORMATION

As of June 8, 1991, the maximum amounts that may be withheld are as follows:

When withholding is for current support plus an arrearage--

(1) If the withholding is from salaries and wages, up to 10% of the disposable earnings may be withheld for the arrearage with an overall limitation for the current support plus the arrearage of 50% - 65%;

(2) If you are withholding from disposable earnings other than salaries and wages, up to 50% - 65% overall may be withheld (the 10% limitation for the arrearage would not apply);

(3) If the withholding is from income other than disposable earnings, up to 100% of the income may be withheld;

When withholding is for the arrearage only (no current support involved)--

(1) Up to 50% - 65% of the disposable earnings, including salaries and wages, may be withheld;

(2) Up to 100% of all other income may be withheld.

PERTINENT REFERENCES:

WEST VIRGINIA CODE Section 48A-1-3

"As used in this Chapter . . .

(9) "Earnings" means compensation paid or payable for personal services whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program. "Disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(10) "Employer" means any individual, sole proprietorship, partnership, association, public or private corporation, the United States or any federal agency, this state or any political subdivision of this state, any other state or a political subdivision of another state, and any other legal entity which hires and pays an individual for his services.

(12) "Income" means any of the following:

(A) Commissions, earnings, salaries, wages and other income due or to be due in the future to an obligor from his employer and successor employers;

(B) Any payment due or to be due in the future to an obligor from a profit-sharing plan, a pension plan, an insurance contract, an annuity, social security, unemployment compensation, supplemental employment benefits and worker's compensation;

(C) Any amount of money which is owing to the obligor as a debt from an individual, partnership, association, public or private corporation, the United States or any federal agency, this state or any political subdivision of another state, or any other legal entity which is indebted to the obligor.

(19) "Source of income" means an employer or successor employer or any other person who owes or will owe income to an obligor."

<u>WEST VIRGINIA CODE</u> Section 48A-5-3, Section 48-2-15b;

SECTION 303(b) of the FEDERAL CONSUMER CREDIT PROTECTION ACT

(e) Notwithstanding any other provision of this code to the contrary which provides for a limitation upon the amount which may be withheld from earnings through legal process, the amount of an obligor's aggregate disposable earnings for any given workweek which can be withheld as support payments is to be determined in accordance with the provisions of this subsection, as follows:

(1) After ascertaining the status of the payment record of the obligor under the terms of the support order, the payment record shall be examined to determine whether any arrearages are due for amounts which should have been paid prior to a twelve-week period which ends with the workweek for which withholding is sought to be enforced.

(2) If none of the withholding is for amounts which came due prior to such twelve-week period, then:

(A) When the obligor is supporting another spouse or dependent child other than the spouse or child for whom the proposed withholding is being sought, the amount withheld may not exceed fifty percent of the obligor's disposable earnings for that week; and

(B) When the obligor is not supporting another spouse or dependent child as described in paragraph (A) of this subdivision, the amount withheld may not exceed sixty percent of the obligor's disposable earnings for that week.

(3) If a part of the withholding is for amounts which came due prior to such twelve-week period, then:

(A) Where the obligor is supporting another spouse or dependent child other than the spouse or child for whom the proposed withholding is being sought, the amount withheld may not exceed fifty-five percent of the obligor's disposable earnings for that week; and

(B) Where the obligor is not supporting another spouse or dependent child as described in paragraph (A) of this subdivision, the amount withheld may not exceed sixty-five percent of the obligor's disposable earnings for that week.

(4) In addition to the percentage limitations set forth in subdivisions (2) and (3) of this subsection, it shall be a further limitation that when current payments plus arrearages are being withheld from salaries or wages in no case shall the total amounts withheld for current payments plus arrearages exceed the amounts withheld for current payments by an amount greater than ten percent of the obligor's disposable income.

(5) The provisions of this subsection shall apply directly to the withholding of disposable earnings of an obligor regardless of whether the obligor is paid on a weekly, biweekly, monthly or other basis.

(6) If an obligor acts so as to purposefully minimize his or her income and to thereby circumvent the provisions of this section which provide for withholding from income of amounts payable as support, the amount to be withheld as support payments may be based upon the obligor's potential earnings rather than his or her actual earnings, and such obligor may not rely upon the percentage limitations set forth in this subsection which limit the amount to be withheld from disposable earnings.

CHILD SUPPORT ENFORC... NT DIV.
1005 FOURTH STREET
MOUNDSVILLE, WV 26041

SUN LIFE ASSURANCE CO./CANADA
ONE SUN LIFE EXECUTIVE PART
WELLESLEY HILLS, MA 02181-5615

RECEIVED
AUG 14 1997
LONG TERM DISABILITY

This check request must be completed every month.
(1) Date
(2) Ben [illegible]
(3) Diane's Signature

**Check Request**
**To: Accounting Dept. - SC 3335**

Date:
Control No. 271293-20003
Soc Sec. No 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

In Reference To LTD [X] STD [ ] Excess Risk [ ] Health Conversion [ ] Dental [ ]

| Policy No. | Sub | Cert No. | Reported Date | Residence Code | Incurred Date | Code |
|---|---|---|---|---|---|---|
| 96518 | | 235704533 | 27Dec93 | 210 | 26May93 | |

| Employee's Name | Dependent's Name |
|---|---|
| Bruce Roxby | |

| Benefit Period (Include both dates) From | To | Gross Amount | Federal Deduction | Misc. Deductions | F.I.C.A. Deduction | NET AMOUNT OF CHECK |
|---|---|---|---|---|---|---|
| | | $468.23 | $ | $ | $ | $468.23 |

Pay To The Order Of: Child Support Enforcement Division
Address: P.O. Box 247
Charleston WV 25321

Currency: 12 Amount: $ 468.23

Prepared By: Randy Johnson X1717 Approved

CHECK NO DATE ISSUED ACCT APPROVED

POL 878 1/46 (S4-12-93) 69976

ROXBY 0264

net Benefit - 4182.29 / 10% = 418.23

$50.00

$418.23
50.00

Total withheld $468.23

Claims

Although claimant may be able to do sedentary work, it is clear he has no plans to do so. Given work hx., may not be easy to terminate at any occ. Suggest developing POA to ~~assess~~ current ~~treatment~~ and functioning levels. Change date: 11/98.

W Harney AUG - 7 1997



# CHECK REQUEST

| MAIL | CALL FOR PICKUP |
|---|---|
| | ✓ X |

To: Accounting Department, Sun code 3335

From:

| Department | Prepared by | Extension | Date | Approval |
|---|---|---|---|---|
| Group Claims | Randy Johnson | 1717 | 3/14/97 | [illegible signature] |

| F,X,W | A | A - Parent<br>B - Sun Life of Canada (U.S.) | USER | SEQUENCE | T | REL | CURR | CHECK DATE | EXPIRY DATE | SSN OR PO NUM | VENDOR NO. | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | | 86 | | | 01 | 12 | | | | | |

PAYEE NAME: INTERNATIONAL CLAIMS SPECIALIS

PAYEE NAME CONTINUED: TS

ADDRESSEE:

ADDRESS:
P.O. BOX 910406
DALLAS TX 75391-0406
ATTN: ICS ACCOUNTS RECEIVABLE

DESCRIPTION: BRUCE ROXBY 19Z1997021 36287

| FUND | PURCHASE/POLICY NO | TEAR | RES | MUN | BUDGET/BRANCH | PRIME | MVT | SUB | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 370 | 96878 | | | | 84217 | 3999 | 784 | 2910 | 53885 |

CHECK AMOUNT: $538.85

ACCT'G

X-I 1035/28

ROXBY 0267



Sun Life
of Canada
Shining over America since 1895

SUN L[ ]E ASSURANCE COMPANY OF C[AN]ADA

40100491

| STATEMENT | AMOUNT |
|---|---|
| BRUCE ROXBY 192199702136287 | $538.85 |
| INTERNATIONAL CLAIMS SPECIALIS<br>PO BOX 910406<br>DALLAS TX 75391-0406<br>ATTN ICS ACCOUNTS RECEIVABLE | TOTAL<br>$538.85 |

SUN LIFE ASSURANCE COMPANY OF CANADA
THE ATTACHED CHECK IS IN SETTLEMENT OF ITEMS DETAILED ABOVE.
BEFORE NEGOTIATING CHECK PLEASE DETACH AND RETAIN THIS STATEMENT

---

Sun Life
of Canada
Shining over America since 1895

SUN LIFE ASSURANCE COMPANY OF CANADA
U.S. HEADQUARTERS: WELLESLEY HILLS, MA

50-937
213

40100491

REFERENCE: A86059521 DATE: 17MAR1997

PAY TO THE ORDER OF: *INTERNATIONAL CLAIMS SPECIALISTS*

THE SUM OF: *FIVE HUNDRED THIRTY-EIGHT*******************************************85/100 DOLLARS

U.S. CURRENCY

MAIL TO: INTERNATIONAL CLAIMS SPECIALIS
PO BOX 910406
DALLAS TX 75391-0406
ATTN ICS ACCOUNTS RECEIVABLE

AMOUNT ****$538.85*

THE CHASE MANHATTAN BANK, N.A.
SYRACUSE, NEW YORK

⑈40100491⑈ ⑆021309379⑆ 601⑉2⑉22235⑈

ROXBY 0268

U S $ GAS CHECK ISSUE SUMMARY REPORT FOR MARCH 17, 1997 FOR U S ACCOUNTING
U S ACCOUNTING

Randy Johnson x1717

| CHECK NO | USER | SEQUENCE | REQ NO | VENDOR CODE | PAYEE NAME | DATE | RELEASE TYPE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | | | | Redacted | | | | |
| 40100491 | 86 | 05952 | A8605952 | | INTERNATIONAL CLAIMS SPECIALIS<br>BRUCE ROXBY 192199702136287 | 17MAR97 | 01 | 538 85 |
| | | | | | Redacted | | CHECK AMOUNT | 538 85 |

Sun Life of Canada

Wellesley Hills Massachusetts 02181

# Bill for Services Rendered

Claimant Information

| | |
|---|---|
| Account Number: | 522260000 |
| Account Name: | Sun Life Assurance of Canada** |
| Requestor: | Randy Johnson |
| Policy/Claim #: | NS |
| Case Name: | Bruce Roxby |
| ICS Order Number: | 192199702136287 |
| Claim Type: | Disability Claim |
| Bill Date: | 2/20/97 |

Statement Information:

| | |
|---|---|
| Investigative: | $511.25 |
| Expenses: | $27.60 |
| Tax: | $0.00 |
| Total: | **$538.85** |

Please remit payment to the following address:

**International Claims Specialists**
P.O. BOX 910406
Dallas, TX 75391-0406
Attention: ICS Accounts Receivable
Federal Tax ID #: 75-1444139

---

**Please remit with payment**

| | |
|---|---|
| ICS Order Number: | 192199702136287 |
| ICS Account Number: | 522260000 |
| Account Name: | Sun Life Assurance of Canada** |
| Policy/Claim #: | NS |
| Case Name: | Bruce Roxby |
| Total Bill: | $ 538.85 |



*International Claims Specialists*
*A Division of EMSI*
*1111 W. Mockingbird Ln. Suite 737*
*Dallas, Tx 75247*
*Tel. 214-689-8180*
*Tel. 800-725-2167*
*Fax 214-689-8194*

RECEIVED
FEB 21 1997
LONG TERM DISABILITY

**Dear Valued Customer:**

***AS A REMINDER...***

**OUR CLAIM CONSULTANTS ARE FREQUENTLY TRAVELING TO FOREIGN COUNTRIES HANDLING INVESTIGATIONS FOR MANY DIFFERENT INSURANCE COMPANIES. IF YOU HAVE A FOREIGN CLAIM, PLEASE GIVE ME A CALL AT 1-800-725-2167. I'LL BE HAPPY TO DISCUSS YOUR NEEDS AND GIVE YOU AN ESTIMATE OF COST.**

**SINCERELY,**

**JON ORCUTT**
**FOREIGN CLAIM SUPERVISOR**
**DALLAS, TX**

R Jenrson FEB 28 1997

G. Roxby
# 96578





RECEIVED
FEB 21 1997
LONG TERM DISABILITY

# INTERNATIONAL CLAIMS

# SPECIALISTS

## REPORT ON

## BRUCE A. ROXBY

CONFIDENTIAL REPORT

# International Claims Specialists

**Date:** 2/18/97
**Name:** **ROXBY, BRUCE A.**
**Add:** 2636 S.W. 53rd Terrace
Naples, FL 34116

**Account Number: 522260000**
**Account Name:** Sun Life Assurance of Canada
**File Number:** 96878
**Requestor: Randy Johnson**
**Phone Number:** 800-247-6875
**Ext: 1717**

**Emp:** None
**DOB:** 4/25/47
**Type of Inv:** Disability
**Dates of Inv:** 2/11-17/97

**Regional Office:** Atlanta, GA
**Phone Number:** 770-739-8012

**Status of Report: FINAL REPORT**

RECEIVED
FEB 21 1997
LONG TERM DISABILITY

## SUMMARY

An interview has been conducted with the claimant.

## CLAIMANT INTERVIEW

**BRUCE A. ROXBY**
**2636 SW 53RD TERRACE**
**NAPLES, FL 34116**
**941-352-9459**
**2/12-14/97**

Initial contact was made with the claimant on 2/12/97 at his Naples, Florida residence, at telephone number 941-352-9459. He indicated that he would be traveling to the Ft. Lauderdale, Florida area on the following date to take his wife to the doctor and then spend the night at his mother-in-law's home in Hollywood, Florida. An appointment was confirmed for the interview in Hollywood, Florida and it did take place on 2/14/97, at 1:00 p.m. at 5840 North Farragut Drive, Hollywood, Florida.

The claimant is 5'10" tall, weighing 165-170 pounds and was attired in a sport shirt, slacks and walking shoes and manifested no obvious signs of disability. The claimant activity questionnaire was obtained from the claimant, which was signed and dated and this is shown as "**Attachment A**".

Bruce Roxby was born 4/25/47 and has Social Security # 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. His Florida driver's license number is R21006147-145-0. He resides at 2636 SW 53rd Terrace, Naples, Florida 34116 and has since 12/95. His home telephone listing of 941-352-9459.

The claimant indicated that as a result of an on the job injury suffered in 5/93 while working at Jim Moran Pontiac in Hollywood, Florida, he has been continuously unable to work and describes his systems as chronic low back, left neck, left shoulder and right arm pain. The right arm pain radiates into his two small fingers of his right hand. As a result of the injury, he has lost his fine motor skills and has been diagnosed as having a central cord syndrome, with both herniated and bulging discs. The claimant indicated, he feels his condition is slowly deteriorating.

The claimant generally arises between 8:00 and 9:00 a.m. after generally sleeping poorly at night, usually getting only three to four hours of good sleep before the back, neck or arm pain awakens him. He will have breakfast with his wife, watch television, occasionally go outside and take a brief walk around the neighborhood and/or watch some television during the day. He will occasionally swim in his backyard pool. He is able to drive on a limited, local basis and leaves home for 1-1 ½ hours twice weekly. He does mow his own 75 x 100 foot lawn, using a riding mower. He is unable to do any kind of routine household chores, such as sweeping or vacuuming, but is able to dust and usually helps his wife make the bed. He has a home computer and is hooked up to the Internet and spends approximately 2-21/2 hours per day at the computer. He is unable to walk for more than 200 feet, or sit longer than 15 to 20 minutes at a time in any one position. He indicated the strength in his arm is okay, but he is unable to do anything of any duration requiring fine motor skills. He does not lift anything over 25 -30 pounds or carry anything of any weight. He does no stooping, bending or crouching. The claimant indicated he is not trying to overcome or compensate for his limitations, with any kind of an exercise or therapy program.

The claimant was terminated from his job at the time of the injury and the company went out of business approximately one year ago. He has never tried to resume any type of work since the day of the accident. The claimant did indicate that it is his feeling he could have been transferred to an upper management job at the company and that he could possibly have been able to do some kind of office work, however, this internal process did not take place. The claimant has no return to work plans, either full or part time. He has no regular family physician and last saw a Dr. Jeffrey Perkins, of Hollywood, Florida, at the insistence of your company, who indicated that his condition is permanent and nothing can be done for the condition unless surgery is consented to, which the claimant indicated that he will not have done because the odds are not good enough for a successful surgery. Dr. Perkins did recommend a follow up MRI for further evaluation of the degeneration of the disc.

---

The claimant indicated his job duties as a certified master mechanic included doing automobile tune-ups, brake work, exhaust work, rotating and replacing tires, air conditioning work and welding work; all duties requiring him to walk, bend, lift, stoop, crouch and lay underneath cars extensively, as well as being on his feet on a concrete surface. The claimant indicated he is unable to perform any of these job duties due to his current disability and because of the chronic pain he has endured since the date of the injury. The claimant did indicate he would very much be interested in returning to his former usual occupation, were he physically able to do so and no other employment would interest him based on past work experience, hobbies, special training, etc....

The claimant's only source of income is benefits from your company. He has applied for Social Security Disability Benefits, beginning in 1994, but has been denied twice and has recently re-applied. His health insurance is through State Farm Mutual Insurance Company, policy number HA6175235959, effective 9/96, telephone number 941-325-3163. The claimant indicated he has no pending action or litigation against anyone as a result of his disability.

The claimant is 5'10" tall, weighing 160-165 pounds, has greying hair and wears glasses. The claimant had difficulty signing his name on the attached form and had to use his left hand to stabilize his right hand to complete the signature.

As earlier indicated, the interview took place at the claimant's mother-in-law's home, located at 5840 North Farragut Drive, Hollywood, Florida. Her name is Margaret Ralf. The claimant indicated he does drive over to visit her approximately once or twice a month at which time he spends the night.

An estimate of the claimant's net worth would be approximately $100,000.00. His ability to read, write, speak clearly, comprehend questions and general awareness was good. He does seem to understand exactly what his health problem entail as he discussed his health problems in very specific terminology. The claimant's attitude towards eventual recovery seems to be poor and he does appear to have given up hope of returning to work and has accepted his condition as permanent.

This concludes handling of the assignment. Should further assistance be required or needed, please advise.

M.J. Yearout
Claims Consultant

MJY:lg

-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

ATTACHMENT A

ROXBY 0276

-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

***ATTACHMENTS***

*(A) ACTIVITY QUESTIONNAIRE --- BRUCE A. ROXBY*

ROXBY 0277

RECEIVED
FEB 21 1997
LONG TERM DISABILITY

CLAIMANT ACTIVITY QUESTIONNAIRE

Name Bruce A. Roxby  Policy No.

Please provide details regarding activities in a typical week day. Be sure that you start with your normal waking time, until your normal time to retire for the day. I arise 8 or 9 am, have Breakfast with spouse, watch TV, play with my computer off + on during day for total of 2 - 2½ hrs, drive on a limited local basis for 1½ hours several times a month, visit relatives locally, mow 75x100' lawn on riding mower, dusting, visiting with wife, get into pool occasionally.

List the physical activities you perform throughout the course of a normal day, such as laundry, cooking, cleaning, etc. You must be as specific as possible and indicate how often you engage in this activity.

Mow lawn weekly
Light yard work such as pruning, weeding
Wash car monthly

Please provide details regarding activities during the weekend, if they differ from a typical week day. Be sure that you are specific.

No difference from above activities

List the outside activities you may be engaged in on a regular basis and on what days you may engage in this activity. (Example: shopping, church groups, visiting friends, seminars, support groups, sports events, etc.) Visit relatives (sister, mother) weekly

Please provide a detailed list of what you perceive to be your functional limitations and how they impact your activities of daily living and ability to engage in employment.

Unable to perform fine motor skills, lift over 20-25 lbs, carry anything of any weight, sit longer than 15 20 minutes, walk longer than 200' - I avoid any activity which would worsen my chronic neck, back + (R) arm pain

I hereby certify that this information is accurate and acknowledge that certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a crime.

2/14/97
Date

Bruce A. Roxby
Signature

RECEIVED
FEB 21 1997
LONG TERM DISABILITY



*International Claims Specialists*

RECEIVED
FEB 18 1997
LONG TERM DISABILITY

A Division of EMSI
422 Thornton Road, Suite 101
Lithia Springs, GA 30057
Tel. 770 • 739 • 8012
Fax 770 • 739 • 8527

*February 11, 1997*

*Sun Life Assurance of Canada*
*Attn: Randy Johnson*
*LTD Claims - SC 3208*
*One Sun Life Executive Park*
*Wellesley Hills, MA 02181*

*RE: Bruce A. Roxby*
*Claim/Policy # 96878*

*Dear Randy,*

*This will acknowledge our receipt of information regarding handling of the above. Thank you for using the services of "International Claims Specialists". This assignment will be handled by Mike Yearout-Claims Consultant.*

*Charges will be at our usual rate. Initial limit will be $600. This will not be exceeded without your approval.*

*Mr. Yearout will keep you advised of the progress and/or any delays. Documents will be sent as obtained from sources. Status will be sent on or before Monday, February 24, 1997.*

*In the interim if we can be of further assistance regarding this or any other investigative matter, please advise.*

*Sincerely,*

Edward A. Edge

*Edward A. Edge, III, ALHC*
*Regional Vice President*

*EAE:bcr*
BCK

FEB 20 1997

*Committed to Consistent Quality Service*

# INTERNATIONAL CLAIMS SPECIALISTS INQUIRY

Company Name: SUN LIFE - LTD Account # 52226

Requestor: Randy Johnson Phone: 800 - 247 - 6875

Fax:

Date: 2/7/97 Claim/Policy: 96878

Type of Investigation: Claimant Interview

Insured: Bruce A. Roxby

Address: 2636 SW 53rd Terrace Naples, FL 34116

Phone #: 941-352-9459 DOB 4-25-47 SS# 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

Last Employer: Jim Moran Pontiac Occupation: Auto Mechanic

Emp. Address: Hollywood, FL Emp. Phone #:

Type of Insurance: LTD Date Insured: Amount: 4182/mo

Date of Application: Smoker/Non-Smoker

Beneficiary: Phone#:

Address:

Attorney: Phone:

Date of Disability/Death: 5/93 Cause: Myofascial Syndrome. Cervical Strain Hit head on tire

Hospital/Physician: Jeffrey C Perkins, MD

Hospital/ Physician:

Cover Medical History from TO

Special Instructions:


Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel (617) 237-6030

December 26, 1996

Mr. Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: Policy No. 96878-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

We are writing to you in regards to your Long-Term Disability claim you have with Sun Life. We are writing to you to request that you complete the enclosed Activity Questionnaire and return the form in the enclosed envelope.

By the terms of your contract, Sun Life has to the right to periodically follow-up with its claimants so we may have a better understanding of its claimants daily activities.

We thank you for your immediate response to our request. If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

COPY

Randy D. Johnson
Claims Examiner
Group LTD Claims

CLAIMANT ACTIVITY QUESTIONNAIRE

Name Policy No.

Please provide details regarding activities in a typical week day. Be sure that you start with your normal waking time, until your normal time to retire for the day.

List the physical activities you perform throughout the course of a normal day, such as laundry, cooking, cleaning, etc. You must be as specific as possible and indicate how often you engage in this activity.

Please provide details regarding activities during the weekend, if they differ from a typical week day. Be sure that you are specific.

List the outside activities you may be engaged in on a regular basis and on what days you may engage in this activity. (Example: shopping, church groups, visiting friends, seminars, support groups, sports events, etc.)

Please provide a detailed list of what you perceive to be your functional limitations and how they impact your activities of daily living and ability to engage in employment.

I hereby certify that this information is accurate and acknowledge that certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a crime.

Date Signature

Sun Life of Canada®
A member of Sun Financial Group

a) T... nate: Write message, remove pink (Follow-up Copy) and forward white and canary copy

b) C... reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

LTD

To: Randy Johnson From: Tara

Date: 11-22 Time: 11:45

Group Policy Number & Name: 96878 / E.M. Family Enterprise

Contact's Name: Bruce Relationship: clmt.

Phone Number: (954) 951-3777 Group Office:

Claimant Name & Social Security Number: Bruce Roxby / 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

MESSAGE: ctrl # 271243-20003-00

Hi, Randy -

this is the one we spoke about. ee re. your 11/6 ltr - he says he didn't have a functional capacities exam ee on 6-25 of that we never requested one from him.

ACTION TO BE TAKEN:

Please call.

Thanks!

COMMENTS TO BE MADE IN RETURN CALL:

ok, All set. Spoke to Mr Roxby already.

Return Call Made (Date): (Time): —

(By Whom): Randy

✓ Resolved

Further Action Required

If further action required, give details:

ROXBY 0284

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

EXAMINATION MANAGEMENT SERVICES, INC.
Pro-Tel-Aps*PO Box 670006*Dallas, TX 75267-0006*214-689-3680

12/02/96

SUN LIFE OF CANADA
Attn: LAUREL MORRIS, SUPERVISOR
ONE SUN LIFE EXECUTIVE PARK
WELLESLEY HILLS, MA 02181

003595

CLAIM #: 96878
REQUESTOR: R JOHNSON

EMSI Reference #: 150069
Received: 11/11/96

| PATIENT | D.O.B. | SOC.SEC. # |
|---|---|---|
| ROXBY, BRUCE | 04-25-47 | 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 |

CLAIMANT
ROXBY, BRUCE

Medical Provider:

DR. JEFFREY PERKINS
3230 STIRLING ROAD
HOLLYWOOD, FL 33021

**** STATUS INFORMATION ****

| | |
|---|---|
| 12/02/96 ROENA | RECEIVED THE REQUEST AND STATES THAT RECORDS WERE MAILED TO EMSI ON 11-29. JP |
| 11/27/96 ROENA | HAS NOT RECEIVED THE REQUEST. WE HAVE REVERIFIED THE ADDRESS AND FAX NUMBER. ANOTHER REQUEST AND LETTER ADVISING THAT THE INSURANCE COMPANY HAS A FEE LIMIT WILL BE FAXED TODAY. THEY MISPLACED REQUEST. WE WILL FAX ANOTHER ONE AND THEY WILL MAIL RECORDS TODAY. JP |
| 11/26/96 ROENA | CONTACTED FACILITY LEFT A MESSAGE AND WILL CALL BACK TOMORROW IF NO RESPONSE. JP |

(continued)

R. Johnson DEC 20 1996

Pro-Tel-Aps*PO Box 670036*Dallas, TX 75267-0006*214-689-3680

12/02/96

| PATIENT | D.O.B. | SOC.SEC. # |
|---|---|---|
| ROXBY, BRUCE | 04-25-47 | 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 |

CLAIMANT
ROXBY, BRUCE

| | |
|---|---|
| 11/22/96 | RANDY W/SUN LIFE CALLED FOR A STATUS, I INFORMED HIM OF THE 11/20 STATUS. DS |
| 11/20/96 SUSAN | RECEIVED THE REQUEST AND STATES THAT RECORDS SHOULD BE MAILED TO EMSI SCON. PROCESSING TIME IS 1-2 DAYS. JP |
| 11/12/96 SUZAN | VERIFIED RECORDS AND ADDRESS. MAILED REQUEST AND LETTER ADVISING THAT THE INSURANCE COMPANY HAS A FEE LIMIT. JP |

3596
EXAMINATION MANAGEMENT SERVICES, INC.
Pro-Tel-Aps*PO Box 670006*Dallas, TX 75267-0006*214-689-3680003360

12/09/96

SUN LIFE OF CANADA
Attn: LAUREL MORRIS, SUPERVISOR
ONE SUN LIFE EXECUTIVE PARK
WELLESLEY HILLS, MA 02181

003596

PATIENT
ROXBY, BRUCE

D.O.B.
04-25-47

SOC.SEC. #
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

CLAIMANT
ROXBY, BRUCE

Medical Facility:

PERKINS DR. JEFFREY
3230 STIRLING ROAD
HOLLYWOOD, FL 33021

954-963-5000

EMSI Reference #: 150069

CLAIM #: 96878
REQUESTOR: R JOHNSON

RECEIVED
DEC 12 1996
LONG T...

PLEASE SEND ALL RECORDS FOR 6/96-PRESENT

The medical record copies you requested on this patient are attached.

12/09/96 RECORDS RECEIVED BY EMSI VIA MAIL.
COPIES FORWARDED TO INSURANCE COMPANY.
SD

Thank you for the opportunity to assist you in obtaining these records. If you have any questions, or we can be of any further assistance, please feel free to call us at 214-689-3680 or 1-800-782-3674.

Sincerely,
JEFF PERRY
Claims Records Specialist

ROXBY, BRUCE /04-25-47 /0005 /SUSAN DROZDZ /150069 /003596

EE called Our Group Service Dept and I received a message to call him back. EE was very upset. He told me he did not have a Functional Capacities Exam in June 25, 1996 and I told him we have not suspended benefits but have ordered medical records from Dr Perkins. He was very upset with Sun Life's handling of his claim (Note EE collects $ 4,182.29 monthly). I told him every claim is subject to periodic review and his claim needs more clarification.

WATCH THIS CLAIM CLOSELY! I see no reason why this claim should be paid anymore. EE is a 60 month Own/Occ = Nov 30, 1998. Please advise.

R. Johnson NOV 22 1996

Get recs and send for Orthopedic IME
See Keirie 11/25/ for Surveillance



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills MA 02131

Tel (617) 237-6030

November 6, 1996

Mr. Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Roxby:

This letter will serve to acknowledge receipt of the above-captioned claim for Long Term Disability benefits.

However, please be advised that we have found it necessary to obtain additional medical information. We have written directly to Dr. Perkins and will periodically follow up until a response is received. In the meantime, you may wish to impress upon the Doctor the importance of a prompt response.

In addition, we will need a copy of your Functional Capacities Exam that was conducted on June 25, 1996.

Upon receipt of all information requested, we will further evaluate this claim.

Thank you for your patience. If you or the claimant have any questions concerning this claim, or if we can otherwise be of assistance to you, please contact this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson
Claims Specialist
Group L.T.D. Claims





**ICS / EMSI - MEDICAL RECORD SERVICE**

**FAX REQUESTS TO:**

**1-800-232-9277**

**CUSTOMER SERVICE:**

**1-800-782-3674**

A RECORDED MESSAGE WILL ASK FOR YOUR TEAM NUMBER. PLEASE SAY OR PUNCH IN NUMBER "2" AND YOU WILL BE CONNECTED TO A CUSTOMER SERVICE REPRESENTATIVE WHO CAN HELP YOU WITH ANY QUESTIONS OR OTHER CASE -RELATED MATTERS.

**CMH REQUEST** **EMSI / PRO-TEL-APPS**

**ACCT. # 3596**

**INSURANCE COMPANY** SUN LIFE - LTD CLAIMS

**DATE ORDERED** Nov 6 1996 **CLAIM/POL. #** 96878

**REQUESTOR** Randy Johnson **PHONE** 1 617-446-1717

**CLAIMANT NAME** Bruce Roxby **DOB** April 25 1947

**ADDRESS** 2636 SW 53' Terrace

**SOCIAL SECURITY #** 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

**--- OBTAIN HARD COPY OF RECORDS ---**

**MEDICAL PROVIDER** Dr Jeffrey Perkins

**ADDRESS** 3230 Stirling Road - Hollywood, FL 33021

**PHONE # (if available)** 1-305-963-5000

**OBTAIN ALL RECORDS** ✓ **(OR) SPECIFIC DATES** June - Present

**MEDICAL PROVIDER** ______

**ADDRESS** ______

**PHONE # (if available)** ______

**OBTAIN ALL RECORDS** ___ **(OR) SPECIFIC DATES** ______

**MEDICAL PROVIDER** ______

**ADDRESS** ______

**PHONE # (if available)** ______

**OBTAIN ALL RECORDS** ___ **(OR) SPECIFIC DATES** ______

Be Sure to include all Diagnostic Testing Results

* FAX REQUEST TO : 800-232-9277 - SEND AUTHORIZATION



Sun Life
of Canada
A member of Sun Financial Group

Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

# LONG TERM DISABILITY CLAIM

## EMPLOYEE'S AUTHORIZATION

**I AUTHORIZE** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada or its legal representative any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further **AUTHORIZE** the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

**I UNDERSTAND** the information obtained by using this Authorization will be utilized by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization **EXCEPT** to reinsuring companies, the Medical Information Bureau, Inc., and other persons or organizations performing business or legal services in connection with my application or claim, or as otherwise required by law, or as I may further authorize.

**I KNOW** that a true copy of this Authorization is available to me at any time upon request.

**I AGREE** that a photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Signed this 30 Day of Oct 19 96

[signature]

Signature of Employee

SUN LIFE ID:617-235-0784 NOV 07'96 14:11

# TRANSMIT CONFIRMATION REPORT

NO. : 016
RECEIVER : 214/689-3600
TRANSMITTER : SUN LIFE
DATE : NOV 07'96 14:11
DURATION : 01'26
MODE : STD
PAGES : 03
RESULT : OK

Upon review of claim w/ Denise today, Denise recommended that I obtain all medical information from Dr Perkins from June 26 - todays date. After receipt of information, Denise recommended a complete medical review and to check w/ Maureen if a Neuro review is needed. Denise would like the Medical Review doctor to concentrate on Objective medical evidence on this claim

R. Johnson NOV 6 1996



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel: (617) 237-6030

Claimant Name: Robert Roxby Policy No. 96878 Date 10/30/96

Can the claimant work an 8 hour day? ⊖

If not 8 hours, how many? 2.

How many hours of an 8 hour day can the claimant:

| | | | |
|---|---|---|---|
| Walk | 15 mins. | Twist | ⊖ |
| Sit | 20 mins. | Squat | 2. |
| Stand | 20 mins | Lift | |
| Bend | ⊖ | Push | |
| Climb | 2. | Pull | ⊖ |
| Kneel | 1 | | |

Indicate maximum weight claimant can:
Lift 25 # Push 100 # Pull 0

Are there any hand restrictions:

| | | |
|---|---|---|
| Simple grasping | No | ✓ Yes |
| Pushing | ✓ No | Yes |
| Pulling | No | ✓ Yes |
| Fine manipulation | No | ✓ Yes |

Can the worker reach or work above the shoulders? ✓ No ___ Yes

Are there any restrictions for operating a motor vehicle or machinery? If so, please outline: — [handwritten, partly illegible]

Are there any restrictions concerning heat, cold, dampness, height, temperature changes, high-speed working, or exposure to dust, fumes or gas? If so, please describe: ⊖

Other restrictions? ___

Expected Maximum Improvement Date: Dec 8 1997.

Remarks: NO

Signature: [signature] Degree MD Date 10/30/96

R. Johnson OCT 3 1 1996

ROXBY, BRUCE
JUNE 14, 1993

CONSULTATION

CHIEF COMPLAINT: Neck and back pain.

HISTORY OF PRESENT ILLNESS: Patient is a 46 year old white male who is an auto mechanic and was working under a car when he went to stand up hitting his head on a tire on 5/23/93. He reports that he immediately felt a burning sensation in his neck as well as tingling in the right upper extremity. He has history of neck and left upper extremity pain since being involved in a motor vehicle accident approximately five years ago. The right upper extremity tingling, however, was a new sensation. Patient had an MRI performed at Hollywood Diagnostic Center which reportedly showed bulging C6-7 disk. In addition, patient complains of increasing low back pain since the accident. He states that any turning motion increases the pain. He states that riding in a car is difficult as bumps also increases the pain. He describes some aching sensation in his left thigh particularly in the posterior aspect. He reports that he is having frequent headaches since the accident. He also complains of numbness in the 4th and 5th digits of the right hand as well as all five digits of the left hand. He attempted to return to work on light duty but had to discontinue due to the pain. He denies any bladder or bowel dysfunction.

PAST MEDICAL HISTORY: Motor vehicle accident 5 years ago with C6-7 herniated disk per MRI with multiple bulging disks. Patient with residual neck and left arm pain.

ALLERGIES: IVP dye.

SOCIAL HISTORY: Patient is married with four children. He is employed as an auto mechanic.

CURRENT MEDICATIONS: Darvocet N100, 4 to 5 tablets over the last three weeks and Anacin 3 bid.

PHYSICAL EXAMINATION: Patient is a middle aged white male appearing to be in discomfort. He is alert and oriented x 3. Head is in an anterior position. He has diffuse tenderness to palpation over the trapezius muscles bilaterally and the cervical paraspinal muscles. He has several tender points particularly in the intrascapular region. Shoulder ROM is WNL's. Scapular thoracic movements is normal. Spurling's maneuver produces neck pain but does not cause radicular symptoms. Radial pulses are easily palpable and do not diminish with Addson's maneuver. Muscle stretch reflexes are symmetrical for biceps, triceps, brachioradialis, knees and ankles. Cervical spine ROM is WNL's except rotation to the right which is limited at the end range by pain. Lumbosacral spine ROM is limited with forward flexion to 45 degrees. Extension combined with rotation to the left produces

ROXBY, BRUCE
PAGE TWO

severe back pain complaints. Patient has minimal tenderness to palpation over the left lumbosacral paraspinal muscles. Muscle strength is 5/5 throughout the BLE's. Muscle strength is also 5/5 throughout the UE's with the exception of ulnar deviation of the 4th and 5th digits which is 4+/5. Sensation is grossly intact throughout all four extremities. Straight leg raising test is negative in the sitting and supine position. Patient does have significant tightness of his hamstring muscles bilaterally. Babinski's examination reveals downgoing toes bilaterally. Tinel's sign is negative over both the median and ulnar nerves bilaterally.

IMPRESSION:
1. Myofascial syndrome.
2. Cervical strain.
3. Probable left lumbar facet syndrome.
4. Probable right ulnar neuropathy.

PLAN:
1. Patient will be started on Orudis for it's anti-inflammatory and analgesic properties. The side effects of Orudis were explained to the patient including GI upset and possible GI bleeding. Patient was instructed to discontinue the medication if he develops any adverse side effects.
2. Patient will be started in a physical therapy program to work on pain reduction through anti-inflammatory modalities. He will then work on improving ROM and flexibility. He will work on improving his posture including head position. He will be instructed in proper body mechanics and a home exercise program to prevent recurrent injuries.
3. If patient is not showing significant improvement EMG/NCS should be obtained to R/O right ulnar neuropathy vs radiculopathy.
4. I will see the patient back in 3 to 4 weeks to reassess his status.

Alan K. Novick, M.D.

AKN/dr

ROXBY, BRUCE FOLLOW UP EVALUATION
JULY 28, 1993

Patient returns for a follow up appointment. He states he had no significant change of his pain with either the Orudis or with physical therapy. He does not feel the therapy worsened the pain but he also did not feel it was of any significant benefit. He still complains of diffuse pain in both his upper and lower back with some radiation down the RUE to the 4th and 5th digits. He also complains of frequent headaches and difficulty sleeping.

PHYSICAL EXAMINATION: Patient is a middle aged white male who appears to be in mild discomfort. He is alert and oriented x 3. He has diffuse tenderness to palpation over the trapezius muscles bilaterally and the lumbosacral paraspinal muscles. Shoulder ROM is WNL's. Spurling's maneuver produces neck pain but no radicular symptoms. Muscle stretch reflexes are symmetrical. Strength is 5/5 throughout the BUE's and BLE's with the exception of the right 4th and 5th digits where ulnar deviation is 4+/5. Standing balance is good. Patient does demonstrate a mildly antalgic gait.

IMPRESSION:
1. Myofascial syndrome.
2. Possible right ulnar neuropathy.

PLAN:
1. At this time I have prescribed Elavil, 25 mgs poqhs, for it's pain reduction properties. Patient may also have benefits with depression and sleeping from the medication.
2. I will see the patient back in two weeks to see if there is any change in his pain symptoms. He will continue with aerobic conditioning in therapy. If he is not showing any changes in two weeks on Elavil EMG/NCS will be obtained.

Alan K. Novick, M.D.

AKN/dr

ROXBY, BRUCE FOLLOW UP EVALUATION
AUGUST 11, 1993

Patient returns today for a follow up appointment. He reports he is sleeping better since starting the Elavil but has not noticed any significant changes in his pain. He still states that most of his pain is in his upper back particularly between his shoulder blades with some radiation down the RUE. He states that his headaches are unchanged.

PHYSICAL EXAMINATION: Patient is a middle aged white male who appears to be in mild discomfort. He is alert and oriented x 3. He has diffuse tenderness to palpation over the trapezius muscles bilaterally. Shoulder ROM is WNL's. Spurling's maneuver produces neck pain bilaterally but does not produce radicular symptoms. Muscle stretch reflexes are symmetrical. Strength is 5/5 with the exception of the right 4th and 5th digits where ulnar deviation is 4 - 4+/5.

IMPRESSION:
1. Myofascial pain syndrome.
2. Probable right ulnar neuropathy.

PLAN:
1. I would like the patient to continue on the Elavil as he is showing some improvements with his sleep pattern.
2. As the patient has not shown any significant benefit with therapies it will be discontinued at this time.
3. I have scheduled the patient for an EMG/NCS to R/O cervical radiculopathy vs ulnar neuropathy. If the patient shows acute cervical radiculopathy he will be considered for further intervention including oral steroid medication.

Alan K. Novick, M.D.

AKN/dr

ASSOCIATES IN PHYSICAL MEDICINE
3230 STIRLING ROAD
HOLLYWOOD, FL 33021
(305) 963-5000

JAY S. MENDELSOHN, M.D.
ALAN K. NOVICK, M.D.
DEBRA R. WEISS, D.O.

DATE: September 13, 1993 PATIENT: Roxby, Bruce

ELECTROMYOGRAPHY REPORT

| SCLE | INSERTIONAL ACTIVITY | SPONTANEOUS POS. WAVES | ACTIVITY FIBRILLATIONS | MOTOR UNIT POTENTIALS |
|---|---|---|---|---|
| eft cervical paraspinals | Normal | 0 | 0 | |
| ight cervical paraspinals | Increased | 1+ | 0 | |
| :IGHT: | | | | |
| eltoid | Normal | 0 | 0 | Normal Amp, Duration & Recrt |
| iceps | Normal | 0 | 0 | same as above |
| riceps | Normal | 0 | 0 | same as above |
| st dorsal interosseous | Normal | 0 | 0 | same as above |
| bductor pollicus brevis | Normal | 0 | 0 | same as above |

MMENTS: 1) EMG reveals evidence of dorsal irritation in the lower right cervical paraspinal region.
2) There is no evidence of radiculopathy.

ROXBY 0300

ASSOCIATES IN PHYSICAL MEDICINE
3230 STIRLING ROAD
HOLLYWOOD, FL 33021
(305) 963-5000

JAY S. MENDELSOHN, M.D.
ALAN K. NOVICK, M.D.
DEBRA R. WEISS, D.O.

DATE: September 13, 1993 PATIENT: Roxby, Bruce

## NERVE CONDUCTION STUDIES

| :RVE | SITE OF STIMULATION | LATENCY | DISTANCE | VELOCITY | AMPLITUDE |
|---|---|---|---|---|---|
| GHT: | | | | | |
| dian motor | wrist | 3.2 | 8 | | 8 |
| | antecubital | 7.8 | 26 | 57 | 7 |
| nar motor | wrist | 2.8 | 8 | | 11 |
| | below elbow | 6.2 | 21 | 62 | 10 |
| | above elbow | 8.6 | 18 | 75 | 10 |
| :dian sensory | wrist | 2.6 | 14 | 53 | 30 |
| | | 3.4(P) | | | |
| .nar sensory | wrist | unattainable | | | 10 |
| ıdial sensory | wrist | 1.9 | 10 | 52 | |
| | | 2.3(P) | | | |
| :FT: | | | | | |
| ·dian motor | wrist | 3.4 | 8 | | 6 |
| | antecubital | 7.6 | 25 | 59 | 6 |
| .nar motor | wrist | 2.4 | 8 | 54 | 10 |
| | below elbow | 7.4 | 21 | 73 | 10 |
| | above elbow | 9.6 | 16 | | 20 |
| ·dian sensory | wrist | 2.8 | 14 | 50 | |
| | | 3.5(P) | | | |
| .nar sensory | wrist | 3.0 | 14 | 47 | |
| | | 3.8(P) | | | |
| ıdial sensory | wrist | 2.2 | 10 | 46 | 10 |
| | | 2.8 | | | |
| .ght sural | posterior calf | 3.0 | 14 | 47 | 10 |
| | | 3.9(P) | | | |

ɱMENTS: Nerve conduction study of BUE reveal left prolongation of ulnar sensory nerves and the right was unattainable. All other nerves are WNL's.

ROXBY 0301

ROXBY, BRUCE EMG/NCS
SEPTEMBER 13, 1993

Patient presents today. He is being followed by Dr. Alan Novick for myofascial pain syndrome and a possible right ulnar neuropathy. He states that he has pain in his right arm and weakness. His BUE strength is noted to be 5/5 with exception to the right 4th and 5th digit, which are noted to be slightly decreased in strength. Sensory examination reveals decreased sensation to pin prick and the right little finger. Otherwise sensation was intact. His deep tendon reflexes are noted to be intact.

NERVE CONDUCTION STUDIES: Nerve conduction studies of the bilateral median motor, ulnar motor, median sensory, radial sensory, and sural nerves are normal. The right ulnar sensory nerve was unobtainable. The left ulnar sensory nerve reveals delayed latency with small amplitude and mild conduction velocity delay.

EMG EXAMINATION: EMG of the left cervical paraspinals and the RUE is noted to be silent at rest without any spontaneous activity noted and normal motor unit potentials. The right cervical paraspinals reveal a +1 positive waves. No fibrillations were seen.

IMPRESSION:
1. EMG evaluation reveals mild dorsal root irritation in the lower right cervical paraspinal region.
2. There is no evidence of radiculopathy.
3. There is possible sensory neuropathy of the bilateral ulnar nerves. If symptoms persists I would suggest a re-evaluation in approximately three months time.

______________________________
Debra R. Weiss, D.O.

DRW/dr

ROXBY, BRUCE FOLLOW UP EVALUATION
NOVEMBER 10, 1993

Patient returns today for a follow up appointment. He states that he is continuing to have the upper back and neck pain which radiates down the RUE to the 4th and 5th digits. He states that although this pain persists the majority of his pain is low back. He denies any radiation to the LE's. He states when he is standing or performing any activities for greater than 15 to 20 minutes he develops low back pain. He describes the pain as a 5 on a scale of 0 to 10. He denies any bladder or bowel dysfunction.

PHYSICAL EXAMINATION: Patient is a middle aged white male in no acute distress. He is alert and oriented x 3. He has diffuse tenderness to palpation over the lumbar paraspinal muscles bilaterally with increased paraspinal muscle tone. Lumbar spine ROM is limited to 50 degrees forward flexion due to pain. Patient has most severe pain with extension combined with rotation to the left. Cervical spine ROM is WNL's. Strength is generally 4+ to 5/5 in all four extremities. Muscle stretch reflexes are symmetrical in both the UE's and LE's. Ambulation is able to ambulate without an assistive device with a normal gait pattern. Straight leg raising test in a sitting position is negative.

IMPRESSION:
1. Left lumbar facet syndrome.
2. Myofascial pain syndrome.

PLAN:
1. A lumbar facet injection was suggested to the patient; however, he states he does not want any injections.
2. Lumbar flexibility exercises were reviewed with the patient. He is to continue to perform his home exercise program as instructed. He is to use a heating pad as needed.
3. Patient was instructed to use Advil/Motrin prn for the pain. Patient will contact this office if his pain intensity increases at which time a lumbar facet injection will be considered.
4. I will see him back on an as needed basis.

__________________________
Alan K. Novick, M.D.

AKN/dr

ROXBY, BRUCE FOLLOW UP EVALUATION
DECEMBER 8, 1993

Patient returns today for a follow up appointment and to assess his impairment rating. He reports there is no change in his pain. He continues to complain of both upper and lower back pain. He states that the pain radiates down the upper extremity to the fourth and fifth digits. He denies any radiation of the pain to his LE's. He denies any bowel or bladder dysfunction. He reports that standing for any length of time greatly aggravates his pain.

PHYSICAL EXAMINATION: Patient is a middle aged white male in no acute distress. He is alert and oriented x 3. He has diffuse tenderness to palpation of the lumbar paraspinal muscles bilaterally with increased paraspinal tone. Lumbar spine ROM is limited to approximately 30 degrees of forward flexion due to pain. Patient also has significant pain with extension combined with rotation to the left. He has no pain with rotation to the right. Cervical spine ROM is essentially WNL's with the exception of rotation to the right which is limited to 30 to 35 degrees. Strength is generally 5/5 in all four extremities. Muscle stretch reflexes are symmetrical throughout all four extremities. Sensation is grossly intact with the exception of both the palmer and dorsal aspects of the fourth and fifth digits of both hands extending to the wrist. The sensory examination however is somewhat inconsistent. He is ambulating independently without any assistive devices with a fairly normal gait pattern. There is no antalgic gait. Straight leg raising test is negative. Spurling's maneuver is negative.

IMPRESSION:
1. Myofascial pain syndrome.
2. Left lumbar facet syndrome.

PLAN:
1. Patient continues to refuse lumbar facet injection which I believe would benefit his low back pain. He should continue with lumbar flexibility exercises. He should also continue with an aerobic conditioning program including riding an exercise bike or walking briskly.
2. I believe at this time the patient has reached MMI. Based on the Minnesota Disability rating scale, patient receives a percentage of impairment of 17.5% He receives a rating of 14% for "neck and specific radicular pain present with objective neurologic findings and x-ray, or CT, or myelogram, specifically positive for herniated disk and no surgery performed", and 3.5% for "pain associated with rigidity (loss of motion or postural abnormality) or chronic muscle spasm. The chronic muscle spasm or rigidity is substantiated by objective clinical findings but without associated demonstrable degenerative changes".

Alan K. Novick, M.D.

ROXBY, BRUCE
JULY 25, 1994

The patient was initially evaluated for complaints of neck and back pain on June 14, 1993. At that time, he stated his pain resulted directly from an injury which occurred at his work on May 23, 1993 when he stood up hitting his head on a tire.

He had mentioned previously being in an auto accident approximately five years earlier with some residual neck and left upper extremity pain, although states the right arm pain and the increased burning sensation began at the time of his work-related accident. Without any detailed medical reports during the time period between his auto accident and his work-related accident, it is difficult to determine the percentage which is attributed to the Workers Compensation accident versus the percentage which is attributed to the previous automobile accident. Based on the patient's reports, the majority is attributed to the work-related accident. Detailed medical records from the time following his auto accident would be required to further delineate percentages.

If I can be of any further assistance, please feel free to contact me.

Alan K. Novick, M.D.

AKN/jg

ROXBY, BRUCE FOLLOW UP EVALUATION
OCTOBER 3, 1994

The patient has scheduled an appointment for follow up evaluation to assess his impairment rating. He claims that there is no change in symptoms in the cervical area or back or in the upper extremities. Pain continues to radiate down the UE's to the 4th and 5th digits. He denies extension of pain to the LE's.

PHYSICAL EXAMINATION: Is essentially as per Dr. Novick's assessment on 12/8/93. The exam is unchanged. Patient is ambulating well. He also heel walks and toe walks well.

DISABILITY RATING:
1. The patient was previously at MMI when assessed by Dr. Novick on 12/8/93. There has been essentially no change since that appointment. Based on the Minnesota Disability Rating Scale, patient has an impairment of 17.5 percent. Patient also had a Sun Life of Canada attending physician statement of disability group insurance form filled out. Since there has been no change since patient was seen by Dr. Novick, and I agree with how Dr. Novick completed the form, another form has been completed with the same results as had been done initially by Dr. Novick.

Jay S. Mendelsohn, M.D.

JSM/dr

ROXBY, BRUCE
MARCH 28, 1995

FOLLOW UP EVALUATION

Mr. Roxby was last seen by Dr. Mendelsohn on 10/3/94. He was seen today for re-evaluation and to have his long-term disability forms for Sun Life in Canada completed.

Mr. Roxby stated that during the past few weeks, he experienced low back pain radiating to both lower extremities with ambulation. He is able to stand for fifteen to twenty minutes, but walk only five minutes before the pain increases. The pain is less intense while bending forward. Sitting quietly decreases his pain. He reports that the neck pain with tingling involving the fourth and fifth fingers continues to be the same.

FINDINGS: Gait is cautious slow with the dorsum slightly forward. Posture is with shoulders and pelvis equal. Range of motion of the cervical spine is flexion 35 degrees, extension 30, lateral flexion 35 and rotation 60 degrees. Doing those movements, he complained of pain localized over the C7 spinous process. The range of motion of the lumbar spine is flexion 60 degrees, extension 0, lateral flexion 5 to 10. He is not able to relax the paraspinal muscles, especially the left one. The reflexes were equal and symmetrical for the upper and lower extremities with no pathological reflexes. Sensory examination reveals decrease to pin prick involving the fourth and fifth fingers bilaterally. No sensory deficit in the anterior or posterior neck. If it is the result of peripheral underlying neuropathy remains open at the present time since it is symmetrical. The muscle strength is in the 4 to 4+/5 bilateral and equal.

IMPRESSION:

1. Cervical lumbar sprain and strain.

RECOMMENDATIONS:

1. It was recommended to him to increase his cardiovascular output and perform an exercise program, especially within the water as the only means to decrease these pains.

George Bonis, M.D.

GB/jl

ROXBY, BRUCE
JUNE 25, 1996

FOLLOW-UP EVALUATION

**HISTORY OF PRESENT ILLNESS**: Mr. Roxby is a 49-year-old white male with a history of trauma to the cervical spine and lumbosacral spine with chronic cervical and low back pain who comes into our office requesting completion of attending physician's statement of disability. The patient has been on disability for several years. He has been seen in our office approximately once a year, and the form has been filled out. The patient has been seen by Dr. Novak, Dr. Mendelsohn and Dr. Bonis. The patient has undergone quite a few treatments and diagnostic procedures, and he is not interested at this time in treatment. He underwent a neurological evaluation on January 30, 1992 and it was felt that the patient probably suffered an injury to the central cervical spinal cord resulting in difficulty with fine movements and agility of the upper extremities. He was thought to have reached MMI and was thought to have a 5-10% permanent disability due to chronic cervical and lumbar strain and probable central cervical spinal cord injury.

**PHYSICAL EXAMINATION**: Reveals a 49-year-old-male in no apparent distress. Lungs are clear to auscultation. Cardiovascular exam reveals regular rate and rhythm. Abdomen soft, nontender. Extremities reveal no edema. The patient has severe restriction of passive range of motion of the cervical spine at all planes except flexion. He has severe limitation of back range of motion at all planes. He has decreased dexterity of both hands. Palpation of the back revealed tight paraspinal muscles. The reflexes are symmetrical. Muscle strength appears to be functional throughout all extremities. The patient ambulates without an assistive device, slightly erratic, antalgic-type of gait. Straight leg raising was negative bilaterally.

**DIAGNOSIS**:

1. Chronic cervical and lumbar strain.
2. Probable central cervical spinal cord injury.

**RECOMMENDATIONS**: Will go ahead and fill the form for the patient based on previous medical records. However, this will be done on the condition that the patient undergo a functional capacity evaluation so as to determine more accurately patient's level of disability. The disability form filled will be effective only up to the time of the functional capacity evaluation and will or will not be changed accordingly. The patient is to undergo a functional capacity evaluation and have reports sent to our office. Will send a copy of this report and office visit to Sun Life of Canada.

Dagoberto J. Garcia, M.D.
DJG/act

cc: Sun Life of Canada
Group Disability Benefits, Ltd.
SC 32081 Sun Life Executive Park
Wellesley Hills, MA 02181 (1-800-247-6875)

OCTOBER 30, 1996 RE: ROXBY, BRUCE JCP
OFFICE NOTE

Mr. Roxby is a forty-nine year old gentleman who was last seen 6/25/96. He continues to have chronic cervical and low back pain. He is requesting a completion of attending physician's table for disability. He has been seen by Dr. Novak, Dr. Mendelsohn and Dr. Bonis for rehab. He presently lives in Naples, Florida. As you know he suffered injury to a central cervical spinal cord resulting in difficulty with fine motor movement and agility to upper extremities. He reached MMI in 1993 and has a five to ten percent permanent disability due to chronic cervical and lumbar strain and probable central cervical spinal cord injury.

EXAMINATION:

Physical examination reveals a pleasant male in no acute distress. Chest was clear. Heart had regular rate and rhythm. Abdomen and bowel sounds positive. The patient has restricted passive ROM of the cervical spine with flexion extension. The patient has limitation of back ROM in all planes. Both hands have decreased coordination and dexterity. Muscle strength appears functional throughout all the extremities. Patient does ambulate without an assistive device with an antalgic-type gait.

IMPRESSION:

1. Status post Cervical lumbar strain, sprain.
2. Probable central cervical spinal cord injury.

PLAN:

1. The patient should continue with his exercise program.
2. The disability form was filled out.
3. I will see the patient for further evaluation.

Jeffrey C. Perkins, M.D.

JCP/km

Sun Life of Canada®
*A member of Sun Financial Group*

Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel: 1-800-247-6875

# Attending Physician's Statement of Disability
## Group Insurance

*The patient is responsible for the completion of this form without expense to Sun Life of Canada*

Please print

Policy No. 96878-GD

Name of patient: Bruce Roxby — Date of birth: 4 25 47
Patient's address: 2636 SW 53rd Terrace Miami Fla 34116
No. Street City State or Province Zip Code

Employer's name: JM Family E NT — Control number

I hereby authorize release of information requested on this form, by the below named physician for the purpose of claim processing. Signed (Patient)
Date ______

**1. History**

(a) When did symptoms first appear or accident happen? Mo. 5 Day 25 19 93
(b) Date patient ceased work because of disability Mo. 5 Day 25 19 93
(c) Has patient ever had same or similar condition? ☐ Yes ☐ No If "Yes" state when and describe.
(d) Is condition due to injury or sickness arising out of patient's employment? ☐ Yes ☑ No ☐ Unknown
(e) If condition due to automobile accident, indicate state in which it occured ______
(f) Names and addresses of other treating physicians

RECEIVED
OCT 31 1996
... DISABILITY

**2. Diagnosis** (including any complications)

(a) Date of last examination Mo. 10 Day 30 19 96
(b) Diagnosis (including any complications) [illegible]
(c) If disability is due to pregnancy what is expected/was delivery date Mo. ______ Day ______ 19 ______
(d) Please describe any complications that would extend this disability longer than a normal pregnancy.
(e) Subjective symptoms
(f) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings) [illegible]

**3. Dates of Treatment**

(a) Date of first visit Mo. 6 Day 14 19 93
(b) Date of last visit Mo. ______ Day ______ 19 ______
(c) Frequency ☐ Weekly ☐ Monthly ☐ Other (specify)

**4. Nature of Treatment (including surgery and medications prescribed, if any)**

**5. Progress**

(a) Has patient ☐ Recovered? ☐ Improved? ☑ Unchanged? ☐ Retrogressed?
(b) Is patient ☑ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?
(c) Has patient been hospital confined? ☐ Yes ☐ No If "Yes" give name and address of hospital
______ Confined from ______ through ______

**6. Cardiac** (if applicable)

(a) Functional capacity ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation)
(American Heart Association) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)
(b) Blood pressure (last visit) Systolic ______ Diastolic ______

R Johnson OCT 31 1996

ROXBY 0311

7. Physical Impairment ("as defined in Federal Dictionary of Occupational Titles")

- ☐ Class 1 — No limitation of functional capacity; capable of heavy work ... No restrictions (0-10%)
- ☐ Class 2 — Medium manual activity ... (15-30%)
- ☐ Class 3 — Slight limitation of functional capacity; capable of light work ... (35-55%)
- ☑ Class 4 — Moderate limitation of functional capacity; capable of clerical administrative (sedentary) activity ... (60-70%)
- ☐ Class 5 — Severe limitation of functional capacity; incapable of minimal (sedentary) activity ... (75-100%)
- ☐ Remarks

8. Mental/Nervous Impairment (if applicable)

(a) Please define "stress" as it applies to this claimant

(b) What stress and problems in interpersonal relations has claimant had on job?

- ☐ Class 1 — Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 — Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
- ☐ Class 3 — Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☑ Class 4 — Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
- ☐ Class 5 — Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
- ☐ Remarks

9. Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof? ☐ Yes ☐ No

10. Prognosis

| | Patient's job | Any other job |
|---|---|---|
| (a) Is patient now totally disabled? | ☑ Yes ☐ No | ☐ Yes ☑ No |
| (b) If not now totally disabled, when was patient able to resume work? | ☐ Full-time ☐ Part-time __/__/__ Mo. Day Year | ☐ Full-time ☑ Part-time __/__/__ Mo. Day Year |
| (c) What duties of patient's job is he/she incapable of performing? *lifting, dusty, vol-emility[?]* | | |
| Do you expect a fundamental or marked change in the future? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| (1) If yes, when will patient recover sufficiently to perform duties? __/__/__ Mo. Day Year | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never __/__/__ Mo. Day Year |
| (2) If no, please explain | | |

11. Rehabilitation

(a) Is patient a suitable candidate for further rehabilitation services? (i.e. cardiopulmonary program, speech therapy, etc.)
☐ Yes ☐ No

(b) Would job modification enable patient to work with impairment? ☐ Yes ☑ No
If yes, explain under remarks

| | Patient's job | Any other job |
|---|---|---|
| (c) When could that employment commence? __/__/__ Mo. Day Year | ☐ Full-time ☐ Part-time | ☐ Full-time ☑ Part-time __/__/__ Mo. Day Year |

(d) Would vocational counseling and/or retraining be recommended? ☐ Yes ☐ No

12. Remarks:

Certain states provide that anyone who knowingly and with intent to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

| Name (attending physician) / Please print | Degree/Specialty | Telephone |
|---|---|---|
| *Jeffrey Perry* | *M.D.* | *963-5000* |

| Street address | City or Town | State or Province | Zip code or Postal code |
|---|---|---|---|
| *5230 Sterling Rd.* | *Hollywood, FL* | | *33021* |

| Signature | Date |
|---|---|
| *[signature]* | *10/2/00* |

Sun Life of Canada
A member of Sun Financial Group

a) To Originate: Write message, remove pink (Follow-up Copy) and forward white and canary copy.
b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.
c) Final reply: Write final comments and return to Claims.

LTD

To: Cathy Burns

From: Tina

Date: 7/3

Time: 11 00

Group Policy Number & Name: 96878 JM Family Enterprise

Contact's Name: Bruce Roxbey

Relationship: EE

Phone Number: 941 352 9459

Group Office: 34290

Claimant Name & Social Security Number: 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 FLA

MESSAGE: 271293-2003-CC

APS statement overnighted last Tuesday along w/ address change. Please advise.

ACTION TO BE TAKEN:

Thanks

COMMENTS TO BE MADE IN RETURN CALL: Thought s/b on 5 yrs for medical - No misinterpreted the change in def.

Return Call Made (Date): 7-8-96 (Time): 150

(By Whom): [signature]

✓ Resolved

____ Further Action Required

If further action required, give details:

ROXBY 0312

X-GR18/318

FOLLOW UP COPY

ASSOCIATES IN PHYSICAL MEDICINE
3230 STIRLING ROAD
HOLLYWOOD, FL 33021
(305) 963-5000

JAY S. MENDELSOHN, M.D.
GEORGE C. BONIS, M.D.
JEFFREY C. PERKINS, M.D.
DAGOBERTO J. GARCIA, M.D.

July 16, 1996

Kathy Barrick
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02181

Dear Ms. Barrick,

The information requested on your letter dated July 3, 1996 regarding Bruce Roxby would best be answered by a Functional Capacity Evaluation. This test was ordered for Mr. Roxby on June 25, 1996. If you have any further questions regarding this matter please do not hesitate to contact my office at (954)963-5000.

Sincerely,

Dagoberto J. Garcia, M.D.

DJG/smr

RECEIVED
JUL 23 1996
LONG TERM DISABILITY

C Burns JUL 29 1996



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

*Shining over America since 1895*

July 3, 1996

Dr. Garcia
3230 Stirling Rd.
Hollywood, FLA 33021

Re: Policy No. 96878-GD-Long Term Disability
Claimant Name: Bruce Roxby

Dear Dr. Garcia:

We are in receipt of your Attending Physician's Statement, recently completed on behalf of the above-captioned claimant and patient. However, we find we are need of additional information.

Could you please complete the enclosed form and return it in the envelope provided, along with copies of all office notes and diagnostic testing results. Any other information you care to provide will be appreciated.

The proper authorization permitting the release of this information is also enclosed. If there are any questions, please contact this office at 1-800-247-6875.

We appreciate your assistance.

Sincerely,

Kathy Barrick
Claims Examiner
Group L.T.D. Claims

Enc.

RECEIVED
JUL 23 1996
LONG TERM DISABILITY

C Burns JUL 29 1996



Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

## LONG TERM DISABILITY CLAIM

## EMPLOYEE'S AUTHORIZATION

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada or its legal representative any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further AUTHORIZE the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

I UNDERSTAND the information obtained by using this Authorization will be utilized by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, Inc., and other persons or organizations performing business or legal services in connection with my application or claim, or as otherwise required by law, or as I may further authorize.

I KNOW that a true copy of this Authorization is available to me at any time upon request.

I AGREE that a photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Signed this ________ Day of ________ 19 ________

________________________________
Signature of Employee



B. Roxby
96878

rec'd info from MD.
prior info indicates ee capable of sedentary activity
capable of light duty - no heavy lifting.

MD indicates ee to undergo a FCE - he will
forward to SL upon completion.

C Burns JUL 1 5 1996

No SS yet. - EE has reapplied per 6/25/96 letter ..

96878

RECEIVED
JUL 09 1996
LONG TERM DISABILITY

ROXBY, BRUCE
JUNE 25, 1996

FOLLOW-UP EVALUATION

**HISTORY OF PRESENT ILLNESS**: Mr. Roxby is a 49-year-old white male with a history of trauma to the cervical spine and lumbosacral spine with chronic cervical and low back pain who comes into our office requesting completion of attending physician's statement of disability. The patient has been on disability for several years. He has been seen in our office approximately once a year, and the form has been filled out. The patient has been seen by Dr. Novak, Dr. Mendelsohn and Dr. Bonis. The patient has undergone quite a few treatments and diagnostic procedures, and he is not interested at this time in treatment. He underwent a neurological evaluation on January 30, 1992 and it was felt that the patient probably suffered an injury to the central cervical spinal cord resulting in difficulty with fine movements and agility of the upper extremities. He was thought to have reached MMI and was thought to have a 5-10% permanent disability due to chronic cervical and lumbar strain and probable central cervical spinal cord injury.

**PHYSICAL EXAMINATION**: Reveals a 49-year-old-male in no apparent distress. Lungs are clear to auscultation. Cardiovascular exam reveals regular rate and rhythm. Abdomen soft, nontender. Extremities reveal no edema. The patient has severe restriction of passive range of motion of the cervical spine at all planes except flexion. He has severe limitation of back range of motion at all planes. He has decreased dexterity of both hands. Palpation of the back revealed tight paraspinal muscles. The reflexes are symmetrical. Muscle strength appears to be functional throughout all extremities. The patient ambulates without an assistive device, slightly erratic, antalgic-type of gait. Straight leg raising was negative bilaterally.

**DIAGNOSIS**:

1. Chronic cervical and lumbar strain.
2. Probable central cervical spinal cord injury.

**RECOMMENDATIONS**: Will go ahead and fill the form for the patient based on previous medical records. However, this will be done on the condition that the patient undergo a functional capacity evaluation so as to determine more accurately patient's level of disability. The disability form filled will be effective only up to the time of the functional capacity evaluation and will or will not be changed accordingly. The patient is to undergo a functional capacity evaluation and have reports sent to our office. Will send a copy of this report and office visit to Sun Life of Canada.

Dagoberto J. Garcia, M.D.
DJG/act

C Burns JUL 15 1996

cc: Sun Life of Canada
Group Disability Benefits, Ltd.
SC 32081 Sun Life Executive Park
Wellesley Hills, MA 02181 (1-800-247-6875)

Sun Life of Canada*
A member of Sun Financial Group

Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

# Statement of Information - Update

To Be Completed by Insured:

Insured BRUCE ROXBY Policy No. 96878-GD

Insured's Social Security No. 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

Insured's Address 2636 SW 53 TERR

Insured's Phone Number (Area Code) (941) 252-9459 Policyholder T.M. FAMILY

A. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training? Yes ☐ No ☑
If Yes, please describe ______

B. Are you currently working or have you worked at any time since the inception of your disability for any employer or in your own business? Yes ☐ No ☑

If Yes, please describe ______

C. The following questions should be answered to reflect your current income status. Please answer "yes" or "no" to each source of income other than Sun Life Long Term Disability Benefits. For every "yes" answer indicate the current amount of each periodic benefit (monthly, weekly, etc.).

| | | Yes | Current Amount | Specify Weekly/Monthly | No |
|---|---|---|---|---|---|
| 1. | Social Security or Railroad Retirement Act? | | | | |
| | a) primary (amount for person disabled) | ☐ | $ | | ☑ |
| | b) dependent | ☐ | $ | | ☑ |
| 2. | Workers' Compensation or similar legislation? | ☐ | $ | | ☑ |
| 3. | Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ | | ☑ |
| 4. | Veteran's Administration or Welfare Plan? | ☐ | $ | | ☑ |
| 5. | Monthly Income Disability Benefit from any Group Life Policies? | ☐ | $ | | ☑ |
| 6. | Federal, State, Provincial, Municipal or other Government Agency? | ☐ | $ | | ☑ |
| 7. | Pension or Retirement Allowance? | ☐ | $ | | ☑ |
| 8. | Wages, Salary, Commissions and fees for Personal Services Rendered? | ☐ | $ | | ☑ |
| 9. | Other Sources? | ☐ | $ | | ☑ |

D. For any "YES" answer in item "C", provide the following information:

| NAME & ADDRESS OF SOURCE | POLICY OR CLAIM NO., IF ANY | EXACT DATE BENEFITS COMMENCED OR WILL COMMENCE |
|---|---|---|
| | | |

R. Johnson OCT 3 1 1996

RECEIVED
OCT 3 1 1996
LONG TERM DISABILITY

Certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

Date 10-27-96 Signature [signature]



Sun Life
of Canada®
A member of Sun Financial Group

Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

# LONG TERM DISABILITY CLAIM

## EMPLOYEE'S AUTHORIZATION

**I AUTHORIZE** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada or its legal representative any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further **AUTHORIZE** the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

**I UNDERSTAND** the information obtained by using this Authorization will be utilized by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization **EXCEPT** to reinsuring companies, the Medical Information Bureau, Inc., and other persons or organizations performing business or legal services in connection with my application or claim, or as otherwise required by law, or as I may further authorize.

**I KNOW** that a true copy of this Authorization is available to me at any time upon request.

**I AGREE** that a photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Signed this 30 Day of Oct 19 96

[signature]
Signature of Employee



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

*Shining over America since 1895*

October 9, 1996

Mr. Bruce Roxby
2636 SW 53 Terrace
Naples, FL 34116

Re: Policy No. 96878-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

This letter is to notify you that we have received a letter from Dr. Garcia which states that he is no longer employed by the Association in Physical Medicine, Jay Mendelsohn, M.D.P.A.. Are you still being treated by Dr. Garcia? If not, who are you seeing now regarding your Long-Term Disability? This information is important in paying this claim beyond October 30, 1996.

In July, we wrote Dr. Garcia and asked him to complete a Functional Capacities Form to aid us in reviewing your claim. We received no reply, and we recently received a letter from Dr. Garcia about being no longer employed with the Association in Physical Medicine. We still require this form to be completed, along with an Attending Physicians Statement and Statement of Information form we have enclosed in this envelope. Please have these filled out by Dr. Garcia or your presently treating physician, and return them in the return envelope so we may further review your claim to extend benefits beyond October 31, 1996.

If you have any questions, please call this office at 1-800-247-6875.

Sincerely,

Randy D. Johnson

Randy D. Johnson
Claims Examiner
Group LTD Claims

Spoke with Peter Tijunelis today and inquired about the status of a Functional Capacity Evaluation for Bruce Roxby. Peter told me Dr Garcia has left the company and upon reviewing the file, there is no F.C.E. in file and the date Mr Roxby was last seen was June 25, 1996

I recommend suspending benefits as of 9/30/96 and sending letter to EE with a FCE form along with an APS to be completed by his attending Physician.

R. Johnson OCT 8 1996

Per Diane, pay bens to 10/31/96 with letter to EE inquiring about who is treating Physician is and we still require the FCE to be completed to extend bens beyond 10/31/96.

Dagoberto J. Garcia M.D.
16445 Collins Ave. 1022
Miami Beach Fl. 33160

To Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills,MA 02181

Re.-Policy NO. 96878 GD-Long Term Disability
Claimant: Bruce Roxby

Sir:

This letter is to inform you,that I am no longer employed by Association in Physical Medicine,Jay Mendelsohn M.D.P.A.

All medical records are their property and any request for records should be made to them.

Jay Mendelsohn M.D.
3230 Stirling Road
Hollywood,Fl.33021

Sincerely,

Dagoberto J. Garcia M.D.

ROXBY 0322

DG/tg

R. Johnson OCT 7 1996

RECEIVED
OCT 07 1996
LONG TERM DISABILITY



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel. (617) 237-6030

September 13, 1996

Dr. Garcia
3230 Stirling Rd.
Hollywood, FL 33021

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Dr. Garcia:

We have still not received the information requested in our letter dated July 3, 1996.

Please submit the form submitted for completion, along with copies of all office notes and diagnostic results. Especially include the results form the Functional Capacities Evaluation, which was scheduled for June 25, 1996. A prompt response would be greatly appreciated.

If you have any questions, please contact this office at 1-800-247-6875.

Sincerely,

COPY

Gaurav Sawhney
Claims Examiner
Group L.T.D. Claims

cc:

Sun Life of Canada® A member of Sun Financial Group

a) To Originate: Write message, remove pink (Follow-up Copy) and forward white and canary copy.

b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

To: Cathy Burns LTD

From: Ellen

Date: 7-2-96

Time: 10:45

Group Policy Number & Name: 096878 - JM Family Enterprises

Contact's Name: Bruce Roxby

Relationship: EE

Phone Number: (305) 609-0069

Group Office: Florida

Claimant Name & Social Security Number: B Roxby 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

MESSAGE: 271293-20003-00

APS

Sent overnight last Tuesday

+ info update + address

Please call

ACTION TO BE TAKEN:

Thank you

COMMENTS TO BE MADE IN RETURN CALL:

[illegible] 941-353-9459 [illegible]

no answer on machine -

Return Call Made (Date): 7/2 (Time): 2:15

(By Whom): [illegible]

______ Resolved

______ Further Action Required

If further action required, give details:

ROXBY 0324

REPLY MESSAGE

(to be filed in claim file after entire call has been completed)

X-GR18/318



Sun Life
of Canada

Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel: (617) 237-6030

July 3, 1996

Mr. Bruce Roxby
2636 SW 53 Terr
Naples, FL 34116

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

Please be advised that we have found it neccesary to request additional medical information. We have written directly to Dr. Garcia and will periodically follow up until a response is received.

Sincerely,

Kathy Barrick

Kathy Barrick
Claims Examiner
Group LTD Claims

Sun Life of Canada®
A member of Sun Financial Group

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

# Statement of Information - Update

To Be Completed by Insured:

Insured BRUCE ROXBY Policy No. 76878 GD

Insured's Social Security No. 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

Insured's Address 2636 S.W. 53 TERR. NAPLES FL 34116

Insured's Phone Number (Area Code 941) 353-9957 Policyholder J.M. FAMILY - BRUCE ROXBY

A. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training? Yes ☐ No ☑
If Yes, please describe

B. Are you currently working or have you worked at any time since the inception of your disability for any employer or in your own business? Yes ☐ No ☑

If Yes, please describe

C. The following questions should be answered to reflect your current income status. Please answer "yes" or "no" to each source of income other than Sun Life Long Term Disability Benefits. For every "yes" answer indicate the current amount of each periodic benefit (monthly, weekly, etc.).

| | Yes | Current Amount | Specify Weekly/Monthly | No |
|---|---|---|---|---|
| 1. Social Security or Railroad Retirement Act? | | | | |
| a) primary (amount for person disabled) | ☐ | $ | | ☑ |
| b) dependent | ☐ | $ | | ☑ |
| 2. Workers' Compensation or similar legislation? | ☐ | $ | | ☑ |
| 3. Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ | | ☑ |
| 4. Veteran's Administration or Welfare Plan? | ☐ | $ | | ☑ |
| 5. Monthly Income Disability Benefit from any Group Life Policies? | ☐ | $ | | ☑ |
| 6. Federal, State, Provincial, Municipal or other Government Agency? | ☐ | $ | | ☑ |
| 7. Pension or Retirement Allowance? | ☐ | $ | | ☑ |
| 8. Wages, Salary, Commissions and fees for Personal Services Rendered? | ☐ | $ | | ☑ |
| 9. Other Sources? | ☐ | $ | | ☑ |

D. For any "YES" answer in item "C", provide the following information:

| NAME & ADDRESS OF SOURCE | POLICY OR CLAIM NO., IF ANY | EXACT DATE BENEFITS COMMENCED OR WILL COMMENCE |
|---|---|---|

K. Barrick JUL 03 1996

Certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

Date 25 JUN 96 Signature [signature]

X-LTD35/28

-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

Sun Life of Canada®
A member of Sun Financial Group

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
One Sun Life Executive Park (SC 1208)
Wellesley Hills, MA 02181
(800) 247-6875

# LONG TERM DISABILITY CLAIM

## EMPLOYEE'S AUTHORIZATION

**I AUTHORIZE** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada or its legal representative any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further **AUTHORIZE** the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

**I UNDERSTAND** the information obtained by using this Authorization will be utilized by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization **EXCEPT** to reinsuring companies, the Medical Information Bureau, Inc., and other persons or organizations performing business or legal services in connection with my application or claim, or as otherwise required by law, or as I may further authorize.

**I KNOW** that a true copy of this Authorization is available to me at any time upon request.

**I AGREE** that a photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

I understand that some states require Sun Life of Canada to notify me that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

Signed this 25TH Day of JUNE 19 [illegible]

[signature]
Signature of Employee

ROXBY 0327



A member of Sun Financial Group

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
One Sun Life Executive Park (SC-3208)
Wellesley Hills, MA 02181
(800) 247-6875

# Attending Physician's Statement of Disability
## Group Insurance

The patient is responsible for the completion of this form without expense to Sun Life of Canada

Policy No. 96878 GD

Please print

Name of patient: Bruce A. Roxby Date of birth: ___

Patient's address: 2636 S.W. 53 Terrace Naples FL. 33999
No. Street City State or Province Zip Code

Employer's name: Control number:

I hereby authorize release of information requested on this form, by the below named physician for the purpose of claim processing. Signed (Patient) Date ___

RECEIVED
JUN 26 1996
LONG TERM DISABILITY

**1. History**

(a) When did symptoms first appear or accident happen: Mo. 5 Day 25 19 93
(b) Date patient ceased work because of disability: Mo. 5 Day 25 19 93
(c) Has patient ever had same or similar condition? ☑ Yes ☐ No If "Yes" state when and describe. LWA 5 yrs ago
(d) Is condition due to injury or sickness arising out of patient's employment? ☑ Yes ☐ No ☐ Unknown
(e) If condition due to automobile accident, indicate state in which it occured ___
(f) Names and addresses of other treating physicians

**2. Diagnosis (including any complications)**

(a) Date of last examination: Mo. 6 Day 25 19 96
(b) Diagnosis (including any complications): Myofascial Pain / Facet syndrome
(c) If disability is due to pregnancy what is expected/was delivery date: Mo. ___ Day ___ 19 ___
(d) Please describe any complications that would extend this disability longer than a normal pregnancy
(e) Subjective symptoms

K. Barrick JUL 03 1996

(f) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings)
Lumbar Paraspinal muscle spasms.
↓ROM. LS-Spine. Deg. Disc Disease.

**3. Dates of Treatment**

(a) Date of first visit: Mo. 6 Day 14 19 93
(b) Date of last visit: Mo. ___ Day ___ 19 ___
(c) Frequency: ☐ Weekly ☐ Monthly ☐ Other (specify)

**4. Nature of Treatment (including surgery and medications prescribed, if any)**

**5. Progress**

(a) Has patient: ☐ Recovered? ☑ Improved? ☐ Unchanged? ☐ Retrogressed?
(b) Is patient: ☑ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?
(c) Has patient been hospital confined? ☐ Yes ☑ No If "Yes" give name and address of hospital
___ Confined from ___ through ___

**6. Cardiac (if applicable)**

(a) Functional capacity (American Heart Association): ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)
(b) Blood pressure (last visit): Systolic ___ Diastolic ___

ROXBY 0329

7. **Physical impairment** (*as defined in Federal Dictionary of Occupational Titles

- ☐ Class 1 — No limitation of functional capacity, capable of heavy work* .......... No restrictions (0-10%)
- ☐ Class 2 — Medium manual activity* .......... (15-30%)
- ☐ Class 3 — Slight limitation of functional capacity, capable of light work* .......... (35-55%)
- ☑ Class 4 — Moderate limitation of functional capacity, capable of clerical/administrative (sedentary*) activity .......... (60-70%)
- ☐ Class 5 — Severe limitation of functional capacity: incapable of minimal (sedentary*) activity .......... (75-100%)
- ☐ Remarks

8. **Mental/Nervous Impairment** (if applicable)

(a) Please define "stress" as it applies to this claimant

(b) What stress and problems in interpersonal relations has claimant had on job?

- ☐ Class 1 — Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 — Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
- ☐ Class 3 — Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☐ Class 4 — Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
- ☐ Class 5 — Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
- ☐ Remarks

9. **Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof?** ☐ Yes ☐ No

10. **Prognosis**

(a) Is patient now totally disabled? .......... Patient's job: ☑ Yes ☐ No — Any other job: ☐ Yes ☑ No

(b) If not now totally disabled, when was patient able to resume work? Light duty. — Patient's job: ☐ Full-time ☐ Part-time ___/___/___ Mo. Day Year — Any other job: ☐ Full-time ☐ Part-time ___/___/___ Mo. Day Year

(c) What duties of patient's job is he/she incapable of performing? Light duty, No heavy lifting

Do you expect a fundamental or marked change in the future? — Patient's job: ☐ Yes ☐ No — Any other job: ☐ Yes ☐ No

(1) If yes, when will patient recover sufficiently to perform duties? ___ Mo Day Year — Patient's job: ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never — Any other job: ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never ___/___/___ Mo. Day Year

(2) If no, please explain

11. **Rehabilitation**

(a) Is patient a suitable candidate for further rehabilitation services? (i.e. cardiopulmonary program, speech therapy, etc.) ☐ Yes ☑ No

(b) Would job modification enable patient to work with impairment? ☐ Yes ☑ No
If yes, explain under remarks

(c) When could trial employment commence? ___ Mo. Day Year — Patient's job: ☐ Full-time ☑ Part-time — Any other job: ☐ Full-time ☑ Part-time ___ Mo. Day Year

(d) Would vocational counseling and/or retraining be recommended? ☐ Yes ☐ No

12. **Remarks:**

Certain states provide that anyone who knowingly and with intent to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

D. Garcia Stirling — Name (attending physician) / Please print
MD — Degree/Specialty
954-963-5000 — Telephone

3230 Stirling Rd. — Street address
Hollywood — City or Town
FL — State or Province
33021 — Zip code or Postal code

[signature] — Signature
6/25/96 — Date

X-NECL 7/89?



U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

Shining over America since 1895

July 3, 1996

Dr. Garcia
3230 Stirling Rd.
Hollywood, FLA 33021

Re: Policy No. 96878-GD-Long Term Disability
Claimant Name: Bruce Roxby

Dear Dr. Garcia:

We are in receipt of your Attending Physician's Statement, recently completed on behalf of the above-captioned claimant and patient. However, we find we are need of additional information.

Could you please complete the enclosed form and return it in the envelope provided, along with copies of all office notes and diagnostic testing results. Any other information you care to provide will be appreciated.

The proper authorization permitting the release of this information is also enclosed. If there are any questions, please contact this office at 1-800-247-6875.

We appreciate your assistance.

Sincerely,

Kathy Barrick
Claims Examiner
Group L.T.D. Claims

Enc.



Sun Life
of Canada
Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel: (617) 237-6030

Claimant Name:________________ Policy No.________ Date________

Can the claimant work an 8 hour day? ____________

If not 8 hours, how many?_____________

How many hours of an 8 hour day can the claimant:

| | | | |
|---|---|---|---|
| Walk | ___________ | Twist | ____________ |
| Sit | ___________ | Squat | ____________ |
| Stand | ___________ | Lift | ____________ |
| Bend | ___________ | Push | ____________ |
| Climb | ___________ | Pull | ____________ |
| Kneel | ___________ | | |

Indicate maximum weight claimant can:
Lift___________ Push__________ Pull_____________

Are there any hand restrictions:

| | | |
|---|---|---|
| Simple grasping | _________No | _________Yes |
| Pushing | _________No | _________Yes |
| Pulling | _________No | _________Yes |
| Fine manipulation | _________No | _________Yes |

Can the worker reach or work above the shoulders? _____No ___Yes

Are there any restrictions for operating a motor vehicle or machinery? If so, please outline:____________________________

Are there any restrictions concerning heat, cold, dampness, height, temperature changes, high-speed working, or exposure to dust, fumes or gas? If so, please describe:____________________

________________________________________________________________

Other restrictions?______________________________________________

Expected Maximum Improvement Date:_________________

Remarks:________________________________________________________

Signature:__________________ Degree__________ Date__________

June 25, 1996

To: Sun Life of Canada
One Sunlife Executive Park
Wellesley Hills, Ma 02181

From: Bruce A. Roxby
2636 Sw. 53 Terr.
Naples, Fl. 34116

**Re: Policy No. 96878-GD-Long Term Disability**
Claimant: Bruce Roxby

To: Cathleen Burns
Sr. Claims Examiner

Dear Ms. Burns

Enclosed is the completed Attending Physician's statement and statement of information -update you requested. I have reapplied to Social Security for Disability benefits. You will be notified of their detirmination. This is the third time that I have applied for benefits. Please note change of address.

**Bruce Roxby**
**2636 Sw. 53 Terr.**
**Naples, Fl. 34116**

K. Barrick JUL 0 3 1996

Tel: (941) 352-9459

Thank You

Bruce A. Roxby
SSN-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

RECEIVED
JUN 26 1996
LONG TERM DISABILITY

ROXBY 0332

```
GCC1TDPP              *** DIARY/FOLLOW-UP DISPLAY ***                    GCCPW1MP

OPERATOR ID: BATH     CONTROL NUMBER: 271293-20003-00
                      POLICY  NUMBER: 096878
                      CERTIFICATE    :   235704533
                      EMPLOYEE       : ROXBY              B
 F
 U
 N     FOLLOW UP                  DIARY/FOLLOW-UP REMARKS
 C       DATE
        280596        FUP APS/SOI, FUP SS STATUS
                      DO WE WANT UPDATED RECORDS?  HANDLE AGGRESSIVELY
                      EE NOT TD ANY OCC
        210998        SEND 60 MTH WARNING

        250212        EXP LETTER

 FUNC: D TO DELETE ENTRY      C TO CHANGE ENTRY                        DONE
 OPTION  ?    1. DISPLAY MORE DIARY/FOLLOW-UP ENTRIES
              2. FOLLOW-UP ADD
              3. NARRATIVE ADD
              4. REHAB ACTIVITY
              5. CLAIMS/REHAB STATUS INFORMATION
              6. RETURN TO MENU
   4444 - DATA INPUT ERROR - PLEASE CORRECT
```

K. Barrick JUL 0 3 1996

GCI1THCP *** PRINTED NARRATIVE HISTORY *** GCIHG1MP

REG CNTRL NUM : 271293-20003-00

POLICY NUMBER : 096878 CERT : 235704533
LAST NAME : ROXBY FIRST : BRUCE A

DONE

| NARR DATE | NARR CODE | FILL IN 1 | FILL IN 2 | FILL IN 3 |
|---|---|---|---|---|
| 010496 | 13 | 3/28/95 | | |
| 010496 | 14 | | | |
| 010496 | 52 | | | |

**** FREE FORM NARRATIVE ****

OPTION: ?

1. RETURN TO CLAIM DISPLAY
2. RETURN TO CLAIM LIST
3. CONTINUE BROWSE
4. RESTART BROWSE
5. RETURN TO HIST INQ MENU
6. RETURN TO CLAIMS/REHAB STATUS INFO

4444 - DATA INPUT ERROR - PLEASE CORRECT

**CMH REQUEST** **EMSI / PRO-TEL-APPS**

**ACCT. # 3596**

INSURANCE COMPANY SUN LIFE - LTD CLAIMS

DATE ORDERED 3/26/96 CLAIM/POL. # 96878

REQUESTOR Cathy Burns PHONE 800-432-1102 X1717

CLAIMANT NAME Bruce Roxby DOB 4/25/47

ADDRESS 525 SE 10th Ave., Deerfield Beach, FL 33441

SOCIAL SECURITY # ____________________

---

--- OBTAIN HARD COPY OF RECORDS ---

MEDICAL PROVIDER ____________________

ADDRESS ____________________

PHONE # (if available) ____________

OBTAIN ALL RECORDS __ (OR) SPECIFIC DATES ____________

MEDICAL PROVIDER ____________________

ADDRESS ____________________

PHONE # (if available) ____________

OBTAIN ALL RECORDS __ (OR) SPECIFIC DATES ____________

MEDICAL PROVIDER ____________________

ADDRESS ____________________

PHONE # (if available) ____________

OBTAIN ALL RECORDS __ (OR) SPECIFIC DATES ____________

*** ALWAYS INCLUDE MEDICAL AUTHORIZATION ***

# AUTHORIZATION TO OBTAIN INFORMATION

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, employer or Social Security Administration, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or any other non-medical information of me to give to Sun Life Assurance Company of Canada or its legal representative, any and all such information.

I UNDERSTAND the information obtained by use of the Authorization will be used by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my application, claim, or as may be otherwise lawfully required or as I may further authorize.

I KNOW that I may request to receive a copy of this Authorization.

I AGREE that a photographic copy of this Authorization shall be as valid as the original.

I ACKNOWLEDGE receipt of the Notice of Disclosure of Information and Notice to Persons Applying for Insurance.

I AGREE this Authorization shall be valid for two and one half years from the date shown below.

---

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

---

SIGNED THIS 28TH DAY OF MARCH 19 95

[signature]
Signature of Insured/Beneficiary

Sun Life of Canada
Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181



Shining over America since 1895

U.S. Headquarters Office
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

June 3, 1996

Mr. Bruce Roxby
525 SE 10th Ave.
Deerfield Beach, FL 33441

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

We still have not received the completed Attending Physician's Statement and Statement of Information-Update sent with your April check. Also, we have not received a response regarding the status of your application for Social Security benefit. This information is needed in order to extend benefits beyond May 31, 1996.

If we do not hear from you regarding this matter within 30 days from the date of this letter, we shall assume you do not wish to pursue this claim and we shall close our file.

If you should have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Cathleen Burns

Cathleen Burns
Sr. Claims Examiner
Group L.T.D. Claims

cc: Ms. K[illegible] Davis, JM Family Enterprises, Inc.

COPY

B. Roxby
96878

ER statement indicates annual earnings $59,527.83/12 = $4,960.65
Notice of claim indicates basic salary $4,960.65 per month.
WC settlement indicates weekly wage $958.07 x 52/12 = $4,151.64

Policy indicates paid on previous year's W2. EE TD in 93
92 W2 indicates $59,527.83/12 = $4,960.65

Reviewed w/ D Helin [illegible] policy does not indicate prior W2 [illegible] PD will be [illegible] to clarify. Thereafter, will call ER to make sure $4,126.29 is correct.

C Burns JAN 10 1996

Spoke w/ ER - this issue was addressed before [illegible]. It will be hard now to find out otherwise at the branch under which he was employed no longer exists. All records are boxed away. Per ER, ee 1 [illegible] of file & policy docket - W2 may not show ee's exact salary. - the policy earnings include "any before [illegible] contributions by an EE to the ER's plans [illegible] IRS qualified salary reduction"

Amendment No. 1
Amendment Date May 1, 1992

DEFINITIONS

(continued)

Partial Disability Employment

Partial Disability Employment is:

1. a program in which an Employee engages in vocational training or period of work for the purpose of rehabilitation; or

2. employment in which an Employee performs at least one of the material duties of his Regular Occupation or another occupation on a part-time or full-time basis.

Partial Disability Employment may begin during the Elimination Period, but a Partial Disability Benefit will not be paid until completion of the Elimination Period.

Doctor

A physician or surgeon licensed to practice medicine or osteopathy or any other licensed practitioner required to be recognized for health insurance purposes under the law of the jurisdiction where treatment is received. In all cases, treatment must be within the scope of the Doctor's license.

Basic Earnings

All Annualized Salary and wages paid or payable to an Employee by the Employer in the calendar year prior to the current year which are considered basic compensation for the J.M. Family Enterprises, Inc. Associates Profit Sharing Plan purposes. This includes any before tax contributions by an Employee to the Employer's plans involving IRS qualified salary reduction. Employer

**RECORD OF TELEPHONE CONVERSATION**

Phone ☑ In Person ☐ Incoming ☐ Outgoing ☐

Certificateholder B. Roxby Spoke With Killie Davis

Employer's Name Branch/Address

Policy No.(s) 96878

Phone Number 914-443-6669

Soc. Sec. # Claim #

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other

Insured ☐ Dependent ☐ Name

Message [illegible] salary

This branch [illegible] [illegible] [illegible] [illegible] [illegible]

[illegible] [illegible] [illegible] [illegible] [illegible] [illegible]

[illegible] [illegible]

See updated [illegible] [illegible] [illegible] [illegible].

☐ Reply no later than:

Received By C Burns JAN 30 1996

Name and Section

Date Referred To

Time 11:35 Date

X-HICL70403

ROXBY 0340



JM FAMILY ENTERPRISES, INC.

8019 Bayberry Road
Jacksonville, Florida 32256
(904) 443-6650 • Fax (904) 443-6670

RECEIVED
DEC 19 1995
LONG TERM DISABILITY

December 13, 1995

Sun Life Of Canada
Kerrie Harrington
One Sun Life Executive Park
Wellesley Hills, MA 02181

Re: Policy No. 96878-GD- Long Term Disability
Claimant: Bruce Roxby

Dear Kerrie:

Regarding your letter concerning Bruce Roxby's Workers Compensation Settlement, the attached W2 forms are what we provided as his income anything different I am not aware of.
If I can be of anymore help, please feel free to call me at 800-736-3936.

Sincerely,

Karen Davis
Benefits Supervisor

Enclosure:

C Burns JAN 02 1996



Sun Life of Canada

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

October 13, 1993

JM Family Enterprises
Karen Davis
[illegible] Bayberry Road
Jacksonville FL 3225[illegible]

Re: Policy No. [illegible] Term Disability
Claimant: Bruce Roxby

Dear [illegible] Davis:

We have recently [illegible] the Worker's Compensation Settlement [illegible] for Bruce Roxby

[illegible] the [illegible] was noticed that the settlement [illegible] based on a [illegible] \$4,111.64. Our records show that Mr. Roxby's [illegible] at the time of disability was [illegible]

Please forward the proper documentation showing Mr. Roxby's [illegible] proper adjustments can be made if the [illegible] incorrect.

[illegible] please contact this office at [illegible]

[illegible]

Kerrie A. Harrington
Claims Examiner
Group L.T.D. Claims

cc: Bruce Roxby

COPY

DEC 0 7 1995

ROXBY 0342

Sun Life of Canada®
A member of Sun Financial Group

** To Originator: Write message, remove pins (Follow-up Copy) and forward white and canary copy.
** Claims reply: Write reply, retain canary and return white to Group Service to make return call.
c) Final reply: Write final comments and return to Claims.

To: ~~Cathy~~ Cathy Burns - OD
From: Danielle
Date: 11/28
Time: 12:11
Group Policy Number & Name: 96879
Contact's Name: Eric Roxby
Relationship: Self
Phone Number: 954-427-3733
Group Office:
Claimant Name & Social Security Number: 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

MESSAGE: CN# 271293. 20003-00

Please call on Wed. (He's not home today) re: letter - did you ~~recie~~ recieve it?

Thanks

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: No. Not as of this date

WC goes on 13 weeks - that is what difference is. He will call ER & have them send info

Also, W2 is also going to be different as he paid another ee

Also, he will send change of address in writing.

Return Call Made (Date): 11/29/95 (Time): 10:55
(By Whom): C. Burns

✓ Resolved

Further Action Required

If further action required, give details:

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

ROXBY 0343

Control number 182

OMB No. 1545-0008

2 Employer's name, address, and ZIP
JIM MORAN PONTIAC, INC
2300 NORTH 60TH AVE.
HOLLYWOOD, FL
33021

Department | 6 Statutory employee | Deceased | Pension plan | | 942 emp | Subtotal | Deferred compensation | Void

Co. | Corp

File Number

| Box | Amount |
|---|---|
| 3 Employer's identification number | 591288289 |
| 4 Employer's state I.D. number | 153420 |
| 5 Employee's social security number | 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 |
| 7 Allocated tips | |
| 8 Advance EIC payment | |
| 9 Federal income tax withheld | 5870.09 |
| 10 Wages, tips, other compensation | 58700.79 |
| 11 Social security tax withheld | 3441.00 |
| 12 Social security wages | 55500.00 |
| 13 Social security tips | 0.00 |
| 14 Medicare wages and tips | 58700.79 |
| 15 Medicare tax withheld | 851.16 |
| 16 Nonqualified plans | |
| 17 | |
| 18 Other | |
| 20 | |
| 21 | |
| 22 Dependent care benefits | |
| 23 Benefits included in Box 10 | |

19 Employee's name, address, and ZIP code
BRUCE A ROXBY
525 S.E. 10TH AVENUE
DEERFIELD BEACH, FL
33441

| 24 State income tax | 25 State wages, tips, etc. | 26 Name of state | 27 Local income tax | 28 Local wages, tips, etc. | 29 Name of locality |
|---|---|---|---|---|---|
| 0.00 | 59527.83 | FLORIDA | | | |

Copy 1 For State, City, or Local Tax Department IRS APP. Dept. of the Treasury—Internal Revenue Service

Form **W-2 Wage and Tax Statement 1992**

Employee's and employer's copy compared ☐

ADP FORMS + SUPPLIES 61100-92 Call 1-800-ADP-ADP-ADP

a Control number 145

OMB No. 1545-0008

b Employer's identification number 59-1288209

c Employer's name, address, and ZIP code
JIM MORAN PONTIAC, INC.
2300 NORTH 60TH AVE.
HOLLYWOOD, FL
33021

d Employee's social security number 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

e Employee's name, address, and ZIP code
BRUCE A ROXBY
528 S.E. 10TH AVENUE
DEERFIELD BEACH, FL
33441

| | | | |
|---|---|---|---|
| 1 Wages, tips, other compensation | 10460.16 | 2 Federal income tax withheld | 1046.02 |
| 3 Social security wages | 10460.16 | 4 Social security tax withheld | 648.53 |
| 5 Medicare wages and tips | 10460.16 | 6 Medicare tax withheld | 151.67 |
| 7 Social security tips | | 8 Allocated tips | |
| 9 Advance EIC payment | | 10 Dependent care benefits | |
| 11 Nonqualified plans | | 12 Benefits included in Box 1 | |
| 13 See Instrs. for Form W-2 | | 14 Other | |

ROXBY 0345

15 Statutory employee | Deceased | Pension plan | Legal rep. | 942 emp. | Subtotal | Deferred compensation

| 16 State | Employer's state I.D. No. | 17 State wages, tips, etc. | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc. | 21 Local income tax |
|---|---|---|---|---|---|---|
| FL | 153420 | 10460.14 | | | | |

W-2 Wage and Tax Statement 1994

State, City, or Local Tax Department

RECEIVED
DEC 19 1995
LONG TERM DISABILITY

| a Control number | | Void |
|---|---|---|
| 192 | | ☐ |

| b Employer's identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 591283289 | 21357.74 | 2135.70 |
| c Employer's name, address, and ZIP code: JIM MORAN PONTIAC, INC 2300 NORTH 60TH AVE. HOLLYWOOD, FL 33021; Department 04; Co. 1; Corp.; File Number | 3 Social security wages 21357.74 | 4 Social security tax withheld 1324.18 |
| | 5 Medicare wages and tips 21357.74 | 6 Medicare tax withheld 309.69 |
| | 7 Social security tips 0.00 | 8 Allocated tips |
| d Employee's social security number 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 | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's name, address, and ZIP code: BRUCE A ROXBY 525 S.E. 10TH AVENUE DEERFIELD BEACH, FL 33441 | 11 Nonqualified plans | 12 Benefits included in Box 1 |
| | 13 D 619.41 | 14 Other |
| | 15 Statutory employee ☐ Deceased ☐ Pension plan ☐ Legal rep. ☐ 942 emp. ☐ Subtotal ☐ Deferred compensation ☒ | |

| 16 State | Employer's state I.D. No. | 17 State wages, tips, etc. | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc. | 21 Local income tax |
|---|---|---|---|---|---|---|
| FL | 153420 | 21977.15 | 0.00 | | | |

IRS APP. Department of the Treasury—Internal Revenue Service

Form **W-2** Wage and Tax Statement **1993**

Copy 1 For State, City, or Local Tax Department

DEC 07 1995

OMB No. 1545-0008



U.S. Head ters Office One Sun Life Exe Wellesley Hills, M
Tel: (617) 237-60

*Shining over America since 1895*

November 22, 1995

Ms. Karen Davis
JM Family Enterprises
8019 Bayberry Rd.
Jacksonville, FL 32256

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Ms. Davis:

We still have not received the documentation requested in our letter dated October 13, 1995. A copy of the letter is enclosed for your review. This information is needed in order to extend benefits beyond November 30, 1995.

If we do not hear from you regarding this matter within 30 days from the date of this letter, we shall assume Ms. Roxby does not wish to pursue this claim and we shall close our file.

If you should have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Cathleen Burns

Cathleen Burns
Sr. Claims Examiner
Group L.T.D. Claims

Enc.

cc: Mr. Bruce Roxby
525 SE 10th Ave.
Deerfield Beech, FL 33441



One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

October 13, 1995

JM Family Enterprises
Karen Davis
8019 Bayberry Road
Jacksonville FL 32256

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Ms. Davis:

We have recently received the Worker's Compensation Settlement letter for Brue Roxby.

In reviwing the Settlement, it was noticed that the settlement was based on a monthly salary of $4,151.64. Our records show that Mr. Roxby's monthly salary at the time of disability was $6,126.29.

Please forward the proper documentation showing Mr. Roxby's correct salary so that the proper adjustments can be made if the records received at the onset of the claim are incorrect.

If you should have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Kerrie A. Harrington
Claims Examiner
Group L.T.D. Claims

cc: Bruce Roxby

COPY

ROXBY 0348



Sun Life
of Canada
Shining over America since 1895

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

October 13, 1995

Bruce Roxby
525 SE 10th Ave
Deerfield Beach FL 33441

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

Our office has received the Worker's Compensation Settlement pertinent to the above-captioned claim. Benefits have been recalculated as follows:

| | |
|---|---|
| Basic Benefit | $4288.41 |
| Total Offset | $106.12 |
| Correct Net Benefit | $4182.29 |

According to our records, payment was made as follows:

| Period Covered | Benefits Paid | Benefits Due |
|---|---|---|
| 6/21-6/30 | 815.58 | 1394.10 |
| 7/1-7/31 | 2446.74 | 4182.29 |
| 8/1-8/31 | 2446.74 | 4182.29 |
| 9/1-9/30 | 2446.74 | 4182.29 |

| | |
|---|---|
| Total Paid | $8,155.80 |
| Total Due | $13,940.97 |
| Underpayment | $5,785.17 |

Therefore, there is an underpayment of $5,785.17. Our check in that amount will be issued shortly.

Thank you for your assistance. If you should have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Kerrie A. Harrington
Claims Examiner
Group L.T.D. Claims

cc: JM Family

COPY

Kharm[illegible] OCT 1 0 1995

WC Settlement 36,500.00 to Claimant

age 48 28.663050

36,500.00 ÷ 28.663050 ÷ 12 = 106.12
Correct offset

Agree w/calc - from 6-21-95. However - WC is basing on ee's salary of $958.07/wk or $4151.64/mo we are using $6126.29/mo. Write er ask explain above. - ask for confirmation of salary + payroll records to support. Meantime - go ahead w/ WC calcs.

D Rizoli OCT 1 0 1995

| | we pd: | should have pd: |
|---|---|---|
| 6/21 - 6/30 | 815.58 | 4394.10 |
| 7/95 | 2446.74 | 4182.29 |
| 8/95 | 2446.74 | 4182.29 |
| 9/95 | 2446.74 | 4182.29 |
| | 8155.80 | 13,940.97 |

unpd => 5,785.17

96875

RECEIVED
OCT 02 1995
LONG TERM DISABILITY

STATE OF FLORIDA
DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY
OFFICE OF JUDGE OF COMPENSATION CLAIMS
DISTRICT "J"

CLAIMANT/PETITIONER
Bruce A. Roxby
525 S.E. 10th Avenue
Deerfield Beach, FL 33441

ATTORNEY FOR CLAIMANT/PETITIONER:
Not Represented

EMPLOYER:
J.M. Family Enterprises
8019 Bayberry Road
Jacksonville, FL 32256

ATTORNEY FOR EMPLOYER/CARRIER:
E. Robert Williams, Esquire
231 E. Adams Street
Jacksonville, FL 32202

CARRIER/SA:
ITT Hartford
Post Office Box 940669
Maitland, FL 32794-0669

CLAIM NO.: 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
DATE OF ACCIDENT: 5-25-93

ORDER FOR RELEASE FROM LIABILITY FOR PAYMENT OF WORKERS' COMPENSATION PURSUANT TO SECTION 440.20(11)(b)(1994), FLORIDA STATUTES

The parties jointly petition for an order approving a stipulation for settlement under Section 440.20(11)(b), Florida Statutes. On review of the contents of the stipulation and evidence submitted in support thereof including the sworn statement of other employee (petitioner/claimant) incorporated into the stipulation, the following findings are made:

1. All requirements of F.S. 440.20(11)(b) have been met;

2. The employee (claimant/petitioner) fully understands the terms, conditions, consideration for and consequences of the proposed settlement;

3. The employer has adequate notice of these proceedings;

4. The injured employee has attained maximum medical improvement;

5. The amount of the attorneys fee payable by the employee (claimant/petitioner) as set forth in the stipulation is supported by the evidence and meets the requirements of the Florida Workers' Compensation Law.

6. The employer/carrier (servicing agent) is not paying a fee to the employee's (claimant's/petitioner's) attorney in connection with this settlement; and

7. The proposed settlement will definitely aid in the rehabilitation of the injured employee or otherwise is clearly in the best interests of the person entitled to compensation.

WHEREFORE, it is ORDERED AND ADJUDGED:

A. The stipulation in support of the joint petition for settlement is approved and the parties are ordered to comply with the provisions thereof.

B. On payment of the consideration set forth in the joint petition and supporting stipulation for settlement, the liability of the employer and its carrier (servicing agent) for the payment or provision of any class of benefits including medical benefits payable under the Florida Workers' Compensation Law because of the alleged industrial accident and injury referenced herein is hereby fully and forever discharged and released.

C. This order shall not be subject to modification or review under Section 440.20, Florida Statutes.

D. The fee the employee (claimant/petitioner) agreed to pay the attorney for legal services herein is reasonable and in compliance with the applicable law and is hereby approved.

DONE AND ORDERED at Fort Lauderdale, Broward County, Florida.

OCT [illegible] 1995

Mily Rodriguez-Powell
JUDGE OF COMPENSATION CLAIMS

This is to certify that the above Order was entered into by the Judge of Compensation Claims and a copy was served by United States mail on each party and counsel at the addresses list above on Aug. 22, 1995.

C. Adams
Judicial Assistant to Judge

STATE OF FLORIDA
DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY
OFFICE OF THE JUDGE OF COMPENSATION CLAIMS
DISTRICT "J"

EMPLOYEE/CLAIMANT:
BRUCE A. ROXBY
525 S.E. 10TH AVENUE
DEERFIELD BEACH, FL 33441

ATTORNEY FOR EMPLOYEE:
NOT REPRESENTED

EMPLOYER:
J. M. FAMILY ENTERPRISES
8019 BAYBERRY ROAD
JACKSONVILLE, FL 32256

ATTORNEY FOR EMPLOYER/
CARRIER/SERVICING AGENT:

E. ROBERT WILLIAMS, ESQUIRE
231 E. Adams Street
Jacksonville, FL 32202
(904) 353-6241

CARRIER/SERVICING AGENT:
ITT HARTFORD
POST OFFICE BOX 940669
MAITLAND, FL 32794-0669

CLAIM NO:
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

DATE OF ACCIDENT:
05/25/93

---

AFFIDAVIT

STATE OF FLORIDA

COUNTY OF DUVAL

Before me, the undersigned authority, personally appeared Bruce Roxby, who being duly sworn, deposes and says:

1. I am settling my past and future medical care and monetary compensation benefits, including but not limited to, rehabilitation, retraining and re-education benefits for a lump sum payment to me in the amount of $36,500.00.

2. I understand and acknowledge that the Stipulation in Support of Joint Petition for Order Approving a Lump-Sum Settlement Under F.S. 440.20(11) 1994 is the same as a complete release with regard to any benefits to which I might be entitled, and that once this settlement is approved by Order of the Judge

of Compensation Claims, I cannot reopen my claim for any reason whatsoever.

3. I understand that this settlement completely discharges and terminates any liability or responsibility that the Employer or the Carrier may have for past or future medical care, monetary compensation benefits and rehabilitation benefits of any classification or type whatsoever.

4. I understand that I am under no compulsion to settle my claim and I am settling voluntarily and of my own free will. I represent and acknowledge that I have neither been influenced by nor relied upon any representation or advice of the Employer/Carrier, their agents or attorneys, in reaching my decision to settle my claim.

5. I understand that under the Florida Workers' Compensation Law I have the right to pursue my claims and to go to a formal hearing. I am giving up my right to have my claim determined by a Judge of Compensation Claims.

6. I understand that if the Judge of Compensation Claims enters an Order approving this settlement, it will be a final Order and not subject to modification or change or review, regardless of whether my physical, psychological or financial conditions may change in the future.

7. I specifically waive any right to or necessity for a hearing on the Stipulation in Support of Joint Petition for an Order approving a lump sum settlement under FS 440.11(b). I request that the Judge of Compensation Claims enter an Order

approving my Joint Petition without a hearing.

8. I acknowledge that I have read or have had read to me this Affidavit and the Joint Petition and Stipulation, that I understand, and accept the terms of said Joint Petition and Stipulation.

FURTHER, AFFIANT SAYETH NOT.

Bruce A Roxby
Bruce Roxby

STATE OF FLORIDA
COUNTY OF BROWARD

Before me, the undersigned authority authorized to administer oaths and take acknowledgements personally appeared Bruce Roxby, on this 6th day of JUNE, 1995 who is personally known to me or who has produced: ____________ as identification and who did (did not) take an oath and who certifies that the information furnished by him as incorporated in the foregoing Affidavit is true and correct and that he (has read the Affidavit) (has had the Affidavit read to him) and believes the lump sum settlement to be in his best interest.

Marcia J Mesaros
NOTARY PUBLIC
State of FLORIDA

(S E A L)
My Commission Expires:

MARCIA J MESAROS
My Commission CC334188
Expires Dec. 08, 1997
Bonded by ANB
800-852-5878

STATE OF FLORIDA
DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY
OFFICE OF THE JUDGE OF COMPENSATION CLAIMS
DISTRICT "J"

EMPLOYEE/CLAIMANT:
BRUCE A. ROXBY
525 S.E. 10TH AVENUE
DEERFIELD BEACH, FL 33441

ATTORNEY FOR EMPLOYEE:
NOT REPRESENTED

EMPLOYER:
J. M. FAMILY ENTERPRISES
8019 BAYBERRY ROAD
JACKSONVILLE, FL 32256

ATTORNEY FOR EMPLOYER/CARRIER/SERVICING AGENT:

E. ROBERT WILLIAMS, ESQUIRE
231 E. Adams Street
Jacksonville, FL 32202
(904) 353-6241

CARRIER/SERVICING AGENT:
ITT HARTFORD
POST OFFICE BOX 940669
MAITLAND, FL 32794-0669

CLAIM NO:
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

DATE OF ACCIDENT:
05/25/93

---

**STIPULATION IN SUPPORT OF JOINT PETITION FOR ORDER APPROVING A LUMP-SUM SETTLEMENT UNDER F.S. 440.20 (11)(b), 1994, AS AMENDED**

The above named parties hereby seek approval of the following agreement made for the specific purpose of discharging the employer/carrier for any further liability for future monetary compensation, rehabilitation, training, education, re-employment and medical benefits under the Florida Workers' Compensation Act in exchange for the payment of lump sum money to the Employee. It is the stated policy for the administration of the Workers' Compensation system to facilitate the workers' return to gainful employment and to be self executing. Accordingly, the parties hereby stipulate and agree as follows:

**JURISDICTION**

1. The Florida Department of Labor and Employment

Security and the Judge of Compensation Claims appointed under F.S. 440.45 have jurisdiction of the subject matter and the parties hereto.

DESCRIPTION OF ACCIDENT(S)

2. On May 25, 1993, the Employee sustained an injury by accident as contemplated under F.S. 440.02(1) arising out of and in the course of employment in Broward County, Florida, with the Employer when the Employee struck his head while working under a car injuring his neck and low back.

AVERAGE WEEKLY WAGE AND COMPENSATION RATE

3. For purposes of this Joint Petition, the Employee's average weekly wage was $958.07 thus making the compensation rate $425.00 per week.

DESCRIPTION OF MEDICAL BENEFITS PROVIDED

4. a) Following the injury, the Employee came under the care of Dr. Allen K. Novick, who diagnosed a cervical and lumbosacral sprains and a questionable herniated nucleus pulposus at the C5-6 level of the spine. All treatment has been conservative.

b) The Employee previously suffered a neck injury in 1988 resulting in a permanent disability. The Employee's prior disability combined and merged with the Employee's disability from the accident which is the subject of this Joint Petition which created a materially and substantially greater disability than which would have occurred had the Employee not suffered his pre-existing disability.

**MAXIMUM MEDICAL IMPROVEMENT, IMPAIRMENT RATING AND WORK RESTRICTIONS**

5. According to Dr. Novick, the Employee achieved maximum medical improvement on 12/08/92 with a 14% permanent partial impairment rating to the body as a whole. Documentation in support of maximum medical improvement date(s) is attached and made a part hereof.

The following work restrictions were imposed:

(a) light duty.

**PAYMENT OF FUTURE MEDICAL CARE**

6. From the medical reports, it is agreed that the Employee will be financially capable of managing his future medical costs and care from the settlement proceeds herein.

**AGE, EDUCATION BACKGROUND AND WORK HISTORY**

7. The Employee is 47 years of age (DOB: 04/25/47) and has a ________ education. The Employee is able to read, write and make change. The Employee's work history includes employment as a ____________________________. At the time of the injury, the Employee was working as a auto technician. The Employee is incapable of returning to work as a auto technician.

**AMOUNT AND CLASSIFICATION AND INDEMNITY BENEFITS PREVIOUSLY PAID**

8. The Employee has been paid all temporary total disability, temporary partial disability, permanent impairment and wage loss benefits to which the Employee is entitled since the accident.

**SETTLEMENT AMOUNT AND DISCHARGE FROM LIABILITY FOR FUTURE MONETARY COMPENSATION AND MEDICAL BENEFITS**

9. (a) Subject to the approval of the Judge of Compensation Claims, the Employer/Carrier will pay to the Employee, within 30 days of the approval of this Joint Petition, $36,500.00 in full satisfaction of the obligation or liability to pay monetary compensation and medical benefits on account of disability, death and impairment as set forth under Sections 440.15 and 440.16, Florida Statutes and those benefits provided under sections 440.49 and 440.491, Florida Statutes, on account of the work related accident or occupational disease referenced herein. Said amount is allocated $10,000.00 to past and future medical and $26,500.00 to past and future indemnity. As contemplated by this agreement, monetary compensation benefits includes but is not necessarily limited to compensation for permanent total disability, temporary total disability (including temporary total disability compensation for medical rehabilitation), temporary partial disability, permanent impairment benefits, supplemental income benefits, and death benefits, as well as vocational rehabilitation, training, educational, and re-employment benefits as set forth in F.S. 440.49 and F.S. 440.491. The payment of the lump-sum set forth herein will definitely facilitate the Employee's return to gainful employment or will otherwise be in the Employee's best interest. Upon receipt of the lump-sum, the Employer/Carrier will be forever released and discharged from the obligation or liability to pay monetary compensation and medical benefits of any classification whatsoever to the Employee, his heirs, his

dependents, or his successors.

(b) The Employee recognizes that his injury is such that the Employee may need additional medical treatment, including, but not limited to, surgery. Notwithstanding the potential for additional medical treatment, including, surgery, the Employee is desirous of proceeding with the settlement of his/her claim.

(c) It is expressly understood that the aforesaid lump sum payment covers any and all injuries suffered by the Employee from the accident which is the subject of this Joint Petition, irrespective of whether said injuries have manifested or have been diagnosed.

(d) The Employee represents that the Employee has does not have any medical problems or injuries from any other accidents while working for the Employer other than the accident which is the subject of this Joint Petition.

**WAIVER OF RIGHT TO HAVE CASE HEARD BY JUDGE OF COMPENSATION CLAIMS AND RIGHT TO BRING PETITION FOR MODIFICATION**

10. The Employee understands that the Employee does hereby relinquish the right to have any unresolved conflicts or disputes involving the right to monetary compensation benefits, impairment benefits, medical benefits, rehabilitation benefits and death benefits heard and decided by a Judge of Compensation Claims. When approved by the Judge of Compensation Claims, this agreement shall not be subject to modification under F.S. 440.28.

**INABILITY OF EMPLOYEE TO RETURN TO FORMER JOB**

11. The Employee acknowledges and understands that the

Employee is incapable of returning to employment as a result of the Employee's injuries. The Employee further acknowledges and agrees that as a result of the Employee's injuries, the Employer cannot reasonably modify any essential job duties or otherwise provide reasonable job accommodations which would allow the Employee to return to employment with the Employer herein. Accordingly, the Employee specifically waives any obligation of the Employer to make available to the Employee any work whatsoever within the Employee's physical restrictions. The Employee further specifically releases the Employer from any claims whatsoever relating to his/her employment including, but not limited to, any claims under the Americans with Disabilities Act, the Employee Age Discrimination Act, the Florida Civil Rights Act, Sections 440.105, 440.205 or 442.018, Florida Statute.

**CREDIT TO CARRIER IN THE EVENT THE JOINT PETITION IS DECLARED INVALID**

12. It is expressly understood and agreed that if any provision of this Stipulation and Joint Petition is found to be invalid or void, then the monies paid to the Employee pursuant to any order approving this Stipulation shall be credited against any benefits which may be found due and owing the Employee by the Employer/Carrier herein as a result of the Employee's industrial accident which is the subject of this Joint Petition.

**WAIVER OF PENALTIES, INTEREST, AND FORMAL NOTICE**

13. The Employee does hereby waive any right the Employee may have to any and all penalties or interest on account of the

accident or occupational disease referenced herein. The parties may present this Stipulation to the Judge of Compensation Claims for consideration and approval without necessity of a formal notice which requirement is hereby expressly waived.

**WAIVER OF HEARING**

14. The Employee specifically waives the Employee's rights to or any requirement for a hearing by the Judge of Compensation Claims on this Stipulation and Joint Petition.

**ALL KNOWN ACCIDENTS, INJURIES, AND OCCUPATIONAL DISEASES REVEALED AND ALL PENDING CLAIMS WITHDRAWN**

15. The Employee represents and affirms that all accidents, injuries and occupational diseases known to have occurred or sustained while employed by the Employer have been revealed. All pending claims are hereby voluntarily withdrawn and dismissed by the Employee with prejudice.

**EMPLOYER GIVEN FORMAL NOTICE OF PROPOSED LUMP-SUM SETTLEMENT**

16. The parties represent that the terms and conditions of this settlement have been disclosed to the Employer and, as required under F.S. 440.20(11)(b), said Employer has been advised of the right to appear at a hearing before the Judge of Compensation Claims to present testimony regarding said settlement.

**STIPULATION SUBJECT TO APPROVAL OF JUDGE OF COMPENSATION CLAIMS**

17. The parties clearly understand that this agreement must be approved by the Judge of Compensation Claims before it becomes formally binding. The Employee understands that agreements have been routinely disapproved by judges in the past and should not

undertake any financially binding actions until formal approval is obtained. In the event this Stipulation is not approved by the Judge of Compensation Claims, it shall be completely void and of no effect whatsoever. If the Stipulation is disapproved, the Employer/Carrier reserves the right to assert any and all defenses available under the Florida Workers' Compensation Act.

**CURRENT EMPLOYMENT STATUS AND ANTICIPATED USE OF SETTLEMENT PROCEEDS**

18. The Employee is currently unemployed. If the terms of this settlement are approved, the Employee plans to use the proceeds therefrom as follows: Savings and to pay off debts.

**FUTURE MEDICAL CARE - EMPLOYEE'S RESPONSIBILITY**

19. It is expressly understood and agreed that any and all future medical care for the Employee, including but not limited to remedial and palliative treatment, prescription, medical supplies, medical appliances, medical transportation, attendant care and medical rehabilitation, shall be the complete and sole responsibility of the Employee. The Employer/Carrier are forever relieved of any obligation or liability to provide the Employee with medical care or treatment of any type whatsoever.

**EMPLOYER'S ACKNOWLEDGEMENT OF UNDERSTANDING OF HIS OR HER RIGHTS**

20. THE EMPLOYEE REPRESENTS THAT HE HAS READ OR HAD READ TO HIM THE FOREGOING STIPULATION; THAT HE FULLY UNDERSTANDS THE FOREGOING STIPULATION AND PROPOSED JOINT PETITION AND IS IN AGREEMENT WITH THEM; THAT HE UNDERSTANDS THAT HE IS NOT UNDER COMPULSION TO SETTLE HIS CLAIM AND CERTIFIES THAT HE IS SETTLING

HIS CASE VOLUNTARILY AND OF HIS OWN FREE WILL; THAT HE/SHE IS NOT RELYING ON ANY REPRESENTATION OR ACT OF THE EMPLOYER/CARRIER, THEIR AGENTS OR ATTORNEYS, IN DECIDING TO SETTLE HIS/HER CLAIM. THAT HE UNDERSTANDS HE HAS THE RIGHT TO PURSUE HIS CLAIM AND HAVE A JUDGE OF COMPENSATION CLAIMS DETERMINE THE BENEFITS, IF ANY, TO WHICH HE MAY BE ENTITLED AND THAT THIS SETTLEMENT IS NOT HIS ONLY MEANS OF PURSUING HIS CLAIM; THAT HE/SHE IS WAIVING HIS/HER RIGHTS TO A MERITS HEARING ON THE EMPLOYEE'S CLAIM; THAT HE UNDERSTANDS THAT BY ENTERING INTO THIS STIPULATION AND JOINT PETITION HE IS WAIVING AND FOREVER RELINQUISHING ANY RIGHTS TO PURSUE HIS CLAIM FOR MEDICAL BENEFITS AND MONETARY COMPENSATION BENEFITS INCLUDING REHABILITATION, TRAINING, EDUCATION, RE-EMPLOYMENT AND DEATH BENEFITS; THAT HE BELIEVES THE FOREGOING JOINT PETITION TO BE IN HIS BEST INTEREST AND REQUESTS THE JOINT PETITION SUBMITTED HEREWITH TO BE APPROVED; AND THAT HE/SHE SPECIFICALLY WAIVES ANY HEARING ON THIS STIPULATION AND JOINT PETITION.

**JOINT PETITION**

Under the provisions of F.S. 440.20(11)(b), the parties hereby jointly petition the Judge of Compensation Claims for the entry of an Order approving this Stipulation which will discharge and release the Employer/Carrier from all further liability to the Employee/Claimant for medical benefits and monetary compensation benefits, as well as rehabilitation, training, education, re-employment and death benefits together with attorney's fees which have accrued to date upon payment of the

lump sum herein provided all of which shall not be subject to modification under F.S. 440.28. All pending claims are hereby dismissed with prejudice. Notwithstanding any time limitations under Chapter 440, Florida Statutes, the Employer/Carrier shall have 30 days from the date of approval by the Judge of Compensation Claims of this Joint Petition to pay the lump sum set forth in Stipulation.

This Stipulation and Joint Petition was signed by the Employer/Carrier on the 21st day of June, 1995 and by the Employee on the ________ day of ______________, 1995.

BRUCE ROXBY
Employee/Claimant

BOYD & JENERETTE, P.A.

E. Robert Williams
Attorney for Employer/Carrier

STATE OF FLORIDA

COUNTY OF BROWARD

Before me, the undersigned authority authorized to administer oaths and take acknowledgements personally appeared Bruce Roxby, on this 6th day of JUNE, 1995 who is personally known to me or who has produced: ______________________________ as identification and who did (did not) take an oath and who certifies that the information furnished by him as incorporated in the foregoing Stipulation is true and correct and that he (has read the Stipulation) (has had the Stipulation read to him) and believes the lump sum settlement to be in his best interest.

NOTARY PUBLIC

State of FLORIDA

(S E A L)
My Commission Expires:

MARCIA J MESAROS
My Commission CC334126
Expires Dec. 08, 1997
Bonded by ANB
800-852-5878

RECEIVED
OCT 02 1995
LONG TERM DISABILITY

ROXBY, BRUCE FOLLOW UP EVALUATION
OCTOBER 3, 1994

The patient has scheduled an appointment for follow up evaluation to assess his impairment rating. He claims that there is no change in symptoms in the cervical area or back or in the upper extremities. Pain continues to radiate down the UE's to the 4th and 5th digits. He denies extension of pain to the LE's.

PHYSICAL EXAMINATION: Is essentially as per Dr. Novick's assessment on 12/8/93. The exam is unchanged. Patient is ambulating well. He also heel walks and toe walks well.

DISABILITY RATING:
1. The patient was previously at MMI when assessed by Dr. Novick on 12/8/93. There has been essentially no change since that appointment. Based on the Minnesota Disability Rating Scale, patient has an impairment of 17.5 percent. Patient also had a Sun Life of Canada attending physician statement of disability group insurance form filled out. Since there has been no change since patient was seen by Dr. Novick, and I agree with how Dr. Novick completed the form, another form has been completed with the same results as had been done initially by Dr. Novick.

______________________________
Jay S. Mendelsohn, M.D.

JSM/dr

RECEIVED
AUG 02 1995
LONG TERM DISABILITY

ROXBY, BRUCE
MARCH 28, 1995

FOLLOW UP EVALUATION

Mr. Roxby was last seen by Dr. Mendelsohn on 10/3/94. He was seen today for re-evaluation and to have his long-term disability forms for Sun Life in Canada completed.

Mr. Roxby stated that during the past few weeks, he experienced low back pain radiating to both lower extremities with ambulation. He is able to stand for fifteen to twenty minutes, but walk only five minutes before the pain increases. The pain is less intense while bending forward. Sitting quietly decreases his pain. He reports that the neck pain with tingling involving the fourth and fifth fingers continues to be the same.

FINDINGS: Gait is cautious slow with the dorsum slightly forward. Posture is with shoulders and pelvis equal. Range of motion of the cervical spine is flexion 35 degrees, extension 30, lateral flexion 35 and rotation 60 degrees. Doing those movements, he complained of pain localized over the C7 spinous process. The range of motion of the lumbar spine is flexion 60 degrees, extension 0, lateral flexion 5 to 10. He is not able to relax the paraspinal muscles, especially the left one. The reflexes were equal and symmetrical for the upper and lower extremities with no pathological reflexes. Sensory examination reveals decrease to pin prick involving the fourth and fifth fingers bilaterally. No sensory deficit in the anterior or posterior neck. If it is the result of peripheral underlying neuropathy remains open at the present time since it is symmetrical. The muscle strength is in the 4 to 4+/5 bilateral and equal.

IMPRESSION:

1. Cervical lumbar sprain and strain.

RECOMMENDATIONS:

1. It was recommended to him to increase his cardiovascular output and perform an exercise program, especially within the water as the only means to decrease these pains.

George Bonis, M.D.

GB/jl

EQUIFAX SERVICES CLAIM — MEDICAL HISTORY 516-072

| QUOTEBACK (CLAIM, POL. # OR OTHER FILE IDENTIFICATION) | DATE REQUESTED | REQUESTER | REQUESTER'S PHONE NUMBER |
|---|---|---|---|
| 96878. | 7/18/95 | K. Hammerstrom | 617 4461570 |

| NAME OF PATIENT (LAST) | (FIRST) | (MIDDLE) | DATE OF BIRTH OR AGE | IF DEPENDENT, INSURED'S NAME |
|---|---|---|---|---|
| Roxby | Bruce | | 4/25/47 | |

| RESIDENCE ADDRESS | TELEPHONE NUMBER, IF AVAILABLE |
|---|---|
| 575 SE 10th Ave Deerfield Bch FL 33441 | |

| NAME OF MEDICAL SERVICE PROVIDER #1 | NAME OF MEDICAL SERVICE PROVIDER #2 |
|---|---|
| Grace Borca | |
| **ADDRESS OF MEDICAL SERVICE PROVIDER #1** | **ADDRESS OF MEDICAL SERVICE PROVIDER #2** |
| 3230 Stirling Rd Hollywood FL 33021 | |
| **PHONE NUMBER OF MEDICAL SERVICE PROVIDER #1** | **PHONE NUMBER OF MEDICAL SERVICE PROVIDER #2** |
| 963-5000 | |
| **IF MEDICAL SERVICE PROVIDER #1 IS A HOSPITAL, DATES CONFINED** | **IF MEDICAL SERVICE PROVIDER #2 IS A HOSPITAL, DATES CONFINED** |
| | |

ANY SPECIAL INSTRUCTIONS AND/OR OTHER MEDICAL PROVIDERS (NAME, ADDRESS, PHONE NUMBER, DATES CONFINED)

Med Recs, test results, office notes from 7/94 to present.

REQUESTER:

1. Attach medical authorization(s) before referring to Equifax Services.
2. If hospital records requested, Equifax will ask for Admission Face Sheet(s), History of Present Illness, Past Medical History, Admitting Physical Exam, Discharge Summary and Admission Face Sheet(s) of any prior admissions within past 5 years. If your needs differ, specify in Special Instructions above.
3. Separate reports and charges will be made for each Provider, if you list more than one.
4. This is a courier service, not an investigative service. If you need personal contact with your claimant, the physician or hospital, or evaluation and/or follow-up on leads, etc., call your Equifax Sales Representative or the nearest Equifax Services office.

SUN LIFE ID:617-255-0784 JUL 19'95 14:08

TRANSMIT CONFI .MATION REPORT

| | | |
|---|---|---|
| NO. | : | 004 |
| RECEIVER | : | 606 269 0306 |
| TRANSMITTER | : | SUN LIFE |
| DATE | : | JUL 19'95 14:08 |
| DURATION | : | 04'50 |
| MODE | : | STD |
| PAGES | : | 09 |
| RESULT | : | OK |

Sun Life of Canada
A member of Sun Financial Group

To: Sue M. / Kerrie (LTD) From: Jim

Date: 9/18/95 Time: 11:40

Group Policy Number & Name: #, 96878

Contact's Name: 3(954) 427-8733 Relationship: Ind

Phone Number: Bruce Roxby Group Office:

Claimant Name & Social Security Number: 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

MESSAGE: CNRL # 271293-20003-00

Asked For Sue M.

Said There is a "change" on his policy, and wants to discuss regarding the amounts

ACTION TO BE TAKEN:

please call - Thanks

COMMENTS TO BE MADE IN RETURN CALL:

Return Call Made (Date): 9/18/95 (Time): 3:05

(By Whom): S

No answer

Resolved

Further Action Required

If further action required, give details:

REPLY MESSAGE
(to be filed in claim file after entire call has been completed)

GR 18 318 25M 3/93 7/853

ROXBY 0370

**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☑ Um 10:30 Outgoing ☐

Certificateholder Roxby

Spoke With ell

Employer's Name

Branch/Address

Policy No.(s) 91878

Phone Number

Soc. Sec. #

Claim #

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other

Insured ☐ Dependent ☐ Name SEP 2 . 1995

Message WC Change - lumpsum settlement
I/C - 10.30
ell is sending settlement letter

☐ Reply no later than:

**Received By**

Name and Section

Date

Referred To

Time

Date

X-HICL 70403

ROXBY 0371

**EQUIFAX** MEDICAL HISTORY REPORT

Acct. 516072 –

PRIVILEGED FILE

DIST / AGCY. K. HARRINGTON

FILE OR POL. NO. / CLAIM NO. 96878

LEXINGTON KY

| | Last | First | MI | SSN |
|---|---|---|---|---|
| APPLICANT (CLAIMANT): | ROXBY | BRUCE | | |
| PATIENT: | ROXBY | BRUCE | | |
| Address: | | | | |
| Date of Birth: | 04/25/47 | | | |
| Doctor: | BORIS, GEORGE – Assoc Physical Medicine | 305-963-5000 | | |
| Address: | 3230 STIRLING RD. HOLLYWOOD FL. 33021 | | | |

Customer mailed 07/19/95
Inquiry received 07/19/95
Handing started
Handling completed

JUL 3 1 1995 3082

| (1) Dates Attended MONTH | YEAR | Complaints and Abnormal Physical Findings (include all illnesses reported) | Duration of Illness | Diagnosis | Describe Treatment or Operation |
|---|---|---|---|---|---|
| 7/25 | 1994 | Neck-shoulder arm pain | | | |
| 10/3 | 1994 | | | | |
| 3/28 | 1995 | Low back pain | | | |

*** PLEASE RETURN THIS FORM WITH ALL CORRESPONDENCE ***

RECEIVED AUG 02 1995 LONG TERM DISABILITY

PLEASE PAY SPECIAL ATTN. TO: MED RECDS, TEST RES, OFFICE NOTES FROM 7/94-PRESENT

(2) MEASUREMENTS - DATE LAST TAKEN: HEIGHT: (IN SHOES) WEIGHT: (CLOTHED) LBS

PHOTO COPIES ONLY

(3) Laboratory Findings (including X-ray, EKG, and pathological reports, etc., with dates):

(4) Present condition, if known (include sequelae and complications of above reported illnesses):

CLAIM PENDING

(5) Have any other physicians or surgeons been consulted? If so, please give name(s), date, and nature of disorder.

(6) Please record any other information (known previous illness, injury, operation, deformities or amputations) which might have a bearing on this person's health

K Harrington AUG 10 1995

(7) Tobacco usage (if available, please record):

☐ Applicant uses tobacco — If yes, what? ______ Daily usage ______ How Long? ______

☐ Applicant does not use tobacco — If stopped, when? ______ Why? ______

☐ Unable to determine tobacco usage

This report contains patient—physician medical information and is strictly confidential. It is furnished as one factor to consider in connection with a legitimate business transaction with the subject. While information contained in this report has been secured from sources believed to be reliable and is believed to be correct, no representation or guarantee of accuracy or completeness of information is made. Equifax does not assume any part of the user's business risk, and Equifax shall not be liable for negligence or for any loss or expense whatsoever resulting directly or indirectly from the use of this report.

Form 21688—10-92 Equifax Services Inc. USA

MS

SunLife of Canada
A member of Sun Financial Group

Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181
Tel: 1-800-247-6875

## Attending Physician's Statement of Disability
Group Insurance

RECEIVED
MAR 30 1995
LONG TERM DISABILITY

B Roxby
96878

The patient is responsible for the completion of this form without expense to Sun Life of Canada

Please print

Name of patient: BRUCE A. ROXBY Date of birth: 04, 25, 47
Patient's address: 525 SE 10 AV (No., Street) [illegible] (City) FL (State or Province) 33441 (Zip Code)

Employer's name: J.M. FAMILY ENT Control number:

I hereby authorize release of information requested on this form, by the below named physician for the purpose of claim processing.
Signed (Patient): [signature] Date: 3 28 95

**1. History**

(a) When did symptoms first appear or accident happen? Mo. 5 Day 25 19 93
(b) Date patient ceased work because of disability Mo. 5 Day 25 19 93
(c) Has patient ever had same or similar condition? ☑ Yes ☐ No If "Yes" state when and describe. MVA 5 years ago
(d) Is condition due to injury or sickness arising out of patient's employment? ☑ Yes ☐ No ☐ Unknown
(e) If condition due to automobile accident, indicate state in which it occured
(f) Names and addresses of other treating physicians

**2. Diagnosis (including any complications)**

(a) Date of last examination Mo. 03 Day 28 19 95
(b) Diagnosis (including any complications) myofascial pain / facet syndrome
(c) If disability is due to pregnancy what is expected/was delivery date Mo. Day 19
(d) Please describe any complications that would extend this disability longer than a normal pregnancy.
(e) Subjective symptoms
(f) Objective findings (including current X-rays, EKG's, Laboratory Date and any clinical findings)
Lumbar paraspinal muscle spasms
↓ ROM of L spine c̄ no extension

**3. Dates of Treatment**

(a) Date of first visit Mo. 6 Day 14 19 93
(b) Date of last visit Mo. Day 19
(c) Frequency ☐ Weekly ☐ Monthly ☐ Other (specify)

**4. Nature of Treatment** (including surgery and medications prescribed, if any)

**5. Progress**

(a) Has patient ☐ Recovered? ☐ Improved? ☑ Unchanged? ☐ Retrogressed?
(b) Is patient ☑ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?
(c) Has patient been hospital confined? ☐ Yes ☑ No If "Yes", give name and address of hospital
Confined from through

**6. Cardiac (if applicable)**

(a) Functional capacity (American Heart Association) ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)
(b) Blood pressure (last visit) Systolic / Diastolic

K Harrington APR 06 1995

ROXBY 0374

**7. Physical Impairment** ("as defined in Federal Dictionary of Occupational Titles)

- ☐ Class 1 — No limitation of functional capacity, capable of heavy work* — No restrictions (0-10%)
- ☐ Class 2 — Medium manual activity* — (15-30%)
- ☐ Class 3 — Slight limitation of functional capacity, capable of light work* — (35-55%)
- ☑ Class 4 — Moderate limitation of functional capacity, capable of clerical administrative "sedentary") activity — (60-70%)
- ☐ Class 5 — Severe limitation of functional capacity, incapable of minimal (sedentary*) activity — (75-100%)
- ☐ Remarks

**8. Mental/Nervous Impairment** (if applicable)

(a) Please define "stress" as it applies to this claimant

(b) What stress and problems in interpersonal relations has claimant had on job?

- ☐ Class 1 — Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 — Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
- ☐ Class 3 — Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☐ Class 4 — Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
- ☐ Class 5 — Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
- ☐ Remarks

**9. Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof?** ☐ Yes ☐ No

**10. Prognosis**

| | Patient's job | Any other job |
|---|---|---|
| (a) Is patient now totally disabled? | ☑ Yes ☐ No | ☐ Yes ☑ No |
| (b) If not now totally disabled, when was patient able to resume work? | ☐ Full-time ☐ Part-time ___ Mo Day Year | ☐ Full-time ☑ Part-time ___ Mo Day Year |
| (c) What duties of patient's job is he/she incapable of performing? *Light duty, no heavy lifting* | | |
| Do you expect a fundamental or marked change in the future? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| (1) If yes, when will patient recover sufficiently to perform duties? ___ Mo Day Year | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never ___ Mo Day Year |
| (2) If no, please explain | | |

**11. Rehabilitation**

(a) Is patient a suitable candidate for further rehabilitation services? (i.e. cardiopulmonary program, speech therapy, etc.)
☐ Yes ☐ No

(b) Would job modification enable patient to work with impairment? ☐ Yes ☑ No
If yes, explain under remarks.

(c) When could trial employment commence? ___ Mo. Day Year — Patient's job: ☐ Full-time ☐ Part-time — Any other job: ☐ Full-time ☑ Part-time ___ Mo. Day Year

(d) Would vocational counseling and/or retraining be recommended? ☐ Yes ☐ No

**12. Remarks:**

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

| *George Bouie* | *MD / Pain medicine* | *963 5000* |
|---|---|---|
| Name (attending physician) / Please print | Degree/Specialty | Telephone |

| *3230 Stirling Rd* | *Hollywood* | *FL* | *33021* |
|---|---|---|---|
| Street address | City or Town | State or Province | Zip code or Postal code |

Signature: [signature] Date: *3-28-95*

Sun Life of Canada®
A member of Sun Financial Group

To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.
b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.
c) Final reply: Write final comments and return to Claims.

To: Kerrie LTD From: Christine
Date: 4-7 Time: 1:32
Group Policy Number & Name: 96878
Contact's Name: Bruce Roxby Relationship: Self
Phone Number: 305 427 8733 Group Office: TAMPA
Claimant Name & Social Security Number: 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

MESSAGE: 271293 2000300

please call w/Status

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: all set.

Return Call Made - (Date): 4/7/95 (Time): 3 40
(By Whom): KerrieL
✓ Resolved
___ Further Action Required

If further action required, give details:

X-GR18/318

FOLLOW UP COPY
(GSC Keeps)

**Sun Life of Canada**
*A member of Sun Financial Group*

One Sun Life Executive Park
Wellesley Hills, MA 02181
SC 3208

Tel: 1-800-247-6875

| Group No. | Certificate No. | Social Security No. | Date |
|---|---|---|---|
| | | | 1/7/75 |
| Name | | | |

1. _____ Attached are claim forms for completion.

2. _____ Please have the attached form completed and returned to us as soon as possible for further consideration of benefits. Please be sure that all sections of the form are filled in completely to avoid a delay on this claim.

3. _____ Please complete the highlighted areas and return to us as soon as possible for further consideration of benefits.

4. _____ We have not yet received the ____________________ requested on ________________.

5. _____ We have not yet received a response to our letter sent on ____________________. A copy of our previous correspondence is attached.

6. _____ Thank you for your payment of $____________. The overpayment has now been reduced to $________________.

7. _____ We have not yet received a reply regarding the overpayment of $____________. Please contact this office regarding repayment of the outstanding amount.

8. _____ Please furnish us with a copy of the Social Security Award or Denial Notice as soon as it becomes available, including Dependent Awards.

9. _____ If application has not yet been made for Social Security Disability/Retirement, may we suggest that the claimant apply as soon as possible as we feel he/she may be eligible. A copy of the Administration's decision should be sent to us when received.

10. _____ Please send a copy of the Workers' Compensation Award as soon as it becomes available.

11. ✓ Please advise on the status of application to Social Security. If an award or denial has been received, please forward a copy of the award/denial notice so we may correctly recalculate your claim.

12. _____ Other. ____________________

Sincerely,

[signature]

Group LTD Claims
SC 3208

CC: ____________________

X-LTD35/1 (5/95)

AUTHORIZATION TO OBTAIN INFORMATION

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, employer or Social Security Administration, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or any other non-medical information of me to give to Sun Life Assurance Company of Canada or its legal representative, any and all such information.

I UNDERSTAND the information obtained by use of the Authorization will be used by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my application, claim, or as may be otherwise lawfully required or as I may further authorize.

I KNOW that I may request to receive a copy of this Authorization.

I AGREE that a photographic copy of this Authorization shall be as valid as the original.

I ACKNOWLEDGE receipt of the Notice of Disclosure of Information and Notice to Persons Applying for Insurance.

I AGREE this Authorization shall be valid for two and one half years from the date shown below.

---

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime

---

SIGNED THIS 28TH DAY OF MARCH 19 95

Signature of Insured/Beneficiary

Sun Life of Canada
Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Social Security Administration

3-07-95

# EXPLANATION OF DETERMINATION

| Name: | NH's Name (CDB/DWB): | SSN: | Claim Type: |
|---|---|---|---|
| Bruce A. Roxby | | 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 | DIB |

In addition to the evidence listed in our previous notice, the following information was used in evaluating your claim:

Cecil Sherk, M.D. response received 01/23/1995
Roderick Santa Maria, M.D. report received 03/02/1995

We have determined that your condition is not severe enough to keep you from working. We considered the medical record and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.

You state that you are disabled and unable to work because of constant pain in neck, shoulders, arms, hands and back and depression. We have reviewed the medical record, and it shows that you have received treatment for your condition and that you may not be capable of performing heavy work. We realize that you also feel that you may not be capable of working at this time. However, the medical record shows that you are able to communicate, act in your own interests, adjust to ordinary emotional stresses, get along with others and do your usual daily activities without assistance. The medical record shows that you are capable of performing other work which does not require heavy lifting and might only require a very short, on-the-job training period. Therefore your claim for disability is denied.

If your condition gets worse and keeps you from working, call or visit any Social Security Office about filing another application.

Although your claim has been denied, the Florida Department of Health and Rehabilitative Services (HRS) may be able to provide assistance. HRS is a state agency that provides a wide variety of health and social services to the citizens of Florida. To find out more about the services available, contact your local HRS office. It is listed in the telephone book under "Florida" or "Department of Health and Rehabilitative Services".

If You Want Help With Your Appeal

You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

Dec 10 1994
Social Security Number
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

To: Department of Health and Human Services
Social Security Administration

From: Bruce A. Roxby
525 Se. 10 Ave.
Deerfield Beach Florida, 33441

Re: Denial of Disability Insurance Benefits.

To Whom It May Concern;

I, Bruce A. Roxby, of Deerfield Beach Fl.,hereby request a reconsideration of my claim for disability. It is rediculous to assume that I am employable. I have been unable to work since May 25 1993. My employer, J. M. Pontiac, has many "light duty" jobs that could have been assigned to me. They felt however, that I did not meet even the minimum requirements. I have only a high school education and some technical training as an auto mechanic and as an air traffic controller. I no longer meet the physical requirements for either of these jobs. I have worked for 30 years and can assure you that I would be working if I were able to. To date I have recieved only a "light duty, part time" work release from the doctor.

Thank You

Bruce A. Roxby
SSN-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



Sun Life
of Canada
Shining over America since 1895

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

March 17, 1995

Bruce Roxby
525 SE 10th Ave
Deerfield Beach FL 33441

Re: Policy No. 96878-GD-Long Term Disability
Claimant: Bruce Roxby

Dear Mr. Roxby:

We still have not received the completed Attending Physician's Statment and updated Social Security information sent on January 17, 1995. This information is needed in order to extend benefits beyond March 31, 1995.

If we do not hear from you regarding this matter within 30 days from the date of this letter, we shall assume you do not wish to pursue this claim and we shall close our file.

If you should have any questions, please contact this office at 1-800-247-6875.

Sincerely,

Kerrie A. Harrington
Claims Examiner
Group L.T.D. Claims

cc: JM Family

COPY



Sun Life of Canada
A member of Sun Financial Group

Sun Life of Canada
Group Disability Benefits – LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: 1-800-247-6875

| Group No. | Certificate No. | Social Security No. | Date 1/17/95 |
|---|---|---|---|
| Name | | | |

1. ______ Attached are claim forms for completion.

2. ______ Please have the attached form completed and returned to us as soon as possible for further consideration of benefits. Please be sure that all sections of the form are filled in completely to avoid a delay on this claim.

3. ______ Please complete the highlighted areas and return to us as soon as possible for further consideration of benefits.

4. ______ We have not yet received the ______________________ requested on __________________.

5. ______ We have not yet received a response to our letter sent on ______________________________. A copy of our previous correspondence is attached.

6. ______ Thank you for your payment of $______________. The overpayment has now been reduced to $__________________.

7. ______ We have not yet received a reply regarding the overpayment of $______________. Please contact this office regarding repayment of the outstanding amount.

8. ______ Please furnish us with a copy of the Social Security Award or Denial Notice as soon as it becomes available, including Dependent Awards.

9. ______ If application has not yet been made for Social Security Disability/Retirement, may we suggest that the claimant apply as soon as possible as we feel he/she may be eligible. A copy of the Administration's decision should be sent to us when received.

10. ______ Please send a copy of the Workers' Compensation Award as soon as it becomes available.

11. ✓ Please advise on the status of application to Social Security. If an award or denial has been received, please forward a copy of the award/denial notice so we may correctly recalculate your claim.

12. ✓ Other. Please advise on your Social Security Appeal status. thank you

Sincerely,

Group Disability Benefits – LTD
SC 3208

CC: ______________________ APS / SS

X-LTD36/1 (10/94)

ROXBY 0382

**Sun Life of Canada**
*A member of Sun Financial Group*

Sun Life of Canada
Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: 1-800-247-6875

| Group No | Certificate No. | Social Security No. | Date |
|---|---|---|---|
| | 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 | | 1/12/94 |
| Name | | | |

1. _____ Attached are claim forms for completion.

2. _____ Please have the attached form completed and returned to us as soon as possible for further consideration of benefits. Please be sure that all sections of the form are filled in completely to avoid a delay on this claim.

3. _____ Please complete the highlighted areas and return to us as soon as possible for further consideration of benefits.

4. _____ We have not yet received the ______________ requested on ______________.

5. _____ We have not yet received a response to our letter sent on ______________. A copy of our previous correspondence is attached.

6. _____ Thank you for your payment of $______________. The overpayment has now been reduced to $______________.

7. _____ We have not yet received a reply regarding the overpayment of $______________. Please contact this office regarding repayment of the outstanding amount.

8. _____ Please furnish us with a copy of the Social Security Award or Denial Notice as soon as it becomes available, including Dependent Awards.

9. _____ If application has not yet been made for Social Security Disability/Retirement, may we suggest that the claimant apply as soon as possible as we feel he/she may be eligible. A copy of the Administration's decision should be sent to us when received.

10. _____ Please send a copy of the Workers' Compensation Award as soon as it becomes available.

11. _____ Please advise on the status of application to ______________. If an award or denial has been received, please forward a copy of the award/denial notice so we may correct & recalculate your claim.

12. ✓ Other. Please advise on the status of your Social Security appeal.
Thank you!

Sincerely,

Group Disability Benefits - LTD
SC 3208

CC: ______________

X-LTD35/1 (10/94)

ROXBY 0383

-06197-BSS Document 20 Entered on FLSD Docket 10/23/2000 Pag

Sun Life of Canada
A member of Sun Financial Group

Executive Park
Hills, MA 02181
Tel: 1-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

RECEIVED
OCT 05 1994
LONG TERM DISABILITY

# Attending Physician's Statement of Disability
## Group Insurance

The patient is responsible for the completion of this form without expense to Sun Life of Canada

Please print

Name of patient: BRUCE A. ROXBY — Date of birth: 04 25 47

Patient's address: 525 SE 10 AV DEERFIELD BCH FL 33441 (No. / Street / City / State or Province / Zip Code)

Employer's name: J. M. PONTIAC — Control number:

I hereby authorize release of information requested on this form, by the below named physician for the purpose of claim processing. Signed (Patient) [signature] Date 3 OCT 94

**1. History**

(a) When did symptoms first appear or accident happen? Mo. 5 Day 25 19 93

(b) Date patient ceased work because of disability Mo. 5 Day 25 19 93

(c) Has patient ever had same or similar condition? ☑ Yes ☐ No If "Yes" state when and describe: motor vehicle accident 5 yrs ago with C6-7 herniated disc

(d) Is condition due to injury or sickness arising out of patient's employment? ☑ Yes ☐ No ☐ Unknown

(e) If condition due to automobile accident, indicate state in which it occured

(f) Names and addresses of other treating physicians

**2. Diagnosis** (including any complications)

(a) Date of last examination Mo 10 Day 3 19 94

(b) Diagnosis (including any complications) left lumbar facet syndrome, myofascial pain syndrome

(c) If disability is due to pregnancy what is expected/was delivery date Mo Day 19

(d) Please describe any complications that would extend this disability longer than a normal pregnancy

(e) Subjective symptoms

(f) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings) Lumbar paraspinal muscle spasm, decreased rotation/extension to left, bulging C6-7 disc [illegible]

**3. Dates of Treatment**

(a) Date of first visit Mo 6 Day 14 19 93

(b) Date of last visit Mo. Day 19

(c) Frequency ☐ Weekly ☐ Monthly ☐ Other (specify)

**4. Nature of Treatment (including surgery and medications prescribed, if any)** [illegible] Physical Therapy

**5. Progress**

(a) Has patient ☐ Recovered? ☑ Improved? ☐ Unchanged? ☐ Retrogressed?

(b) Is patient ☑ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?

(c) Has patient been hospital confined? ☐ Yes ☑ No If "Yes" give name and address of hospital

Confined from ______ through ______

**6. Cardiac** (if applicable)

(a) Functional capacity (American Heart Association) ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)

(b) Blood pressure (last visit) Systolic ______ Diastolic ______

7. **Physical Impairment** ("as defined in Federal Dictionary of Occupational Titles)

- ☐ Class 1 — No limitation of functional capacity; capable of heavy work* ..... No restrictions (0-10%)
- ☐ Class 2 — Medium manual activity* ..... (15-30%)
- ☐ Class 3 — Slight limitation of functional capacity; capable of light work* ..... (35-55%)
- ☑ Class 4 — Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity ..... (60-70%)
- ☐ Class 5 — Severe limitation of functional capacity; incapable of minimal (sedentary*) activity ..... (75-100%)
- ☐ Remarks:

8. **Mental/Nervous Impairment** (if applicable)

(a) Please define "stress" as it applies to this claimant.

(b) What stress and problems in interpersonal relations has claimant had on job?

- ☐ Class 1 — Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 — Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
- ☐ Class 3 — Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☐ Class 4 — Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
- ☐ Class 5 — Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
- ☐ Remarks:

9. Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof? ☑ Yes ☐ No

10. **Prognosis**

| | Patient's job | Any other job |
|---|---|---|
| (a) Is patient now totally disabled? | ☑ Yes ☐ No | ☐ Yes ☑ No |
| (b) If not now totally disabled, when was patient able to resume work? *light duty* | ☐ Full-time ☑ Part-time ___ Mo ___ Day ___ Year | ☐ Full-time ☐ Part-time *12* Mo *8* Day *93* Year |
| (c) What duties of patient's job is he she incapable of performing? *light duty only, no lifting, lifting weights to frequently repetition* | | |
| Do you expect a fundamental or marked change in the future? | ☐ Yes ☑ No | ☐ Yes ☐ No |
| (1) If yes, when will patient recover sufficiently to perform duties? ___ Mo ___ Day ___ Year | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never | ☐ 1 mo. ☐ 3-6 mo ☐ 1-3 mo ☐ Never ___ Mo ___ Day ___ Year |
| (2) If no, please explain | | |

11. **Rehabilitation**

(a) Is patient a suitable candidate for further rehabilitation services? i.e. cardiopulmonary program, speech therapy, etc.) ☐ Yes ☐ No

(b) Would job modification enable patient to work with impairment? ☐ Yes ☑ No
If yes, explain under remarks

| | | Patient's job | Any other job |
|---|---|---|---|
| (c) When could trial employment commence? | *12* Mo *8* Day *93* Year | ☐ Full-time ☐ Part-time | ☐ Full-time ☑ Part-time ___ Mo ___ Day ___ Year |

(d) Would vocational counseling and/or retraining be recommended? ☑ Yes ☐ No

12. **Remarks:**

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime

| *Jay S. Mendelichen* | *M.D. Physiatry* | *963-1200* |
|---|---|---|
| Name (attending physician) Please print | Degree Specialty | Telephone |
| *523 Sterling Rd* | *Hollywood* | *FL* | *33021* |
| Street address | City or Town | State or Province | Zip code or Postal code |

*[signature]*
Signature

*10/3/94*
Date

AUTHORIZATION TO OBTAIN INFORMATION

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, employer or Social Security Administration, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or any other non-medical information of me to give to Sun Life Assurance Company of Canada or its legal representative, any and all such information.

I UNDERSTAND the information obtained by use of the Authorization will be used by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my application, claim, or as may be otherwise lawfully required or as I may further authorize.

I KNOW that I may request to receive a copy of this Authorization.

I AGREE that a photographic copy of this Authorization shall be as valid as the original.

I ACKNOWLEDGE receipt of the Notice of Disclosure of Information and Notice to Persons Applying for Insurance.

I AGREE this Authorization shall be valid for two and one half years from the date shown below.

---

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

---

SIGNED THIS 3rd DAY OF OCT 19 94.

[signature]
Signature of Insured/Beneficiary

Sun Life of Canada
Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

RECEIVED
OCT 05 1994
LONG TERM DISABILITY

SOCIAL SECURITY NOTICE

---

Department of Health and Human Services
Social Security Administration

---

Date: MAR 2 4 1994

Social Security Number
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

Bruce A Roxby
225 SE 10 Ave

Deerfield Bch, FL 33441

(X) Disability Insurance Benefits
( ) Disabled Widow/Widower Benefits
( ) Childhood Disability Benefits

We have determined that you are not entitled to disability benefits based on the claim that you filed. The attached pages explain why we decided that you are not disabled. However, you may appeal this determination if you still think you are disabled.

The determination on your claim was made by an agency of the State. It was not made by your own doctor or by other people or agencies writing reports about you. However, any evidence they gave us was used in making this determination. Doctors and other people in the State agency who are trained in disability evaluation reviewed the evidence and made the determination based on Social Security law and regulations. The law is explained on the next page.

In addition, you are not entitled to any other benefits based on this application. If you applied for other benefits, you will receive a separate notice when a decision is made on that claim(s).

YOUR RIGHT TO APPEAL

If you think we are wrong, you can ask that the determination be looked at by a different person. This is called a reconsideration. IF YOU WANT A RECONSIDERATION, YOU MUST ASK FOR IT WITHIN 60 DAYS FROM THE DATE YOU RECEIVE THIS NOTICE. IF YOU WAIT MORE THAN 60 DAYS, YOU MUST GIVE US A GOOD REASON FOR THE DELAY. Your request must be made in writing through any Social Security office. Be sure to tell us your name, Social Security number and why you think we are wrong. If you cannot write to us, call a Social Security office or come in and someone will help you. You can give us more facts to add to your file. However, if you do not have the evidence yet, you should not wait for it before asking for a reconsideration. You may send the evidence in later. We will then decide your case again. You will not meet with the person who will decide your case. Please read the enclosed leaflet for a full explanation of your right to appeal.

NEW APPLICATION

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. You might lose benefits if you file a new application instead of filing an appeal. Therefore, if you think this decision is wrong, you should ask for an appeal within 60 days.

Bruce A Roxby 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 DIB

If you have any questions, call, write, or visit, any Social Security office. Most questions can be handled by telephone or mail. If you visit a Social Security office, please take this notice with you.

## REQUIREMENTS FOR DISABILITY BENEFITS

DISABILITY INSURANCE BENEFITS:
To be considered disabled, a person must be unable to do any substantial gainful work due to a medical condition which has lasted or is expected to last for at least 12 months in a row. The condition must be severe enough to keep a person from working not only in his or her usual job, but in any other substantial gainful work. We look at the person's age, education, training and work experience when we decide whether he or she can work.

The condition must be disabling at a time when the person meets the earnings requirement. If you were not disabled when the earnings requirement was met, we have enclosed a leaflet which explains the earnings requirement and tells how Social Security credits are earned.

DISABLED WIDOW OR WIDOWER BENEFITS:
To be considered disabled, a widow, widower or surviving divorced spouse (age 50 to 60) must have a physical or mental condition severe enough to keep a person from working. The condition must have lasted or be expected to last for at least 12 months in a row.

The person's disability must start:

* not later than 7 years after the month of death of the wife or husband, or,
* for a widow, widower or surviving divorced spouse formerly entitled to mother's or father's benefits not later than 7 years after the month those benefits ended, or;
* for a widow/widower or surviving divorced spouse who was previously disabled and who becomes disabled again, not later than 7 years after the prior period of disability ended.

CHILDHOOD DISABILITY BENEFITS
Childhood disability benefits may be paid to a person age 18 or older if the person has a disability which began before age 22 or within 84 months of the end of an earlier period of childhood disability. The condition, whether physical or mental, must be severe enough to keep the person from doing any substantial gainful work. We look at the person's age, education and previous training when we decide whether he or she can work. In addition, the condition must have lasted or be expected to last for at least 12 months in a row.

## OTHER IMPORTANT INFORMATION

Definitions of disability are not the same in all government and private disability programs. Government agencies must follow the laws that apply to their own disability programs. A finding by a private organization or other government agency that a person is disabled does not necessarily mean that the person meets the disability requirements of the Social Security Act.

No benefits may be paid to a wife, husband or child unless the wage earner or self-employed person is entitled to Social Security disability insurance benefits.

DORCIN SHERMAN
Regional Commissioner

[illegible]
[illegible] SSA Publication No. 05-[illegible]

702
Form SSA-L443-U2 [illegible]

ROXBY 0388

DEPARTMENT OF HEAL... AND HUMAN SERVICES
Social Security Administration

## EXPLANATION OF DETERMINATION

| Name: | NH's Name (COB/DWB): | SSN: | Claim Type: |
|---|---|---|---|
| Bruce A Roxby | | 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 | DIB |

RECEIVED
OCT 05 1994
LONG TERM DISABILITY

The following evidence was used in evaluating your claim:

Dr. Alan Novick response received 02/25/1994
Dr. Arnold Lang response received 03/01/1994
Dr. Donald E. Norman response received 02/25/1994

We have determined that your condition is not severe enough to be considered disabling. In deciding this, we considered the medical records, your statements, and how your condition affects your ability to work.

You state that you are disabled and unable to work because of herniated bulging discs.,lower back pain,neck pain,and spinal chord injury. We have reviewed the above medical record and it shows that your condition does affect your ability to work. However, your condition can be expected to improve with medical treatment and by following your doctor's advice and permit you to perform normal work-related activities without any serious limitations. Accordingly, your claim for disability is denied.

If your condition gets worse and keeps you from working, call or visit any Social Security Office about filing another application.

Although your claim has been denied, the Florida Department of Health and Rehabilitative Services (HRS) may be able to provide assistance. HRS is a state agency that provides a wide variety of health and social services to the citizens of Florida. To find out more about the services available, contact your local HRS office. It is listed in the telephone book under "Florida" or "Department of Health and Rehabilitative Services"

If You Want Help With Your Appeal

You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

SunLife of Canada
A member of Sun Financial Group

To Originate: Write message, remove pink (Follow-up Copy) and forward white and canary copy

b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

To: LTD (Kerry)

From: Marie

Date: 10/7

Time: 9:20

Group Policy Number & Name: 96878 J.M. Family

Contact's Name: Bruce Roxby

Relationship: Claimant

Phone Number: 305-627-8733

Group Office: Florida

Claimant Name & Social Security Number: 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

MESSAGE:

would like to discuss

please call

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL:

Return Call Made (Date): 10/11/94 (Time): 3:48

(By Whom): C. Bruns

✓ Resolved

Further Action Required

Kerri spoke w/ ee on 10/12/94

If further action required, give details:

X-GR18/318

REPLY MESSAGE
(to be filed in claim file after entire call has been completed)

ROXBY 0390



Sun Life of Canada
Group Disability Benefits – LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: 1-800-247-6875

| Group No. | Certificate No. | Social Security No. | Date |
|---|---|---|---|
| [illegible] 73 | 225 T- 1533 | | [illegible]/94 |
| Name [illegible] | | | |

1. _____ Attached are claim forms for completion.

2. _____ Please have the attached form completed and returned to us as soon as possible for further consideration of benefits. Please be sure that all sections of the form are filled in completely to avoid a delay on this claim.

3. _____ Please complete the highlighted areas and return to us as soon as possible for further consideration of benefits.

4. _____ We have not yet received the _______________ requested on _______________.

5. _____ We have not yet received a response to our letter sent on _______________. A copy of our previous correspondence is attached.

6. _____ Thank you for your payment of $_______________. The overpayment has now been reduced to $_______________.

7. _____ We have not yet received a reply regarding the overpayment of $_______________. Please contact this office regarding repayment of the outstanding amount.

8. _____ Please furnish us with a copy of the Social Security Award or Denial Notice as soon as it becomes available, including Dependent Awards.

9. _____ If application has not yet been made for Social Security Disability/Retirement, may we suggest that the claimant apply as soon as possible as we feel he/she may be eligible. A copy of the Administration's decision should be sent to us when received.

10. _____ Please send a copy of the Workers' Compensation Award as soon as it becomes available.

11. _____ Please advise on the status of application to _______________. If an award or denial has been received, please forward a copy of the award/denial notice so we may correctly recalculate your claim.

12. X Other. Please advise on the status of your appeal concerning Social Security. If you need assistance, please call.

Sincerely,

[signature]

Group Disability Benefits – LTD
SC 3208

CC: _______________

LTD 3571 (15M-4-93) 71112

ROXBY 0391

 SunLife of Canada
A member of Sun Financial Group

RECEIVED OCT 05 1994 LONG TERM DISABILITY
On Sun Life ... SC3208 Wellesley Hills, MA 02181

## Statement of Information - Update

To Be Completed by Insured:

Insured BRUCE ROXBY Policy No. 96878 -GD

Insured's Social Security No. 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

Insured's Address 525 SE 10 AV. DEERFIELD BCH. FL. 33441

Insured's Phone Number (Area Code 305) 427-8733 Policyholder J.M. FAMILY ENTERPRISE'S

A. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training? Yes ☐ No ☑
If Yes, please describe

B. Are you currently working or have you worked at any time since the inception of your disablity for any employer or in your own business? Yes ☐ No ☑

If Yes, please describe

C. The following questions should be answered to reflect your current income status. Please answer "yes" or "no" to each source of income other than Sun Life Long Term Disability Benefits. For every "yes" answer indicate the current amount of each periodic benefit (monthly, weekly, etc.).

| | | Yes | Current Amount | Specify Weekly/Monthly | No |
|---|---|---|---|---|---|
| 1 | Social Security or Railroad Retirement Act? | | | | |
| | a) primary (amount for person disabled) | ☐ | $ | | ☑ |
| | b) dependent | ☐ | $ | | ☑ |
| 2 | Workers' Compensation or similar legislation? | ☑ | $ 425.00 | WEEK | ☐ |
| 3 | Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ | | ☑ |
| 4 | Veteran's Administration or Welfare Plan? | ☐ | $ | | ☑ |
| 5 | Monthly Income Disability Benefit from any Group Life Policies? | ☐ | $ | | ☑ |
| 6 | Federal, State, Provincial, Municipal or other Government Agency? | ☐ | $ | | ☑ |
| 7 | Pension or Retirement Allowance? | ☐ | $ | | ☑ |
| 8 | Wages, Salary, Commissions and fees for Personal Services Rendered? | ☐ | $ | | ☑ |
| 9 | Other Sources? | ☐ | $ | | ☑ |

D. For any "YES" answer in item "C", provide the following information:

| NAME & ADDRESS OF SOURCE | POLICY OR CLAIM NO., IF ANY | EXACT DATE BENEFITS COMMENCED OR WILL COMMENCE |
|---|---|---|
| I.T.T HARTFORD. P.O. BOX 48305 JACKSONVILLE FL. 32247-8305 | 535 C 81041 | 5-25-93 |

Certain states provide that any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

Date 3 OCT 94 Signature Bruce A Roxby

LTD 35/28 (SH-2-92) 67569



ORIGIN (POSTAL

Day of Delivery

Flat Rate Envelope

Postage

Weight

COD

DELIVERY (POSTAL

Delivery Attempt

Time

Employee Signature

Date of Delivery

ADDRESSEE COPY

CUSTOMER USE ONLY

TO FILE A CLAIM FOR DAMAGE OR LOSS OF CONTENTS, YOU MUST PRESENT THE ARTICLE, CONTAINER AND PACKAGING

WAIVER OF SIGNATURE (Domestic Only) I wish delivery to be made without obtaining the signature of the addressee or the addressee's agent (if in the judgement of the delivery employee, the article can be left in a secure location) and I authorize the delivery employee to sign that the shipment was delivered and understand that the signature of the delivery employee will constitute valid proof of delivery.

NO DELIVERY

WEEKEND HOLIDAY

Customer Signature

FROM: (PLEASE PRINT) PHONE

BRUCE ROXBY

TO: (PLEASE PRINT) PHONE

LABEL 11 B 5/94

For Pickup or Tracking Call 1-800-222-1811

SunLife of Canada
A member of Sun Financial Group

1 To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.
b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.
c) Final reply: Write final comments and return to Claims.

To: Kerrie Sun LTD

From: Lui

Date: 10-11-9V

Time: 10:24

Group Policy Number & Name: 96378

Contact's Name: Bruce Roxby

Relationship: Claim

Phone Number: 305-427-8733

Group Office: Florida

Claimant Name & Social Security Number: 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

MESSAGE: Sent update info. Did you receive? When can expect a check? Please call to discuss.

Thanks

271293-20003-00

ACTION TO BE TAKEN:

Sue M. - Funeral

COMMENTS TO BE MADE IN RETURN CALL:

Return Call Made (Date): 10/12 (Time): 9:40

(By Whom): Kerrie

✓ Resolved

Further Action Required

If further action required, give details:

X-GR16/316

FOLLOW UP COPY (GSC Keeps)

ROXBY 0395

## RECORD OF TELEPHONE CONVERSATION

Phone ☐ In Person ☐ Incoming ☒ Outgoing ☐

Certificateholder ____ Spoke With Bruce Roxby

Employer's Name ____ Branch/Address ____

Policy No.(s) 96878

Phone Number ____

Soc. Sec. # ____ Claim # ____

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ____

Insured ☐ Dependent ☐ Name ____

**Message** Will see Dr. 10/3 that's the first Drs Appt available.

☐ Reply no later than: ____

**Received By**

Name and Section 9/9/94 - voice mail

Date ____ Shn. Referred To ____

Time 1:44 Date ____

X-HICL 70403

ROXBY 0396



**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☐

Certificateholder ______ Spoke With Bruce Roxby

Employer's Name ______ Branch/Address ______

Policy No.(s) 96579

Phone Number ______

Soc. Sec. # ______ Claim # ______

In Reference To Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ______

Insured ☐ Dependent ☐ Name ______

Message Is having problems getting appt with his Dr as wife stated so is having problems. He will cheque & send Apps when rec'd.

☐ Reply no later than: ______

Received By

Name and Section [signature]

Date 9-1-94 Referred To ______

Time 9.50 Date ______

X-HICL 70403

ROXBY 0397

SunLife of Canada
A member of Sun Financial Group

a) To Originator: Write message, remove pink (Follow-up Copy) and forward white and canary copy.

b) Claims reply: Write reply, retain canary and return white to Group Service to make return call.

c) Final reply: Write final comments and return to Claims.

To: ~~Sue~~ Kevin H. / LTD

From: Marc

Date: 8/30/94

Time: 10:00

Group Policy Number & Name: 096878

Contact's Name: Bruce Roxby

Relationship:

Phone Number: 305-427-8733

Group Office: Florida

Claimant Name & Social Security Number: 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

================================================================

MESSAGE: Spoke to you a couple of weeks ago - I said he can not get to Doctor until September Please call in regard to check

ACTION TO BE TAKEN:

================================================================

COMMENTS TO BE MADE IN RETURN CALL:

================================================================

Return Call Made (Date): 8/30/94 (Time): 1:20

(By Whom): K Harrington

✓ Resolved

Further Action Required

If further action required, give details: left message

X-GR16/316

FOLLOW UP COPY
(GSC Keeps)

ROXBY 0398

SunLife of Canada
A member of Sun Financial Group

To: Sue M. LTD From: Christine

Date: 7-8 Time: 3:10

Group Policy Number & Name: 96878

Contact's Name: Bruce Roxby Relationship: Self

Phone Number: (305) 427-8733 Group Office: TAMPA

Claimant Name & Social Security Number: 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

MESSAGE: please call. His old DR is no longer w/ practice and the other Dr. can't see him till September.

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL:

Return Call Made (Date): July 29/14 (Time): 12:25

(By Whom):

✓ Resolved left message that we Retd his call

Further Action Required

If further action required, give details:

REPLY MESSAGE
(to be filed in claim file after entire call has been completed)

ROXBY 0399

SunLife of Canada
A member of Sun Financial Group

To: Sue / LTD From: Lise

Date: 7/6/94 Time: 11:45

Group Policy Number & Name: 96878 GD

Contact's Name: Peter Relationship:

Phone Number: 305-963-5000 Group Office:

Claimant Name & Social Security Number: Bruce Roxby 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

================================================================

MESSAGE: Was under workers comp. Peter says under workers comp they paid for drs visit. Now has Sunlife disability. Now verifying if need to pay for drs visit. Please call. Thanks.

ACTION TO BE TAKEN:

================================================================

COMMENTS TO BE MADE IN RETURN CALL: Busy

================================================================

Return Call Made (Date): 7/6/94 (Time): 3:00 3:05

(By Whom): S

✓ Resolved

Further Action Required

If further action required, give details: Will try again

7/7/94 10:10 - Busy
S

REPLY MESSAGE
(to be filed in claim file after entire call has been completed)

ROXBY 0400

GENEX [illegible]vices, Inc.
6499 NW 9th Avenue
Suite 312 Fort Lauderdale, FL 33309
305-938-9302 fax: 305-491-2427

MAY - 3 1994

[illegible]CATION
[illegible]EHABILITATION

April 14, 1994

Bill Harney
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, Ma. 02181

RE: Claimant : Bruce Roxby
Claim # : 96878
GENEX # : 333 3840
Employer : LM Family Enterprises
Date/Event: 5/26/93

## CLOSURE REPORT

### OVERVIEW

Staff of J.N. Pontiac state an inability to modify or offer Mr. Roxby a position based on his physical capabilities and restrictions.

The carrier has requested file closure.

### CONTACTS

| | | | |
|---|---|---|---|
| 4/5/94 | Contact Sun Life of Canada | N/C | |
| 4/6/94 | Visit J.M. Pontiac | .8 | 1.2 |
| 4/11/94 | Contact Sun Life of Canada | N/C | |
| 4/14/94 | Report | .5 | |

### DATA

On 4/5/94, detailed phone message was left with Bill Harney of Sun Life regarding the upcoming appointment with J.M. Pontiac.

On 4/6/94, I travelled to Hollywood, Florida, and met with Mr. Diaz, Tom Ryles, and Ms. Kelly, Personnel Officer. The request by Sun Life for a meeting with J.M. Pontiac staff in order to assess if a position could be modified based on Mr. Roxby's physical capabilities and limitations was discussed with staff. Ms. Kelly stated that due to Mr. Roxby's

VR case closed. Clnt not cooperative. ER cannot accomodate. Policyholder can't guarantee.

S Marcelon MAY 0 5 1994

physical restrictions on posture changes (ability to frequently and at will stand as needed), J.M. Pontiac was unable to develop a modified position for Mr. Roxby. Ms. Kelly went on to explain that attempts had been made to return Mr. Roxby to J.M. Pontiac in a modified position. Ms. Kelly assessed that the position of service writer would be too physically demanding as this position with J.M. Pontiac does require constant and walking, and sitting is not involved. Ms. Kelly stated that she had also looked into Mr. Roxby's returning as a porter. She assessed that the porter position, which involves heavy lifting, sweeping, and performing other duties as needed, would be too heavy for Mr. Roxby. Mr. Roxby's occupation as a mechanic could not be modified to allow him to sit as needed.

Ms. Kelly explained that she did not have in her possession medical records dictated from Mr. Roxby's physician and his physical capabilities had been discussed with her through conversations with Sharon Chappel and Karen Davis, Risk Manager with JM Family Enterprises. According to Ms. Kelly, Mr. Roxby's workers compensation claim has not been settled.

On 4/11/94, spoke with Bill Harney of Sun Life. Information received during the meeting with JM Pontiac staff was discussed at length. File closure was recommended. Mr. Harney was advised that this file could be reopened at any time if Mr. Roxby's status changes.

ANALYSIS AND PLANNING

Mr. Roxby had previously declined to meet with me in order to undergo a vocational evaluation. JM Pontiac staff has already discussed the possibility of Mr. Roxby returning to work there in a modified position. Staff has assessed that a position with JM Pontiac cannot be modified based on Mr. Roxby's physical restrictions of no heavy lifting and frequent changes in position.

This file will be closed as requested by the carrier and can be reopened if Mr. Roxby's status changes or if other rehabilitation services are warranted.

RECOMMENDATIONS

1. Provide file closure.

Respectfully submitted,

Dru West Jackson

SIGNED IN ABSENCE

Dru West Jackson, MA,CRC,CCM
Rehabilitation Counselor

DWJ/mk

GENE... vices, Inc.
6499 NW 9th Avenue
Suite 312 Fort Lauderdale, FL 33309
305-938-9302 fax: 305-491-2427

March 29, 1994

Bill Harney
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, Ma. 02181

RE: Claimant : Bruce Roxby
Claim # : 96878
GENEX # : 333 3840
Employer : LM Family Enterprises
Date/Event: 5/26/93

PRELIMINARY REPORT

OVERVIEW

This file was referred for the purpose of completion of a vocational evaluation in order to evaluate Mr. Roxby's vocational potential.

Mr. Roxby has declined to contact me for scheduling of an initial interview.

A meeting with JM Pontiac Staff to complete a Job Analysis for a modified position is scheduled for 4/6/94.

CONTACTS

| | | |
|---|---|---|
| 3/10/94 | Contact Sun Life of Canada | N/C |
| | **Review file** | .3 |
| | **Contact Mr.** Roxby | .1 |
| 3/11/94 | **Contact Mr.** Roxby | .1 |
| 3/14/94 | Contact Sun Life of Canada | N/C |
| 3/18/94 | Contact Sun Life of Canada | N/C |
| | Contact Mr. Roxby | .1 |
| 3/25/94 | Contact Sun Life of Canada | N/C |
| 3/28/94 | Contact Sun Life of Canada | N/C |
| | Contact Karen Davis, JM Enterprises | .2 |
| | Contact Elaine DeAngelo, JM Enterprises | .4 |
| 3/29/94 | Report | .5 |

RECEIVED
APR 22 1994
LONG TERM DISABILITY

S Marcelonis MAY 05 1994

ROXBY 3/29/94
PAGE 2

RECEIVED
APR 22 1994
LONG TERM DISABILITY

DATA

On 3/10/94, information in the file was received and reviewed. Mr. Harney of Sun Life of Canada was contacted by phone. The request for service was reviewed and Mr. Harney requested that I complete the vocational evaluation.

On this date, a detailed phone message was left at Mr. Roxby's residence requesting that he contact me to schedule a meeting. On 3/11/94, a phone message was again left on Mr. Roxby's answering machine.

On 3/14/94, I spoke with Bill Harney. File progress was reviewed. Mr. Harney stated that correspondence had been sent to Mr. Roxby explaining that I would be contacting him. Mr. Harney stated I should contact him if I did not hear from Mr. Roxby in a couple of days.

On 3/18/94, I contacted Mr. Harney. Mr. Harney stated he had spoken with Mr. Roxby and that it was okay for me to call Mr. Roxby to schedule the meeting. I contacted Mr. Roxby's residence and left a detailed message requesting that he contact me. On 3/25/94, as Mr. Roxby had not returned my call, I contacted Mr. Harney and left a long message detailing a follow up date.

On 3/28/94, I spoke with Mr. Harney. Mr. Harney assessed that Mr. Roxby may not cooperate in meeting with me. A Job Analysis in order to identify available positions within Mr. Roxby's physical capabilities was requested. Mr. Harney referred me to Karen Davis of JM Enterprises, (904)443-6667.

I contacted Ms. Davis by phone. Ms. Davis referred me to Elaine DeAngelo of JM Pontiac in Hollywood, Florida.

Ms. DeAngelo was contacted by phone, 781-0205. Ms. DeAngelo referred me to Tom Ryles and Mr. Diaz, Supervisors. I spoke at length via conference call to both Supervisors. A meeting to develop a Job Analysis for an available position based on Mr. Roxby's physical restrictions (no heavy lifting, frequent changes of position) was scheduled for 4/6/94, at the car dealership (2300 N. 60th Ave., Hollywood, Fl.).

ANALYSIS AND PLANNING

Attempts to schedule a meeting with Mr. Roxby to complete an initial vocational evaluation to assess his vocational



potential has not been successful.

The carrier has requested development of job analysis for positions available with Mr. Roxby's former employer. When developed, this information can be sent to Mr. Roxby's treating physician for review and determination as to whether he is physically able to return to these occupations.

RECOMMENDATIONS

1. Meet with JM Pontiac's staff to complete Job Analysis.

2. Submit information to physicians.

3. Conference with carrier as needed.

NEXT REPORTING DATE: April 29, 1994

Respectfully submitted,

Dru West Jackson, MA,CRC,CCM
Rehabilitation Counselor

DWJ/mk


SunLife
of Canada
A member of Sun Financial Group

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

June 28, 1994

Bruce Roxby
525 SE 10th Avenue
Deerfield Beech, FL 33441

RE: Group Policy Number: 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

Dear Mr. Roxby:

We still have not received the completed Physician Statement, Statement of Information and a copy of the most recent denial from Social Security requested May 6, 1994. This information is needed in order to extend benefits beyond July 31, 1994.

If we do not hear from you regarding this matter within 30 days from the date of this letter, we shall assume you do not wish to pursue this claim and we shall close our file.

Should you have any questions, please do not hesitate to contact this office at 1-800-247-6875.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem

cc: J.M. Family Enterprises Inc.



Sun Life of Canada
Group Disability Benefits - LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: 1-800-247-6875

| Group No. | Certificate No. | Social Security No. | Date |
|---|---|---|---|
| 96878 | — | 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 | 5/6/94 |
| Name: Bruce Roxby | | | |

1. _____ Attached are claim forms for completion.

2. X Please have the attached forms completed and returned to us as soon as possible for further consideration of benefits. Please be sure that all sections of the form are filled in completely to avoid a delay on this claim.

3. _____ Please complete the highlighted areas and return to us as soon as possible for further consideration of benefits.

4. _____ We have not yet received the ____________ requested on ____________.

5. _____ We have not yet received a response to our letter sent on ____________. A copy of our previous correspondence is attached.

6. _____ Thank you for your payment of $__________. The overpayment has now been reduced to $__________.

7. _____ We have not yet received a reply regarding the overpayment of $__________. Please contact this office regarding repayment of the outstanding amount.

8. _____ Please furnish us with a copy of the Social Security Award or Denial Notice as soon as it becomes available, including Dependent Awards.

9. _____ If application has not yet been made for Social Security Disability/Retirement, may we suggest that the claimant apply as soon as possible as we feel he/she may be eligible. A copy of the Administration's decision should be sent to us when received.

10. _____ Please send a copy of the Workers' Compensation Award as soon as it becomes available.

11. _____ Please advise on the status of application to ____________. If an award or denial has been received, please forward a copy of the award/denial notice so we may correctly recalculate your claim.

12. X Other. We are still awaiting a copy of the most recent denial from Social Security you were going to send 3/31/94.

Sincerely,

Susan Marcel

Group Disability Benefits - LTD SC 3208

CC: APS / SOI

LTD 35/1 (15M-4-93) 71112

ROXBY 0408

**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☒ Outgoing ☐

Certificateholder ______ Spoke With Bruce Roxby

Employer's Name ______ Branch/Address ______

Policy No.(s) 96578-GD

Phone Number ______

Soc. Sec. # ______ Claim # ______

In Reference To Staff ☐ Seagram ☐ LTD ☒ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ______

Insured ☐ Dependent ☐ Name ______

Message he has been denied SS - He is appealing. He will send copy of denial notice

☐ Reply no later than: ______

Received By

Name and Section [signature]

Date 3.31.94 Referred To ______

Time 10:45 Date ______

M.L.CL 70403 (20M-11-92) 69666

## RECORD OF TELEPHONE CONVERSATION

Phone ☒ In Person ☐ Incoming ☐ Outgoing ☒

Certificateholder: Bruce Roxby
Spoke With: Dru West-Jackson

Employer's Name:
Branch/Address: VR

Policy No.(s): 96878

Phone Number:

Soc. Sec. #:
Claim #:

In Reference To: Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other:

Insured ☐ Dependent ☐ Name:

Message: Instructed Dru to contact ER for job analysis.

Explore possibility of alternate work.

ER appt. sched. for 4/5.

☐ Reply no later than:

**Received By**

Name and Section: [signature]

Date: 3·29·94
Referred To: [signature]

Time:
Date:

[illegible] 70403 (20M-11-92) 59666

## RECORD OF TELEPHONE CONVERSATION

Phone ☒ In Person ☐ Incoming ☒ (Voice Mail) Outgoing ☐

Certificateholder: Bruce Roxby

Spoke With: Dru West-Jackson

Employer's Name:

Branch/Address: VR

Policy No.(s): 96878

Phone Number:

Soc. Sec. #:

Claim #:

In Reference To: Staff ☐ Seagram ☐ LTD ☐ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other

Insured ☐ Dependent ☐ Name

Message: Despite assurance from clmt he has not returned calls from rehab to sched on initial eval.

Case on hold pending further instructions.

☐ Reply no later than:

Received By

Name and Section: W J Harm

Date: 3-25-94

Time: 3:25

Referred To: file

Date:

H.I.CL 70403 (20M-11-92) 59666

ROXBY 0411

**RECORD OF TELEPHONE CONVERSATION**

Phone ☑ In Person ☐ Incoming ☑ Outgoing ☐

Certificateholder: Bruce Roxby
Spoke With: same

Employer's Name:
Branch/Address:

Policy No.(s): 96878

Phone Number:

Soc. Sec. #:
Claim #:

In Reference To: Staff ☐ Seagram ☐ LTD ☑ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other:

Insured ☐ Dependent ☐ Name:

Message: Called re: rehab mtg + eval. Says he has had several in past yrs. 2 yrs ago from MVA. Conjunct w/ physical rehab.

He doesn't think he can work at his occupation and will not accept anything else. Says he cannot be on his feet more than 1 hr a day.

This is at odds w/ AP restrictions

Did agree to meet w/ VRC for initial eval.

Clm needs to ~~[illegible]~~ be closely monitored Voluntary RTW is unlikely

☐ Reply no later than:

**Received By**

Name and Section: [signature]

Date: 3·14·94
Referred To: file

Time: 9:30
Date:

H...IL 70403 (30M-..-92) 59666

G. ..X Services, Inc.
6499 NW 9th Avenue
Suite 312 Fort Lauderdale, FL 33309
305-938-9302 fax: 305-491-2427

March 9, 1994

RECEIVED
MAR 14 1994
By________

Bill Harney
Rehab. Consultant
Sun Life of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02181

RE: Claimant : Bruce Roxby
Claim # : 96878
File # : 333-3840
Employer : JM Family Enterprises
Date of Injury : 05-26-93

Dear Mr. Harney:

This case has been assigned to our Rehabilitation Specialist, Dru West-Jackson, MA, CRC, CCM, for vocational management, and our first report will be submitted to you the week of March 23, 1994. If you receive any additional information during the interim, please don't hesitate to contact us.

Thank you for this assignment.

Sincerely,

GENEX Services, Inc.
(Formerly General Rehabilitation Services, Inc.)

Claire A. Lange, MA, CRC, CIRS, CVE, CCM
Branch Manager

Karen E. Street
Marketing Manager

CAL/ww


One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

March 7, 1994

Bruce Roxby
525 S.E. 10th Avenue
Deerfield Beach, FL 33441

file

RE: Group Policy Number: 96878
Claimant Name: J.M. Family Enterprises
Long Term Disability

Dear Mr. Roxby:

A recent review of your Long Term Disability claim indicates that you may benefit from vocational rehabilitation services. Such services are designed to assist you in evaluating you employment potential and provide you with services to return you to work.

I have, therefore, referred you to a vocational rehabilitation counselor in your local area, Drew West-Jackson of Genex Services, who will be contacting you shortly to schedule an appointment with you for a vocational evaluation.

If you have any questions, please call me at 1-800-432-1102, ext. 1500.

Sincerely,

William J. Harney, CRC, LRC
Rehabilitation Consultant
SC 3214

WJH/gem



One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (617) 237 6030

U S Headquarters Office

February 23, 1994

Bruce Roxby
525 SE 10th Avenue
Deerfield Beech, FL 33441

RE: Group Policy Number: 96878 -GD- Long Term Disability

Dear Mr. Roxby:

Our office has received the Corrected Salary pertinent to the above Long Term Disability claim. We have recalculated our benefit as follows:

| | |
|---|---|
| Basic Benefit 70% | $4,288.41 |
| Total Offset: Less Workers Compensation | $1,841.67 |
| Correct Net Benefit | $2,446.74 |

According to our records, payment was made as follows:

| Period Covered | We Paid | We Should Have Paid |
|---|---|---|
| Nov 22 - 30, 1993 | $ 340.48 | $ 734.03 |
| Dec 01 - 31, 1993 | $1,134.93 | $2,446.74 |
| Jan 01 - 31, 1994 | $1,134.93 | $2,446.74 |
| Feb 01 - 28, 1993 | $1,134.93 | $2,446.74 |
| | $3,745.27 | $8,074.25 |

| | |
|---|---|
| Total Paid | $3,745.27 |
| Total Should Have Paid | $8,074.25 |
| Underpayment | $4,328.97 |

Therefore, there is an underpayment of $4,328.97.

The underpayment will be issued shortly.

Should you have any questions you may contact this office at 1-800-247-6875.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem

cc: J. M. Family Enterprises, Inc.

02/18/94 10:31 ☎904 443 6670 JM FAMILY ENT 001/001

SunLife
of Canada
A member of Sun Financial Group

# NOTICE OF CLAIM

## GROUP LONG TERM DISABILITY BENEFITS

Where there is reason to believe an insured will qualify for Long Term Disability benefits, this notice should be completed half way through the elimination period and forwarded to:

Sun Financial Group
Group Claims — LTD, SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

Policy No. 96878 Sub. No. ______ Social Security No. 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

1. Name of insured Bruce Roxby
2. Insured's date of birth 4/25/47 Insured's Telephone No. 305-427-8733
3. Permanent address of the insured (include zip code) 525 SE 10th Ave Deerfield Bch., FL 33441
4. Present address of the insured (if other than as above) ______
5. Date of employment 7/14/82
6. Effective date of insurance certificate with SunLife 1/1/93
7. Present status of insurance certificate In Force ☒ Cancelled ☐

   If Cancelled, please indicate date of cancellation ______
8. Basic monthly salary $ 4961, corrected amount is $6,126.29
9. Date on which insured last worked 5/25/93
10. Reported cause of disability Work related injury - Banged head on Tire
11. Name of insured's attending physician Alan K. Novick, MD
12. Remarks ______
13. Occupation Mechanic
14. ☐ Yes ☑ No Do you need a claim package for filing proof of claim for above employee?

Dated at 8:10 Am this 22nd day of December 19 93

Employer JM Family Enterprises, Inc

Corresponding address for this claim: Karen Davis
8019 Bayberry Road
Jacksonville, FL 32256
904-443-6667

Authorized Signature Karen A Davis

HCL 70283 (SM-11-91) 66328

ROXBY 0416

Corrected monthly salary
$ 6,136.39

60% $3,675.78

70% $ 4,295.41

Corrected Salary ÷
70% less other income

| [illegible] | [illegible] pd | [illegible] pd |
| --- | --- | --- |
| 11/22/93 - 11/30/93 | $ 340.48 | 734.03 |
| 12/01/93 - 12/31/93 | $ 1,134.93 | [illegible] |
| 01/01/94 - 01/31/94 | $ 1,134.93 | [illegible] |
| [illegible]/94 | $ 1,134.93 | [illegible] |
| | 3,745.27 | [illegible] |

UP = 4,333.97

[illegible]
[illegible]



One Sun Life Executive Park
Wellesley Hills MA 02181

Headquarters Office

February 11, 1994

J. M. Family Enterprises Inc.
Karen Davis
8019 Bayberry Road
Jacksonville, FL 32256

RE: Group Policy Number: 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

Dear Ms. Davis:

We are pleased to advise that the above claim has been approved for disability benefit payments. Details are as follows:

| | |
|---|---|
| Monthly Gross Benefit | $2,976.60 |
| Workers' Comp. Offset | $1,841.67 |
| Total Offset | $1,841.67 |
| Net Monthly Benefit | $1,134.93 |

Benefits accrue from November 22, 1993; the regular due date is the last day of each month.

The first check will be issued shortly. This will be in the amount of $2,584.29 with a FICA withholding of $26.05. FICA will be withheld through November 30, 1993. The first check will pay through January 31, 1994.

Please send us a copy of the Social Security Disability/Retirement award or denial as soon as it becomes available, in order that we may correctly recalculate the benefit. In the event of a disability award, please forward the Dependent awards also.

Future checks will be issued shortly before the due date each month while we are furnished with satisfactory evidence of the claimant's continuing total disability, and he/she otherwise continues to qualify for these benefits. You will be notified when further evidence is required.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem

cc: Bruce Roxby

SunLife of Canada
A member of Sun Financial Gro...

To: Sue M. (LTD) From: Christine

Date: 2-14 Time: 11:35

Group Policy Number & Name: 96878

Contact's Name: Bruce Roxby Relationship: Self

Phone Number: (305) 427-8733 Group Office: FLA

Claimant Name & Social Security Number: 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

MESSAGE: please call. wants to know what his monthly check will be

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL:

Return Call Made (Date): 2/14/94 (Time):

(By Whom):

X Resolved

Further Action Required

If further action required, give details:

REPLY ...

## RECORD OF TELEPHONE CONVERSATION

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☒

Certificateholder Bruce Roxby Spoke With Karen Davis

Employer's Name Branch/Address

Policy No.(s) 96578-OD

Phone Number (904) [illegible]

Soc. Sec. # Claim #

In Reference To Staff ☐ Seagram ☐ LTD ☒ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other

Insured ☐ Dependent ☐ Name

Message Called re [illegible] work — They have nothing for him to [illegible] to. He is not qualified for any office work

☐ Reply no later than:

Received By

Name and Section [signature]

Date 2/14/94 Referred To

Time 5:52 Date

M.I.CL 70403 (20M-11-92) 69666

ROXBY 0420



FOLLOW UP

Patient: Roxby, Bruce

Date: August 20, 1993

Mr. Roxby has an MRI scan which shows no evidence for disc herniation or spinal stenosis. Patient needs to be followed up with Dr. Mendelsohn. There is no need for further neurosurgical follow up.

Arnold C. Lang, M.D.
ACL/rpc

Arnold C. Lang, M.D., P.A.

DIPLOMATE AMERICAN BOARD OF NEUROLOGICAL SURGERY

4900 WEST OAKLAND PARK BOULEVARD
NORTH BUILDING, SUITE 105
FORT LAUDERDALE, FLORIDA 33313
FAX: (305) 733-9854
(305) 733-9838

RECEIVED
FEB 0 8 1994
LONG TERM DISABILITY

June 2, 1993

Re: Roxby, Bruce

To Whom It May Concern:

Mr. Bruce Roxby had an MRI scan which showed no evidence of disc herniation or spinal stenosis. The patient presented with a C7 radiculopathy. The patient improved. He is pending physical therapy. He should be able to receive that on an out-patient basis with Dr. Mendelsohn. He has an appointment for June 14th. In the interim, I believe the patient can return to work at light activity for two to three hours per day.

Sincerely,

Arnold C. Lang, M.D.
ACL/rpc

**FOLLOW UP**

Patient: Roxby, Bruce

Date: June 2, 1993

MRI scan performed on 5/26/93 of the cervical spine showed no evidence of herniation or spinal stenosis. The patient essentially has a normal neurological MRI.

Arnold C. Lang, M.D.
ACL/rpc

Arnold C. Lang, M.D., F.A.C.S.P.A.

FELLOW COLLEGE INTERNATIONALE DE CHIRURGIENS

DIPLOMATE AMERICAN BOARD OF NEUROLOGICAL SURGERY

3700 WASHINGTON STREET • SUITE 300
HOLLYWOOD, FLORIDA 33021
305-966-9595
FAX 305-966-9626

May 26, 1993

Andrew Fleischer, M.D.
4030-A Sheridan Street
Hollywood, Florida 33321

Re: Roxby, Bruce

Dear Dr.Fleischer:

Thank you for the referral of Bruce Roxby whom I saw today.

IDENTIFYING INFORMATION

Mr. Roxby works as a mechanic. He was injured yesterday while working underneath a car. He apparently jammed his head under a tire as he was coming up under a car and his head essentially went down as he describes it like a turtle which is an excellent description. He has been having pain in his neck down the right arm, right shoulder, but pain radiating down into the last two digits of his right hand. He is right hand dominant. He is 5'8 and weighs 205 lbs.

PREVIOUS MEDICAL HISTORY

Negative for diabetes mellitus, high blood pressure, thyroid disease, cardiac history, pulmonary history. There is no history of cancer. He has a malrotated kidney which has not caused any problem since 1967. He is a smoker. He is a social drinker. He has no allergies including no allergy to penicillin or iodine. He is allergic to bee stings and also to IV dyes.

PHYSICAL EXAMINATION

He has pain in his lower back with pain going down into his left thigh. He is able to flex his head, however, on extension, he develops pain at approximately 10 degrees with radiation into the right arm. He does not have a Lhermitte sign .

Patient walks with a normal gait. Heel and toe walk are within normal limits. It must be mentioned that the patient has a pre-existing problem with his cervical spine. He was involved in an automobile accident five years ago and has been treated since that time by Dr. Donald Norman. He describes his last MRI as showing D4-5, C5-6 and a small disc herniation at C6-7.

Continued for patient Bruce Roxby

Bruce Roxby
Initial Evaluation
Page two

He has had difficulty in both hands in the ensuing five years and according to the patient both Dr. Norman and Dr. Jerry Goldberg feel that he may have had a central cord ischemia or syndrome as a result of the accident.

Motor function shows good hand grasps bilaterally. Good biceps and triceps function bilaterally.

He is intact to pin prick throughout. Reflexes are essentially within normal limits.

**IMPRESSION**

Patient has a low grade cervical radiculopathy at C6-7 with numbness and tingling in the C7 distribution on the right side. The patient had an MRI scan today. My impression and suggestion for this gentleman at this point in time is for him to have a vigorous course of physical therapy for the next four to six weeks and some non-steroidal anti-inflammatory to see how well he progresses. This is of long standing which has been exacerbated by his recent accident. If the patient does not improve after the therapy then he may very well be a candidate for additional intervention.

Sincerely,

Arnold C. Lang, M.D.
ACL/rpc

cc.: JM Family Enterprises
8019 Bayberry Road
Jacksonville, Florida 32256
Claim No. 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

RECEIVED
FEB 0 8 1994
LONG TERM DISABILITY

MRI SOUTH BROWARD, LTD.
3500 HOLLYWOOD BOULEVARD
HOLLYWOOD, FL 33021

PHONE (305) 983-9330
FAX (305) 983-6488

| FILE NO. | PATIENT'S NAME | SEX | AGE | DATE OF BIRTH |
|---|---|---|---|---|
| S-9598 | ROXBY, BRUCE | M | 46 | 9-25-47 |

PAGE 1

REFERRING PHYSICIAN: ANDREW FLEISHER, M.D.
4030-A SHERIDAN STREET
HOLLYWOOD, FL 33021

TELEPHONE#:966-4020 FAX#:966-4522

EXAM DATE: 5-26-93

MRI SCAN OF THE CERVICAL SPINE:

TECHNIQUE:
EXAM WAS PERFORMED WITH THE SAGITTAL T1 WEIGHTED IMAGES, SAGITTAL T2 WEIGHTED IMAGES, AND AXIAL GRADIENT ECHO IMAGES ON A 1.5 TESLA SCANNER.

FINDINGS:
THE VERTEBRAL BODIES ARE INTACT. THE PRE AND PARAVERTEBRAL SOFT TISSUES ARE NORMAL. THE CORD SHOWS NORMAL SIGNAL. AT C6-7 THERE IS NO EVIDENCE FOR DISC HERNIATION OR STENOSIS. C5-6 SHOWS TINY CENTRAL DISC BULGE THAT DOES NOT AFFECT UNDERLYING SUBARACHNOID SPACE. THE LEVELS ABOVE SHOW NO FOCAL HERNIATION, CENTRAL OR FORAMINAL STENOSIS.

INTERPRETATION:
NO EVIDENCE OF DISC HERNIATION OR SPINAL STENOSIS.

NEIL BETTER KAPPELMAN, M.D.

NBK/dak D:5/28/93 T:5/28/93
DAKWRK DOC:17 TRANS-COMP., INC.

ASSOCIATES IN PHYSICAL MEDICIN..
3230 STIRLING ROAD
HOLLYWOOD, FL 33021
(305) 963-5000

JAY S. MENDELSOHN, M.D.
ALAN K. NOVICK, M.D.

RECEIVED
JAN 17 1994
LONG TERM DISABILITY

January 12, 1994

Sun Life Assurance Company
of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02181
Attn: Susan Marcelonis
Claims Administrator
Group L.T.D. Claims

RE: ROXBY, BRUCE 96878

Dear Ms. Marcelonis:

Per your recent request, please find copies of the medical chart on Bruce Roxby.

The fee for this service is $50.00 and can be mailed to the above address.

Sincerely,

Peter V. Tijunelis
Administrator

PVT/dr
Enclosures



FEB 03 '94 11:56 No.013 P.02

SunLife of Canada
A member of Sun Financial Group

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

January 5, 1994

COPY

RECEIVED
FEB 08 1994
LONG TERM DISABILITY

Dr. Arnold Laing
4900 W. Oakland Park Blvd.
Lauderdale Lakes, FL 33313

RE: Group Policy Number: 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

Patient's Name Bruce Roxby
525 SE 10th Avenue
Deerfield Beech, FL 33441

Date of Birth April 25, 1947

Please send the following records for this patient. A signed medical authorization is enclosed.

_X_ 1. All Records

___ 2. Admission History (including history & initial examination)

___ 3. Operative Report

___ 4. Discharge Summary

___ 5. Emergency Room Report

___ 6. Other

Thank you for your assistance.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gcm

ROXBY 0428



SUN LIFE OF CANADA
ATTN. SUSAN MARCELONIS
ONE SUN LIFE EXECUTIVE PK.
WELLESLEY HILLS, MA 02181

   ASSOCIATES IN PHYSICAL MEDICINE
3230 STIRLING ROAD
HOLLYWOOD, FL 33021
(305) 963-5000

JAY S. MENDELSOHN, M.D.
ALAN K. NOVICK, M.D.
DEBRA R. WEISS, D.O.

DATE: September 13, 1993 PATIENT: Roxby, Bruce

## NERVE CONDUCTION STUDIES

| NERVE | SITE OF STIMULATION | LATENCY | DISTANCE | VELOCITY | AMPLITUDE |
|---|---|---|---|---|---|
| RIGHT: | | | | | |
| median motor | wrist | 3.2 | 8 | | 8 |
| | antecubital | 7.8 | 26 | 57 | 7 |
| ulnar motor | wrist | 2.8 | 8 | | 11 |
| | below elbow | 6.2 | 21 | 62 | 10 |
| | above elbow | 8.6 | 18 | 75 | 10 |
| median sensory | wrist | 2.6<br>3.4(P) | 14 | 53 | 30 |
| ulnar sensory | wrist | unattainable | | | 10 |
| radial sensory | wrist | 1.9<br>2.3(P) | 10 | 52 | |
| LEFT: | | | | | |
| median motor | wrist | 3.4 | 8 | | 6 |
| | antecubital | 7.6 | 25 | 59 | 6 |
| ulnar motor | wrist | 2.4 | 8 | 54 | 10 |
| | below elbow | 7.4 | 21 | 73 | 10 |
| | above elbow | 9.6 | 16 | | 20 |
| median sensory | wrist | 2.8<br>3.5(P) | 14 | 50 | |
| ulnar sensory | wrist | 3.0<br>3.8(P) | 14 | 47 | |
| radial sensory | wrist | 2.2<br>2.8 | 10 | 46 | 10 |
| right sural | posterior calf | 3.0<br>3.9(P) | 14 | 47 | 10 |

COMMENTS: Nerve conduction study of BUE reveal left prolongation of ulnar sensory nerves and the right was unattainable. All other nerves are WNL's.

ASSOCIATES IN PHYSICAL MEDICINE
3230 STIRLING ROAD
HOLLYWOOD, FL 33021
(305) 963-5000

JAY S. MENDELSOHN, M.D.
ALAN K. NOVICK, M.D.
DEBRA R. WEISS, D.O.

DATE: September 13, 1993 PATIENT: Roxby, Bruce

ELECTROMYOGRAPHY REPORT

| MUSCLE | INSERTIONAL ACTIVITY | SPONTANEOUS POS. WAVES | ACTIVITY FIBRILLATIONS | MOTOR UNIT POTENTIALS |
|---|---|---|---|---|
| Left cervical paraspinals | Normal | 0 | 0 | |
| Right cervical paraspinals | Increased | 1+ | 0 | |
| RIGHT: | | | | |
| deltoid | Normal | 0 | 0 | Normal Amp, Duration & Recrt |
| biceps | Normal | 0 | 0 | same as above |
| triceps | Normal | 0 | 0 | same as above. |
| 1st dorsal interosseous | Normal | 0 | 0 | same as above |
| abductor pollicus brevis | Normal | 0 | 0 | same as above |

COMMENTS: 1) EMG reveals evidence of dorsal irritation in the lower right cervical paraspinal region.
2) There is no evidence of radiculopathy.



ROXBY, BRUCE EMG/NCS
SEPTEMBER 13, 1993

Patient presents today. He is being followed by Dr. Alan Novick for myofascial pain syndrome and a possible right ulnar neuropathy. He states that he has pain in his right arm and weakness. His BUE strength is noted to be 5/5 with exception to the right 4th and 5th digit, which are noted to be slightly decreased in strength. Sensory examination reveals decreased sensation to pin prick and the right little finger. Otherwise sensation was intact. His deep tendon reflexes are noted to be intact.

**NERVE CONDUCTION STUDIES:** Nerve conduction studies of the bilateral median motor, ulnar motor, median sensory, radial sensory, and sural nerves are normal. The right ulnar sensory nerve was unobtainable. The left ulnar sensory nerve reveals delayed latency with small amplitude and mild conduction velocity delay.

EMG EXAMINATION: EMG of the left cervical paraspinals and the RUE is noted to be silent at rest without any spontaneous activity noted and normal motor unit potentials. The right cervical paraspinals reveal a +1 positive waves. No fibrillations were seen.

IMPRESSION:

1. EMG evaluation reveals mild dorsal root irritation in the lower right cervical paraspinal region.
2. There is no evidence of radiculopathy.
3. There is possible sensory neuropathy of the bilateral ulnar nerves. If symptoms persists I would suggest a re-evaluation in approximately three months time.

______________________________
Debra R. Weiss, D.O.

DRW/dr

SunLife of Canada
A member of Sun Financial Group

To: Sue M. LTD From: Christine

Date: 2-8 Time: 9:20

Group Policy Number & Name: 96878 J.M. Family

Contact's Name: Bruce Roxby Relationship: Self

Phone Number: (305) 427-8733 Group Office: FL

Claimant Name & Social Security Number: 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

MESSAGE: please call about status

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: [illegible]

Return Call Made (Date): 2/8/94 (Time): 12:55

(By Whom): S

Resolved

Further Action Required

If further action required, give details:

ROXBY 0433

REPLY MESSAGE

## RECORD OF TELEPHONE CONVERSATION

Phone ☐ In Person ☐ Incoming ☒ Outgoing ☐

Certificateholder ____ Spoke With Bruce [illegible]

Employer's Name ____ Branch/Address ____

Policy No.(s) 96378-GD

Phone Number ____

Soc. Sec. # ____ Claim # ____

In Reference To Staff ☐ Seagram ☐ LTD ☒ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ____

Insured ☐ Dependent ☐ Name [illegible] By [illegible] Center

**Message**

[illegible] Dr [illegible] he [illegible] should have been sent - advised [illegible] to call office.

2/3/94 [illegible] called Dr [illegible] office [illegible] to fax [illegible]

Dr [illegible] # (305) 733-9555

Fax # (305) 733-9554

☐ Reply no later than: ____

**Received By**

Name and Section [signature]

Date 2/2/94 Referred To ____

Time [illegible] Date ____

[illegible] 70403 (20M-11-92) 69666

ROXBY 0434

ID: FEB 03'94 11:5

TRANSMIT CONFIRMATION REPORT

| | | |
|---|---|---|
| NO. | : | 013 |
| RECEIVER | : | 13057339854 |
| TRANSMITTER | : | |
| DATE | : | FEB 03'94 11:57 |
| DURATION | : | 01'12 |
| MODE | : | STD |
| PAGES | : | 02 |
| RESULT | : | OK |



Sun
Financial
Group

Sun Life of Canada and affiliates

A family of companies committed to your financial security – providing life, health and disability insurance, annuities, pension plans and other financial services and products.

Sun Life Assurance Company of Canada
Sun Life Assurance Company of Canada (U.S.)
Massachusetts Financial Services Company
Sun Life Insurance and Annuity Company of New York
Sun Benefit Services Company Inc.
Sun Investment Services Company
New London Trust Company
Massachusetts Casualty Insurance Company

# The Fax From Sun Financial Group

Date: 7/13/94

Fax #: (305) 733-9554

To: [illegible]

From: [illegible]

Message: [illegible]

The following facsimile transmittal consists of 2 pages, including this page.

If you do not receive all of the pages, please call [illegible]

and ask for ______________________.

## Facts About Sun Life of Canada

- Standard & Poor's highest claims-paying rating -- "AAA" (Superior)
- A.M. Best's highest rating -- A+ (Superior)
- One of only seven companies to obtain Best's highest Class XV Financial Size Category rating
- 1990 net investment yield of 12.02%
- 1990 ratio of surplus total assets of 13.43%
- Just 1.03% of 1990 bond holdings rated below investment grade -- all due to post-purchase downgradings
- Just 0.17% of 1990 mortgage holdings more than 90 days in arrears

Any financial services product is only as good as the company that stands behind it – that's why it's important to get the facts.

6/91



SunLife
of Canada
A member of Sun Financial Group

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

RECEIVED
JAN 24
LONG TERM

January 5, 1994

Dr. Fleisher
4030 A. Sheridan Street
Hollywood, FL 33021

RE: Group Policy Number: 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

| Patient's Name | Bruce Roxby<br>525 SE 10th Avenue<br>Deerfield Beech, FL 33441 |
|---|---|
| Date of Birth | April 25, 1947 |

Please send the following records for this patient. A signed medical authorization is enclosed.

_X_ 1. All Records

___ 2. Admission History (including history & initial examination)

___ 3. Operative Report

___ 4. Discharge Summary

___ 5. Emergency Room Report

___ 6. Other

Thank you for your assistance.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem



# AUTHORIZATION TO OBTAIN INFORMATION

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, employer or Social Security Administration, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or any other non-medical information of me to give to Sun Life Assurance Company of Canada or its legal representative, any and all such information.

I UNDERSTAND the information obtained by use of the Authorization will be used by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my application, claim, or as may be otherwise lawfully required or as I may further authorize.

I KNOW that I may request to receive a copy of this Authorization.

I AGREE that a photographic copy of this Authorization shall be a valid as the original.

I ACKNOWLEDGE receipt of the Notice of Disclosure of Information and Notice to Persons Applying for Insurance.

I AGREE this Authorization shall be valid for two and one half years from the date shown below.

---

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

---

SIGNED THIS 5TH DAY OF DEC 19 93.

Bruce Roxby
Signature of Insured/Beneficiary

Sun Life of Canada
Group Claims — LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

## PROGRESS NOTES

NAME ROXBY, BRUCE BIRTHDATE 04/25/47 SEX M PAGE 46

INSURANCE WORKS MAN COMP. OCCUPATION AUTO TECH. REFERRED BY

525 S.E 10th AVE. DEERFIELD BEACH, FL. 33441

RECEIVED
JAN 24 1994
LONG TERM DISABILITY

| DATE | NOTES |
| --- | --- |
| 3/26/93 | [illegible] 206 |
| | B/P 140/90 |
| | pt [illegible] Hx [illegible] [illegible] [illegible] [illegible] |
| | can [illegible] [illegible] [illegible] [illegible] [illegible] |
| | neck - [illegible] [illegible] [illegible] [illegible] [illegible] → [illegible] |
| | [illegible] [illegible] [illegible] → [illegible] [illegible] |
| | [illegible] [illegible] [illegible] [illegible] |
| | [illegible] [illegible] - [illegible] [illegible] = "[illegible] [illegible] [illegible] [illegible]" |
| | [illegible] [illegible] [illegible] [illegible] [illegible] |
| | [illegible] [illegible] [illegible] [illegible] |
| | [illegible] [illegible] [illegible] Today |
| | R/O [illegible] [illegible] |
| | & proceed |
| | [signature] |

ROXBY 0439



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**BUSINESS REPLY MAIL**

FIRST CLASS PERMIT NO 4577[illegible] WELLESLEY HILLS, MA USA

POSTAGE WILL BE PAID BY ADDRESSEE

ATTN GROUP HEALTH CLAIMS
(LTD SECTION)

SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.)
ONE SUN LIFE EXECUTIVE PARK
WELLESLEY HILLS, MASSACHUSETTS 02181

ROXBY 0440



SunLife of Canada
A member of Sun Financial Group

271793 302-3-02

To: Sue M-LTD From: Linda

Date: 1/21 Time: 10:36

Group Policy Number & Name: 96878

Contact's Name: Bruce Roxby Relationship: claim.

Phone Number: 305-427-8733 Group Office: FLO.

Claimant Name & Social Security Number: SS# 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

==========

MESSAGE:

He was calling to check on status.

Please call to advise.

ACTION TO BE TAKEN:

==========

COMMENTS TO BE MADE IN RETURN CALL: [illegible]

[illegible]

we need Dr. [illegible]

[illegible] see where that is.

==========

Return Call Made (Date): 1/21/94 (Time): [illegible]

(By Whom): [illegible]

X Resolved

Further Action Required

If further action required, give details:

REPLY MESSAGE

ROXBY 0441



RECEIVED
JAN 17 1994
LONG TERM DISABILITY

ROXBY, BRUCE FOLLOW UP EVALUATION
DECEMBER 8, 1993

Patient returns today for a follow up appointment and to assess his impairment rating. He reports there is no change in his pain. He continues to complain of both upper and lower back pain. He states that the pain radiates down the upper extremity to the fourth and fifth digits. He denies any radiation of the pain to his LE's. He denies any bowel or bladder dysfunction. He reports that standing for any length of time greatly aggravates his pain.

PHYSICAL EXAMINATION: Patient is a middle aged white male in no acute distress. He is alert and oriented x 3. He has diffuse tenderness to palpation of the lumbar paraspinal muscles bilaterally with increased paraspinal tone. Lumbar spine ROM is limited to approximately 30 degrees of forward flexion due to pain. Patient also has significant pain with extension combined with rotation to the left. He has no pain with rotation to the right. Cervical spine ROM is essentially WNL's with the exception of rotation to the right which is limited to 30 to 35 degrees. Strength is generally 5/5 in all four extremities. Muscle stretch reflexes are symmetrical throughout all four extremities. Sensation is grossly intact with the exception of both the palmar and dorsal aspects of the fourth and fifth digits of both hands extending to the wrist. The sensory examination however is somewhat inconsistent. He is ambulating independently without any assistive devices with a fairly normal gait pattern. There is no antalgic gait. Straight leg raising test is negative. Spurling's maneuver is negative.

IMPRESSION:
1. Myofascial pain syndrome.
2. Left lumbar facet syndrome.

PLAN:
1. Patient continues to refuse lumbar facet injection which I believe would benefit his low back pain. He should continue with lumbar flexibility exercises. He should also continue with an aerobic conditioning program including riding an exercise bike or walking briskly.
2. I believe at this time the patient has reached MMI. Based on the Minnesota Disability rating scale, patient receives a percentage of impairment of 17.5% He receives a rating of 14% for "neck and specific radicular pain present with objective neurologic findings and x-ray, or CT, or myelogram, specifically positive for herniated disk and no surgery performed", and 3.5% for "pain associated with rigidity (loss of motion or postural abnormality) or chronic muscle spasm. The chronic muscle spasm or rigidity is substantiated by objective clinical findings but without associated demonstrable degenerative changes".

Alan K. Novick, M.D.

ROXBY, BRUCE
PAGE TWO

severe back pain complaints. Patient has minimal tenderness to palpation over the left lumbosacral paraspinal muscles. Muscle strength is 5/5 throughout the BLE's. Muscle strength is also 5/5 throughout the UE's with the exception of ulnar deviation of the 4th and 5th digits which is 4+/5. Sensation is grossly intact throughout all four extremities. Straight leg raising test is negative in the sitting and supine position. Patient does have significant tightness of his hamstring muscles bilaterally. Babinski's examination reveals downgoing toes bilaterally. Tinel's sign is negative over both the median and ulnar nerves bilaterally.

IMPRESSION:
1.  Myofascial syndrome.
2.  Cervical strain.
3.  Probable left lumbar facet syndrome.
4.  Probable right ulnar neuropathy.

PLAN:
1.  Patient will be started on Orudis for it's anti-inflammatory and analgesic properties. The side effects of Orudis were explained to the patient including GI upset and possible GI bleeding. Patient was instructed to discontinue the medication if he develops any adverse side effects.
2.  Patient will be started in a physical therapy program to work on pain reduction through anti-inflammatory modalities. He will then work on improving ROM and flexibility. He will work on improving his posture including head position. He will be instructed in proper body mechanics and a home exercise program to prevent recurrent injuries.
3.  If patient is not showing significant improvement EMG/NCS should be obtained to R/O right ulnar neuropathy vs radiculopathy.
4.  I will see the patient back in 3 to 4 weeks to reassess his status.

Alan K. Novick, M.D.

AKN/dr

ROXBY, BRUCE CONSULTATION
JUNE 14, 1993

CHIEF COMPLAINT: Neck and back pain.

HISTORY OF PRESENT ILLNESS: Patient is a 46 year old white male who is an auto mechanic and was working under a car when he went to stand up hitting his head on a tire on 5/23/93. He reports that he immediately felt a burning sensation in his neck as well as tingling in the right upper extremity. He has history of neck and left upper extremity pain since being involved in a motor vehicle accident approximately five years ago. The right upper extremity tingling, however, was a new sensation. Patient had an MRI performed at Hollywood Diagnostic Center which reportedly showed bulging C6-7 disk. In addition, patient complains of increasing low back pain since the accident. He states that any turning motion increases the pain. He states that riding in a car is difficult as bumps also increases the pain. He describes some aching sensation in his left thigh particularly in the posterior aspect. He reports that he is having frequent headaches since the accident. He also complains of numbness in the 4th and 5th digits of the right hand as well as all five digits of the left hand. He attempted to return to work on light duty but had to discontinue due to the pain. He denies any bladder or bowel dysfunction.

PAST MEDICAL HISTORY: Motor vehicle accident 5 years ago with C6-7 herniated disk per MRI with multiple bulging disks. Patient with residual neck and left arm pain.

ALLERGIES: IVP dye.

SOCIAL HISTORY: Patient is married with four children. He is employed as an auto mechanic.

CURRENT MEDICATIONS: Darvocet N100, 4 to 5 tablets over the last three weeks and Anacin 3 bid.

PHYSICAL EXAMINATION: Patient is a middle aged white male appearing to be in discomfort. He is alert and oriented x 3. Head is in an anterior position. He has diffuse tenderness to palpation over the trapezius muscles bilaterally and the cervical paraspinal muscles. He has several tender points particularly in the intrascapular region. Shoulder ROM is WNL's. Scapular thoracic movements is normal. Spurling's maneuver produces neck pain but does not cause radicular symptoms. Radial pulses are easily palpable and do not diminish with Addson's maneuver. Muscle stretch reflexes are symmetrical for biceps, triceps, brachioradialis, knees and ankles. Cervical spine ROM is WNL's except rotation to the right which is limited at the end range by pain. Lumbosacral spine ROM is limited with forward flexion to 45 degrees. Extension combined with rotation to the left produces

ROXBY, BRUCE
JULY 28, 1993

FOLLOW UP EVALUATION

Patient returns for a follow up appointment. He states he had no significant change of his pain with either the Orudis or with physical therapy. He does not feel the therapy worsened the pain but he also did not feel it was of any significant benefit. He still complains of diffuse pain in both his upper and lower back with some radiation down the RUE to the 4th and 5th digits. He also complains of frequent headaches and difficulty sleeping.

PHYSICAL EXAMINATION: Patient is a middle aged white male who appears to be in mild discomfort. He is alert and oriented x 3. He has diffuse tenderness to palpation over the trapezius muscles bilaterally and the lumbosacral paraspinal muscles. Shoulder ROM is WNL's. Spurling's maneuver produces neck pain but no radicular symptoms. Muscle stretch reflexes are symmetrical. Strength is 5/5 throughout the BUE's and BLE's with the exception of the right 4th and 5th digits where ulnar deviation is 4+/5. Standing balance is good. Patient does demonstrate a mildly antalgic gait.

IMPRESSION:
1. Myofascial syndrome.
2. Possible right ulnar neuropathy.

PLAN:
1. At this time I have prescribed Elavil, 25 mgs poqhs, for it's pain reduction properties. Patient may also have benefits with depression and sleeping from the medication.
2. I will see the patient back in two weeks to see if there is any change in his pain symptoms. He will continue with aerobic conditioning in therapy. If he is not showing any changes in two weeks on Elavil EMG/NCS will be obtained.

Alan K. Novick, M.D.

AKN/dr

ROXBY, BRUCE FOLLOW UP EVALUATION
AUGUST 11, 1993

Patient returns today for a follow up appointment. He reports he is sleeping better since starting the Elavil but has not noticed any significant changes in his pain. He still states that most of his pain is in his upper back particularly between his shoulder blades with some radiation down the RUE. He states that his headaches are unchanged.

PHYSICAL EXAMINATION: Patient is a middle aged white male who appears to be in mild discomfort. He is alert and oriented x 3. He has diffuse tenderness to palpation over the trapezius muscles bilaterally. Shoulder ROM is WNL's. Spurling's maneuver produces neck pain bilaterally but does not produce radicular symptoms. Muscle stretch reflexes are symmetrical. Strength is 5/5 with the exception of the right 4th and 5th digits where ulnar deviation is 4 - 4+/5.

IMPRESSION:
1. Myofascial pain syndrome.
2. Probable right ulnar neuropathy.

PLAN:
1. I would like the patient to continue on the Elavil as he is showing some improvements with his sleep pattern.
2. As the patient has not shown any significant benefit with therapies it will be discontinued at this time.
3. I have scheduled the patient for an EMG/NCS to R/O cervical radiculopathy vs ulnar neuropathy. If the patient shows acute cervical radiculopathy he will be considered for further intervention including oral steroid medication.

Alan K. Novick, M.D.

AKN/dr



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES
FLORIDA
PM
JAN 12
1994

**BUSINESS REPLY MAIL**

FIRST CLASS PERMIT NO 45771 WELLESLEY HILLS, MA USA

POSTAGE WILL BE PAID BY ADDRESSEE

SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.)

ONE SUN LIFE EXECUTIVE PARK

WELLESLEY HILLS, MASSACHUSETTS 02181

ATTN GROUP HEALTH CLAIMS
(LTD SECTION)

ROXBY 0448



One Sun Life Executive Park
Wellesley Hills MA 02181

Tel (617) 237-6030

U S Headquarters Office

January 5, 1994

Associates in Physical Medicine
Alan K. Novick, M.D.
3230 Steirling Road
Hollywood, FL 33021

RE: Group Policy Number: 96878 -GD- Long Term Disability
Claimant Name: Bruce Roxby
Claim Number: 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

Dear Dr. Novick:

I am writing to you at this time concerning your patient and our insured, Bruce Roxby. We are in need of additional information to continue the evaluation of Mr. Roxby's claim.

Could you please provide us with an update of his condition. Please include the most recent dates and types of treatments, medications prescribed and the limitations which result from his condition. Copies of recent diagnostic studies and office notes would also be appreciated along with any additional information you care to provide.

I am enclosing the proper authorization permitting the release of this information along with a pre-paid envelope for your convenience in responding. If there should be a fee for submitting a report of this nature, please submit it with the completed report and I will be sure to give my immediate attention.

Thank you for your anticipated prompt response. If you should have any questions, please do not hesitate to contact this office.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem



SunLife
of Canada

One Sun Life Executive Park
Wellesley Hills MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

January 5, 1994

Dr. Fleisher
4030 A. Sheridan Street
Hollywood, FL 33021

RE: Group Policy Number: 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

| | |
|---|---|
| Patient's Name | Bruce Roxby<br>525 SE 10th Avenue<br>Deerfield Beech, FL 33441 |
| Date of Birth | April 25, 1947 |

Please send the following records for this patient. A signed medical authorization is enclosed.

_X_ 1. All Records

___ 2. Admission History (including history & initial examination)

___ 3. Operative Report

___ 4. Discharge Summary

___ 5. Emergency Room Report

___ 6. Other

Thank you for your assistance.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem

SunLife of Canada
A member of Sun Financial Group

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel (617) 237-6030

U.S. Headquarters Office

January 5, 1994

Dr. Arnold Laing
4900 W. Oakland Park Blvd.
Lauderdale Lakes, FL 33313

RE: Group Policy Number: 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

| Patient's Name | Bruce Roxby<br>525 SE 10th Avenue<br>Deerfield Beech, FL 33441 |
|---|---|
| Date of Birth | April 25, 1947 |

Please send the following records for this patient. A signed medical authorization is enclosed.

_X_ 1. All Records

___ 2. Admission History (including history & initial examination)

___ 3. Operative Report

___ 4. Discharge Summary

___ 5. Emergency Room Report

___ 6. Other

Thank you for your assistance.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem



SunLife
of Canada
A member of Sun Financial Group

One Sun Life Executive Park
Wellesley Hills, MA 02181

Tel: (617) 237-6030

U.S. Headquarters Office

January 5, 1994

J. M. Family Enterprises Inc.
Karen Davis
8019 Bayberry Road
Jacksonville, FL 32256

RE: Group Policy Number 96878 -GD- Long Term Disability
Employee Name: Bruce Roxby

Dear Ms. Davis:

With regard to the Long Term Disability claim on Bruce Roxby, we have found it necessary to request additional medical evidence. We have requested this information directly from Dr. Fleisher, Dr. Laing and Dr. Novick. We shall inform you of our decision when this evidence is received.

Should you have any questions, please do not hesitate to contact this office at 1-800-247-6875.

Sincerely,

Susan Marcelonis
Claims Administrator
Group L.T.D. Claims
SC 3208

SM/gem

cc: Bruce Roxby

SunLife of Canada
A member of Sun Financial Group

To: Sue M. From: LARRY

Date: 1/4/94 Time: 8:48

Group Policy Number & Name: 96878

Contact's Name: Bruce Roxby Relationship:

Phone Number: 305-427-8733 Group Office:

Claimant Name & Social Security Number: Bruce Roxby SS# 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

MESSAGE: Please call, return his call

ACTION TO BE TAKEN:

COMMENTS TO BE MADE IN RETURN CALL: Done.

Return Call Made (Date): 1/5/94 (Time): 2

(By Whom): S

X Resolved

Further Action Required

If further action required, give details:

ROXBY 0453

REPLY MESSAGE

**RECORD OF TELEPHONE CONVERSATION**

Phone ☐ In Person ☐ Incoming ☐ Outgoing ☒

Certificateholder ______ Spoke With Bruce Roxby

Employer's Name ______ Branch/Address ______

Policy No.(s) 96478-GA

Phone Number (305) 427-8733

Soc. Sec. # ______ Claim # ______

In Reference To Staff ☐ Seagram ☐ LTD ☒ Excess Risk ☐ Conversion ☐

Dental ☐ WI ☐ Other ______

Insured ☐ Dependent ☐ Name ______

Message left message on Answering machine I need him to call me back.

1/5/94 10:50

I called again to get Drs. Specialty. I was told Dr. Novack is a orthopedic / with psych specialty

Dr. Fleisler is a Ca. Dr. — GP that reffered him to Dr. Lang - neurologist who was then refferred to Dr. Novack.

☐ Reply no later than: ______

I advised him I need medical info.

**Received By**

Name and Section [signature]

Date 1/5/94 Referred To ______

Time 11 50 Date ______

M.I.CL 70403 (20M-11-92) 69666

ROXBY 0454

INITIAL CLAIM EVALUATION

Date 1/3/9_ Examiner Sue Maceloris

Is insured (initial) or subsequent? I AAW? yes

If subsequent, was waiting period met? — When —

Is plan contributory or non-contributory? ____ %contrib. 100% ER Pd.

If contributory, was coverage elected in proper time? —

Pre-existing met? yes If not, does prior carrier plan apply? —

Employed on date of dis? yes Insured on date of dis? yes

Disabled as defined by Policy since date last worked? no

Additional information needed? [illegible]

Approval notes

Notes for continued handling [illegible]



SunLife
of Canada
A member of Sun Financial Group

YL

27 1293 20003

**NOTICE OF CLAIM**

**GROUP LONG TERM DISABILITY BENEFITS**

Where there is reason to believe an insured will qualify for Long Term Disability benefits, this notice should be completed half way through the elimination period and forwarded to:

Sun Financial Group
Group Claims — LTD, SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181

Policy No. 96878 Sub. No. ______ Social Security No. 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

1. Name of insured Bruce Roxby
2. Insured's date of birth 4/25/47 Insured's Telephone No. 305-427-8733
3. Permanent address of the insured (include zip code) 525 SE 10th Ave Deerfield Bch., FL 33441
4. Present address of the insured (if other than as above) ______
5. Date of employment 7/14/82
6. Effective date of insurance certificate with SunLife 1/1/93
7. Present status of insurance certificate In Force ☒ Cancelled ☐
   If Cancelled, please indicate date of cancellation ______
8. Basic monthly salary $ 4961.
9. Date on which insured last worked 5/25/93
10. Reported cause of disability Work related injury - Banged head on Tire
11. Name of insured's attending physician Alan K. Novick, MD
12. Remarks ______
13. Occupation Mechanic
14. ☐ Yes ☑ No Do you need a claim package for filing proof of claim for above employee?

Dated at 8:10 Am this 22nd day of December 19 93

Employer JM Family Enterprises, Inc

Corresponding address for this claim: Karen Davis
5019 Bayberry Road
Jacksonville, FL 32256
904-443-6667

Authorized Signature Karen A. [illegible]

HICL 70283 8M 11 91 66328

ROXBY 0456



SunLife of Canada
A member of Sun Financial Group

United States Headquarters
One Sun Life Executive Park SC3208
Wellesley Hills, MA 02181

# CLAIM for GROUP LONG TERM DISABILITY BENEFITS

## INSTRUCTIONS FOR FILING CLAIM

1. The employee should complete the "Employee's Statement" making sure all questions are answered fully.
2. The employee should have his doctor complete an "Attending Physician's Statement".
3. The completed "Employee's Statement" and "Physician's Statement" should be given to the employer for completion of the "Employer's Statement" on the reverse side of this form and submission to Sun Life Assurance Company of Canada.

## EMPLOYEE'S STATEMENT

1. Name of employee (Indicate whether Mr., Miss, or Mrs.) MR BRUCE A ROXBY — Date of Birth: Mo. 4 Day 25 Year 47
2. Address (Give Number, Street, City and State - include zip code) 525 S E 10TH AV DEERFIELD BCH FL 33441
3. Usual Occupation AUTO MECHANIC
4. Social Security No. 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
5. Telephone No. 305-427-8733
6. (a) Nature of present disability NECK + BACK INJURY
   (b) On what date did disability begin or accident occur? MAY 25 19 93
   (c) If disability is due to accident, where did accident happen? At home ☐ At work ☑ Elsewhere ☐
   (d) How did accident happen? WHILE CARRYING HEAVY PIECE WALKED INTO CAR ON LIFT WITH MY HEAD CAUSING ME TO FALL
7. (a) From what date have you been totally and continuously disabled from performing your occupation? MAY 25 19 93
   (b) On what date do you expect to be able to return to work? ? ? 19 ?
8. (a) Are you now house confined? Yes ☑ No ☑ — Bed confined? Yes ☐ No ☐ — Hospital confined? Yes ☐ No ☐
   (b) If not confined, describe briefly your daily activities. GET UP – WATCH TV – PERFORM LIGHT HOUSE KEEPING - RARELY LEAVE HOUSE
9. Give names and addresses of all physicians consulted during your present illness.
   DR FLEISHER - 4030A SHERIDAN ST. HOLLYWOOD FL. 33021
   DR. ARNOLD LANG 4900 W. OAKLAND PK. BLV. LAUDERLAKES FL.
   DR. ALAN NOVICK - 3230 STERLING RD HOLLYWOOD FL 33021
10. Were you absent from work because of illness or injury during the twelve months period preceding your present disability? Yes ☑ No ☐
    If "Yes", give approximate dates DONT RECALL WHEN
11. Is there a possibility that you are or will become entitled to claim income or indemnity by reason of your disability under any of the following?
    (a) Other group insurance (including that available through membership in a Professional Association) ☐ Yes ☑ No
    (b) Workmen's Compensation ☑ Yes ☐ No
    (c) The Social Security Act ☑ Yes ☐ No
    (d) Other government legislation ☐ Yes ☑ No
    If "Yes", please give details including the source, nature, commencement date, and amount of benefits. (For "c" and "d", include income for your dependents). RECIEVE $425.00 PER WEEK FROM WORKMANS COMP.
    HAVE NOT YET APPLIED TO SOCIAL SECURITY

Certain states provide that any person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime

I certify that the above statements are true and complete and I authorize physicians, hospitals, Social Security Administration, and my employer to release information with respect to this claim.

Date 5 DEC 19 93 Employee's Signature Bruce A Roxby

ROXBY 0458

(6)

# EMPLOYER'S STATEMENT

| 1. Employee's Name | Group No. | Subdivision (if any) | Social Security No |
|---|---|---|---|
| Bruce A Roxby | 96878 | | 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 |

2. Employee's date of birth according to employer's records ... April 25 ... 19 41

3. Date of employment ... 7/14 ... 19 82

Employee's insurance became effective ... 7/14 ... 19 83

Employee's present insurance classification ...

Has certificate been cancelled? Yes ☐ No ☒

If cancelled, date and reason ... 19 ...

4. (a) On what date did employee last work? ... 5/25/ ... 19 93

(b) What was the reason for discontinuing work? ... INjury - Banged head on Tire (work related)

(c) If employee has returned to work, what was date of return? ... 19 ...

5. (a) What was employee's rate of annual earnings at date of commencement of disability? ... 59,527.83

(b) On what date did or will his salary terminate? ... 19 ...

(c) What remuneration, if any, does he now receive from you? ... $3285. ... ☐ per week ☒ per month

How long will this remuneration continue? ...

(d) What income, if any, does he receive under your retirement or pension plan? ... ☐ per week ☐ per month

6. To your knowledge what income or indemnity, if any, is provided for the employee by reason of disability under other group insurance, (including that available through membership in a Professional Association), Worker's Compensation, The Social Security Act or other government legislation (See question #9 in the Employee's Statement)?

... ☐ per week ☐ per month

When did or will this income terminate? ... 19 ...

7. What is the amount of the Long Term Disability Benefit anticipated under present claim? ... $2976.00 ... per month

8. Remarks

If there are any questions about his work related injury? You may contact our Workers Comp Rep.

Sharon Chappell
8019 Bayberry Rd
Jacksonville, FL 32256
(904) 443-6671

Certain states provide that any person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

Date December 13, 19 93

Employer: J.M. Family Enterprises, Inc
Address: 8019 Bayberry Rd, Jax FL 32256
Telephone No. 904-443-6667

by Karen Davis
(Authorized official)

7. **Physical Impairment** (*as defined in Federal Dictionary of Occupational Titles)

- ☐ Class 1 — No limitation of functional capacity, capable of heavy work* ..... No restrictions (0-10%)
- ☐ Class 2 — Medium manual activity* ..... (15-30%)
- ☐ Class 3 — Slight limitation of functional capacity; capable of light work* ..... (35-55%)
- ☑ Class 4 — Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity ..... (60-70%)
- ☐ Class 5 — Severe limitation of functional capacity; incapable of minimal (sedentary*) activity ..... (75-100%)
- ☐ Remarks:

8. **Mental/Nervous Impairment** (if applicable)

(a) Please define "stress" as it applies to this claimant.

(b) What stress and problems in interpersonal relations has claimant had on job?

- ☐ Class 1 — Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 — Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations)
- ☐ Class 3 — Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☐ Class 4 — Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
- ☐ Class 5 — Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
- ☐ Remarks

9. **Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof?** ☑ Yes ☐ No

10. **Prognosis**

| | Patient's job | Any other job |
|---|---|---|
| (a) Is patient now totally disabled? *No* | ☑ Yes ☐ No | ☐ Yes ☑ No |
| (b) If not now totally disabled, when was patient able to resume work? *light duty* | ☐ Full-time ☑ Part-time Mo Day Year *12/8/93* | ☐ Full-time ☑ Part-time Mo Day Year *12/8/93* |
| (c) What duties of patient's job is he/she incapable of performing? *may do light duty only, no heavy lifting, needs to frequently reposition* | | |
| Do you expect a fundamental or marked change in the future? | ☐ Yes ☑ No | ☐ Yes ☐ No |
| 1) If yes, when will patient recover sufficiently to perform duties? Mo. Day Year | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never | ☐ 1 mo ☐ 3-6 mo ☐ 1-3 mo ☐ Never Mo Day Year |
| 2) If no, please explain | | |

11. **Rehabilitation**

a) Is patient a suitable candidate for further rehabilitation services? (i.e. cardiopulmonary program, speech therapy, etc.)
☐ Yes ☑ No

b) Would job modification enable patient to work with impairment? ☐ Yes ☑ No
If yes, explain under remarks

c) When could trial employment commence? *12 8 93* Mo. Day Year — Patient's job: ☐ Full-time ☐ Part-time — Any other job: ☐ Full-time ☑ Part-time Mo Day Year

d) Would vocational counseling and/or retraining be recommended? ☑ Yes ☐ No

12. **Remarks:**

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

*Alan K. Novick, MD.* — Name (attending physician) *Please print*
*Psychiatry* — Degree/Specialty

ASSOCIATES IN PHYSICAL MEDICINE
3230 STIRLING ROAD
HOLLYWOOD, FL 33021

Street address — City or Town — State or Province — Zip code or Postal code

[signature] — Signature
*12-08-93* — Date

ROXBY 0460

AUTHORIZATION TO OBTAIN INFORMATION

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, employer or Social Security Administration, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or any other non-medical information of me to give to Sun Life Assurance Company of Canada or its legal representative, any and all such information.

I UNDERSTAND the information obtained by use of the Authorization will be used by Sun Life Assurance Company of Canada to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Sun Life Assurance Company of Canada to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my application, claim, or as may be otherwise lawfully required or as I may further authorize.

I KNOW that I may request to receive a copy of this Authorization.

I AGREE that a photographic copy of this Authorization shall be a valid as the original.

I ACKNOWLEDGE receipt of the Notice of Disclosure of Information and Notice to Persons Applying for Insurance.

I AGREE this Authorization shall be valid for two and one half years from the date shown below.

---

Certain states provide that anyone who knowingly and with intent to injure, defraud, or decieve any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a crime.

---

SIGNED THIS 5TH DAY OF DEC 19 93.

[signature]
Signature of Insured/Beneficiary

Sun Life of Canada
Group Claims — LTD SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02181


SunLife
of Canada
A member of Sun Financial Group

Sun Life of Canada
Group Claims — LTD SC 3206
One Sun Life Executive Park
Wellesley Hills, MA 02181

# Attending Physician's Statement of Disability
## Group Insurance

*The patient is responsible for the completion of this form without expense to Sun Life of Canada*

Please print

Name of patient: BRUCE A. ROXBY    Date of birth: 4 25 47

Patient's address: 525 SE 10TH AV DEERFIELD BCH FL 33441
(No / Street / City / State or Province / Zip Code)

Employer's name: J. M PONTIAC    Control number:

I hereby authorize release of information requested on this form by the below named physician for the purpose of claim processing.

Signed (Patient): Bruce A Roxby    Date: 5 DEC 93

**1. History**

a) When did symptoms first appear or accident happen? Mo. 5 Day 23 19 93

b) Date patient ceased work because of disability Mo. 5 Day 23 19 93

c) Has patient ever had same or similar condition? ☑ Yes ☐ No If "Yes" state when and describe.
motor vehicle accident 5 yrs ago with C6-7 herniated disc

d) Is condition due to injury or sickness arising out of patient's employment? ☑ Yes ☐ No ☐ Unknown

e) If condition due to automobile accident indicate state in which it occured

f) Names and addresses of other treating physicians

**2. Diagnosis** (including any complications)

a) Date of last examination Mo. 12 Day 8 19 93

b) Diagnosis (including any complications) Left lumbar facet syndrome, myofascial pain syndrome

c) If disability is due to pregnancy what is expected/was delivery date Mo. ____ Day ____ 19

d) Please describe any complications that would extend this disability longer than a normal pregnancy

e) Subjective symptoms

f) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings)
Lumbar paraspinal muscle spasm
Decreased rotation/extension to left
bulging C6-7 disc by MRI

**3. Dates of Treatment**

a) Date of first visit Mo 06 Day 14 19 93

b) Date of last visit Mo ____ Day ____ 19

c) Frequency ☐ Weekly ☐ Monthly ☐ Other (specify)

**4. Nature of Treatment** (including surgery and medications prescribed, if any)
Elavil, Physical Therapy

**5. Progress**

a) Has patient ☐ Recovered? ☑ Improved? ☐ Unchanged? ☐ Retrogressed?

b) Is patient ☑ Ambulatory? ☐ House confined? ☐ Bed confined? ☐ Hospital confined?

c) Has patient been hospital confined? ☐ Yes ☑ No If "Yes" give name and address of hospital
____ Confined from ____ through ____

**6. Cardiac** (if applicable)

a) Functional capacity (American Heart Association) ☐ Class 1 (No limitation) ☐ Class 2 (Slight limitation) ☐ Class 3 (Marked limitation) ☐ Class 4 (Complete limitation)

b) Blood pressure (last visit) Systolic ____ Diastolic ____



SunLife
of Canada
A member of Sun Financial Group

Policy No. ______

Certificate No. ______

SSN 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

# Social Security Questionnaire

1. Have you made application for disability benefits to the Social Security Administration?

Yes Date: ______

(No) If "No" please explain fully (and indicate when such an application will be filed.) It is important to apply for disability benefits at the earliest date permissible. The LTD contract calls for us to take an estimated social security disability offset beginning with the sixth month of disability, so send a copy of your award or denial letter right away. HAVE NOT BEEN RELEASED BY DOCTOR OR RECIEVED ANY FINAL DETERMINATION

2. Name of Spouse: PAT J ROXBY — Date of Birth: 30 OCT 54 — Currently Employed — Yes ☐ No ☑

3. Please list below the names and dates of birth of your unmarried children

| Names | Dates of Birth |
|---|---|
| SUZANNE ROXBY | 29 JUL 72 |
| AMBER ROXBY | 1 JUL 79 |
| BRUCE ROXBY II | 31 DEC 80 |
| | |

Reimbursement Agreement

I understand the provisions under my group insurance for reductions in amount of Benefits by co-ordination with other income. I agree that if I become entitled to Benefits under my Group insurance, I will apply for any income to which I might become entitled that would be co-ordinated, and to appeal any adverse ruling or decision. I further agree to refund to Sun Life of Canada any overpayment in Benefits received from Sun Life as a result of their payment without co-ordination of Worker's Compensation, Pension, Social Security Disability Benefits, Primary Benefit and Dependent if applicable, and/or Social Security Retirement Benefits.

Signed: Bruce H Roxby Dated: 5 DEC 93

Witnessed: ______ (Employer or Attorney)

POL BEN 3 · · · 5M 8-91 65708



(6)

SunLife
of Canada
A member of Sun Financial Group

POLICY NO. ______________

## AUTHORIZATION TO SECURE AWARD OR DENIAL INFORMATION

INSTRUCTIONS: Complete the top portion of this form and return it to Sun Life of Canada when you file for Long Term Disability Benefits. The Social Security office will return this form to us with a copy of your Award/Denial Letter.

TO: Social Security Administration
District Office

I, BRUCE A. ROXBY (Print Name of Claimant)
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 (Social Security Number) hereby authorize and request Social Security Administration to send a copy of my primary and family disability benefits award or denial letter to:

Sun Life of Canada
Group Claims, LTD SC 3233
One Sun Life Executive Park
Wellesley Hills, MA 02181

This information is necessary to compute any disability benefits payable to me by Sun Life of Canada. I filed my claim for disability benefits at the district office located:

______________________________
(Street Address)

______________________________
(City) (State) (Zip Code)

______________________________
(Signature of Claimant)

______________________________
(Street and Number)

______________________________
(City) (State) (Zip Code)

______________
(Date)

## SOCIAL SECURITY ADMINISTRATION REPORT

______________________________ (Name of Beneficiary) has authorized us to send you a copy of his disability award or denial letter. It is enclosed. This information is strictly confidential and is to be used only in the computation of any disability benefits that may be due to the beneficiary.

______________ (Date)

______________________________ (Social Security Representative)

LTD 15 13 5M 3 97 F4252

ROXBY 0463

(H)

SunLife
of Canada
A member of Sun Financial Group

**Personal & Confidential**

One Sun Life Executive Park · SC3233
Wellesley Hills, Massachusetts 02181
Telephone (617) 237-6030

U.S. Headquarters Office

"SEE ATTACHED JOB Description"

RE: Policy No. 96878 Employee BRUCE A. ROXBY
JOB DATA FORM

____________ is currently on leave of absence due to disability. Certain information regarding his/her job description is needed to further evaluate his/her eligibility for Long Term Disability payments.

If you have a *current* job description for the employee, please attach it to this memo and return to me. However, if no current description exists, please fully complete the following questionnaire and return it to me as soon as possible.

Thank you.

1. What was the employee's specific job title immediately prior to the onset of disability? Auto Mechanic

2. Briefly evaluate the following aspects of the employee's job:

   a. Education, prior work experience and training requirements.

   b. Required communication skills and interaction with individuals inside/outside company.

   c. Judgment (decisions-making/problems solving), accuracy requirements.

   d. Is employee responsible for supervision, training or safety of other employees? If "yes", describe.

   e. Physical demands, fatigue and stress factors.

   f. Working conditions, hazards, travel requirements.

3. Briefly describe day-to-day job activities.

Sincerely,

Group Health Claims / LTD

LTD 35/15 (5M-1-90) 60982

ROXBY 0464

PONTIAC

# JOB DESCRIPTION

I. HEADING

Job Title: Technician
Department: Service
Date Prepared: 9-1-92
Non-Exempt Position

II. DESCRIPTION OF POSITION

III. REQUIREMENTS

A.S.E certification strongly recommended. Valid Florida driver's license. High School graduate or GED preferred.

IV. ORGANIZATIONAL RELATIONSHIPS

Reports to Shop Foreman and/or Service Manager

V. JOB RESPONSIBILITIES

A. Essential Functions
Perform needed repairs to vehicle and inform service advisors of additional services needed. Must remain abreast of changing technology. Must be capable of performing physical labor in a safe manner.

B. Additional Duties
Other tasks may be assigned at management's discretion.

*This description is an outline of the major recurring responsibilities of the job. It is not intended to be all inclusive of the work performed. Other related job objectives, special assignments and less significant responsibilities will typically be performed by the incumbent.*

| Department Manager | Date | Human Resources | Date |
|---|---|---|---|





SunLife
of Canada
A member of Sun Financial Group

**GROUP HEALTH CLAIMS / LTD**
**REHABILITATION QUESTIONNAIRE**

BY MAIL ______ OR INTERVIEWED BY ______

WHERE ______

POLICY NO. 96878 CERT. NO. 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 POLICYHOLDER ______
CLAIMANT BRUCE A ROXBY BIRTHDATE 4-25-47
ADDRESS 525 S E 10th Ave TELEPHONE NO. 305-427-8733
Deerfield Bch, FL 33441
MARATAL STATUS M AGE OF SPOUSE 39 OCCUPATION OF SPOUSE HOUSE WIFE
AGES OF CHILDREN AT HOME 14 - 12
OTHERS AT HOME ______

**PRESENT CONDITION**

HOW WOULD YOU DESCRIBE YOUR CONDITION AT PRESENT? (I.E. ACHES, PAINS, AMOUNT AND FREQUENCY OF MEDICATION)
EXTEME PAIN - DIFFICULTY USING HANDS - WALKING PAINFUL

ARE YOU PRESENTLY UNDERGOING ANY MEDICAL INVESTIGATIONS OR ARE ANY PLANNED FOR THE FUTURE? IF SO, EXPLAIN.
STILL UNDER CARE OF DR NOICK

DO YOU OWN A CAR, TRUCK OR OTHER VEHICLES? IF SO, SPECIFY YES - 1967 BUICK ELECTRA CONCRT
CAN YOU PRESENTLY OPERATE IT? IF NOT, EXPLAIN YES - WITH DIFFICULTY

**DAILY ACTIVITIES**

BRIEFLY DESCRIBE YOUR DAILY ROUTINE, INCLUDING TASKS YOU PERFORM. WATCH TV - WASH DISHES - DUST - WASH CLOTHES - LIGHT YARD WORK

**INTERESTS**

DO YOU HAVE ANY HOBBIES, SOCIAL ACTIVITIES OR SPECIAL INTERESTS (WOODWORKING, MECHANICAL REPAIRS, CRAFTS.)? IF SO, EXPLAIN. NO

**OCCUPATIONAL INTERESTS**

WHAT TYPE OF EMPLOYMENT WOULD INTEREST YOU BASED ON YOUR PAST WORK EXPERIENCE, HOBBIES, SPECIAL TRAINING, ETC?
EXPLAIN. I'M ONLY INTERESTED IN AUTO REPAIR

**BUSINESS INTERESTS**

IS THERE ANY PARTICULAR BUSINESS YOU MIGHT BE INTERESTED IN? IF SO, EXPLAIN. NO

**EDUCATION**

COMPLETE EACH OF THE FOLLOWING:
HIGHEST GRADE COMPLETED IN SCHOOL 12
COLLEGE OR UNIVERSITY (NAME, YEARS COMPLETED, DEGREE OBTAINED) ______
TECHNICAL, TRADE OR VOCATIONAL TRAINING ASSORTED AUTO COURSES OVER 30 YEARS
APPRENTICESHIPS (YEARS AND WHETHER COMPLETED) CERTIFIED MASTER AUTO TECH JUL 84
OTHER TRAINING OR WORK EXPERIENCE 11 YEARS U.S.A.F AIR TRAFFIC CONTROLLER

**LANGUAGES (INCLUDING MOTHER TONGUE)**

| | SPEAK | READ | WRITE |
|---|---|---|---|
| FRENCH | | | |
| ENGLISH | ✓ | ✓ | ✓ |
| OTHER ______ | | | |

**WORK HISTORY**

**LAST EMPLOYER**

NUMBER OF YEARS EMPLOYED 10 NUMBER OF YEARS ON LAST JOB 10
WHY DID YOU HAVE TO STOP WORKING? WORK INJURY

TITLE OF LAST JOB AND DESCRIPTION OF DUTIES AUTO MECHANIC - ALL FACETS OF AUTO REPAIR

WHICH DUTIES ARE YOU NOW UNABLE TO DO? ALL PARTS OF JOB

PREVIOUS JOBS WITH THIS EMPLOYER, DESCRIPTION OF DUTIES AND NUMBER OF YEARS ON EACH.
NONE

**OTHER WORK**

DID YOU ENGAGE IN OTHER WORK AT THE SAME TIME AS YOUR REGULAR JOB? EXP... NO

**PREVIOUS EMPLOYERS**

NAME WARRIOR AMOCO FROM 1-81 TYPE OF WORK AUTO MECH
LOCATION WARRIOR ALABAMA TO 1-83

NAME SCHUMACHER BUICK FROM 4-91 TYPE OF WORK AUTO MECH
LOCATION W. PALM BEACH FL TO 6-91

**RETURN TO WORK**

ARE YOU WORKING IN ANY CAPACITY AT THE PRESENT TIME? YES ___ NO ✓ IF YES, EXPLAIN ___

DO YOU PLAN OR HOPE TO INCREASE THIS WORK? YES ✓ NO ___
EXPLAIN ___

DO YOU **HOPE** TO RETURN TO WORK EITHER PART-TIME OR FULL-TIME? YES ✓ NO ___

DO YOU PLAN TO DO SO? YES ✓ NO ___ IF YES, APPROXIMATELY WHEN? WHEN ABLE TO

IF NO, WHY? ___

WHAT HAS YOUR DOCTOR TOLD YOU ABOUT RETURNING TO WORK? ~~[illegible]~~ SAW DR ON 8-12-93 AM TOTALLY DISABLED FROM PRESENT JOB - NO CHANE EXPECTED

HAVE YOU BEEN OFFERED ANY WORK? EXPLAIN. NO

WOULD YOU PREFER TO RETURN TO WORK WITH YOUR LAST EMPLOYER? YES ✓ NO ___ EXPLAIN I HAVE NO DESIRE TO WORK ANY WHERE ELSE

IF SO, WHICH OF THE FOLLOWING DO YOU FEEL WOULD BE SUITABLE?

| FULL TIME | PART TIME | |
|---|---|---|
| ✓ | | YOUR PREVIOUS JOB BUT WITH CERTAIN MODIFICATIONS, SUCH AS SOME OF THE DUTIES REMOVED. EXPLAIN I JUST WANT TO DO MY JOB |
| | | ANOTHER JOB YOU FEEL YOU CAN HANDLE OR COULD SOON LEARN TO DO. EXPLAIN |
| | | SOME OTHER SITUATION. EXPLAIN |

HAVE YOU DISCUSSED THIS WITH THEM? YES ___ NO ✓ EXPLAIN NO ONE ASK ME TO.

IN VIEW OF YOUR IMPAIRMENTS DO YOU REGARD A RETURN TO WORK AS BEING FEASIBLE? NO

HAVE YOU APPLIED TO YOUR EMPLOYER FOR RETIREMENT OR DO YOU PLAN TO IN THE NEAR FUTURE? ~~I~~ NO
EXPLAIN STILL HOPE TO RETURN

FROM WHAT OTHER SOURCES DO YOU RECEIVE OR EXPECT TO RECEIVE DISABILITY BENEFITS? WORKMANS COMP + SOCIAL SECURITY

**VOCATIONAL REHABILITATION**

HAVE YOU CONSIDERED OR CHECKED INTO THE POSSIBILITY OF UP-GRADING YOUR EDUCATION OR TAKING A COURSE TO QUALIFY YOU FOR OTHER SUITABLE WORK? YES ___ NO ✓ WHETHER YES OR NO, EXPLAIN FULLY I DO NOT WISH RETRAINING

SPECIFICALLY, HAVE YOU CHECKED WITH OTHER AGENCIES FOR A SUITABLE COURSE? IF SO, WITH WHAT RESULTS? NO

WHAT OTHER HELP IN REHABILITATION ARE YOU RECEIVING OR HAS BEEN OFFERED? DESCRIBE FULLY, INCLUDING THE SOURCE AM RECEIVING NONE HAVE NOT BEEN OFFERED ANY

DATE 5 DEC 93 SIGNATURE [signature]

LTD 35/10 15M-1-90I 80930



Check for Referral to:

☒ #1 Bill SSDB/VR

* Bill you may want to get involved ASAP.

☐ #2 EDB/TDB -- Write in green on front of Claim jacket "Refer to EDB/TDB"